Phillip Jaffe, Esq.
Attorney for Plaintiffs
370 East 76th Street
Suite C-1002
New York, NY 10021
Tel:  (212) 734-3535


George Bassias, Attorney, LLC
Attorney for Plaintiffs
21-83 Steinway Street
Astoria, NY 11105
Tel.: (718)-721-4441


United States District Court
Southern District of New York
----------------------------------------------------------x
Amal Shetiwy, Louis C. Yeostros,   John Murphy
Plamen Pankoft,  Patricia R. Diffley, Spiros Argyros
Johanna Arbelaez, Nicholas Doudalis, Nicole Gagnon,
Safet Koljenovic, Magdi Abdalla, Ahmed Hassan,                    Civil Action No. 12 Civ. 7068 (SAS)
Ekatereine Skotedis, Vielka Vargas, Rose Villaneuva,
and others similarly situated,                                   **CLASS ACTION**
                    Plaintiffs,                         **AMENDED COMPLAINT**

            -against-                                  **JURY TRIAL DEMANDED**

Midland Credit Management, a/k/a Midland
Funding LLC, Calvary Portfolio Service, DebtOne, LLC
Cach, LLC, NCO Financial Systems, LVNV Funding,
LLC, Asset Acceptance, LLC, FIA Card Services, N.A,
Portfolio Recovery, Chase Bank, N.A., American Express
Company, Bank of America, N.A., Capital One Financial Advisors, LLC.
Associated Recovery Systems, Citigroup Inc., Citibank, N.A.
Capital Management Services, GE Capital Consumer Lending, Inc.,
Equable Assent Financial, LLC
                Defendants.
----------------------------------------------------x
**COMPLAINT FOR VIOLATION OF RICO (TITLES 18 USC §§ 1341, 1343, 1503 AND TITLES 18 §§ 1961 THROUGH 1963), VIOLATION OF FIFTH AND FOURTEENTH AMENDMENTS, (FAIR DEBT COLLECTION PRACTICES ACT (FDCPA), 15 U.S.C. § 1692 ET SEQ., UNJUST ENRICHMENT, PUNITIVE DAMAGES, COSTS AND PREJUDGMENT INTEREST, RESTORATION AND REVERSAL THE IMPROPER JUDGMENTS COLLECTED BY THE DEBT COLLECTORS BACK TO THE DEBTORS BECAUSE OF THE ILLEGAL MEANS BY WHICH DEBTS WERE COLLECTED) AND FRAUD.**

Plaintiffs, individually and on behalf of all others similarly situated, allege, based upon personal knowledge, information and belief, the holdings of trial judges and the investigation of counsel, all the following paragraphs:

## **PARTIES**

1. Plaintiffs live in Nassau, New York, Queens and Kings County, in New York State.

2. Chase Bank USA, N.A. ("Chase") is a corporation established under the laws of the State of New York, with its principal place of business located in New York.

3. New York Chase is a wholly owned subsidiary of JP Morgan Chase & Co. ("JPM"). Chase is the legal entity for JPM's credit card business. Chase is one of the largest credit card companies in the United States, with millions of credit card customers throughout the United States.

4. JP Morgan Chase has engaged or sold portions of its debt portfolio to an assortment of debt collectors.

5. Bank of America, N.A. is a Delaware corporation, headquartered in the State of North Carolina. Bank of America, N.A. is a wholly owned subsidiary of Bank of America Corporation.

6. Bank of America, N.A. is the legal entity for Bank of America Corporation's credit card business.

7. Bank of America, N.A. is one of the largest credit card companies in the United States, with millions of credit card customers throughout the United States.

8. Defendant American Express is a New York business Corporation, with principal offices in New York City and has engaged or sold portions of its debt portfolio to an assortment of debt collectors.

9. Asset Acceptance, LLC, is a Delaware business Corporation, with principal offices in Suffolk and is a debt collection company.

10. Midland Credit Management, Inc. is a New York business Corporation with offices in San Diego, California.

11. CACH, LLC, is a Colorado business Corporation, with principal offices in New York and is a debt collection company.

12. DebtOne, LLC is a Louisiana business Corporation, with principal offices in the Bronx, New York City and is a debt collection company.

13. Portfolio Recovery Associates, LLC, is a Delaware business Corporation, with principal offices in Albany New York and is a debt collection company.

14. LVNV Funding, LLC, is a Delaware business Corporation, with principal offices in New York and is a debt collection company.

15. NCO, is a Delaware business Corporation, with principal offices in New York as a debt collection company.

16. FIA Card Services, N.A, is currently not licensed to do business in New York.

17. Calvary Portfolio Service, is currently not licensed to do business in New York.

18. Associated Recovery Systems, is currently not licensed to do business in New York.

19. Capital Management Service Group, Inc, is a New York business Corporation with offices in Buffalo, New York.

20. Citibank, N.A. is a South Dakota business Corporatioin with offices in Soix Falls, South Dakota.

21. Capital One Financial Corporation is a Delaware corporation, headquartered in McLean, Virginia. Capital One Financial Corporation is one of the largest credit card companies in the United States, with millions of credit card customers throughout the United States.

22. Citigroup Inc. is a Delaware corporation, headquartered in New York, New York.

23. Citigroup Inc. owns Citibank, N.A.

24. Citibank, N.A. is a Delaware corporation, headquartered in New York, New York. Citibank, N.A. is a wholly owned subsidiary of Citigroup Inc., and is one of the largest credit card companies in the United States, with millions of credit card customers throughout the United States.

25. GE Capital Consumer Lending, Inc. is a Utah business Corporation,, with principal offices in New York.

26. Capital One Financial Advisors, LLC is a Delaware business Corporatioin with its pricipal offices in Albany, NY.

27. For purposes of this Complaint when the Complaint refers to Principals the Complaint refers to Chase Bank, N.A., American Express  Company, Bank of America, N.A., Capital One Financial Advisors, LLC. Citigroup Inc., Citibank, N.A. Capital Management Services, GE Capital Consumer Lending, Inc.

28. For purposes of this Complaint when the Complaint refers to Debt Collectors the Complaint refers to Associated Recovery Systems, Midland Credit Management, a/k/a Midland Funding LLC, Calvary Portfolio Service, DebtOne, LLC Cach, LLC, NCO Financial Systems, LVNV Funding, LLC, Asset Acceptance, LLC, FIA Card Services, N.A, Portfolio Recovery.

## JURISDICTION AND VENUE

### Jurisdiction and Venue

This court's jurisdiction over this action is based on 28 U.S.C. § 1331, and 18 U.S.C. Sec. 1962 (1976)(RICO), Title 18U.S.C.§ 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud),  section 1503 (relating to obstruction of justice), section 1511 (relating to the obstruction of State or local law enforcement), and Titles 18 §§ 1961 through 1963; (Fair Debt Collection Practices Act) 15 U.S.C. § 1692(e) and violations of the Fifth and Fourteenth Amendment.

## BACKGROUND

*The purpose of this lawsuit is to correct the Fifth and Fourteenth Amendment Due Process abuses that have occurred over many years in the State Courts throughout the United States Court systems by principals, the debt collection companies that the principals have sold the debt to and the attorneys who represent those entities.  In the debt collection process the Defendants have made the court systems of this country appear as if the courts were the O.K. Corral complete with Wild West shows, robo-signing, and an anything goes approach and other adjectival descriptions that are morally reprehensible, indefensible and vomitous.*

*More repugnant than the above, other than some outspoken judges, the impropriety has been well known and tolerated within the legal community for a lengthy period of time and has up to this point in time has not been addressed or confronted.  Whether this Class Action Lawsuit is successful or not is secondary to the overall purpose of this action which is to expose the criminal and civil violations and those violations which have caused great suffering to the victims by the principals, the debt collectors and their attorneys against citizens of the United States.*

———————————————————————————————

Credit card issuers and third party debt buyers have over the last few years been "squirting cider" in the ears of the court system. Over the last five years, the number of consumer credit actions brought in the New York City Civil Court has averaged about 270,00filings a year. Of that number almost 66.7% result in default judgments being entered against debtors. Of the 33.7% of consumers who do answer the complaints, in excess of 95% are

> unrepresented by counsel. Recent rulings by New York courts have
> challenged the basis of the creditors' procedures in bringing these actions
> and have resulted in findings concerning service of process by creditors that
> the procedures used were so questionable they might not even rise to "sewer
> service."

Honorable Judge, Philip S. Straniere, <u>American Express Bank v. Dalbis</u>, 2011 NY Slip Op 50366
(N.Y. Civ. Ct., 2011)(pg.13)

In <u>South Shore Adjustment Co. v. Pierre</u>, (N.Y. Civ. Ct., 2011)(pg.3)[1]

> Judge Straniere concluded that bulk assignments by Chase to debt collectors
> violated every tenet of due process. He found that due process mandated
> that the assignor, and not the assignee notify the debtor of the assignment,
> since the credit card holder had his agreement with the credit card issuer, "
> and not with the unknown third party debt purchaser."

Judge Straniere in <u>Chase Bank U.S. v. Cardello</u>, 27 Misc.3d 791, 896
N.Y.S.2d 856, 2010 N.Y. Slip Op. 20090 (N.Y. Civ. Ct., 2010) continued with his
assault on the lawlessness of the debt collecting firms,

> The federal Fair Debt Collection Practices Act (FDCPA) lists sixteen "false,
> deceptive or misleading" practices some of which would not be available by
> requiring a notice of assignment to be given by the assignor to the debtor.
> The trend in consumer protection law is to require such notice (see Uniform
> Consumer Credit Code § 3.204) especially in dealing with consumer credit
> debt where the vast majority of defendants are unrepresented,
> unsophisticated individuals.

In <u>Cardello</u> Judge Straniere annunciated the problem with unlicensed debt
collecting firms and the general situation of failure to properly execute assignments.

> The attempt of Chase to execute these bulk assignments to an unlicensed out-of-
> state debt collector requires the court to articulate a firm policy in regard to service
> of a notice of assignment on the debtor. It is clear however, that due process
> requires that notice of the assignment be given to the debtor by the assignor and
> not by the assignee.

<u>Id.</u> at 858-9.

---

[1] .    South Shore "presented as Exhibit "B" a "Bill of Sale' dated May 14, 2009 from Chase to Turtle
Creek of 12906 accounts for a total of approximately $49 million of unpaid balances. . . . Turtle Creek
sold 551 accounts to plaintiff South Shore."

29. In <u>American Express Bank v. Dalbis</u>, above, (pg.5) Judge Straniere discusses the many

violations of American Express's attorneys. <u>First</u>, they failed to use affidavit "from someone

with personal knowledge."  <u>Second</u>, Judge Straniere stated that the credit card agreement

would not be admissible at a trial in New York because of violations with CPLR § 4544[2]

which governs "Contracts in small print."  <u>Third</u>, American Express in their complaint fails to

state how the amount due and owing was calculated. <u>Fourth</u>, American Express altered the

terms of its contract with its consumer after the litigation was begun. With regard to this point

the Judge, again citing due process violations added,

> Due process requires that the rights of the parties be fixed as of the date of breach
> of the agreement which in this case appears to have been sometime prior to
> plaintiff issuing either of the "agreements" submitted as exhibits.

<u>Id.</u> at 6.

30. <u>Fifth</u>, Judge Straniere stated that an affidavit that is notarized does not automatically become

admissible at trial. Moreover, the judge accused American Express of "robo-signing" of

"robo-documents."

> The "affidavit of facts in support of plaintiff's motion for default judgment" has all
> the trappings of a "robo-document." It begins "State of New York; County of New
> York." The first line of the affidavit states: "I_____, hereby certify as
> follows:" The blank line is competed by a two-line stamp "Marc Davis, Assistant
> Custodian of Records." It is followed by a paragraph beginning " I am the
> _____Custodian of Records" or the "Assistant Custodian of Records." The latter
> designation is checked. This document is not in the form for an affidavit in New
> York. It does not begin with the affiant "swearing" to the truth of the contents as
> required in New York, i.e. "being duly sworn deposes and says." The fact that the
> statement is "sworn to" before a notary public does not make the contents of the
> document an affidavit in conformity with New York practice. Although New York
> does not require any specific form for an oath [General Construction Law §36] it
> must be "administered in a form calculated to awaken the conscience and impress

---

[2] .      CPLR §4544 which governs "Contracts in small print." This section provides:
> The portion of any printed contract or agreement involving a consumer
> transaction...where the print is not clear and legible or is less than eight points in
> depth or five and one-half points in depth for upper case type may not be received
> in evidence in any trial, hearing or proceeding on behalf of the party who printed
> or prepared such contract or agreement, or who caused said agreement to be
> printed or prepared.

> the mind of the person taking it in accordance with his 4 religious or ethical beliefs" [CPLR §2309(b)]. The "affidavit" does not recite that Davis has read the statement and that the statements are true, so it does not rise to the standards necessary to insure they are factual as set forth in <u>Collins v AA Truck Renting Corp.</u>, 209 AD2d 363 (1994). The affiant does not state that he has sworn to the truth of the contents of the document. Further, New York does not recognize "certification" as a means of authenticating the truth of the contents of a document [See Practice Commentary by Patrick Connors after CPLR §3020 in regard to verification of pleadings].

<u>Id.</u> at 6-7.[3]

## NATURE OF THE CASE

31. As millions of Americans have fallen behind on paying their bills, debt collection law firms have been clogging courtrooms with lawsuits seeking repayment.[4]

32. Few have been as prolific as Cohen & Slamowitz, a Woodbury, N.Y., firm that has specialized in debt collection for nearly two decades. The firm has been filing roughly 80,000 lawsuits a year.  With just 14 lawyers on staff, that works out to more than 5,700 cases per lawyer. How is that possible?

33. The answer to that question is at the heart of a growing debate over the increasing use of the nation's legal system to collect on bad debts.

34. As an example, like many other law firms that represent debt collection companies who are appointed by principals – such as American Express and Chase Bank -- Cohen & Slamowitz relies on computer software to help prepare its cases. While many of the cases represent legitimate claims, many of the lawsuits are too often based on inaccurate or incomplete information about the debtor or the amount owed. Already, some state legislators and judges

---

[3] .    Plaintiffs present this lengthy quote to illustrate the manner in which these "robo-documents" are routine practices in the court systems as creditors rely with great success that their documents will never be challenged.
[4] .    Part of the Class' Complaint is taken from New York Times articles describing how Debt Collection Firms hire Debt Collection attorneys to sue consumers who many times do not go to court to defend themselves, even though at times they do not owe the debt.

have tried to crack down on collection lawsuits, and the Federal Trade Commission weighed in, saying the system for resolving disputes over consumer debts was broken and in need of "significant reforms."

35. The commission, which says debt collection is its top consumer complaint, proposed that states require collectors to include more information about debts in their lawsuits, including a breakdown of the current balance by principal, interest and fees, and the relevant terms of the original credit contract, if not the contract itself.

36. The agency also urged states to adopt measures to make it more likely that consumers would show up in court to defend themselves; currently, most do not, resulting in default judgments. "We are pushing very hard to make certain that debt collectors have sufficient substantiation, particularly when a consumer challenges the debt," said David Vladeck, director of the commission's Bureau of Consumer Protection.

37. The commission, which has limited authority to write debt collection rules, urged states to take action because most collection cases are filed in state courts.

38. The litigation boom has been propelled by fundamental changes in the way debts are collected, particularly for credit cards. In recent years, credit card companies have increasingly sold off debt they have considered uncollectible to debt buyers, usually for 5 cents or less on the dollar.

39. The debt buyers, in turn, may try to collect the debt themselves using traditional practices like sending letters or making phone calls to a consumer to try to arrange a payment plan. Increasingly, they are choosing to sue instead.

40. Collection law firms are able to handle such large volumes of cases because computer software automates much of their work. Typically, a debt buyer sends a law firm an electronic

database that contains various data about consumers, including name, home address, the outstanding balance, the date of default and whether interest is still accruing on the account. Once the data is obtained by a law firm, software like Collection-Master from a company called Commercial Legal Software can "take a file and run it through the entire legal system automatically," including sending out collection letters, summonses and lawsuits, said Nicholas D. Arcaro, vice president for sales and marketing at the company.

41. No group has definitive statistics on debt collection lawsuits, but federal regulators, collection lawyers and judges say the numbers have increased and are straining the court system.

42. Most consumers fail to show up in court, and those who do rarely have a lawyer. A court judgment gives debt buyers the ability to collect on the debt through actions like wage or property garnishment.

43. "What they are hoping to recover is the full dollar on some of it," said Robert J. Hobbs, deputy director of the National Consumer Law Center, an advocacy group. "On most of it, they are hoping to recover 40 or 50 cents on the dollar. And they are hoping to do it with as little work as they can."

44. Critics say the business model for some debt buyers and law firms relies on such huge volumes of legal actions that mistakes and abuses are inevitable, in part because the lawsuits are often based on little more than a defendant's name, address and alleged balance. "It's the factory approach to practicing law," said Richard Rubin, a New Mexico lawyer who represents consumers against debt collectors.

45. Lawsuits are sometimes filed against the wrong people, critics say. Other times, they say, the amount owed is incorrect or includes questionable fees and interest that has been added to the

balance.  In addition, it is not always clear if the debt buyer filing suit legally owns the debt, since debt portfolios are often sold several times.

46. In a 2009 deposition for a case accusing Cohen & Slamowitz of pursuing a debt that had already been paid, a partner at the firm, David A. Cohen, said the firm had 14 lawyers, though it also hired numerous outside lawyers to appear in court on a per diem basis. It also employed 30 to 40 legal secretaries and paralegals and about 60 people trying to collect debts, he said. The firm filed 59,708 cases in 2005, 83,665 in 2006, 87,877 in 2007 and 80,873 in 2008, records from the lawsuit show.

47. As the case load has increased, some state legislators and judges have started to demand more information on the debt. In addition to the new law in North Carolina, which requires third-party debt collectors to provide more proof of the debt, like an itemization of charges and fees, some local judges are challenging lawyers who are not prepared to back up their claims.

48. At a civil court hearing in Brooklyn in March, Judge Noach Dear demanded documents from Cohen & Slamowitz supporting its claim that Herman Johnson of Brooklyn owed $3,797.27 in credit card debt. Mr. Johnson disputed the claim. "What proof did you have that this is the true gentleman that you were trying to pursue?" the judge asked David Robinson, a lawyer for Cohen & Slamowitz, according to a transcript.

49. "Just his Social, his date of birth, and his address and the account," Mr. Robinson said. "That's all you have?" the judge said. "So if you have somebody's Social number, date of birth and address, you could sue them without any other information?" Mr. Johnson's case was dismissed, and Judge Dear last month issued an order requiring, among other things, that Cohen & Slamowitz provide further proof of a debt if a defendant challenged the firm's claim.

50. In an interview, Judge Dear said he did not think the order would necessarily result in a large drop-off in lawsuits. But, he said, given Cohen & Slamowitz's size, he hoped it would persuade other law firms to follow suit. "I think personally it will weed out the cases that are no good, and then we'll get the defendants that truly do owe a debt," he said.[5]

### THE BACKGROUND OF WHAT IS HAPPENING BEFORE THE CITIZEN IS BROUGHT TO COURT.

51. Amid a faltering economy, the debt collection business is flourishing – with employment expected to grow faster  through 2018 than the average for all occupations, according to the U.S Bureau of Labor Statistics.

52. Why? Consider the pool of "clientele."  Today, some 30 million people in the United States are being pursued by collectors, with an average unpaid debt of $1,400, according to figures from the newly created U.S. Consumer Financial Protection Bureau.

53. An important distinction is just who is in pursuit.  The market of third-party debt collectors is dominated by three types of operators: Agencies that collect debt for another company in exchange for a fee. Firms that buy debt from the original business, often for pennies on the dollar, then keep for themselves whatever they collect. And, law firms that collect through filing lawsuits.

54. Whatever the business model, third-party collectors historically have fallen under the watch of the FTC, which enforces the Fair Debt Collection Practices Act (FDCPA). Some of that

---

[5] .      In an article edited by Andres Ross Sorkin of the New York Times and Jessica Silver Greenberg (August 12, 2012):

> "I would say that roughly 90 percent of the credit card lawsuits are flawed and can't prove the person owes the debt," said Noach Dear, a civil court judge in Brooklyn, who said he presided over as many as 100 such cases a day.

responsibility is shifting to the Consumer Financial Protection Bureau.  The FTC publicly acknowledges that "debt collection plays a vitally important role in the consumer credit system." Even so, there are limits to what debt collectors can do, and the government is charged with protecting consumers from deceptive, unfair and abusive tactics.[6]

55. Collectors have long argued that federal law and many state statutes are vague - leaving open to interpretation, for instance, how many collection calls in a specified period constitutes harassment.  "There is a lack of clarity," said Mark Schiffman, spokesman for the Association of Credit and Collection Professionals, known as ACA International, a Minneapolis-based trade group that represents 5,000 agencies.

56. This lawsuit, however, is not only concerns repeated and nationwide abuses of citizens who are not fully protected under the FDCPA but more sinister attempts by the Debt Collection Companies and the Principals who hire them –these companies with willful blindness appear in Court – and while they by the least of standards should know better – with that willful blindness literally steal money from mostly unsophistcated citizens while courts do not have the resources, willpower or the support to prevent these unlawful attacks.

57. Meanwhile, consumers are filing complaints in record numbers. The FTC gets more complaints about the debt-collection industry than any other single business, the federal agency reported last year.

---

[6] .      Please also see Sorkin and Greenberg, *above*, footnote # 6:

> Amid the surge in lawsuits, credit card companies are facing scrutiny. The Office of the Comptroller of the Currency is investigating JPMorgan Chase after a former employee said that nearly 23,000 delinquent accounts had incorrect balances, according to people with knowledge of the investigation. Linda Almonte, a former assistant vice president at JPMorgan, claimed in a whistle-blower complaint that she had been fired after alerting her managers to flaws in the bank's records.

58. As an ominous further sign of the recklessness of both the Principals and Debt Collectors, the Principals are referring the entire amount of what they are charging is the debt that is owed to them, even though, many if not most of the time the Principals have already charged off a large portion of what was due to them for their tax purposes.

59. That is, they are giving the Debt Collectors a "carrot" as a bonus to collect the full amount even though they have already taken a tax write-off to the IRS and New York State.

60. Therefore, when the Debt Collectors sue on the full amount that was originally due, that act in itself is of fraudulent activity.  The saying goes, "You can't have your cake and eat it too." But as the fraudulent papers that are brought to court reveal the Debt Collectors "have their cake and eat it too," at the expense of the public and of the overburdened judiciary system.

### Examples Last Year of Collection Company Abuses

61. Last fall, the FTC persuaded a federal judge in Los Angeles to halt the operation and freeze the assets of Van Nuys-based Rumson, Bolling & Associates. The company operated under a series of names, including Forensic Case Management Services Inc. and Commercial Investigations.

62. The lawsuit is part of what the FTC describes as an ongoing "crackdown" on illegal debt collection practices. This one, the government contends, raked in more than $20 million in the last four years by deceiving small businesses and abusing their alleged debtors.

63. The FTC, aided by several Southern California Better Business Bureaus, interviewed numerous consumers nationwide about their distressing brush-ups against the California Company, according to court documents.  Among them: A mother in Missouri who owed $5,000 for her daughter's funeral was informed that her daughter's body would be dug up and

-14-

hung from a tree if she didn't pay up. She also claimed the collector threatened to shoot her dog and eat it.

64.In Southern California, a single mother with special-needs children complained that the bill collector told her she should "sell" her "retarded children."  An email to one debtor read: "Jesus paid his bills. Why don't you? We have had this account for 4 months now. Not even $1. That is not what Jesus wants. That is why the Muslims are winning."

65."We've seen some very nasty practices, but the stuff we're seeing in the Rumson case is particularly terrible," said Chris Koegel, the FTC's lead attorney in the case.  Defending itself against the FTC's action, the company's attorneys denied that the defendants engaged in unfair, deceptive or abusive acts. In protesting the shutdown and freezing of assets, the defendants' attorneys acknowledged that "some employees used 'creative' – and more accurately regrettable – devices in collecting debts.

**THE SITUATION IS TOO ENORMOUS AND TOO OVERWHELMING FOR THE FTC TO PROTECT THE AVERAGE CONSUMER – THAT IS WHY JOB OF POLICING DEBT COLLECTORS FALLS TO PRIVATE ATTORNEYS.**

66.For most consumers, the FTC is unlikely to ride to the rescue over alleged debt collection abuses.  Enter private attorneys.

67.The money at stake per lawsuit is generally around $5,000 – unless you are the collection agency ordered to pay a Texas man $1.5 million in 2010 for leaving racist and vulgar phone messages. In addition to the massive punitive damages, a Dallas jury awarded the man $143,000 in attorney's fees and $50,000 in mental anguish – all because of a disputed $81 credit card debt.

68.The vast majority of debt collection cases never go to trial and settle quickly. Sometimes the settlement comes with a payment plan. Other times, the debt itself is forgiven, or referred

back to the original creditor.  Under federal law, a consumer suing for violations of the Fair Debt Collection Practices Act can collect up to $1,000 in statutory damages, plus attorney's fees and court costs.

69. Similarly, under New York's New York Debt Collection Law General Business Law, Sec. 601, the laws allow consumers to recover any actual damages they sustained because of the violation. This means a successful litigant who can prove that he or she was harmed by the collector – a lost job, for instance, or emotional distress – could receive additional compensation.

70. "Most of the time, people aren't going to bring a lawsuit unless there's something to it. It's not fun to do," said Jeremy Winter, a Sacramento attorney who recently expanded his bankruptcy law practice to include debt collection claims. "The clients who come to us – most of them just want it to stop."

71. That is why Class Action are the best manner to (1) stop immediate harassment of citizens and (2) to send a warning to unscrupulous Principals and the Debt Collection Companies that they hire that the random suing without proper information and documentation and illegally purusing illegal verdicts at Court will not be tolerated.

72. An analysis of more than 5,000 debt collection cases filed in California alone  since 2005 found that a controversial Pennsylvania-based company, NCO Financial Systems Inc., is by far the most frequently sued collection firm in this state.

73. NCO, which has a satellite office in Rancho Cordova, was sued 231 times between 2005 and December 2011 for alleged FDCPA violations. The second most frequently sued was Portfolio Recovery Associates, a Virginia-based company, with 113 federal lawsuits in that same period.

74. Both companies are among the nation's largest debt collectors. NCO, which lost its contract with California's Franchise Tax Board in 2009, has been accused by attorneys general in multiple states of abusing consumers.  Both companies have spawned websites and blogs by people who have squared off with them, ranting about their treatment.

75. "They managed to get me fired from my job," said Lynette Bartholomew, a 48-year-old bookkeeper in Jerome, Idaho, who sued the company in California. "They kept calling my work even after I told them not to. They would call my house at 5:30 in the morning and after 9:30 at night."

76. Under federal and state law, a debt collector can call only between 8 a.m. and 9 p.m., unless the consumer agrees otherwise. Collectors are not allowed to contact employers or discuss the debt with third parties, without the person's permission.  Bartholomew, who had fallen behind on a $300 credit card debt, said she was making payments to the credit card company but that NCO persisted in trying to get her to pay – and at one point, insisted that she now owed $2,000.

77. "They were just, 'Oh, you're a deadbeat, you're a terrible person,'" Bartholomew said.  Five weeks after the suit was filed in Sacramento in 2008, the case was settled when NCO offered $1,250 in damages without conceding wrongdoing. Bartholomew said she did not have to pay the remaining debt.  NCO did not respond to a request for comment.

78. It may be demonstrated by the relatively small recovery to citizens that these abusive practices by the Principals and the Debt Collection Companies cannot be stopped other than by Class Actions.

79. Kevin Thomas of Rocklin had his own encounter with NCO last year after his mother suffered a fall and was taken by ambulance to Sutter Roseville Medical Center.  Thomas, 48,

said his 76-year-old mother had insurance coverage to handle the bills, but that calls and

letters from NCO started pouring in demanding $150 for the ambulance ride and $327.28 for

the hospital treatment.  "They were writing her threatening letters, and then, I don't know how

they got it, they started calling my cellphone …," Thomas said. "When they started calling

here I got absolutely livid."  Thomas, who said his mother has suffered four strokes and two

types of cancer, finally had it out with one collection agent.  "I said, 'Don't threaten me.' And

they said, 'You know your mother could end up with six months in jail and a fine?' I said,

'You take me to court. Go ahead.'  "Threatening people like old gangsters? And preying on

people like seniors? That's ridiculous."

80. Thomas and his mother eventually sued and reached a confidential settlement.


**WHAT HAPPENS WHEN THE UNSOPHISTICATED CONSUMER
ATTEMPTS TO DEFEND HIMSELF OR HERSELF OR IS FEARFUL OF
GOING TO COURT AND ENGAGING IN THE LEGAL PROCESS.**


**CLASS ACTION ALLEGATIONS**

81. Plaintiffs bring this action on their own behalf and, pursuant to the provisions of Fed. R. Civ.

P. 23(a), (b )(2), and/or (b )(3) of the Federal Rules of Civil Procedure, on behalf of a

nationwide class of all others similarly situated (the 'Class"), defined as:

> All persons in the United States who, had Principals and their agent Debt
>
> Collection Companies use fraudulent papers to bring them into Court and
>
> then furthered their illegal action by presenting further fraudulent papers to
>
> Court and had the Principals and the Debt Collection Companies knowingly
>
> use their expertise in those papers to seize illegal gains from
>
> unknowledgeable citizens who were brought to Court and had their money

taken (stolen) from them using illegal tactics – under the cover of so-called legality of process.

82. These illegal practices include any representations, misrepresentations, omissions, disclosures or any other acts, events, facts, transactions, occurrences, or conduct, whether oral, written or otherwise, by the Principals and the Debt Collection Companies which were at all times intended to overwhelm citizens who were most of the time unrepreresented because of the costs of hiring attorneys to defend themselves – and were intended at all times to overburden the Courts so that judges by the mass of collection activities by the Principals and the Debt Collection Companies found themselves impossible to stop the onslaught of the hundreds of improper complaints and defaults that reined into every court in the country.

83. Principals and the Debt Collection Companies including its employees or agents, arising out of, or relating to any of the following:

      (a)      misrepresentations;

      (b)      omissions;

      (c)      falsely testifying to the courts facts by affidavits that they knew at the time were not true or had no knowledge as to whether their testimony to the courts was true but, nevertheless, attested to the courts that the statements were true;

      (d)      the Principals and Debt Collectors failed to include assignment rights which made all their complaints bogus;

      (e)      the Debt Collectors many times sue the public on the original full amount that was due even though many times the Principals have already charged off a good portion of the debt for their tax advantage.

84. The members of the Class are so numerous and geographically dispersed across the country that joinder of all members is impracticable. While the exact number of Class members is

unknown to the Plaintiffs at this time, Plaintiffs believe that there are at least tens of thousands of Class members. Detailed information on the Class can be ascertained through appropriate discovery and from records maintained by Defendants.

85. Plaintiffs' claims are typical of the claims of the members of the Class, as Plaintiffs and all other members of the Class sustained damages arising out of the same pattern of wrongful conduct by Defendants. All of the conduct alleged herein occurred by virtue of the Defendants' practices or stemmed from policies and procedures that originated from and/or were controlled by Defendants.

86. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class and have retained counsel competent and experienced in Class action and consumer litigation.

87. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual class members. Among these common questions of law and fact common are:

    (a)    Whether the Principals in this action, who were imputed to know better, did not wish to be involved with practices that they knew or should have known were illegal;

    (b)    Whether the Debt Collectors knowingly, with their sophistication, went to court and practiced law illegally against non-sophisticated citizens and ultimately through their illegality took monies from these unsophisticated citizens that they knew was illegal;

    (c)    Whether the Principals and Debt Collectors went to court with full knowledge at all times that they were misleading the court and counted on their overwhelming

numbers in court that made it impossible for the courts to protect citizens of the United States;

(d)     Whether the Principals and Debt Collectors knew at all times that their actions were illegal;

(e)     Whether the Principals and Debt Collectors acts were unfair, misleading, unconscionable, deceptive, untrue, or omitted material facts and disclosures;

(f)     Whether the acts of the Principals and Debt Collectors constituted "patterns of racketeering activity"

(g)     Whether the Plaintiffs and the Class are entitled to relief, and if so, the measure of such relief.

88. A class action is superior to other available methods for the fair and efficient adjudication of Defendants' uniform unlawful practices because joinder of all members is impracticable. Prosecution of separate actions by individual Class members would create an inherent risk of inconsistent and varying adjudications, with the concomitant risk of the establishment of incompatible and conflicting standards of conduct for the Defendants.

89. In addition, due to the vastly unequal market power between the parties, and the fact that many Class members are in ongoing commercial relationships with Defendant Banks, a Class action may be the only way, as a practical matter, that the cases can and should be prosecuted. Plaintiffs foresee no significant difficulties in managing this action as a Class action.

**Summary of Class Action and Relationship with Rule 23**

90.     Plaintiffs bring this case as a class action under three distinct subdivisions of <u>Fed. R. Civ. P. 23(b)</u>.

91.     <u>First</u>, Plaintiffs seek certification of a <u>Rule 23(b)(1 )(A)</u> and/or <u>23(b )(2)</u> Class consisting of all persons who have been or will be sued[7] by the Principals (Chase Bank, N.A., American Express  Company, Bank of America, N.A., Capital One Financial Advisors, LLC. Citigroup Inc., Citibank, N.A. Capital Management Services, GE Capital Consumer Lending, Inc.) and Debt Collectors (Associated Recovery Systems, Midland Credit Management, a/k/a Midland Funding LLC, Calvary Portfolio Service, DebtOne, LLC CACH, LLC, NCO Financial Systems, LVNV Funding, LLC, Asset Acceptance, LLC, FIA Card Services, N.A, Portfolio Recovery) and their attorneys of counsel in actions commenced in New York City Civil Court, and all other Civil Courts in the United States where procedures are commenced by lawsuits or letters in furtherance of collection procedures or where a default judgment has been or will be sought.

92.     The prosecution of separate actions by individual members of the proposed <u>(b)(1 )(A)</u> <u>and (b )(2)</u> class would create the risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for defendants.

93.     Defendants have acted, or failed to act, on grounds generally applicable to the <u>Rule</u> <u>(b)(1)(A)</u> and <u>(b)(2) Class</u>, thereby making appropriate final injunctive relief with respect to the Class as a whole. On information and belief, the <u>Rule (b)(1)(A) and (b)(2)</u> class includes thousands of members. They are so numerous that joinder of all Class members is impracticable.

94.     <u>Second</u>, plaintiffs seek certification of a <u>Rule 23(b)(3)</u> class consisting of all persons who have been sued by or put in procedure by the Principals (Chase Bank, N.A., American

---

[7] .     Term "will be sued" is consistent with Principals and Debt Collectors in furtherance of their letter writing to sue after not being able to settle with any and all illegal means in the Courts of the United States.

Express  Company, Bank of America, N.A., Capital One Financial Advisors, LLC. Citigroup Inc., Citibank, N.A. Capital Management Services, GE Capital Consumer Lending, Inc.) and Debt Collectors (Associated Recovery Systems, Midland Credit Management, a/k/a Midland Funding LLC, Calvary Portfolio Service, DebtOne, LLC CACH, LLC, NCO Financial Systems, LVNV Funding, LLC, Asset Acceptance, LLC, FIA Card Services, N.A, Portfolio Recovery) and their attorneys of counsel in actions commenced in New York City Civil Court, and all other Civil Courts in the United States where procedures are commenced by lawsuits or letters in furtherance of collection procedures or where a default judgment has been or will be sought.

95.     All of the members of the Rule (b)(3) class were injured as a result of defendants' conduct.

96.     On information and belief, the Rule (b)(3) class includes tens of thousands of individuals. They are so numerous that joinder of all Class members is impracticable. There are numerous questions of law and fact common to the class. Chief among those facts are whether Defendants' actions, as described above, violate the Fair Debt Collection Practices Act, the Racketeer Influenced and Corrupt Organizations Act, the New York Consumer Protection Act, Class consisting of all persons who have been or will be sued by the group of defendants, Principals (Chase Bank, N.A., American Express  Company, Bank of America, N.A., Capital One Financial Advisors, LLC. Citigroup Inc., Citibank, N.A. Capital Management Services, GE Capital Consumer Lending, Inc.) and Debt Collectors (Associated Recovery Systems, Midland Credit Management, a/k/a Midland Funding LLC, Calvary Portfolio Service, DebtOne, LLC CACH, LLC, NCO Financial Systems, LVNV Funding, LLC, Asset

Acceptance, LLC, FIA Card Services, N.A, Portfolio Recovery) defendants also qualify as separate and distinct[8] enterprises within the meaning of 18 U.S.C. § 1961(4).

97.    The prosecution of separate actions by individual members of the proposed (b)(1 )(A) and (b )(2) class would create the risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for defendants.

98.    Defendants have acted, or failed to act, on grounds generally applicable to the Rule (b)(1)(A) and (b)(2) Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

99.    On information and belief, the Rule (b)(1)(A) and (b)(2) class includes thousands of members. They are so numerous that joinder of all Class members is impracticable.

100.    All of the members of the Rule (b)(3) class were injured as a result of defendants' conduct.

101.    On information and belief, the Rule (b)(3) class includes tens of thousands of individuals.

102.    They are so numerous that joinder of all Class members is impracticable. There are numerous questions of law and fact common to the class. Chief among them are whether Defendants' actions, as described above, violate the Fair Debt Collection Practices Act, the Racketeer Influenced and Corrupt Organizations Act, the New York Consumer Protection Act, and the New York Judiciary Law.

103.    These common issues predominate over any individual issues.

---

[8] .    Please see, 18 USC § 1962 (c) --  (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

104.    Defendants' conduct towards Plaintiffs and all absent members of the proposed classes has resulted in fraudulently obtained judgments of default being entered, which has, in turn, caused serious harm.

105.    The claims and practices alleged in this complaint are common to all members of the class.

106.    The violations suffered by the individual plaintiffs are typical of those suffered by the class. The entire class will benefit from the remedial and monetary relief sought in this action.

107.    The individual plaintiffs have no conflict of interest with any putative absent class members, and will fairly and adequately protect the interests of the class.  Counsel competent and experienced in federal class action and unfair debt collection practice litigation have been retained to represent the class.

108.    This action is superior to any other method for the fair and efficient adjudication of this legal dispute, as joinder of all members of the class is impracticable, and the damages suffered, although substantial, are small in relation to the extraordinary expense and burden of individual litigation and therefore it is highly unlikely that individual actions will be pursued.

109.    Managing this case as a class should not present any particular difficulty.

### Defendants, Principals and Debt Collectors, Entered into a Criminal Conspiracy

110.    As long as at least one overt act is done by a member of the criminal conspiracy, then all of the members of the conspiracy are considered to have committed the crime.

111.    This theory of criminal liability is sometimes referenced as the Pinkerton doctrine, which is based on the seminal United States Supreme Court case of United States v. Pinkerton, 328

U.S. 640 (1946). Federal judges frequently describe the doctrine in jury instructions as "the hand of one is the hand of all to the conspiracy." Below is an excerpt of a Pinkerton jury instruction that was approved by the Fourth Circuit Court of Appeals in United States v. Aramony, 88 F.3d 1369 (4th Cir. 1996):

> Whenever it appears beyond a reasonable doubt from the evidence in the case that a conspiracy existed and that a defendant was one of the members, then the statements thereafter knowingly made and the acts thereafter knowingly done by any person likewise found to be a member may be considered by the jury as evidence in the case as to the defendant found to have been a member, **even though the statements and the acts may have occurred in the absence of and without the knowledge of the defendant, provided such statements and acts were knowingly made and done during the continuance of such conspiracy and in furtherance of some object or purpose of the conspiracy.**

See Also Civil Conspiracy:

> **c. Civil conspiracy**
>
> To state a claim for civil conspiracy under New York law, a plaintiff, in addition to alleging an underlying tort, must plead facts sufficient to support an inference of the following elements: "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." Abacus Fed. Sav. Bank v. Lim, 75 A.D.3d 472, 905 N.Y.S.2d 585, 588 (2010) (internal citation omitted) (internal quotation marks omitted). Under Georgia law, "[t]he essential element of [civil] conspiracy is proof of a common design establishing that two or more persons in any manner, **either positively or tacitly, arrive at a mutual understanding as to how they will accomplish an unlawful design.**" Tyler v. Thompson, 308 Ga.App. 221, 707 S.E.2d 137, 141 (2011) (internal quotation marks omitted).

Bigio v. Coca-Cola Co., 675 F.3d 163, 176 (2nd Cir., 2012)[9]

---

[9] .     Please see, under Pennsylvania Law, a party asserting civil conspiracy must allege: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." _Strickland v. Univ. of Scranton,_ 700 A.2d 979, 987-88 (Pa. Super. Ct. 1997) (citation omitted). "Proof of malice, _i.e.,_ an intent to injure, is essential in proof of a conspiracy." _Skipworth v. Lead Indus. Ass'n,_ 690 A.2d 169, 174 (Pa. 1997).[6]

112.    The Principals can not now come forward and state that they did not know what the Debt Collectors were doing when the Debt Collectors were proceeding to court and taking monies by all illegal means by falsely testifying to the court and submitting documents that they knew or should have known were not true.

113.    The Principals knew or should have known by the fact that the Debt Collectors would not have taken tens of thousands of cases from the Principals if they had not found a way to make their illegal profits.

114.    The horror show that takes place every day in the courts of the United States could only occur because of the Principals direct knowledge or their proffered "willful blindness" that these unconscionable scams would take place.

       **A.     Willful blindness may be inferred.**

115.    That has been defined by the Second Circuit in <u>U.S. v. Lanza</u>, 790 F.2d 1015, (C.A.2 1986)

> The element of knowledge may be satisfied by inferences drawn from proof that a defendant deliberately closed his eyes to what would otherwise have been obvious to him. A finding beyond a reasonable doubt of a conscious purpose to avoid enlightment would permit an inference of knowledge. Stated another way, a defendant's knowledge of a fact may be inferred from willful blindness to the existence of the fact.

**Defendants, Principals (Chase Bank, N.A., American Express Company, Bank of America, N.A., Capital One Financial Advisors, LLC. Citigroup Inc., Citibank, N.A. Capital Management Services, GE Capital Consumer Lending, Inc.) and Debt Collectors (Associated Recovery Systems, Midland Credit Management, a/k/a Midland Funding LLC, Calvary Portfolio Service, DebtOne, LLC CACH, LLC, NCO Financial Systems, LVNV Funding, LLC, Asset Acceptance, LLC, FIA Card Services, N.A, Portfolio Recovery) while also acting as separate and distinct[10] enterprises within the meaning of 18 U.S.C. § 1961(4) simultaneously acted in a civil conspiracy as defined by Barkley v. United Homes, LLC (E.D.N.Y., 2012) the Eastern District of New York Defined  Civil Conspiracy**

116.    In Barkley,

> the moving defendants seek judgment as a matter of law with respect to plaintiffs' civil conspiracy claims on the mistaken grounds that "'[t]here is no substantive tort of conspiracy' under New York law." (*quotes omitted*) As each case to which defendants cite acknowledges, however, a claim of civil conspiracy is not an independent cause of action, but is viable when predicated upon the tortious conduct of a defendant. See, e.g., Alexander, 68 N.Y.2d at 969 ("Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort." (citation omitted)); Keller v. Levy, 265 A.D. 723, 724 (N.Y. App. Div. 1943) ("[O]rdinarily, a charge of conspiracy, in and of itself, does not give ground for civil relief, unless followed by allegations of overt acts, and resulting injury."). Here, plaintiffs' civil conspiracy claims are related to their underlying claims for fraud, which survive defendants' motion for judgment as a matter of law for the reasons set forth supra.
>
> Furthermore, plaintiffs' civil conspiracy claims survive defendants' motion for judgment as a matter of law because there is sufficient evidence in the record to establish each element of civil conspiracy. To establish a claim of civil conspiracy, plaintiffs must demonstrate the underlying tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional

---

[10] .    Please see, 18 USC § 1962 (c) --  (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

participation in the furtherance of a plan or purpose; and (4) resulting damage or injury. <u>Meisel v. Grunberg</u>, 651 F. Supp. 2d 98, 119 (S.D.N.Y. 2009).

<u>Id.</u> at 36-38

117.    In summary and following the <u>Barkley</u> analysis the evidence of the underlying torts were <u>Title 18U.S.C.§ 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud),  section 1503 (relating to obstruction of justice)</u>.

118.    As to each of the above four factors in the context of plaintiffs' fraud causes of action they will briefly summarize the evidence as it applies to plaintiffs' civil conspiracy claims.

119.    As to the first element, the evidence of the Principals giving to the Debt Collectors debts of consumers and as we can determine the go ahead to collect the debt by any means possible with letters in furtherance of the conspiracy and then bringing fraudulent papers to Court.[11]

120.    With all the notice in newspapers and television it would not be credible for the Principals to state that they did not know what was going on.  As a possible suggestion as to why the Principals gave this to the debt collectors is that, first, they "did not wish to get their hands dirty" with collection which they believed could get messy.  Banks want to keep their hands "clean."

121.    Second, getting five cents on the dollar where you are suing hundreds of thousands of consumers is not small change.

122.    Third, the banks have already written off half of the debt and the remaining debt would be too small to collect on.  The debt collectors can pretend that they are not aware that the

---

[11] .    Please note that Plaintiffs have listed separately each plaintiff and why the documents are fraudulent and are in violation of the FDCPA and RICO.

debt has been reduced by the charge-off and attempt to collect the whole amount that was originally due rather than what is actually due.

123.     As to the second and third elements, the conspiracy partners had their attorneys bring their fraudulent papers to court or wrote letters which were acts in furtherance of their mutual conspiracy which was a necessary step in some of the cases before they brought the actions to court.

124.     The fourth <u>Barkley</u> element to establish the resulting damage or injury is the illegal and fraudulent victories that the Principals and Debt Collectors won at trial by either default judgment (67% of debt defendants do not answer complaint if complaint was ever served and many have "sewer service.")  Of the 33% who show up frightened at court, 95% are unrepresented.  Judge Noach Dear, a Brooklyn Judge, *above* states that he sees 100 of these cases a day and there are too many to help defendants who have had fraudulent papers served upon them.  See also (attached Exhibits of Complaints and Letters) that virtually every Complaint is verified by an attorney who states that he has implicit knowledge of the case but in fact he has no knowledge the debt, the assignment, the documents or knowledge of how much of the debt has been charged off.

125.     It should be noted that in <u>Barkley</u> the Court agreed with plaintiffs that sufficient evidence was produced that fraud and civil conspiracy had occurred and awarded plaintiffs punitive damages.

126.     Clearly, under <u>Barkley</u> the Plaintiff Class has established that fraud and conspiracy between the Principals and Debt Collectors has occurred.

127.   The Principals, under <u>Bigio</u>, *directly above*, "**either positively or tacitly, arrive at a mutual understanding as to how they will accomplish an unlawful design.**"

128.   This Complaint asks the Court to find both Principals and Debt Collectors liable for damages that they caused so many people.


I.   <u>**FIRST CAUSE OF ACTION**</u>

**(RICO)**

129.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs and further allege.

130.   Defendants simultaneously fit under the precise fraud definitions of Titles 18 USC §§ 1341, 1343, 1503 and Titles 18 §§ 1961 through 1963 – which in whole describe the efforts of the Principals and Debt Collectors illegal activities to fraudulently and with knowledge take monies from unsophisticated (many times sophisticated) persons by means of illegal process through the court systems of this country.

131.

> <u>**18 USC § 1341 - Frauds and swindles**</u>
>
> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service . . . any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any

such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

### 18 USC § 1503 - Influencing or injuring officer or juror generally

**(a)** Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b).

\* \* \*

**(b)** The punishment for an offense under this section is—
 **(3)** in any other case, imprisonment for not more than 10 years, a fine under this title, or both.

132.    Under the law, the meaning of **racketeering activity** is set out at 18 U.S.C. § 1961. As currently amended it includes:

a.  Any violation of state statutes against gambling, murder, kidnapping, extortion, arson, robbery, bribery, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in the Controlled Substances Act);

b.  Any act of bribery, counterfeiting, theft, embezzlement, fraud, dealing in obscene matter, obstruction of justice, slavery, racketeering, gambling, money laundering, commission of murder-for-hire, and several other offenses covered under the Federal criminal code (Title 18);

133.    Defendants, Principals and Debt Collectors, proceeded to court with the knowledge that their legal process papers were unlawful and deficient and counted on the fact that their improper papers would not be challenged by unsophisticated citizens (and many sophisticated citizens) and that the courts would not act in a manner or way to represent the unreprestened and counted on that fact.

134.    That the Principals, who the Court may take judicial notice, are represented by many of the best attorneys in the United States, gave many of their accounts to the Debtor Collectors with willful blindness, and did know or should have known that the Debtor Collectors methods for the collection of so-called debts were fraudulent and illegal.

135.    The Principals and Debt Collectors pattern of racketeering activity had more than the requirement of at least two acts of racketeering activity -- and Plaintiffs' allege that they were more than 10,000 acts of illegality by the Principals and Debt Collectors -- and more than probably more than 100,000 acts of illegality by the Principals and Debt Collectors.

136.     The U.S. Supreme Court has instructed federal courts to follow the continuity-plus-relationship test in order to determine whether the facts of a specific case give rise to an established pattern. Predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." (H.J. Inc. v. Northwestern Bell Telephone Co.) Continuity is both a closed and open ended concept, referring to either a closed period of conduct, or to past conduct that by its nature projects into the future with a threat of repetition.

137.    Specifically,  the Debt Collectors, the agents of the Principals perform the following fruadulent acts:

a.  Defendants failed to use affidavits "from someone with personal knowledge."

b.  Defendants use credit card agreements that would not be admissible at a trial in New York because of violations with CPLR § 4544[12] which governs "Contracts in small print."

c.  Defendants in their complaints fails to state how the amount due and owing was calculated.

d.  Defendants altered the terms of its contract with its consumer after the litigation was begun.

e.  Affidavits that are notarized do not automatically become admissible at trial.

f.  Robo-signing and robo-documents that are electronincally created without the agent, attorneys for the Principals and Debt Collectors knowledge and proceed to Court with abstract information.

g.  The Principals and Debt Collectors Defendants agents proceed to trial without knowledge of the debt and sign affidavits on the basis of their "knowledge and belief" of the debt.

h.  The Principals and Debt Collectors' attorneys testified to the Court that the monies were due and owing when they had no knowledge to the facts to which they were testifying – and thereby falsly testifying to the Court.

---

[12] .     CPLR §4544 which governs "Contracts in small print." This section provides:
The portion of any printed contract or agreement involving a consumer transaction...where the print is not clear and legible or is less than eight points in depth or five and one-half points in depth for upper case type may not be received in evidence in any trial, hearing or proceeding on behalf of the party who printed or prepared such contract or agreement, or who caused said agreement to be printed or prepared.

i.   The Principals and Debt Collectors so overwhelmed the Court with illegal documents that the Courts had little or no time to protect the citizens;

j.   The Principals and Debt Collectors proceeded to court with improper or no notices of assignments to debtors;

k.   The Principals and Debt Collectors illegally at times asked for the full amount that was owed to the Principals, even though the Principals wrote part of the debt owed to them off to gain tax write-offs for their tax returns, but nevertheless, the Debt Collectors proceeded to court and asked the debtors for the full original amount that was owed, even though that was not the true amount that was owed;

138.   Defendants were in violation of the RICO statutes when they caused injuries to the Class and and those injuries should be addressed in addition to awarding treble damages.

139.   This Southern District has in <u>Rosner v. Bank of China</u>, 528 F.Supp.2d 419 (S.D.N.Y., 2007) has followed the holdings of Second Circuit and stated:

> In order state a private claim for damages under RICO, a plaintiff must plead (1) the defendant's violation of § 1962 and (2) an injury to the plaintiff's business or property caused by the defendant's RICO violation. See <u>Commercial Cleaning Servs. v. Colin Serv. Sys.</u>, Inc., 271 F.3d 374, 380 (2d Cir.2001) (citing <u>First Nationwide Bank v. Gelt Funding Corp.</u>, 27 F.3d 763, 767 (2d Cir.1994)). To satisfy the first burden, a plaintiff must establish that the defendant has violated the substantive RICO statute, that is, the criminal provisions of the statute. In doing so, the plaintiff must allege the existence of seven requisite elements identified by the Second Circuit in <u>Moss v. Morgan Stanley</u>, <u>Inc.</u>, 719 F.2d 5 (2d Cir.1983). Those factors are:
>
>   (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce....

140.    Similarly, Under <u>Moss v. Morgan Stanley, Inc.</u>, 719 F.2d 5, 17 (C.A.2 (N.Y.), 1983) the

following are the Plaintiffs burdens:

> To state a claim for damages under RICO a plaintiff has two pleading burdens. First, he must allege that the defendant has violated the substantive RICO statute, <u>18 U.S.C. Sec. 1962 (1976),</u>[i] commonly known as "criminal RICO." In so doing, he must allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. <u>18 U.S.C. Sec. 1962(a)-(c) (1976)</u>. Plaintiff must allege adequately defendant's violation of section 1962 before turning to the second burden-- i.e., invoking RICO's civil remedies of treble damages, attorneys fees and costs. See <u>Bays v. Hunter Savings Association</u>, 539 F.Supp. 1020, 1023 (S.D.Ohio 1982). To satisfy this latter burden, plaintiff must allege that he was "injured in his business or property by reason of a violation of section 1962." <u>18 U.S.C. Sec. 1964(c) (1976)</u> (emphasis added).

## a. Existence of a RICO Enterprise[13]

Principals and Debt Collectors, the employees of its corporation were "a group of persons

associated together for a common purpose of engaging in a course of conduct," the existence of

which is proven "by evidence of an ongoing organization, formal or informal, and by evidence

---

[13] . See also <u>Moss</u> at 21-22:

> 3. The "Enterprise" Element
>
> The district court recognized that section 1962(c) requires plaintiffs to plead that an "enterprise" exists and that "there must be some nexus between the pattern of racketeering activity and the enterprise." 553 F.Supp. at 1363. We agree. Section 1962(c) states: "It shall be unlawful for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." <u>18 U.S.C. Sec. 1962(c) (1976)</u>. "Enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." <u>18 U.S.C. Sec. 1961(4)</u> (1976); see <u>United States v. Turkette</u>, 452 U.S. 576, 581-82, 101 S.Ct. 2524, 2527-28, 69 L.Ed.2d 246 (1981).

that the various associates function as a continuing unit." (Please see, <u>First Capital</u>, 385 F.3d at

173 (quoting <u>United States v. Turkette</u>, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.E d.2d 246

(1981)).  Please also see, See Holmes v. Securities Investor Protection Corporation, 503 U.S.

258, 285-286,112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)("Specifically, Congress has authorized

"*[a]ny* person injured in his business or property by reason of" a RICO violation to bring suit

under section 1964(c). . . ."That being the case, the courts are without authority to restrict the

application of the statute." *United States v. Turkette,* 452 U.S. 576, 587, 101 S.Ct. 2524, 2530, 69

L.Ed.2d 246 (1981).")

141.    The evidence clearly demonstrates that the Principals and Debt Collectors with

knowledge that their debt collecting procedures were illegal, nevertheless, through the mail or

by direct contact proceeded to court and attempted to and did collect money by illegal means;

that is, using some or all of the illegal means stated in ¶ # [14] 104..


**b. Pattern of Racketeering Activities**

142.    Under RICO, the Defendants engaged in a "pattern of racketeering activity" consisting of

"at least two acts of racketeering activity" within a ten-year period. See 18 U.S.C. § 1961(5);

<u>Sedima, S.P.R.L. Imrex Co.</u>, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 87 L.E d.2d 346

(1985); <u>McLaughlin v. Anderson</u>, 962 F.2d 187, 190 (2d Cir.1992).  The Defendant,

Principals and Debt Collectors engaged in this "pattern of racketeering activity" by their

numerous mailings and sending their attorneys to Court with knowledge and also willful

blindness that their actions and their court documentation was illegal.  It would not be

---

[14] .     See ¶ # 137.

credible to believe that Defendants did not similarly engage in that same "pattern of racketeering activity" against the Class thousands, if not millions of times.

143.    Similarly, Defendants through improper and fraudulent acts caused great distress to United States citizens.

**c. RICO Section 1962(a) Claim**

144.    Defendants fit under the precise fraud definitions of  Title 18U.S.C.§ 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud),  section 1503 (relating to obstruction of justice), section 1511 (relating to the obstruction of State or local law enforcement), and Titles 18 §§ 1961 through 1963; (Fair Debt Collection Practices Act) 15 U.S.C. § 1692(e).

145.    It is obvious that the large number of fraudulent appearances, by the agents of the Principals and the Debt Collectors hauling frightened citizens illegally to court could not have happened without the Principals and Debt Collectors  knowledge that their acts were illegal.

146.    The Principals and Debt Collectors counted on the fact that the larges majority of thoes that they hailed into court were poor and for most part unrepresented.[15]

147.    ("[T]he essence of a violation of § 1962(a) is not commission of predicate acts but investment of racketeering income."). "Accordingly, to state a claim under 1962(a), a plaintiff must allege an injury resulting from the defendant's investment of racketeering income in an enterprise (i.e., an `investment injury'), separate and apart from any injury caused by the

---

[15] .    The Court should take judicial notice that on any given day one can visit 111 Centre Street, New York City to gain perspective of the terror and emotional distress that citizens are put through – while the Principals and Debt Collectors take their money by all illegal means. This offers a snapshot of the illegal means that the Principals and Debt Collectors are conducting in thousands of courts all over the United States.

predicate acts themselves." OSRecovery, Inc. v. One Groupe Ina, Inc., 354 F.Supp.2d 357, 371 (S.D.N.Y.2005) (citing Ouaknine, 897 F.2d at 83).

148.    The Plaintiffs under Reyes v. Ernst & Young, 507 U.S. 170, 179, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), an alleged RICO defendant must have had "some part in directing" the "operation or management" of the enterprise itself to be liable.  It cannot be suggested that the sending of so many attorneys to court to sue so many citizens could have happened without direction and management of not only the employees but its managers and officers of the Principals and Debt Collectors.  And so Defendants directed these frauds upon the Class.  No other explanation is plausible.

*The Enterprise*

149.    The Principals and Debt Collectors, therefore, comprise two distinct groups of persons that together form an enterprise within the meaning of 18 U.S.C. § 1961(4). Each and every defendant is employed by or associated with the enterprise.

150.    Within each group of defendants, Principals (Chase Bank, N.A., American Express Company, Bank of America, N.A., Capital One Financial Advisors, LLC. Citigroup Inc., Citibank, N.A. Capital Management Services, GE Capital Consumer Lending, Inc.) and Debt Collectors (Associated Recovery Systems, Midland Credit Management, a/k/a Midland Funding LLC, Calvary Portfolio Service, DebtOne, LLC CACH, LLC, NCO Financial Systems, LVNV Funding, LLC, Asset Acceptance, LLC, FIA Card Services, N.A, Portfolio Recovery) defendants also qualify as separate and distinct[16] enterprises within the meaning of 18 U.S.C. § 1961(4).[17]

---

16 .    Please see, 18 USC § 1962 (c) --  (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign

151.    Each and every Principal Defendant has within its entity employees and agents who are associated with that entity and carry out the functions of that enterprise; each and every Debt Collector Defendant has within its entity employees and agents who are associated with that entity and carry our the functions of that enterprise.

152.    The individuals and entities that constitute the several Principals and several Debt Collectors Defendants taken together are an association-in-fact within the meaning of 18 U.S.C. § 1961(4).

153.    The purpose of the enterprise and/or enterprises (collectively "Enterprise") is to secure unlawful judgments through fraudulent means and to use those judgments to extract money from Plaintiffs and putative class members. This is accomplished by the Debt Collection Defendants buying debts for collection from the Principal Defendants who with willful blindness and it would be hard to conceive that these debts were not sold without knowledge by the Principals, considering the millions of national debts being sold, that the Debt Collectors would not be using proper methods of collection.

154.    The results being that the putative class members had monies taken away from them by fraudulent means and that all actions by the Principals and Debt Collectors were in furtherance of their unlawful schemes.

---

commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

17 .    Please see, 18 USC § 1961(4) -- (**4**) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

155.    Thus, the Class Plaintiffs have properly pleaded an injury purusant to 18 USC § 1964 - Civil remedies.[18]

156.    The relationships between the two Defendant groups (Principals and Debt Collectors) are longstanding and ongoing.

157.    The Enterprise has for many, but no fewer than four, years been engaged in, and continues to be engaged in, activities that affect interstate commerce. Defendants' unlawful Enterprise in violation of RICO has been and remains longstanding, continuous and open ended.

158.    Plaintiffs are natural persons, and as such are "persons" within the meaning of 18 U.S.C. § 1961(3). 355. Defendants are natural persons and corporate entities, and as such are "persons" within the meaning of 18 U.S.C. § 1961(3).

***The Enterprise***

159.    On information and belief, the above named Defendants comprise two distinct groups of persons that together form an enterprise within the meaning of 18 U.S.C. § 1961(4).

160.    Each and every defendant is employed by or associated with the enterprise.

161.    On information and belief, each group of defendants, Principals (Chase Bank, N.A., American Express  Company, Bank of America, N.A., Capital One Financial Advisors, LLC. Citigroup Inc., Citibank, N.A. Capital Management Services, GE Capital Consumer Lending, Inc.) and Debt Collectors (Associated Recovery Systems, Midland Credit Management, a/k/a Midland Funding LLC, Calvary Portfolio Service, DebtOne, LLC CACH, LLC, NCO

---

[18]  .    Please see, 18 USC § 1964 - Civil remedies -- (c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.

Financial Systems, LVNV Funding, LLC, Asset Acceptance, LLC, FIA Card Services, N.A, Portfolio Recovery) defendants also qualify as separate and distinct[19] enterprises within the meaning of 18 U.S.C. § 1961(4).

162.    Each and every Defendant is employed by or associated with the enterprise.

On information and belief, the individuals and entities that constitute the Principals (Chase Bank, N.A., American Express  Company, Bank of America, N.A., Capital One Financial Advisors, LLC. Citigroup Inc., Citibank, N.A. Capital Management Services, GE Capital Consumer Lending, Inc.)  Defendants and the Debt Collectors (Associated Recovery Systems, Midland Credit Management, a/k/a Midland Funding LLC, Calvary Portfolio Service, DebtOne, LLC CACH, LLC, NCO Financial Systems, LVNV Funding, LLC, Asset Acceptance, LLC, FIA Card Services, N.A, Portfolio Recovery) Defendants taken together are an "association-in-fact" within the meaning of 18 U.S.C. § 1961(4).

163.    The purpose of the enterprise and/or enterprises (collectively "Enterprise") is to secure default judgments through fraudulent means and to use those judgments to extract money from Plaintiffs and putative class members.

164.    This is accomplished by the Principal Defendants and the Debt Collector Defendants buying debts for collection; the Debt Collector Defendants commencing actions in the Civil Court on behalf of the Debt Collector Defendants; the Principal and Debt Collector Defendants obtaining default judgments against Plaintiffs and putative class members through fraudulent means; and the Debt Collector Defendants providing fraudulent affidavits and verifications in furtherance of the scheme.

---

19 .    Please see, 18 USC § 1962 (c) --  (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

165.     The relationships between the two defendant groups (Principals and Debt Collectors) are longstanding and ongoing.  The Enterprise has for many, but no fewer than four, years been engaged in, and continues to be engaged in, activities that affect interstate commerce. Defendants' unlawful Enterprise in violation of RICO has been and remains longstanding, continuous and open ended.

### Pattern of Racketeering Activity - Mail and Wire Fraud

166.     Defendants, individually and collectively, as an Enterprise, have engaged, directly or indirectly, a pattern of racketeering activity, as described below, in violation of 18 U.S.C. § 1962(c) & (d).

167.     Defendants, acting individually and as part of the Enterprise, have devised a scheme to defraud and to obtain money or property by means of false or fraudulent pretenses and representations. The scheme includes but is not limited to:

    a.   Producing and filing false attorney affirmations stating that service of the summons and complaint has been made, when it fact it was not;[20]

    b.   Producing and filing fraudulent affidavits of merit that falsely claim that Defendants have personal knowledge of the facts necessary to obtain a default judgment, when in fact they do not;

    c.   Misrepresenting that Defendants are in possession of or could obtain documentation evidencing that Plaintiffs and class members owe a debt, when in fact they do not possess and cannot obtain such documentation;

---

[20]  .     This is based upon statements by Amal Shetiwy and Spiros Argyros

    d.   Using fraudulent, deceptive, and misleading affidavits and affirmations to obtain default judgments against Plaintiffs and class members under false pretenses;

    e.   Using fraudulently obtained default judgments to extract money from Plaintiffs and class members.

168.    Defendants routinely use the State Civil Courts to collect debts from consumers.

169.    Defendants have a longstanding business relationship in which they have formed joint ventures to sell and purchase portfolios of defaulted debts for collection through litigation and other means.

170.    When this happens, Plaintiffs and putative class members are deprived of due process because they do not receive notice of the of the claim and lawsuit and therefore do not appear to defend themselves. Defendants then apply for default judgments against the non-appearing individuals.

171.    In order to obtain the default judgments, Defendants file fraudulent affidavits with the court.

172.    On information and belief, the Defendants all know or reasonably should know that most of the affidavits are false and not upon personal knowledge and belief.

173.    On information and belief, although Defendants secure default judgments in tens of thousands of lawsuits every year, the affidavits in the majority of those lawsuits is allegedly done by only a handful of individuals.

174.    Before seeking these tens of thousands of default judgments per year, Defendants are required to review each and every affidavit before filing complaints and motions with the court.

175.    As a small number of individuals falsely swear to affidavits to serve an astoundingly large number of defendants, simply by undertaking this review, Defendants would have known that all of the alleged claims could not possibly have occurred as claimed.

176.   On information and belief Defendants always utilize similar complaints with identical wording meant to falsify the complaint and make it appear to provide proper notice to defendants; to wit the complaint typically states that a sum certain is due and owing without stating how that amount was calculated; the complaint states that demand was duly made and remains unpaid; the complaint states that a copy of the complaint was mailed and delivered to defendant.

177.   The complaint states that no part of the amount claimed and duly demanded has been paid and that the account with all its rights and privileges were transferred to the debt buyer with due notice to the defendant.

178.   All of this is claimed in the complaint and yet no evidence of it is provided in a default motion.  Please see directly below similarity between Amal Shetiwy and Ekaterine Skotedis paragraphs in the complaint against them:

> **Amal Shetiwy**
> 9. FIA Card Services, N.A.Bank of America, N.A., assignor to Plaintiff herein, did, prior to the transfer of the title, rights and privileges of said account, furnish and deliver to Defendant(s) on or about 10/3012010, a full, just and true statement of the unpaid balance due from Defendant(s) by use of said account. That the Defendant(s) received, accepted and retained the accounting without rejection or objection being made.
>
> **Ekaterine Skotedis**
> 9. GE MONEY BANK/Citicorp/Bank/JENNIFER COVERTIBLES/HQ, assignor to Plaintiff herein, did, prior to the transfer of the title, rights and privileges of said account, furnish and deliver to Defendant(s) on or about 12/3112010, a full, just and true statement of the unpaid balance due from Defendant(s) by use of said account. That the Defendant(s) received, accepted and retained the accounting without rejection or objection being made.

179.   Similarly the verifications to the complaints border on or cross the path of perjury in that these allegations made in the complaint of the action stated therein are never provided.  See

directly below a typical verification made in virtually all complaints where the deponent testifies to facts upon which he has no knowledge.  See directly below.

> "....... I, the undersigned, an attorney-at-law, admitted to practice in the Courts of the State of New York, state that I am an attorney in the firm of Daniels Norelli Scully & Cecere,P.C., the attorney of record for the Plaintiff in the within action; I have read the foregoing complaint and know the contents to be true to my own knowledge, except as to those matters therein stated to be alleged upon information and belief and as to those matters I believe it to be true. The grounds of my belief as to all matters not stated upon my own knowledge are the records of the Plaintiff, which the Plaintiff has provided to me. I affirm that the foregoing statements are true under the penalties of perjury.
> Affiant further says that the reason this verification is made by affiant and not by the said Plaintiff, is because Plaintiff is not located within the County in which the attorney maintains his office.

180.    In the above verification is taken from both the Amal Shetiwy and Ekaterine Skotedis, and yet the affiant does not have personal knowledg of the matter sworn to and is even stating a miststatement of facts in that defendant never receives notice of the assignment from the assignor or assignee prior to the lawsuit. In fact, in Court the attorneys deny the obligation of their clients to provide that which they previously swore was provided.

181.    Similarly all the attached complaints attached hereto as Exhibits are sworn to as personal knowledge and yet the complaint on its face is opposite to the sworn statements by the attorney deponent.

**Amal Shetiwy Court Experience**

182.     Amal Shetiwy, a single mom with two minor kids struggling to make it was sued and brought to court for debts on three credit cards that it was alleged she had owed to Bank of America.  She was sued by CACH, LLC, a debt collection company performing debt collecting tasks for Bank of America on October 30, 2010.  Presumably, CACH has an installed program whereby they can generate Summons and Complaints, that virtually never on their face because of the meagerness of the facts on their Complaint, provide any substantial due process notice to the citizen of the basis of the debt owed

183.     The Court eventually set the judgment aside[21] and later George Bassias, Esq. on a pro bono basis made argument for Ms. Shetiwy that she was never given notice of the assignment from Bank of America to CACH. The attorney for Cach LLC argued that there is no requirement to provide notice.

184.     It is important to note because of the millions of times that these debt collectors flood the halls of the United States Court systems that courts are extremely overwhelmed and do not grant discovery because of the apparent small amounts involved.  It should be added that these to the Banks of Americas and the CACHs of the world are small amounts but they are not small amounts to struggling families who have to make choices between the fraudulent gotten judgments against them and the judgments' payments and putting food on the table or the necessity of the embarrassment of having to ask the government for food stamps and basic living costs.

---

[21] .     It is important to note that most often the unsophisticated citizen because of the fear of just going to court does not challenge these robo-complaints until it is too late or statutes have run.  It has also been documented that many times the citizens are not served but process servers state perjuriously that they have served when the complaint that was to be served has been thrown down the sewer. (sewer-service.)

185.     Ms. Shetiwy adamantly states that she did not run up the charges as which was alleged by Bank of America through its agent and debt collector, CACH. But when courts deny discovery and are overwhelmed they attempt to resolve almost all cases without discovery on the spot.  No judge should ever be put on the spot for instant decisions which the justice systems asks for.

186.     Again, it would be a useful experience for any person, judge or an Attorney General of the United States to sit through one day at court. What they would see is shameful.  They would see well-healed attorneys at the beckon-call of Bank of America and the CACHs' of the world.  They would also see frightened citizens all emotionally distressed, not even being aware that the legal process which they are the central figure is absolutely illegal.  For the most part they are poor Hispanics and blacks – who again, are illegally brought to court with attorneys of the debt collectors swearing to documents as being true which it would be a million to one they have no idea of the truth of their statements. But their job is not to seek justice but to collect money in any manner in which they can.

187.     First, it is also absolutely illegal that the debt collectors purchased many of these so-called debts for pennies on the dollar; that is they may have paid $90.00 for a debt of $1,000.00.  Second, under NYS Judiciary Law §489 it is absolutely illegal to purchase a debt for the purpose of suing on the debt. Third, there is RICO fraud involved because both parties have actual knowledge that the Principal has already written portion of the debt off prior to giving that to collection to the Debt Collector.  The Debt Collector, however, virtually always sues for the full and illegal amount because that is not the debt that is owed at the time of collection.  The unashamed, blatant and egregious dishonesty that is involved between the

Principals and the Debt Collectors has no saving grace.  Basically it is nothing short of vomitous.

188.    It is important to note that most often the unsophisticated citizen because of the fear of just going to court does not challenge these robo-complaints until it is too late or statutes have run.  It has also been documented that many times the citizens are not served but process servers state perjuriously that they have served when the complaint that was to be served has been thrown down the sewer. (sewer-service.)

189.    On or about October 10, 2011, she was sued by Cach LLC in Queens Civil Court in three separate lawsuits for three different credit cards involving Bank of America in Queens Civil Court.

190.    Amal Shetiwy states that she did not incur any charges on the card.

191.    Prior to the lawsuit, she received several calls from representatives from Cach LLC and a letter and even though she tried to explain that she did not know what the matter was about, the representatives of Cach LLC disregarded her concerns and sued her based upon false representations.

192.    The complaint states that a copy of the credit card agreement was mailed or delivered to Amal Shetiwy before the lawsuit. This is a completely falsely sworn to fact.

193.    The complaint also states that prior to the transfer by Bank of America to Cach, LLC, that a true statement was sent to Amal Shetiwy on or about 10/30/2010, and that Ms. Shetiwy did not object. This is also a false sworn to fact.

194.    The complaint states that an account was taken and stated showing the balances on the account. This is also a falsely stated sworn to fact.

195.    Ms. Shetiwy does not believe she owes the money and even believes this may have been identity theft. She stated this in her answer; yet the debt buyer did not provide her or the court any documentation to help her identify the nature of the debt; and went on and falsely utilized the court system to obtain a default judgment and summary judgment against her.

196.    Similarly during the lawsuit a copy of the signed agreement was never provided.

197.    The affidavits used in the motion were not sworn to under the penalty of perjury and were form affidavits, robo-documents, with filled in blanks.[22]

198.    Even the attorneys for the Principal and Debt collectors testified to the Court in affirmations that monies are due and owing without personal knowledge of the facts-and thereby are falsely testifying to the court.[23]

199.    The motions had affidavits from the principal bank of America regarding some type of a bulk transfer/assignment of accounts, lumping hers into that transfer in order to falsely testify as to a false assignment based upon personal knowledge.

---

[22]    .    Please see Judge Straniere, Complaint para. # 30 regarding robo-signing and other unlawful acts by debt collectors.

[23]    .    Subornation of Perjury (Legal Dictionary) The criminal offense of procuring another to commit perjury, which is the crime of lying, in a material matter, while under oath.
Under federal Criminal Law (18 U.S.C.A. § 1622), five elements must be proved to convict a person of subornation of perjury. It first must be shown that the defendant made an agreement with a person to testify falsely. There must be proof that perjury has in fact been committed and that the statements of the perjurer were material. The prosecutor must also provide evidence that the perjurer made such statements willfully with knowledge of their falsity. Finally, there must be proof that the procurer had knowledge that the perjurer's statements were false.
        It may be for this Court or another Court to make determinations of the general acceptance of Courts to minimize or play down attorneys' perjurious statements when those statements are sworn to in documentations and presented to Courts.

200.    The complaint against Ms. Shetiwy asked for the entire amount that was owed, principal and more, in spite of the fact that Bank of America wrote off all or part of the debt and gained a financial write off for taxes.

201.    Amal Shetiwy asked for a copy of the statements and cardholder agreement with the signature card because she stated she did not know who Cach LLC was, and if she even owed the amount or was a subject of identity theft.

202.    Ms. Shetiwy stated that she never received any notification for Bank of America or Cach LLC, that the account was assigned; or any breakdown of how the amount owed was determined.

203.    In Court the attorneys for Cach LLC., argued, and the State Judge erroneously that neither Cach LLC, nor Bank of America were under a duty to give notice of Assignment prior to a lawsuit.

204.    The complaint filed by Cach LLC did not state how the amount and interest was calculated.

205.    The complaint falsely states that a copy of the credit card agreement was mailed or delivered to defendant. At no time, however, was a signature card ever mailed to defendant or attached to their court papers.

206.    In the court motion for summary judgment papers there was a purported assignment attached which referred to a bulk electronic transfer of many cases including defendant Amal Shetiwy's case; There was no signature card or notice of assignment attached to any of the letters sent or the summons and complaint.

207.    While the complaint was sworn to under the penalty of perjury, however, no documentation was ever attached to the complaint.

208.   At a later time in Court the attorneys for the debt collectors submitted affidavits in support of the transfer which were falsely sworn to based upon personal knowledge and belief to *material facts* which was the essence of the action.

209.   The affidavits were form affidavits[24] where names were filled in, clearly the affidavit was prepared before the person identified to sign it as a "robo type" affidavit which is computer generated and not sworn under penalty of perjury. The agreement terms attached to the plaintiff's motion papers were of a small illegible type and not supported by a signed signature card.

210.   Ms. Shetiwy was never told advised as to the amount Bank of America sold the accounts for or whether or the amount that was charged off, if any.[25]

211.   Ms. Shetiwy has received negative ratings on her credit report by both creditors for the same debt. She was never given the documents to see if she even owes any of the amounts claimed. She was not notified by the original creditor as to how much was written off, how much the debt was sold for and who it was assigned to.

## LOUIS  C. YEOSTROS

212.   Louis Yeostros a resident of Nassau County, New York, husband and father of two, was sued by Equable Ascent Financial, LLC and Chase Bank for the same apparent debt and

---

[24] .     Please see Judge Straniere's denunciation of illegal form affidavits, Amended Complaint, para. # 30.

[25] .     While at first glance it may not appear appropriate to provide the consumer that information, it becomes vital in determining whether or not a conspiracy of fraud existed between the Principals and the Debt Collectors for any individual act.  If it happens to be that the Principals took a "write-off" to the IRS for part of the amount that they declare was owed to them, then they cannot claim the full amount in the transfer to the Debt Collectors.  And subsequently the Debt Collectors when they sued on the full debt committed fraud when they knew or should have known that the amount they were seeking was unlawful.

different stated amounts in Nassau County District Court, on or about December 27, 2011 and January 28, 20122.

213.   The action by Equable was brought in Nassau County Second District Court, and the action by Chase in Nassau County First District Court.  Both actions were for the same account. The complaint by Chase stated that $4,935.25 was due on the account. The complaint by Equable stated that $4,536.30 was due on the account.

214.   Both accounts were falsely sworn to and give different stated amounts by persons who do not have personal knowledge of the account. The complaints did not have any credit card agreements attached to them.  The Equable complaint states that the account was sold and assigned to them.  Equable, however, fails to provide details as to the sale as far as how much it was bought for and how much was written off.

215.   Equally disconcerting is that the complaints have contradictory amounts creating a prima facie showing that the amounts were improperly calculated, yet it is sworn to be true.

216.   The complaint itself is a robo-type document which was electronically generated with statements that are untrue and yet sworn to be true.

217.   After George Bassias Attorney appeared and answered the complaints "pro bono," Chase Bank withdrew its complaint. Louis Yeostros received at least one letter from Chase and Equable before the lawsuit but did not understand why both were pursuing a claim.

218.   In a typical manner for these lawsuits, there was no documentation attached to the letters or the lawsuits in support of a valid assignment having been made.

219.    Mr. Yeostros continued to receive calls and letters from both Chase and Equitable.

220.   The complaint alleged false facts sworn to under penalty of perjury with no signature card attached. The card holder agreement was never provided.

221.    In addition, a notice of assignment was never given to him before and after the filing of the lawsuit. He was never provided with a copy of the signature card, cardholder agreement, or any explanation as to how the amount owed was calculated.

222.    The law form Mullooly, Jeffrey, Rooney & Flynn, LLP sued him for Equable, and JP Morgan Legal Department sued him for Chase. He was never told how much Chase sold the account for or whether nor the amount that was charged off, if any.

223.    Mr. Yeostros has received negative ratings on his credit report by both creditors for the same debt.

224.    Prior to the lawsuits he received several phone calls from Equable where it demanded payment and at least one letter but Equable refused to provide him with documentation establishing that it owned the debt.

225.    The complaints on their face allege an amount clearly in excess of what he originally owed and never provided a break down showing how the interest was calculated.

226.    The complaint states that the account was assigned but debtor was never notified as required by law.[26] In this case debtor is confused as to whether he owes money to Chase or Equable. The Principal, Debt buyer's and their attorneys testified in the complaint that the monies were due and owing when they had no knowledge that there were two  lawsuits pending for the same account and thereby they testified falsely to the court.

---

[26] .   Please see Amended Complaint, pg. 6.
        In South Shore Adjustment Co. v. Pierre, (N.Y. Civ. Ct., 2011)(pg.3)[26]
        Judge Straniere concluded that bulk assignments by Chase to debt collectors
        violated every tenet of due process. He found that due process mandated
        that the assignor, and not the assignee notify the debtor of the assignment,
        since the credit card holder had his agreement with the credit card issuer, "
        and not with the unknown third party debt purchaser."

227.    Mr. Yeostros therefore,

    a.   Was not notified by the original creditor as to how much was written off;

    b.   How much the debt was sold for;

    c.   And who it was assigned to. (A copy of the complaint is attached hereto).

**JOHN MURPHY**

228.    John Murphy a resident of Nassau County, New York was sued in Nassau County District Court in Hempstead, NY by LVNV Funding on behalf of American Express, LR Credit LLC, and Midland Funding LLC on or about February and March 2006. He is unsure, but believes default judgments were entered against him.

229.    Mr. Murphy was not served with papers but learned from his credit report that the judgments may exist and from various mailings he received. He was never served by American Express with a notice of assignment or by any of the above debt buyers.

230.    He has not appeared in the actions against him so he does not know the basis of the lawsuits.  Judgments exist from August 19, 2011 and September 29, 2011.

231.    Mr. Murphy received letters from LVNV Funding, LR Credit LLC, and Midland Funding, and received calls from them.

232.    When he asked for verification of the debt the debt collectors refused to provide any documentation.

233.    Similarly, Mr. Murphy received letters and phone calls from creditors and debt buyers without (1) any copies of a signature card, (2) any card holder agreement, and (3) any Notice of assignment. He believes that the default judgments were sworn to and pleaded improper facts and misrepresented the amount owed by persons who do not have personal knowledge.

234.    It is Mr. Murphy's belief that the judgments in his credit report are clearly in excess of

what he originally owed and that he was never provided with a break down demonstrating

how the interest was calculated.

235.    The original assignor never notified Mr. Murphy how much was written off and to whom

the debt was sold.


**Plamen Pankoff**

236.    Plamen Pankoff was sued by FIA Card Services, NA, by the law firm Foster & Garbus,

by way of two separate lawsuits on or about February 13, 2012 and April 20, 2012. Mr.

Pankoff is not certain but believes the lawsuits are based upon two Bank of America credit

cards.  The lawsuits, however, do not mention Bank of America.

237.    The lawsuit does not attach any documentation such as (1) a signature card, (2)

cardholder agreement, and/or (3) authorization from Bank of America for the lawsuit.  He

believes that the amount is much greater than what he believed he may owe and the complaint

does not state on its face how the amount owed was calculated.

238.    While FIA claims to be a subsidiary of Bank of America, Mr. Pankoff was never

provided with notice in proper affidavit form as to that fact from Bank of America and FIA

Card Services. The lawsuit does not state how the amount of interest owed was calculated or

whether or not any amount was charged off.

239.    Again, in a pattern that is all to common in court when the debt collector firms attempt to

collect monies from their electronic downloads, the complaint does not attach (1)  a proper

copy of the card holder agreement or (2) the signature card and yet the complaint is sworn to

by a person who clearly does not have personal knowledge.[27]

240.    George Bassias has appeared on his behalf and answered the complaint. (A copy of the

complaint is attached hereto).

**SPIROS ARGYROS**

241.    Spiros Argyros, a husband and father, resident of Astoria, New York was sued in Queens

Supreme Court by Calvary SPV I, LLC by the Law firm Schachter Portnoy LLC in Queens

Supreme Court on or about April 12, 2012. The lawsuit alleges that $16,908.72 is owed plus

interest in the amount of $8,914.04. On its face it appears usurious.

242.    The complaint is sworn to as to the truth of its contents and yet it does not state how the

interest of $8,914.04 was calculated. The lawsuit does not state who the original creditor is

even though it states that the account was assigned. The lawsuit does not provide a copy of

the assignment or state how much the debt was bought for and written off for.

243.     The lawsuit does not provide Mr. Argyros with a copy of the (1) signature card and (2)

cardholder agreement. The lawsuit is sworn to by an attorney and yet the complaint does not

even state who the original creditor is. The complaint itself appears to be a "robo-type"

computer generated document. He also has a default judgment against him by Midland

Funding LLC, and does not know what it is for. He has never received (1) a copy of a notice

of assignment, (2) cardholder agreement, or (3) signature card. (A copy of the complaint is

attached hereto).

---

[27].    Please see above, footnote # 23, for subornation of perjury.

**NICOLE GAGNON**

244.    Nicole Gagnon, a stay home mother of three infants, who lives in Nassau County, New York was sued by Portfolio Recovery Associates, LLC in Nassau County, New York, First District Court in Hempstead on or about March 26, 2012. The debt buyer called Nicole several times and sent her several letters but never provided her with documentation regarding ownership of the debt.

245.    The lawsuit states that the account was purchased from GE Money Bank, however, it does not state how much it was purchased for and how much of the debt was written off by GE. The lawsuit does not have a copy of the (1) signature card attached and (2) cardholder agreement.

246.    The lawsuit against Ms. Gagnon does not attach a copy of the assignment. The lawsuit states that demand was previously made on Nicole Gagnon but does not state the details of when and how that demand was made.

247.    These lawsuits must be viewed in juxtaposition with this Court's Judicial Knowledge that in all the District Courts of every State in the United States there were approximately 367,000 law suits filed in 2011.  In sharp distinction only one New York law firm with 14 attorneys filed 80,000 lawsuits in 2011.  It is for that reason that the Plaintiff Class submits to the Court that it would be impossible for attorneys to swear to the truth that they had knowledge of the facts that they swear to when they are in Court. Inasmuch as the attorneys swear to these facts it diminishes the truthfulness of <u>all attorneys</u> whey they swear to facts to which they clearly have no knowledge.

248.    The attorneys in the present case do not state how the amount interest owed was calculated. The lawsuit on its face appears to be a "robo-type" computer generated document.

Ms. Gagnon was not notified by the original creditor as to how much was written off, how much the debt was sold for and who it was assigned to. The complaint is sworn to by the attorney, yet the attorney does not have personal knowledge.

249.    George Bassias appeared and answered the complaint "pro bono." (A copy of the complaint is attached hereto).

**EKATERINE SKOTEDIS**

250.    Plaintiff Ekaterine Skotedis , who lives in Astoria, New York got sued by Cach LLC by the law firm of Daniels and Norelli in Queens Civil Court on or about July 20, 2012. The Summons on that lawsuit states that Cach LLC is assignee of accounts held by GE Money Bank/Citicorp Trust Bank.

251.    There was no assignment attached to the papers.

252.    The lawsuit does not state how the amount owed was calculated. A signature card and cardholder agreement was not attached to the papers or any documentation establishing the assignment.

253.    The lawsuit does not state how much GE Money bank/ Citicorp sold the account for, and how much was written off. The lawsuit falsely states and is sworn to that all documentation regarding the account and transfer of the account was provided to defendant on 12/31/10.

254.    Ms. Ekaterine Skotedis states without any reservation that she has never received any documents.

255.    The complaint is clearly a form "robo type" computer generated document, similar to the one served on Amal Shetiwy; and sworn to by a person without personal knowledge. (A copy of the complaint is attached).

256.     Ms. Skotedis was also sued by Portfolio Recovery Associates, LLC as assignee of Capital One Bank. The complaint does not (1) attach a copy of the assignment (2) any authority to pursue the claim, (3) and signature card or (4) cardholder agreement. It does not state how the amount due was calculated.

257.     The Complaint does not state whether or not Capital One charged off the amount and how much the account was sold for. The complaint states that demand for payment was made but does not state when and how the demand was made.

258.     A default judgment was entered against Ms. Skotedis and attempts were made to attach her paycheck through a Marshall.

259.     Prior to being sued Ms. Skotedis received harassing calls at home and work by Cach LLC representatives, and various mailings.

260.     The complaint against Ms. Skotedis is sworn to yet the person does not have personal knowledge. The complaint on its face is a "robo-type" computer generated affidavit sworn to by a person without personal knowledge.


**AHMED HASSAN**

261.     Ahmed Hassan, a husband and father, resident of Brooklyn, NY was sued and a default entered by LR Credit, NCO Portfolio, Palisades Collection, Midland Funding, Cach LLC.

262.     Mr. Hassan also received a letter from ARS on behalf of Citibank. In none of the above was there any notice of assignment with a copy of the signature card provided before or after the lawsuit. There was never any breakdown provided of how the amount and interest was calculated. There was a judgment entered against him in Kings Civil Court by LR Credit and NCO Financial on March 10, 2007. There was also a judgment entered against him by Midland Funding in Kings Civil Court on March 3, 2008.

263.    The affidavits that were used for defaults were testified to by persons (or attorneys) without personal knowledge. The complaints and letters did not attach (1) a copy of the assignment and (2) any authority to pursue the claim and (3) signature card or (4) cardholder agreement.

264.    The Affidavits or the Complaints at no time state how the amount due was calculated. It does not state whether or not the original creditor charged off the amount and how much the account was sold for. The complaints state that demand for payment was made but does not state when and how the demand was made.

265.    A default judgment was entered against Mr. Hassan and attempts to attach his paycheck through a Marshall.

266.    Prior to his being sued he received harassing calls at home and work and various mailings, yet none of the above was ever provided.

267.    As with the other listed plaintiffs, the complaints are sworn to as having personal knowledge of the situation which was false.

**Patricia R. Diffley**

268.    Ms. Diffley is a stay home mother and resident of Nassau County, NY.  Asset Acceptance LLC and Midland Credit are listed on her credit report (dated September 26, 2011) as having claims against her. She received letters from them but was unsure who they were because a copy of the credit card agreement was not mailed or delivered to her.

269.    The Debt Collectors at no time offered evidence of a (1) signature card or (2) valid card holder agreement ever mailed to her or attached to their letter. There was never notice of an assignment attached to any of the letters or any notification from the original creditor.

270.    At no time were proper or valid affidavits establishing their right to pursue the claim provided. She has received negative ratings on his credit report by both creditors for the same debt.

271.    Ms. Diffley was never given the opportunity to obtain discovery to see if she even owes any of the amount claimed. She was not notified by the original creditor as to how much was written off or how much the debt was sold for and to whom it was assigned. She is not aware if she was sued by any debt buyers or creditors.

**JOHANNA ARBELAEZ**

272.    Ms. Arbelaez is a single mother and resident of Astoria, NY.

273.    Lvnv Funding and Midland Funding are listed on her credit report as having claims against her. She has received several threatening letters and phone calls but she does not know for what because she has never received any notice of signature card or valid card holder agreement that was ever mailed to her or attached to their collection letter.

274.    There was never notice of assignment attached to any of the letters or any notification from the original creditor. The debt collectors at no time submitted valid affidavits establishing their right to pursue the claims alleged against Ms. Arbelaez.

275.    Ms. Arbelaez has received negative ratings on her credit report by both creditors for the same debt. She was never given the opportunity to obtain discovery to determine if she even owes any of the amount claimed.

276.    Similarly, as with others named in the action, Ms. Arbelaez was not notified by the original creditor as to (1) how much was written off, (2) how much the debt is the actual debt that was not written off and finally, (3) and who it was assigned to.

277.    Ms. Arbelaez is not aware if she was sued by any debt buyers or creditors.


**Nicholas Doudalis**

278.    Mr. Doudalis is a father and resident of Nassau County, NY.

279.    He received a letter from Portfolio Asset Group (dated, March 22, 2012) which we belief to be Portfolio Recovery.

280.    As with other plaintiffs in this action the letter fails to state who the original creditor is.

281.    There was no signature card or valid card holder agreement ever mailed to him or attached to their letter.

282.    There was never notice of assignment attached to any of the letters or any notification from the original creditor.

283.    As with regard to virtually all debt collectors there were no valid affidavits establishing their right to pursue the claim were provided. He has received negative ratings on his credit report by both creditors for the same debt.

284.    Mr. Doudalis was never given the opportunity to obtain discovery to determine if he even owes any of the amount claimed.

285.    Similarly, Mr. Doudalis was not notified by the original creditor as to (1) how much was written off, (2) how much the debt was sold for and (3) to whom the alleged debt was assigned.

286.    Mr. Doudalis is not aware if he was sued by any debt buyers or creditors.


**Safet Koljenovic**

287.    Mr. Koljenovic is a resident of Astoria, NY.

288.    Portfolio Recovery and Midland Funding have placed a claim against him on his credit report but he does not know who the original creditor is.

289.    At no time was a signature card  or valid card holder agreement ever mailed to him or attached to the debt collector's letter.

290.    There was never notice of assignment attached to any of the letters or any notification from the original creditor.

291.    No valid affidavits establishing their right to pursue the claim were provided.

292.    Mr. Koljenovic has received negative ratings on his credit report by both creditors for the same debt.

293.    In these cases plaintiffs, such as Mr. Koljenovic, are never given the opportunity to obtain discovery to determine if he even owes any of the amount claimed.

294.    Mr. Koljenovic was at no time notified by the original creditor (1) as to how much was written off, (2) how much the debt was sold for and (3) who it was assigned to.

295.    Mr. Koljenovic is not aware if he was sued by any debt buyers or creditors.


**Magdi Abdalla**

296.    Mr. Abdalla is a resident of Astoria, NY.

297.    Mr. Abdalla has a claim on his credit report from NCO Financial.

298.    As with most plaintiffs Mr. Abdalla does not know who the original creditor is.

299.    There was no signature card or valid card holder agreement ever mailed to him or attached to their letter.

300.    There was never notice of assignment attached to any of the letters or any notification from the original creditor.

301.     Mr. Abdalla never was provided proper or valid affidavits establishing the debt collectors

right to pursue the claim.

302.     Mr. Abdalla has received negative ratings on his credit report by both creditors for the

same debt.

303.     Mr. Abdalla was never given the opportunity to obtain discovery to see if he even owes

any of the amount claimed.

304.     As with all letter actions by debt collectors Mr. Abdalla was not notified by the original

creditor as (1) to how much was written off, (2) how much the debt was sold for and (3) who

it was assigned to.

305.     Mr. Abdalla is not aware if he was sued by any debt buyers or creditors.


Central point is perjury fraud and obstruction of justice by false testifying and submitting

fraudulent documents to the Court.


**Rose Cruz**

306.     Ms. Rose Cruz is a single woman who lives in New York, NY. and who has a job

working at a church in Washington Heights.  She has two children.

307.     Ms. Cruz had two small accounts with Chase Bank.  After she had a heart attack in 2012

she fell behind in payments. She called Chase and worked out a payment plan on at least one

of those accounts. She is still paying on that plan, including many medical bills.

308.     She had never received any letters or phone calls from Midland until Midland sued her.

The complaint in paragraph # 8, says Midland issued demand on her to pay. That is false.

309.    In opposite she received a call from Chase and Chase told her to continue paying and any outstanding amounts will be renegotiated after the New Year.

310.    Nevertheless she was sued by Midland.  She did not know who Midland is, but believed from the papers that it is something to do with Chase Bank.

311.    The third to fifth paragraph of the complaint states that Midland called her and sent letters, and used efforts to reach her.  Ms. Cruz states that that is patently untrue.

312.    Furthermore, the complaint is sworn to on information and belief by a lawyer.

> **ATTORNEY VERIFICATION**
> **VERIFICATION:** The undersigned, affirms under penalties of perjury, that he is an attorney for the Plaintiff, has read this complaint and knows its contents, and that the same is alleged upon information and belief and believes it to be true. Affirmant says that the grounds of his belief are documents and electronic data received from the Plaintiffs predecessor in interest and/or pre-suit investigation.
> Affirmed this 27th day of August, 20 12.

313.    The above, and typical of all complaints filed in the State Courts of every state in the United States, verification was a perjurious verification in the above action (See Exhibits to Complaint) by the attorney in the action, Midland Funding v. Cruz.  It is clear that the verification was done by an attorney who had no knowledge of the facts and had not read any documents in the case.  It is though "information and belief" save an affiant from perjury.

314.    This was according to Judge Straniere[28] who stated in a bench trial that an affidavit that is notarized does not automatically become admissible at trial. Moreover, the judge accused American Express of "robo-signing" of "robo-documents."

---

[28] .    American Express Bank v. Dalbis.  See also paragraph # 30, above.

The "affidavit of facts in support of plaintiff's motion for default judgment" has all the trappings of a "robo-document." It begins "State of New York; County of New York." The first line of the affidavit states: "I_____, hereby certify as follows:" The blank line is competed by a two-line stamp "Marc Davis, Assistant Custodian of Records." It is followed by a paragraph beginning " I am the ____Custodian of Records" or the "Assistant Custodian of Records." The latter designation is checked. This document is not in the form for an affidavit in New York. It does not begin with the affiant "swearing" to the truth of the contents as required in New York, i.e. "being duly sworn deposes and says." The fact that the statement is "sworn to" before a notary public does not make the contents of the document an affidavit in conformity with New York practice. Although New York does not require any specific form for an oath [General Construction Law §36] it must be "administered in a form calculated to awaken the conscience and impress the mind of the person taking it in accordance with his 4 religious or ethical beliefs" [CPLR §2309(b)]. The "affidavit" does not recite that Davis has read the statement and that the statements are true, so it does not rise to the standards necessary to insure they are factual as set forth in <u>Collins v AA Truck Renting Corp.</u>, 209 AD2d 363 (1994). The affiant does not state that he has sworn to the truth of the contents of the document. Further, New York does not recognize "certification" as a means of authenticating the truth of the contents of a document [See Practice Commentary by Patrick Connors after CPLR §3020 in regard to verification of pleadings].

<u>Id.</u> at 6-7.[29]

315.   Clearly the perjurious document was meant to win a judgment against the defendant in that case.  But according to Judge Straniere, the complaint which under any consideration or lack of due process and was not worth the paper it was written on <u>but</u> was intended to do intentional harm to the defendant in that case.

316.   According to Judge Noach Dear[30] in an article edited by Andres Ross Sorkin of the New York Times and Jessica Silver Greenberg (August 12, 2012):

"I would say that roughly 90 percent of the credit card lawsuits are flawed and can't prove the person owes the debt," said Noach Dear, a civil court judge in Brooklyn, who said he presided over as many as 100 such cases a day.

---

[29] .    Plaintiffs present this lengthy quote to illustrate the manner in which these "robo-documents" are routine practices in the court systems as creditors rely with great success that their documents will never be challenged.

[30] .    Please see paragraphs ## 47 to 50.

317.     The electronic stampede and trampling on the due process rights of these unsophisticated defendant court-dwellers must stop with this action.  It is clear from the remarks of Judges Straniere and Dear that the overburdened state courts of the United States cannot on their own stop the recklessness of the Principals and Debt Collectors that is common purpose in the state courts.

318.     It is clear that multimillion dollar verdicts will not stop this multibillion dollar industry. It is for this Court to find a method to stop this historical blemish on the state courts of the United States who remain powerless on their own to bring the unlawfulness to a halt.

319.     When one law firm on its own can bring in 2011, 80,000 lawsuits in New York City alone it is no small wonder why small overburdened and overpowered state courts throughout the United States are no match for the debt collection industry.  In direct contrast in 2011 in all the District Courts of the United States only 367,000 lawsuits were brought totally.

## II.     SECOND CAUSE OF ACTION

### (VIOLATION OF FIFTH AND FOURTEENTH AMENDMENTS)

320.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs and further allege.

321.     Principals and Debt Collectors proceeded to court with absolute knowledge that their papers were in violation of the Fifth and Fourteenth Amendments. The Defendants had knowledge because of the tens of thousands of complaints by which they sued the Class that they were in violation of the Fifth and Fourteenth Amendments.

322.     Principals and Debt Collectors were not only guilty of due process violations by bringing their debt collection activities to court, but in addition, failed to have standing because they did not have proper assignment in these cases. Please see, <u>Chase Bank U.S. v. Cardello</u>, 27 Misc.3d 791, 896 N.Y.S.2d 856, 858, 2010 N.Y. Slip Op. 20090 (N.Y. Civ. Ct., 2010):

> It is clear however, that due process requires that notice of the assignment be given to the debtor by the assignor and not by the assignee. The credit card holder had his or her agreement with credit card issuer and not with the unknown third-party debt purchaser so that receipt of notice from the third-party debt purchaser does not satisfy due process standards.[31]

323.     Because of their violation many of their defendants in those cases was stripped of their Fifth and Fourteenth Amendments.

324.     The Principals and Debt Collectors in those cases used the United States judiciary system to take away property rights from the defendants whom they sued.

325.     The Principals and Debt Collectors not only had absolute knowledge that their lawsuits and performances that they did in court were illegal but also did this conduct with willful blindness.

### III.     THIRD CAUSE OF ACTION

#### (Fair Debt Collection Practices Act)

326.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs and further allege.

327.     Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to

---

[31] .     <u>See also Chase</u> at 858, ("The failure to establish that notice of the assignment was given to the debtor makes the assignment ineffective.")

protect consumers against debt collection abuses." <u>15 U.S.C. § 1692(e)</u>. The FDCPA

"establishes certain rights for consumers whose debts are placed in the hands of professional

debt collectors for collection, and requires that such debt collectors advise the consumers

whose debts they seek to collect of specified rights." <u>DeSantis v. Computer Credit</u>, inc., 269

F.3d 159, 161 (2d Cir. 2001).[32]

328.     The Principals and Debt Collectors proceeded to court in exploitining their knowledge

that the citizens that they were suing were unsophisticated and were not aware of the illegality

of the Principals and Debt Collectors' Complaints.

329.     It was this lack of knowledge on the part of the citizens that permitted the Principals and

Debt Collectors to take away or steal money from the citizens that the Principals and Debt

Collectors were not entitled to.

330.     By doing so the Principals and Debt Collectors, defendants violated the general

prohibition of section 1692e (prohibiting a debt collector from "us[ing] any false, deceptive,

or misleading representation or means in connection with the collection of any debt"); as well

as the specific prohibitions of subsections e(2)(A) (prohibiting a debt collector from falsely

representing "the character, amount, or legal status of any debt"); e(5) (prohibiting a debt

collector from "threat[ening] to take any action that cannot legally be taken or that is not

intended to be taken"); and e(10) (prohibiting a debt collector from "us[ing] ... any false

representation or deceptive means to collect or attempt to collect any debt or to obtain

---

[32] .     The federal courts have consistently held that purchasers or assignees of defaulted debt that collect debt for themselves are debt collectors under the FDCPA despite the fact that, on its face, the statute requires that purchasers of defaulted debt collect debt due to entities other than themselves. (See <u>Farber v. NP Funding II L.P.</u>, 1997 WL 913335, 1997 US Dist LEXIS 21245 [ED NY, Dec. 9, 1997]; <u>Pollice v National Tax Funding</u>, L.P., 225 F3d 379 [3d Cir 2000]; <u>Kimber v Federal Fin. Corp.</u>, 668 F Supp 1480 [MD Ala 1987].)

information concerning a consumer"); and, in addition, section 1692f (prohibiting a debt

collector from "us[ing] unfair or unconscionable means to collect or attempt to collect any

debt").

331.    In the Second Circuit, the question of whether a debt collector's communication complies

with the FDCPA is determined from the perspective of the "least sophisticated consumer," in

an effort to ensure that gullible and shrewd consumers alike are protected from abusive debt

collection practices. Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993). The "least

sophisticated consumer" standard applies to violations of both sections 1692e and 1692f,

Hasbrouck v. Arrow Fin. Servs., 2011 WL 1899250, at *3 (N.D.N.Y. May 19, 2011).


**A. 15 U.S.C. § 1692e, e(2)(A), e(5), and e(10)**

332.    Section 1692e of the FDCPA provides sixteen specific and nonexclusive prohibited debt

collection practices, in addition to generally prohibiting a debt collector from "us[ing] any

false, deceptive, or misleading representation or means in connection with the collection of

any debt." 15 U.S.C. § 1692e. Under the "least sophisticated consumer" standard, "collection

notices can be deceptive if they are open to more than one reasonable interpretation, at least

one of which is inaccurate." Clomon, 988 F.2d at 1319.

**B. 15 U.S.C. § 1692f**

333.    Section 1692f prohibits debt collectors from "us[ing] unfair or unconscionable means to

collect or attempt to collect any debt." 15 U.S.C. § 1692f.

334.    Defendants, Principals and Debt Collectors, certainly used unconscionable means to

collect their alleged debts; Defendants went to court and relied on the lack of knowledge of

the citizens of the legal process and their rights under the law while Defendants were suing to

collect alleged debts.

335.    Defendants violated the <u>FDCPA, 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1692e(10) and 1692f</u> by making false and misleading representations, and engaging in unfair and abusive practices: Defendants' violations include, but are not limited to:

    a.  Producing and filing fraudulent affidavits of merit and verifications that falsely claim that Defendants have personal knowledge of the facts necessary to obtain a default judgment, when in fact they do not; (Please see paragraphs above ## 182 – to 312, Amal Shetiwy, Ekaterini Skotedis, John Murphy, Louis C Yeostros, Plamen Pankoff, Spiros Argyros, Nicole Gagnon, Ahmed Hassan, Patricia Diffley, Johanna Arbelaez and Nicholas Doudalis, Saffet Koljenovic, Magdi Abdalla, Rose Cruz)

    b.  Misrepresenting that Defendants are in possession of or could obtain documentation evidencing that Plaintiffs and class members owe a debt, when in fact they do not possess and cannot obtain such documentation; Please see above paragraph;

    c.  Using fraudulent, deceptive, and misleading affidavits and affirmations to obtain default judgments against Plaintiffs and class members under false pretenses; Please see above paragraph;

    d.  Using fraudulently obtained default judgments to extract money from Plaintiffs and class members. Please see above paragraph;

    e.  As a direct and proximate result of Defendants' violations of the FDCPA, Plaintiffs have sustained actual damages in an amount to be proved at trial and are also entitled to statutory damages, costs and attorneys' fees. Please see above paragraph;

336.  <u>Of extreme importance is that</u> when the group of defendants, <u>Principals</u> (Chase Bank, N.A., American Express  Company, Bank of America, N.A., Capital One Financial Advisors, LLC. Citigroup Inc., Citibank, N.A. Capital Management Services, GE Capital Consumer Lending, Inc.) and <u>Debt Collectors</u> (Associated Recovery Systems, Midland Credit Management, a/k/a Midland Funding LLC, Calvary Portfolio Service, DebtOne, LLC CACH, LLC, NCO Financial Systems, LVNV Funding, LLC, Asset Acceptance, LLC, FIA Card Services, N.A, Portfolio Recovery) violated <u>FDCPA Section 1692f</u>  which prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." <u>15 U.S.C. § 1692f.</u>, such as mail fraud, wire fraud and obstruction of justice they simultaneously entered through a fortuitous stroke of bad luck the federal territory of <u>RICO</u> because, again simultaneously, defendants also qualify as separate and distinct[33] enterprises within the meaning of <u>18 U.S.C. § 1961(4)</u>.

337.  Section 1692f prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." <u>15 U.S.C. § 1692f</u>.


## IV.     <u>FOURTH CAUSE OF ACTION</u>

### (Unjust Enrichment)

338.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs and further allege.

339.   Unjust enrichment is a quasi-contract claim designed to prevent "a person [from] enrich[ing] himself unjustly at the expense of another." <u>IDT Corp. v. Morgan Stanley Dean</u>

---

[33] .     Please see, 18 USC § 1962 (c) --  (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Witter & Co., 12 N.Y.3d 132, 879 N.Y.S.2d 355, 907 N.E.2d 268, 274 (2009). "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir.2000).

340.     Defendants were Unjustly Enriched[34] at the expense of the Class when knowingly they enriched themselves when they proceeded to court and took money by illegal means, false testimony and by using documents that had no legal value.


## V.     FIFTH CAUSE OF ACTION

### (Punitive Damages)

341.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs and further allege.

342.     Punitive damages are available where the plaintiff demonstrates "conduct that was directed to the general public or that evinced the requisite 'high degree of moral turpitude' or 'wanton dishonesty.' " Williams v. Coppola, 23 A.D.3d 1012, 1013, 804 N.Y.S.2d 172 (4th Dep't 2005) leave dismissed 7 N.Y.3d 741, 819 N.Y.S.2d 875, 853 N.E.2d 246 (2006) (quoting Walker v. Sheldon, 10 N.Y.2d 401, 405, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961)).

343.     There may be a recovery of exemplary damages in fraud and deceit actions where the fraud, aimed at the public generally, is gross and involves high moral culpability.  (see, e. g., Bell v. Preferred Life Soc., 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15; Day v. Woodworth, 13

---

[34]  .     Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296 (2nd Cir., 2004)(" The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.

How. 363, 371, 54 U.S. 363, 371, 14 L.Ed. 181; Greene v. Keithley, 8 Cir., 86 F.2d 238, 241;

Laughlin v. Hopkinson, 292 Ill. 80, 126 N.E. 59s; Whitehead v. Allen, 63 N.M. 63, 313 P.2d

335; Saberton v. Greenwald, 146 Ohio St. 414, 66 N.E.2d 224, 165 A.L.R. 599; Craig v.

Spitzer Motors, 109 Ohio App. 376, 160 N.E.2d 537; Ann., 165 A.L.R. 614)

344.     Courts sanction an award of such damages in a fraud and deceit case where the

defendant's conduct evinced a high degree of moral turpitude and demonstrated such wanton

dishonesty as to imply a criminal indifference to civil obligations. (See Kujek v. Goldman,

150 N.Y. 176, 44 N.E. 773, supra; see, also, Hamilton v. Third Ave. R. R. Co., 53 N.Y. 25,

28, supra.)

345.     It must be remembered that the Principals and Debt Collectors send their attorneys who

had supreme knowledge of court practice and the law, to in basic terms simply overpower the

powerless and to collect monies unlawfully from the poor and the unsophisticated in any

manner they could in winning money by any means available.

346.     The Class believes the standard of "wanton dishonesty" has been met in that it is alleged

that the Principals and Debt Collectors with knowledge or willful blindness went to court and

preyed on unsophisticated (sometimes sophisticated), poor and many times unrepresented by

counsel and robbed those unsophisticated (sometimes sophisticated), poor and many times

unrepresented by counsel, citizens of their money.[35]

---

[35] .    See also Walker v. Sheldon, 10 N.Y.2d 401, 223 N.Y.S.2d 488, 179 N.E.2d 497 (N.Y., 1961):
    Punitive or exemplary damages have been allowed in cases where the wrong complained of is
morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to
deter him, as well as others who might otherwise be so prompted, from indulging in similar conduct in the
future. (See, e. g., Toomey v. Farley, 2 N.Y.2d 71, 83, 156 N.Y.S.2d 840, 848, 138 N.E.2d 221, 227;
Krug v. Pitass, 162 N.Y. 154, 161, 56 N.E. 526, 528; Hamilton v. Third Ave. R. R. Co., 53 N.Y. 25, 28;
Oehlhof v. Solomon, 73 App.Div. 329, 333-334, 76 N.Y.S. 716, 719-720.) [1] Moreover, the possibility of
an award of such damages may not infrequently induce the victim, otherwise unwilling to proceed

## VI.   SIXTH CAUSE OF ACTION

### (Costs and Prejudgment Interest)

347.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs and further allege.

348.   Plaintiffs also seek prejudgment interest of 9% pursuant to N.Y.C.P.L.R. §§ 5001, 5004. In a case such as this one, "state law governs the award of prejudgment interest." Schipani v. McLeod, 541 F.3d 158, 164–65 (2d Cir.2008) (citing Baker v. Dorfman, 239 F.3d 415, 425 (2d Cir.2000)). CPLR § 5001 operates to permit an award of prejudgment interest from the date of the unlawful taking of the Class's money.

349.   In any event, under § 5001(b), "interest upon damages" is computed not based on the date of the accrual of the action but rather "from the date incurred." Section 5001(b) further provides that "[w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."

350.   That is each of the Class's Plaintiffs shall be awarded a sum from the date that the Principals and Debt Collectors sent any mail to the effect that the Plaintiffs would be brought

---

because of the attendant trouble and expense, to take action against the wrongdoer. Indeed, such self-interest of the plaintiff has been characterized as 'Perhaps the principal advantage' of sanctioning punitive damages because it 'leads to the actual prosecution of the claim for punitive damages, where the same motive would often lead him to refrain from the trouble incident to appearing against the wrongdoer in criminal proceedings'. (McCormick, Damages (1935), pp. 276-277.) The list of actions in which punitive damages have been permitted in this State is long (see, e. g., Toomey v. Farley, 2 N.Y.2d 71, 156 N.Y.S.2d 840, 138 N.E.2d 221, supra (libel); Gostkowski v. Roman Catholic Church, etc., 262 N.Y. 320, 186 N.E. 798 (desecration of a grave); Pickle v. Page, 252 N.Y. 474, 169 N.E. 650, 72 A.L.R. 842, affg. 225 App.Div. 454, 459-460, 233 N.Y.S. 461, 466-467 (forcible abduction of a minor child); Kujek v. Goldman, 150 N.Y. 176, 179, 44 N.E. 773, 774, 34 L.R.A. 156 (fraud and deceit); see, also, 1 Clark, New York Law of Damages (1925), p. 104; McCormick, Damages (1935), pp.

to  court or whereby the Plaintiffs received mail or summons that directed them to court or that they had to contact Defendants' Principals and Debt Collectors' attorneys.


## VII.    SEVENTH CAUSE OF ACTION

### (Treble Damages)

351.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs and further allege.

352.    The Class requests treble damages as proscribed under RICO.


## III.    EIGHTH CAUSE OF ACTION

### (Emotional Distress Intentionally Inflicted)

353.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs and further allege.

354.    For those reasons stated in previous paragraphs the Principals and Debt Collectors conduct was sufficiently outrageous and extreme for an award of damages by emotional distress which was intentionally inflicted.

355.    It must be understood that the taking away of money from the unsophisticated and unrepresented for the most part litigants who could least afford that the money be taken away from them illegally caused countless emotional distress which by the Principals and Debt Collectors' knowingly did illegally.

## IX.   NINTH CAUSE OF ACTION

**(Restore and Reverse the improper Judgments collected by the Debt Collectors back to the Debtors because of the illegal means by which debts were collected.)**
**(Fraud)**

356.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs and further allege.

357.   "In considering whether a litigant is entitled to relief from a prior judgment on the ground of fraud, courts usually consider whether (1) the fraud (whether intrinsic or extrinsic) prevented a full and fair presentation of the litigant's claim or defense in the prior action or otherwise would render it unconscionable to give effect to the prior judgment, (2) the party seeking relief was diligent in discovering the fraud and attacking the judgment, and (3) evidence of the fraud is clear and convincing." Chevron Corp. v. Donziger, (S.D.N.Y., 2012).[36] * * *

> "When courts are asked to grant relief from or to decline to recognize a prior judgment on the ground of fraud, a central question is whether such an outcome is appropriate to "protect the fairness and integrity of litigation." Hence, a litigant making such a claim need not prove that the outcome of the prior case would have been different absent the fraud. It ordinarily must show only that the fraud "prevented the losing party from fully fairly presenting his case or defense" or otherwise significantly tainted the process.   Implicit in this criterion is a requirement of materiality, as judgments will not be set aside or denied recognition where the only impact of the misconduct or other taint is to prevent a litigant from presenting cumulative evidence, to deceive as to a peripheral issue, or the like."

Id. at 86-7.

---

[36].   See, See RESTATEMENT (SECOND) OF JUDGMENTS § 70 cmt. d; see also Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399, 421 (1923) ("[I]t must appear that the fraud charged really prevented the party complaining from making a full and fair defense")

358.   Again fraud obliterating the pursuit of justice was stated,

> "Furthermore, tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud."

<u>Glass Co v. Co</u>, 322 U.S. 238, 246-7, 64 S.Ct. 997, 88 L.Ed. 1250, 61 USPQ 241 (1944).

359.   Plaintiffs cannot have improved upon that which previous courts have held where unsubstantiated documents were entered into evidence as being truthful and the Principals and Debt Collectors' attorneys testified to the truth of those documents whose end was not to earn victory but to win at any cost at the expense of the unsophisticated defendants in those previous actions by any unconscionable means possible.[37]

360.   The Court must ask what was in the minds of the Principals and Debt Collectors when they did not think twice concerning their illegal activities not only at the expense of the Defendants in those cases, but the havoc they caused by coercing an overburdened judiciary to render judgments that no judiciary would have entered judgment if they had been fully aware of the unconscionable actions of the Principals and Debt Collectors.

361.   For these reasons the Class asks that the Court overturn every judgment that was rendered due to the unconcionable acts of the Principals and Debt Collectors.

---

[37] .   The elements of fraud under New York law are: '[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury.'" <u>Premium Mortg. Corp. v. Equifax</u>, Inc., 583 F.3d 103, 108 (2d Cir. 2009) (quoting <u>Lama Holding Co. v. Smith Barney Inc.</u>, 88 N.Y.2d 413, 421 (1996)).

## X.   TENTH CAUSE OF ACTION

362.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding

paragraphs and further allege.

363.    The Class requests attorney fees and costs of this litigation.

## XI.   ELEVENTH CAUSE OF ACTION
### (NY GBL § 349)

364.    Plaintiffs hereby restate, reallege, and incorporate by reference all foregoing paragraphs.

365.    New York prohibits "deceptive acts or practices in the conduct of any business, trade or

commerce or in the furnishing of any service in this state .... " N. Y. Gen. Bus. Law § 349(a).

366.    An individual "injured by reason of any violation of this section may bring an action in

his own name to enjoin such unlawful act or practice, an action to recover his actual damages

or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. Law § 349(h).

367.    As enumerated above, Defendants violated § 349 of the New York General Business Law

by using deceptive acts and practices in the conduct of their businesses.

368.    Defendants' conduct has a broad impact on consumers at large.

369.    Defendants committed the above-described acts willfully and/or knowingly.

370.    Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiffs

and class members and unless enjoined, will cause further irreparable injury.

371.    Defendants' violations include, but are not limited to:

    a.   Producing and filing fraudulent affidavits of merit and verifications that falsely claim

        that Defendants have personal knowledge of the facts necessary to obtain a default

        judgment, when in fact they do not;

   b.   Misrepresenting that Defendants are in possession of or could obtain documentation evidencing that Plaintiffs and class members owe a debt, when in fact they do not possess and cannot obtain such documentation;

   c.   Using fraudulent, deceptive, and misleading affidavits and affirmations to obtain default judgments against Plaintiffs and class members under false pretenses;

   d.   Using fraudulently obtained default judgments to extract money from Plaintiffs and class members. As a direct and proximate result of these violations of § 349 of the General Business Law, Plaintiffs and class members have suffered compensable harm and are entitled to preliminary and permanent injunctive relief, and to recover actual and treble damages, costs and attorney's fees.

### XII.     TWELFTH CAUSE OF ACTION
(NY Jud. Law § 487)
(Against the Debt Collectors who sent attorneys to Court and the Debt Collectors knew at all times that the attorneys were using fraudulent papers.).[38]

372.    Plaintiffs hereby restate, reallege, and incorporate by reference all foregoing paragraphs.

373.    New York law states that "an attorney or counsel who ... is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party. .. [i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefore by the penal law ... forfeits to the party injured treble damages, to be recovered in a civil action." - N.Y. Jud. Law § 487(1).

374.    As enumerated above, the group of defendants, Principals (Chase Bank, N.A., American Express  Company, Bank of America, N.A., Capital One Financial Advisors, LLC. Citigroup Inc., Citibank, N.A. Capital Management Services, GE Capital Consumer Lending, Inc.) and

---

[38] .    Plaintiff Class believes that the Debt Collectors when they send attorneys to Court on the Debt Collectors behalf should be held to the same standard and penalties that attorneys have to meet requiring ethics.

Debt Collectors (Associated Recovery Systems, Midland Credit Management, a/k/a Midland Funding LLC, Calvary Portfolio Service, DebtOne, LLC CACH, LLC, NCO Financial Systems, LVNV Funding, LLC, Asset Acceptance, LLC, FIA Card Services, N.A, Portfolio Recovery) defendants while qualifying as separate and distinct[39] enterprises within the meaning of 18 U.S.C. § 1961(4) also violated § 487 of the New York Judiciary Law by engaging in deceit or collusion, or consenting to deceit or collusion, with the intention to deceive courts and opposing parties.

375.     The Defendants committed the above-described acts willfully and/or knowingly.

376.     Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiffs and class members and unless enjoined, will cause further irreparable injury.

377.     The Principals and Debt Collector Defendants' violations include, but are not limited to:

    a.   Preparing fraudulent, deceptive, and misleading affidavits and affirmations;

    b.   Misrepresenting that Defendants are in possession of or could obtain documentation evidencing that Plaintiffs and class members owe a debt, when in fact they do not possess and cannot obtain such documentation;

    c.   Using fraudulent, deceptive, and misleading affidavits and affirmations to obtain default judgments against Plaintiffs and class members under false pretenses;

    d.   Using fraudulently obtained default judgments to extract money from Plaintiffs and class members.

---

[39] .     Please see, 18 USC § 1962 (c) --  (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

e.  As a direct and proximate result of these violations of § 487 of the New York
Judiciary Law, Plaintiffs and class members have suffered compensable harm and
are entitled to recover actual and treble damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray that this court:

a)  Allow the Class' action to proceed as proscribed under RICO and to award RICO
relief;

b)  Award relief for violations of Fifth and Fourteenth Amendment violations;

c)  Certify that this action proceed as a class-action on behalf of the class defined herein;

d)  Find that the Principals and Debt Collectors violated the Fair Collections Practice
Act;

e)  Permanently enjoying defendant from continuing the abuses described above and
order that defendants;

f)  Provide for damages for all class members that have had their federal protections and
common law violated;

g)  Award Plaintiffs appropriate compensatory damages, including damages for
emotional distress;

h)  Award Plaintiffs punitive damages;

i)  Award Plaintiffs attorneys' fees, the costs of maintaining this action, and interest,
including prejudgment interest;

j)  Award the Class treble damages;

k)  Vacate all previous awards and judgments to the Principals and Debt Collectors that
were gained illegally;

l)   An order enjoining and directing Defendants to comply with the NY CPLR or similar laws of their respective states in their debt collection activities, including without limitation:

1.   Directing Defendants to cease engaging in debt collection practices that violate the FDCPA, RICO, NY GBL § 349, and NY Jud. Law § 487;

2.   Directing Defendants to locate class members and notify them that a default judgment has been entered against them and that they have the right to file a motion with the court to re-open their case; to provide each class member with a copy of the original affidavit of service filed in their action; to provide each class member with a copy of the original summons and complaint; to provide each class member of the class with any judgments or copies of settlements attained; and to notify the court of the index number of each class member's case;

3.   Directing that Defendants serve process in compliance with the law in any and all future actions;

4.   Directing Defendants to produce and file affidavits of merit in future actions that truthfully and accurately reflect their personal knowledge of the facts, or lack thereof;

5.   Directing Defendants to cease engaging in debt collection practices that violate the FDCPA, RICO, NY GBL § 349, and NY Jud. Law § 487;

6.   Directing Defendants to locate class members and notify them that a default judgment has been entered against them and that they have the right to file a motion with the court to re-open their case; to provide each

class member with a copy of the affidavit of service filed in their action; to

provide each class member with a copy of the summons and complaint; to

provide each class member of the class with any judgments or copies of

settlements attained; and to notify the court of the index number of each

class member's case;

m)  Award such other and further relief as the court may deem just and proper.


Dated: December 1, 2012
        New York, New York




                                        Respectfully submitted,



                                        /s/ Phillip Jaffe

                                        Phillip Jaffe (PJ-8443)


                                        Dr. Phillip Jaffe, Esq.
                                        370 East 76th Street, Suite C1002
                                        New York, NY 10021
                                        Tel: (212) 734-3535




                                        /s/ George Bassias

                                        George Bassias, Attorney LLC
                                        21-83 Steinway Street
                                        Astoria, NY 11105
                                        Tel: (718)-721-4441

**United States District Court**
**Southern District of New York**
--------------------------------------------------------------X
Amal Shetiwy, Louis C. Yeostros,   John Murphy
Plamen Pankoft,  Patricia R. Diffley, Spiros Argyros
Johanna Arbelaez, Nicholas Doudalis, Nicole Gagnon,
Safet Koljenovic, Magdi Abdalla, Ahmed Hassan,          Civil Action No. 12 Civ. 7068 (SAS)
Ekatereine Skotedis, Rose Cruz and others similarly situated,

                                                        **CLASS ACTION**
                        Plaintiffs,                     **AMENDED COMPLAINT**

                    -against-                           **JURY TRIAL DEMANDED**

Midland Credit Management, a/k/a Midland
Funding LLC, Calvary Portfolio Service, DebtOne, LLC
Cach, LLC, NCO Financial Systems, LVNV Funding,
LLC, Asset Acceptance, LLC, FIA Card Services, N.A,
Portfolio Recovery, Chase Bank, N.A., American Express
Company, Bank of America, N.A., Capital One Financial Advisors, LLC.
Associated Recovery Systems, Citigroup Inc., Citibank, N.A.
Capital Management Services, GE Capital Consumer Lending, Inc.,
Equable Assent Financial, LLC

                        Defendants.
-------------------------------------------------------------X

═══════════════════════════════════════════════

## CLASS ACTION SUMMONS, COMPLAINT AND JURY DEMAND
═══════════════════════════════════════════════

|  |  |
|---|---|
| Phillip Jaffe, Esq. | George Bassias, Attorney LLC |
| 370 East 76th Street, Suite C1002 | 21-83 Steinway Street |
| New York, NY 10021 | Astoria, NY 11105 |
| Tel: (212) 734-3535 | 718-721-4441 |

_____

        To
Attorney for
_____

Service of a copy of the within                        is hereby admitted

Dated,

                    _____
                    Attorney for
_____

[i] .      18 USC Sec. 1962

   TITLE 18 - CRIMES AND CRIMINAL PROCEDURE
   PART I - CRIMES
   CHAPTER 96 - RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS

-HEAD-
   Sec. 1962. Prohibited activities

-STATUTE-
   (a) It shall be unlawful for any person who has received any
   income derived, directly or indirectly, from a pattern of
   racketeering activity or through collection of an unlawful debt in
   which such person has participated as a principal within the
   meaning of section 2, title 18, United States Code, to use or
   invest, directly or indirectly, any part of such income, or the
   proceeds of such income, in acquisition of any interest in, or the
   establishment or operation of, any enterprise which is engaged in,
   or the activities of which affect, interstate or foreign commerce.
   A purchase of securities on the open market for purposes of
   investment, and without the intention of controlling or
   participating in the control of the issuer, or of assisting another
   to do so, shall not be unlawful under this subsection if the
   securities of the issuer held by the purchaser, the members of his
   immediate family, and his or their accomplices in any pattern or
   racketeering activity or the collection of an unlawful debt after
   such purchase do not amount in the aggregate to one percent of the
   outstanding securities of any one class, and do not confer, either
   in law or in fact, the power to elect one or more directors of the
   issuer.
   (b) It shall be unlawful for any person through a pattern of
   racketeering activity or through collection of an unlawful debt to
   acquire or maintain, directly or indirectly, any interest in or
   control of any enterprise which is engaged in, or the activities of
   which affect, interstate or foreign commerce.
   (c) It shall be unlawful for any person employed by or associated
   with any enterprise engaged in, or the activities of which affect,
   interstate or foreign commerce, to conduct or participate, directly
   or indirectly, in the conduct of such enterprise's affairs through
   a pattern of racketeering activity or collection of unlawful debt.
   (d) It shall be unlawful for any person to conspire to violate

-87-

any of the provisions of subsection (a), (b), or (c) of this
section.