UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMAL SHETIWY, LOUIS C. YEOSTROS, JOHN MURPHY, PLAMEN PANKOFT, PATRICIA R. DIFFLEY, SPIROS ARGYROS, JOHANNA ARBELAEZ, NICHOLAS DOUDALIS, NICOLE GAGNON, SAFET KOLJENOVIC, MAGDI ABDALLA, AHMED HASSAN, EKATEREINE SKOTEDIS, VIELKA VARGAS, ROSE VILLANUEVA, on behalf of themselves and others similarly situated, | 12 Civ. 7068 (SAS) (HBP) |

                                        Plaintiffs,

                - against -

MIDLAND CREDIT MANAGEMENT, A/K/A
MIDLAND FUNDING LLC, CALVARY PORTFOLIO
SERVICE, DEBTONE, LLC, CACH, LLC, NCO
FINANCIAL SYSTEMS, LVNV FUNDING, LLC,
ASSET ACCEPTANCE, LLC, FIA CARD SERVICES,
N.A., PORTFOLIO RECOVERY, CHASE BANK, N.A.,
AMERICAN EXPRESS COMPANY, BANK OF
AMERICA, N.A., CAPITAL ONE FINANCIAL
ADVISORS, LLC, ASSOCIATED RECOVERY
SYSTEMS, CITIGROUP INC., CITIBANK, N.A.,
CAPITAL MANAGEMENT SERVICES, GE CAPITAL
CONSUMER LENDING, INC., EQUABLE ASSENT
FINANCIAL, LLC,

                                        Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

Table of Authorities ......................................................................................... iv

I.    PRELIMINARY STATEMENT .............................................................. 1

II.   BACKGROUND ..................................................................................... 3

III.  PROCEDURAL STANDARD ................................................................. 6

IV.   ARGUMENT .......................................................................................... 8

      A.   Plaintiffs' Claims Are Barred By the *Rooker-Feldman* Doctrine and *Res Judicata* (All Counts)............................................................... 8

      B.   Plaintiffs Do Not Plead a Viable RICO Claim (Count One). .............. 13

           1.   Plaintiffs Fail to Allege the Existence of a RICO Enterprise. ................. 13

           2.   Plaintiffs Fail to Allege Any RICO Predicate Acts. ............................... 15

           3.   Plaintiffs Fail to Allege the Use of Racketeering Income to Acquire an Interest in or Establish an Enterprise...................................... 19

      C.   Plaintiffs' Constitutional Claims Fail Because Defendants Are Not State or Federal Actors (Count Two)................................................. 20

      D.   Plaintiffs Cannot Pursue Claims Under the FDCPA (Count Three). ................... 21

           1.   The Creditor Defendants Are Not "Debt Collectors" for Purposes of the FDCPA. ............................................................... 21

           2.   Plaintiffs Fail to Allege a Violation of the FDCPA By Any Debt Buyer Defendant. ............................................................... 22

      E.   Plaintiffs Cannot Bring Unjust Enrichment Claims Concerning Underlying Contractual Relationships (Count Four). ......................... 22

      F.   Plaintiffs Fail to Allege Intentional Infliction of Emotional Distress (Count Eight)............................................................................ 23

      G.   Plaintiffs Cannot Plead a Claim Under New York General Business Law Section 349 (Count Eleven). ..................................................... 24

      H.   Plaintiffs Cannot Plead a Claim Under New York Judiciary Law (Count Twelve). ................................................................................... 27

I.      Article III Standing and Subject Matter Jurisdiction Are Lacking With
        Respect to Certain Claims......................................................................... 27

J.      Plaintiffs Improperly Plead Requests for Relief as Independent Causes of
        Action (Counts Five, Six, Seven, and Ten). ........................................... 30

K.      In the Alternative, if the Court Compels Arbitration as to Some Parties and
        Does Not Dismiss All Nonarbitrable Claims, It Should Stay the Action as
        to All Parties. ......................................................................................... 31

V.      CONCLUSION....................................................................................... 32

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alghanim v. Alghanim,*
    828 F. Supp. 2d 636 (S.D.N.Y. 2011) ................................................................... 32

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................................ 6, 7

*Bildstein v. MasterCard Int'l Inc.,*
    329 F. Supp. 2d 410 (S.D.N.Y. 2004) ................................................................... 26

*Blue Cross and Blue Shield of New Jersey, Inc. v. Phillip Morris USA Inc.,*
    3 N.Y.3d 200, 785 N.Y.S.2d 399 (2004) ............................................................. 25

*Blum v. Yaretsky,*
    457 U.S. 991 (1982) ............................................................................................... 20

*Burgos v. Hopkins,*
    14 F.3d 787 (2d Cir. 1994) .................................................................................... 10

*Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.,*
    701 F. Supp. 2d 340 (E.D.N.Y. 2010) ................................................................. 11

*Cedar Swamp Holdings v. Zaman,*
    487 F. Supp. 2d 444 (S.D.N.Y. 2007) ................................................................. 14

*Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC,*
    504 F.3d 229 (2d Cir. 2007) .................................................................................. 28

*Chartschlaa v. Nationwide Mut. Ins. Co.,*
    538 F.3d 116 (2d Cir. 2008) .................................................................................. 29

*Cherny v. Emigrant Bank,*
    604 F. Supp. 2d 605 (S.D.N.Y. 2009) ................................................................. 26

*Chevron Corp. v. Donziger,*
    __ F. Supp. 2d __, 2012 WL 3538749 (S.D.N.Y. July 31, 2012) ......................... 12

*Chiste v. Hotels.com L.P.,*
    756 F. Supp. 2d 382 (S.D.N.Y. 2010) ................................................................. 31

*City of New York v. Smokes-Spirits.Com, Inc.,*
    12 N.Y.3d 616, 883 N.Y.S.2d 772 (2009) ........................................................... 24

*Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*,
  70 N.Y.2d 382, 521 N.Y.S.2d 653 (1987) ........................................................................23

*Conte v. Newsday, Inc.*,
  703 F. Supp. 2d 126 (E.D.N.Y. 2010) ...............................................................................14

*Continental Petroleum Corp. v. Corp. Funding Partners, LLC*,
  No. 11 Civ. 7801, 2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012)........................................14

*Curtis & Assoc. v. Law Offices of David M. Bushman*,
  758 F. Supp. 2d 153 (E.D.N.Y. 2010) ...............................................................................16

*Daddona v. Gaudio*,
  156 F. Supp. 2d 153 (D. Conn. 2000)................................................................................16

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
  822 F.2d 1242 (2d Cir. 1987).............................................................................................18

*Edmonds v. Seavey*,
  No. 08 Civ. 5646, 2009 WL 2949757 (S.D.N.Y. Sept. 15, 2009)........................................19

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
  544 U.S. 280 (2005)............................................................................................................9

*First Capital Mgmt. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004)...............................................................................................13

*First Nationwide Bank v. Gelt Funding Corp.*,
  820 F. Supp. 89 (S.D.N.Y. 1993) .......................................................................................14

*Fleming v. Gordon Law Group, P.C.*,
  723 F. Supp. 2d 1219 (N.D. Cal. 2010) .............................................................................10

*Forjone v. Federated Financial Corp. of America*,
  816 F. Supp. 2d 142 (N.D.N.Y. 2011)...............................................................................11

*Gaidon v. Guardian Life Ins. Co. of Am.*,
  94 N.Y.2d 330, 704 N.Y.S.2d 177 (1999) ..........................................................................25

*Grant v. Unifund CCR Partners*,
  842 F. Supp. 2d 1234 (C.D. Cal. 2012) ...............................................................................9

*Gray v. Americredit Financial Services, Inc.*,
  No. 07 Civ. 4039, 2009 WL 1787710 (S.D.N.Y. June 23, 2009)...................................10, 12

*Grimes v. Fremont Gen. Corp.*,
  785 F. Supp. 2d 269 (S.D.N.Y. 2011).................................................................................17

*Gross v. Waywell*,
    628 F. Supp. 2d 475 (S.D.N.Y. 2009) ...............................................................18

*Gunn v. Ambac Assurance Corp.*,
    No. 11 Civ. 5497, 2012 WL 3188849 (S.D.N.Y. Aug. 6, 2012) ..............................9

*Harris Trust and Savings Bank v. Ellis*,
    810 F.2d 700 (7th Cir. 1987) ...............................................................12

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
    322 U.S. 238 (1944) ...............................................................12

*Hill v. Gottwald*,
    358 N.Y.S.2d 883 (Sup. Ct. N.Y. Cnty. 1974) ......................................12

*Johnson v. Smithsonian Inst.*,
    189 F.3d 180 (2d Cir. 1999) ...............................................................12

*Kashelkar v. Rubin & Rothman*,
    97 F. Supp. 2d 383 (S.D.N.Y. 2000) .......................................15, 19, 21

*Kassner v. 2nd Avenue Delicatessen Inc.*,
    No. 04 CV 7274, 2005 WL 1018187 (S.D.N.Y. Apr. 29, 2005) .........................29

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996) ...............................................................7

*Koch v. Christie's Int'l PLC*,
    699 F.3d 141 (2d Cir. 2012) ...............................................................7

*Kropelnicki v. Siegel*,
    290 F.3d 118 (2d Cir. 2002) ...............................................................9

*Lazer Electric Corp. v. Cecchi*,
    No. 97 Civ. 130, 1997 WL 311925 (S.D.N.Y. June 10, 1997) ..............................27

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...............................................................28

*Maguire v. Citicorp Retail Servs., Inc.*,
    147 F.3d 232 (2d Cir. 1998) ...............................................................21

*Marshall v. Grant*,
    521 F. Supp. 2d 240 (E.D.N.Y. 2007) ......................................................11

*Martin v. Dickson*,
    100 F. App'x 14 (2d Cir. 2004) ...............................................................31

*McKithen v. Brown,*
    626 F.3d 143 (2d Cir. 2010)............................................................................8

*Mills v. Polar Molecular Corp.,*
    12 F.3d 1170 (2d Cir. 1993)..........................................................................18

*Monahan v. New York City Dep't of Corrections,*
    214 F.3d 275 (2d Cir. 2000)..........................................................................10

*Morin v. Trupin,*
    778 F. Supp. 711 (S.D.N.Y. 1991) .................................................................7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983)...........................................................................................31

*Murphy v. Am. Home Products Corp.,*
    58 N.Y.2d 293, 461 N.Y.S.2d 232 (1983) ....................................................24

*N.Y. Auto. Ins. Plan v. All Purpose Agency & Brokerage, Inc.,*
    No. 97 Civ. 3164, 1998 WL 695869 (S.D.N.Y. Oct. 6, 1998) ....................14

*Nelson v. Publishers Circulation Fulfillment, Inc.,*
    No. 11 Civ. 1182, 2012 WL 760335 (S.D.N.Y. Mar. 7, 2012) ...................19

*Novartis Corp. v. F.T.C.,*
    223 F.3d 783 (D.C. Cir. 2000).......................................................................26

*O'Malley v. New York City Transit Authority,*
    896 F.2d 704 (2d Cir. 1990)..........................................................................15

*OSRecovery, Inc. v. One Groupe Int'l, Inc.,*
    354 F. Supp. 2d 357 (S.D.N.Y. 2005)...........................................................19

*Phillips v. Sage Colleges,*
    83 Fed. App'x 340 (2d Cir. 2003)..................................................................20

*Pub. Utils. Comm'n of D.C. v. Pollak,*
    343 U.S. 451 (1952).......................................................................................20

*R.B. Ventures, Ltd. v. Shane,*
    112 F.3d 54 (2d Cir. 1997)............................................................................23

*Rates Tech. Inc. v. Speakeasy, Inc.,*
    685 F.3d 163 (2d Cir. 2012)..........................................................................29

*Reves v. Ernst & Young,*
    507 U.S. 170 (1993).......................................................................................20

*Rosner v. Bank of China*,
    528 F. Supp. 2d 419 (S.D.N.Y. 2007)............................................................13, 15

*Salahuddin v. Cuomo*,
    861 F.2d 40 (2d Cir. 1988)............................................................................7

*San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*,
    483 U.S. 522 (1987)......................................................................................20

*Schmidt v. Fleet Bank*,
    No. 96 Civ. 9030, 1998 WL 47827 (S.D.N.Y. Feb. 4, 1998) .................................18

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994)............................................................................7

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43, 698 N.Y.S.2d 615 (1999) .........................................................26

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008)...........................................................................17

*Starfish Inv. Corp. v. Hansen*,
    370 F. Supp. 2d 759 (N.D. Ill. 2005) ..............................................................19

*Stuto v. Fleishman*,
    164 F.3d 820 (2d Cir. 1999)...........................................................................24

*Swiatkowski v. Citibank*,
    446 F. App'x 360 (2d Cir. 2011) .....................................................................9

*Swiatkowski v. Citibank*,
    745 F. Supp. 2d 150 (E.D.N.Y. 2010) ............................................................11

*Syncora Guarantee Inc. v. HSBC Mexico, S.A.*,
    861 F. Supp. 2d 252 (S.D.N.Y. 2012)..............................................................32

*Thomas v. Law Firm of Simpson & Cybak*,
    392 F.3d 914 (7th Cir. 2004) ..........................................................................22

*Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison LLP*,
    629 F. Supp. 2d 259 (S.D.N.Y. 2007)..............................................................27

*Trepel v. Dippold*,
    No. 04 Civ. 8310, 2005 WL 1107010 (S.D.N.Y. May 9, 2005)............................27

*United States v. Rigas*,
    490 F.3d 208 (2d Cir. 2007)...........................................................................18

*United States v. Turkette*,
   452 U.S. 576 (1981) ................................................................................13

*Vitolo v. Mentor H/S, Inc.*,
   426 F. Supp. 2d 28 (E.D.N.Y. 2006) .....................................................25

*Williams v. Raimo*,
   No. 9:10-cv-245, 2011 WL 6026111 (N.D.N.Y. Dec. 2, 2011) ...............24

*WorldCrisa Corp. v. Armstrong*,
   129 F.3d 71 (2d Cir. 1997)......................................................................31

*Zaretsky v. Zaretsky*,
   No. CV 10-3771, 2011 WL 8085263 (E.D.N.Y. Oct. 13, 2011) ...............6

*Zimmerman v. Poly Prep Country Day School*,
   __ F. Supp. 2d __, 2012 WL 3746197 (E.D.N.Y. Aug. 28, 2012) .........11

## STATUTES

11 U.S.C. § 521 ....................................................................................28, 29

11 U.S.C. § 541 .........................................................................................28

15 U.S.C. 1692a ........................................................................................21

18 U.S.C. § 1344 .......................................................................................18

18 U.S.C. § 1503 .......................................................................................15

18 U.S.C. § 1511 .......................................................................................19

18 U.S.C. § 1961 ..................................................................................14, 15

18 U.S.C. § 1962(a) .....................................................................13, 15, 19, 20

18 U.S.C. § 1962(c) ...................................................................................20

N.Y. Gen. Bus. Law § 349 ................................................................. passim

N.Y. Jud. Law § 487 ..........................................................................2, 6, 27

**COURT RULES**

Fed. R. Civ. P. 8 ............................................................................................................7

Fed. R. Civ. P. 9(b) .............................................................................................7, 17, 18

**OTHER AUTHORITIES**

Andrew Martin, *Automated Debt-Collection Lawsuits Engulf Courts*, N.Y. TIMES, July 12, 2010........................................................................................................4

Marjie Lundstrom & Sam Stanton, *Debtors Seethe, Sue Over Collector Tactics*, SACRAMENTO BEE, Apr. 22, 2012............................................................................4

The undersigned Defendants respectfully submit this Memorandum of Law in support of their motion to dismiss Plaintiffs' Amended Complaint dated December 1, 2012[1] (the "Complaint") based on failure to state a claim and lack of subject-matter jurisdiction.

This brief sets forth arguments for dismissal that apply generally to all of the 20 Defendants that have been sued, or to sub-groups of Defendants.[2]   Two shorter supplemental briefs will be filed separately.   Four Creditor Defendants[3] are filing a separate motion to compel arbitration and to stay the action pending completion of the arbitration proceedings.   The Debt Buyer Defendants are filing a separate brief explaining the reasons that Plaintiffs' claims against them under the Fair Debt Collection Practices Act ("FDCPA") are insufficient.

## I.   PRELIMINARY STATEMENT

Plaintiffs' Complaint purports to challenge the validity of tens of thousands of state court debt collection judgments.   Plaintiffs make conclusory allegations that Defendants obtained these judgments through false affidavits, misleading evidence, and other improper litigation tactics.

---

[1]   The Amended Complaint is dated December 1, 2012, but it was served and filed on December 6, 2012.   *See* Docket Entry No. 62.

[2]   Defendants fall into two main groups.   The first group consists of those defendants that are creditors and affiliates of those creditors (the "Creditor Defendants").   The Creditor Defendants include American Express Co., Bank of America N.A. and its affiliate FIA Card Services, N.A., Capital One Financial Corp. and its affiliate Capital One Financial Advisors, LLC, Chase Bank USA, N.A., Citibank N.A. and its parent Citigroup, Inc., and GE Capital Consumer Lending, Inc.

The second group consists of those defendants principally engaged in the business of buying and/or collecting on debts (the "Debt Buyer Defendants").   The Debt Buyer Defendants include Asset Acceptance LLC, Associated Recovery Systems, CACH LLC, Capital Management Service Group Inc., Cavalry Portfolio Service, DebtOne, LLC, Equable Assent Financial LLC, LVNV Funding LLC, Midland Credit Management, NCO Financial Systems, and Portfolio Recovery Associates LLC.

[3]   American Express Co., Citibank, N.A., Citigroup, Inc., and GE Capital Consumer Lending.

1

As a remedy, they ask this Court to issue a sweeping order vacating judgments issued by state courts throughout the country.

Plaintiffs' collateral attack on final state court judgments is foreclosed by the *Rooker-Feldman* doctrine and *res judicata*. Both of these doctrines preclude Plaintiffs from using federal courts as a vehicle to overturn or seek damages based on prior state court judgments. Courts routinely hold that plaintiffs cannot use collateral federal claims to challenge the validity of state court judgments.

Even if the Complaint could survive despite *Rooker-Feldman* and *res judicata* defenses, which it cannot, Plaintiffs' claims fail as a matter of law for several additional reasons:

- The Complaint lacks well-pleaded factual allegations regarding the existence of a coherent RICO enterprise, the commission of any RICO predicate acts, or any of the other basic requirements for a civil RICO claim.

- Plaintiffs cannot pursue constitutional due process claims because Defendants are not state or federal actors.

- The Creditor Defendants in this case cannot be sued under the FDCPA because they are not, by statutory definition, debt collectors.

- Plaintiffs' unjust enrichment claim is barred because the relationships that gave rise to the disputed debts were contractual.

- Plaintiffs' allegations do not rise to the level of outrageous conduct against them by Defendants necessary to support a claim for intentional infliction of emotional distress.

- Plaintiffs fail to plead any of the statutorily required elements for a claim under New York General Business Law Section 349.

- Plaintiffs' claims under the New York Judiciary Law fail because none of the Defendants are attorneys.

- Article III standing and subject matter jurisdiction are lacking with respect to all claims asserted by two Plaintiffs and all claims asserted against certain Defendants.

For all of these reasons, Defendants' motion should be granted and the Complaint should be dismissed with prejudice with respect to all claims and all parties.

## II.    BACKGROUND

Plaintiffs' Complaint makes conclusory allegations of improper conduct by Defendants in state court debt collection proceedings that Plaintiffs claim resulted in "fraudulently obtained judgments of default" in state courts around the country.  (Compl. ¶ 104.)

The Complaint contends that Defendants brought numerous lawsuits in state courts to collect on consumer debts.  (*Id*. ¶¶ 82, 168.)  The Complaint acknowledges that many of these lawsuits "represent legitimate claims" (*id.* ¶ 34), but asserts that Defendants engaged in "fraudulent" acts during some of these proceedings.   The allegedly fraudulent acts included: (a) submitting affidavits containing statements of facts that were untrue or that were not based on the affiant's personal knowledge, (b) failing to disclose how Defendants calculated the amount of debt owed, (c) proceeding without notifying Plaintiffs that their debt had been assigned, (d) suing on the full amount of debt even though the Creditor Defendants had "already charged off a good portion of the debt for their tax advantage," and (e) amending "the terms of [their] contract[s] with … consumer[s] after the litigation [had] begun."  (*Id.* ¶¶ 82-83, 137.)  According to Plaintiffs, these practices allowed Defendants to obtain improper default judgments against consumers, including Plaintiffs.  (*Id.* ¶¶ 104, 173.)

The Complaint's allegations are based principally on materials that have nothing to do with any of the named Plaintiffs.  The "Background" section of the Complaint consists of long block quotations from three opinions issued by the Staten Island Civil Court in unrelated debt

collection proceedings involving none of the named Plaintiffs.  (*Id.* pp. 5-8.[4])  The "Nature of the Case" description is copied verbatim from a newspaper article that appeared two and a half years ago in the New York Times.  (*Id.* ¶¶ 31-50, quoting Andrew Martin, *Automated Debt-Collection Lawsuits Engulf Courts*, N.Y. TIMES, July 12, 2010.)  The next section of the Complaint is copied verbatim, without attribution, from an article in a West Coast regional newspaper.  (*Id.* ¶¶ 51-80, quoting Marjie Lundstrom & Sam Stanton, *Debtors Seethe, Sue Over Collector Tactics*, SACRAMENTO BEE, Apr. 22, 2012.)  These sources describe debt collection practices in broad terms, provide anecdotes relating to consumers who are not parties to this case, and contain facts not relevant to Plaintiffs' allegations against Defendants.[5]

The Complaint includes no allegations whatsoever concerning any interactions between any of the named Plaintiffs and three Defendants:  Capital Management Services ("CMS"), DebtOne, LLC ("Debt One"), and Associated Recovery Systems ("ARS").

Although some of the named Plaintiffs contend that they were harmed by the alleged debt collection practices, many of them admit that they were not.  For example, five of the named Plaintiffs—Patricia Diffley, Johanna Arbelaez, Nicholas Doudalis, Safet Koljenovic, and Magdi Abdalla—are not aware of any lawsuits that have been brought against them by Defendants.

---

[4]     The quotations are attributed to opinions issued by Judge Philip S. Straniere in *American Express Bank v. Dalbis*, 2011 NY Slip. Op. 50366 (N.Y. City Civil Court 2011); *South Shore Adjustment Co. v. Pierre* (N.Y. City Civil Court 2011); and *Chase Bank USA, N.A. v. Cardello*, 27 Misc.3d 791, 896 N.Y.S.2d 856 (N.Y. City Civil Court 2010).

[5]     Copies of these two articles are attached as Exhibits B and C to the accompanying Declaration of Andrew A. Ruffino  The Sacramento Bee article also discusses the rise of abusive litigation *against* debt collectors from overzealous plaintiffs' attorneys.  This portion of the article, which was omitted from the Complaint, describes a "barrage of lawsuits … fueled by law firms and groups that encourage suits over 'picky violations' … as a way of making money."  The article reports that the complaints in these actions contain "strikingly similar language" and often fail to allege facts particular to the plaintiffs who are suing.

(Compl. ¶¶ 271, 277, 286, 295, 305.)   Four of the named Plaintiffs—Louis Yeostros, Plamen Pankoff, Nicole Gagnon, and Rose Cruz—claim that there are pending lawsuits against them, but do <u>not</u> allege that Defendants have obtained judgments in those lawsuits.   The only concrete grievance these Plaintiffs identify is that they are contesting the amount of debt owed in the ongoing underlying state court proceedings.   (*Id.* ¶¶ 217, 240, 249.[6])   Plaintiff John Murphy "is unsure, but believes default judgments were entered against him."   (*Id.* ¶¶ 228.)   One of the named Plaintiffs—Vielka Vargas—is not mentioned anywhere in the Complaint outside of the caption.   The allegations against other Defendants are often confusing, incomplete, and contradictory.

Despite the disparate circumstances of the named Plaintiffs, the Complaint seeks to certify a broad class of individuals across the country who had judgments entered against them in state court debt collection proceedings.   (*Id.* ¶ 81.)   Plaintiffs' proposed class includes "[a]ll persons in the United States who … were brought to Court and had their money taken (stolen) from them using illegal tactics—under the cover of so-called legality of process."   (*Id.* ¶ 81.) The supposed "illegal tactics" are vaguely defined as any and all acts intended "to overburden the Courts so that judges … found themselves impossible to stop the onslaught of the hundreds of improper complaints and defaults that reined into every court in the country."   (*Id.* ¶ 82.)

Based on these sweeping and unfounded allegations, Plaintiffs purport to assert 12 separate "causes of action," although some merely describe types of relief sought and do not constitute grounds for recovery.   Plaintiffs' claims are as follows: (i) RICO[7]; (ii) violation of the

---

[6]      These four Plaintiffs are represented by George Bassias in the underlying state court proceedings.   (Compl. ¶¶ 217, 240, 249.)   Mr. Bassias is counsel to Plaintiffs in this case.

[7]      Plaintiffs commenced this action on September 19, 2012 and filed an Amended Complaint on December 6, 2012.   Under this Court's Individual Rules and Procedures (Part V- (continued…)

Fifth and Fourteenth Amendments to the United States Constitution; (iii) the FDCPA; (iv) unjust enrichment; (v) punitive damages; (vi) costs and prejudgment interest; (vii) treble RICO damages; (viii) intentional infliction of emotional distress; (ix) a claim to reverse judgments obtained as a result of fraud; (x) attorneys' fees and costs; (xi) New York General Business Law Section 349; and (xii) New York Judiciary Law Section 487.   Plaintiffs also make vague allegations of a criminal and civil conspiracy, but do not specify which laws Defendants allegedly conspired to violate.  (*Id.* ¶¶ 110-28.)

For each of the causes of action, Plaintiffs seek the extraordinary and unavailable remedy of nullifying state court judgments throughout the United States.   Specifically, the Complaint asks this Court to "overturn every judgment that was rendered due to the unconscionable acts of" Defendants and to "[v]acate all previous awards and judgments" that Defendants obtained in state court debt collection proceedings.  (*Id.* ¶ 361 & p. 83.)  The Complaint also seeks an order "[d]irecting Defendants to locate class members and notify them that a default judgment has been entered against them and that they have the right to file a motion with the court to re-open their case."  (*Id.* at p. 84.)

## III.   PROCEDURAL STANDARD

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A complaint must contain more than "unadorned, the defendant-unlawfully-harmed-me accusation[s]" or "labels and conclusions." *Id.* at 678.  To

---

C), Plaintiffs are required to file a RICO Case Statement within 20 days after filing any pleading alleging RICO claims in order to assist the Court in determining whether a plaintiff has sufficiently alleged all of the required elements for a RICO claim.  Plaintiffs ignored this requirement when they filed their initial pleading, and ignored it again when they amended their Complaint.  This failure alone could justify a dismissal of the RICO claims.  *See generally Zaretsky v. Zaretsky*, No. CV 10-3771, 2011 WL 8085263, at *2 (E.D.N.Y. Oct. 13, 2011).

state a plausible claim for relief, a plaintiff must allege "sufficient factual matter" that, taken as true, "allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Id.*; *see Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (pre-*Twombly* case concluding that dismissal pursuant to Rule 8 is appropriate where the complaint is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised").

Plaintiffs' RICO claims are premised in part on alleged fraud and thus are subject to Rule 9(b)'s heightened pleading standard. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 150 (2d Cir. 2012). As to claims sounding in fraud, the Complaint must: "(1) specify the statements that the plaintiff[s] contend[] were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citation omitted). Fraud claims must be based on more than just "speculation and conclusory allegations." *Id.* (internal quotation marks omitted).

These requirements should be applied rigorously here because "all of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions." *Morin v. Trupin*, 778 F. Supp. 711, 716 (S.D.N.Y. 1991) (internal quotation marks omitted). A civil RICO action is "an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (internal quotation marks omitted), *aff'd*, 113 F.3d 1229 (2d Cir. 1997). "[C]ourts should strive to flush out frivolous RICO allegations at an early stage of the litigation" because the "mere assertion of a RICO claim … has an almost inevitable stigmatizing effect" on defendants. *Id.* (internal quotation marks omitted).

IV.   **ARGUMENT**

A.    **Plaintiffs' Claims Are Barred By the *Rooker-Feldman* Doctrine and *Res Judicata* (All Counts).**

The crux of Plaintiffs' Complaint is that Defendants fraudulently obtained "tens of thousands of default judgments" in state courts throughout the country.  (Compl. ¶ 174.)  But instead of seeking relief in the courts that issued the decisions against them or the applicable appellate courts, Plaintiffs ask this Court to intervene and vacate thousands of state court judgments on a class-wide basis.   Plaintiffs' claims collaterally attacking valid state court judgments are barred by the *Rooker-Feldman* doctrine and *res judicata*.

<u>First</u>, under *Rooker-Feldman*, federal courts lack subject-matter jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010) (internal quotation marks omitted).  The *Rooker-Feldman* doctrine applies when "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *Id.*

Plaintiffs' claims fall squarely within *Rooker-Feldman*.  Each claim in the Complaint is predicated on the harm allegedly inflicted upon the purported class by state court debt collection judgments.  For example, Plaintiffs purport to represent a nationwide class of individuals "who were brought to Court and had their money taken … from them using illegal tactics."  (Compl. ¶ 81.)  Plaintiffs also contend that Defendants' practices allegedly "resulted in fraudulently obtained judgments of default being entered, which [have], in turn, caused serious harm."  (*Id.* ¶ 104.)  To remedy the alleged harm suffered by class members, Plaintiffs ask this Court to

"overturn every judgment that was rendered due to the unconscionable acts of" Defendants and to "[v]acate all previous awards and judgments" that Defendants obtained in state court debt collection proceedings.  (*Id*. ¶ 360, p. 83.)  Because each claim in the Complaint requires this Court to review state court debt collection judgments, the Complaint should be dismissed in its entirety pursuant to the *Rooker-Feldman* doctrine.

The Second Circuit's decision in *Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir. 2002), is instructive.[8]  The plaintiff in that case alleged that debt collectors violated the FDCPA and several state laws by proceeding to judgment against her in a state court debt collection action, despite having represented to her attorney that they would not do so without first contacting her lawyer.  *Id*. at 122.  Because the plaintiff's claim "would effectively declare the state court judgment fraudulently procured and thus void," the court held that it was barred by *Rooker-Feldman*.  *Id*. at 129.  The court also rejected the plaintiff's argument that "she was not afforded a reasonable opportunity to raise her claims" because of "the deception of [the defendants]."  *Id*. at 128 (internal quotation marks omitted).  Other courts have likewise held that *Rooker-Feldman* bars attempts by plaintiffs to challenge the validity of state court debt collection judgments in federal court.[9]

---

[8]     *Kropelnicki* was narrowed on other grounds by *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005).  In *Kropelnicki*, this Court stated that *Rooker-Feldman* applied when a claim is "inextricably intertwined" with a state court proceeding.  290 F.3d at 128.  Although the Supreme Court subsequently modified the "inextricably intertwined" standard in *Exxon*, the outcome in *Kropelnicki* would have been the same under the post-*Exxon* standard.  *See Swiatkowski v. Citibank*, 446 F. App'x 360, 361 (2d Cir. 2011) (noting that *Kropelnicki* applies where the plaintiff's claims "would effectively amount to 'declar[ing] the state court judgment fraudulently procured and thus void'" (quoting *Kropelnicki*, 290 F.3d at 129)).

[9]     *See, e.g., Gunn v. Ambac Assurance Corp.*, No. 11 Civ. 5497, 2012 WL 3188849, at *2 (S.D.N.Y. Aug. 6, 2012) (*Rooker-Feldman* barred plaintiff's RICO claims premised on an underlying state-court foreclosure proceeding); *Grant v. Unifund CCR Partners*, 842 F. Supp. 2d (continued…)

Second, even if Plaintiffs' claims could survive the *Rooker-Feldman* doctrine, *res judicata* prohibits Plaintiffs from using federal claims as vehicles to overturn or seek damages based on prior state court debt collection judgments.  Under *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000) (internal quotation marks omitted).  A plaintiff is therefore barred from asserting "a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

Here, the Complaint presents claims that arise from the same factual grouping as the prior state court debt collection proceedings.  Plaintiffs contend that Defendants wrongfully obtained default judgments by submitting false or misleading affidavits, failing to disclose how Defendants calculated the amount of debt owed, or amending the terms of consumer contracts after the litigation had begun.  (Compl. ¶¶ 82-83, 137.)  These are precisely the types of issues that should have been raised in the state-court action because they pertain to alleged improprieties during state court debt collection proceedings.  Because Plaintiffs seek to relitigate issues that could have been raised in state court, the Complaint is barred by *res judicata.*

---

1234, 1239 (C.D. Cal. 2012) (*Rooker-Feldman* barred debtor's claim that affidavit submitted in support of request for default judgment was false and fraudulent); *Fleming v. Gordon & Wong Law Group, P.C.*, 723 F. Supp. 2d 1219, 1223 (N.D. Cal. 2010) ("[T]here is no question that the *Rooker-Feldman* doctrine bars a district court from reviewing an FDCPA claim that challenges the validity of a debt authorized by a state court judgment."); *Gray v. Americredit Financial Services, Inc.*, No. 07 Civ. 4039, 2009 WL 1787710, at *5-*6 (S.D.N.Y. June 23, 2009) (*Rooker-Feldman* barred property owner from asserting FDCPA claims after the state court had issued a judgment requiring plaintiff to pay the debt).

Several courts have held that *res judicata* prohibits plaintiffs from asserting claims or defenses in federal court that could have been raised during state court debt collection proceedings.  For example, in *Forjone v. Federated Financial Corp. of America*, 816 F. Supp. 2d 142 (N.D.N.Y. 2011), the plaintiff alleged that a credit card issuer violated RICO, the FDCPA, and other federal and state laws in the course of collecting a credit card loan.  *Id.* at 144, 150-51.  Before the plaintiff filed his federal lawsuit, a state court entered a default judgment for the debt owed on the plaintiff's credit card.  *Id.* at 144-45.  The court held that the plaintiff's claims were barred by *res judicata* and the *Rooker-Feldman* doctrine because they "arise from the same factual grouping at the center of the prior state-court proceeding" and "are challenges to the validity of the state-court judgment."  *Id.* at 146-52; *see also Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 352-53 (E.D.N.Y. 2010) (applying *res judicata* to bar claims under the FDCPA, the Fair Credit Reporting Act, the New York General Business Law, and state common law because all of the claims could have been raised in the state court action and involved the same factual allegations); *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 167, 171-72 (E.D.N.Y. 2010) (*Rooker-Feldman* and *res judicata* barred mortgagor from asserting RICO claims to collaterally attack a state court foreclosure judgment).

Plaintiffs cannot avoid *res judicata* by claiming that the state court judgments were procured by fraud.  *First*, it is well-settled that the types of fraud alleged by Plaintiffs— "[c]ommitting perjury, submitting false evidence and concealing evidence"—do not affect the preclusive effect of the state court judgments.  *See, e.g.*, *Zimmerman v. Poly Prep Country Day School*, __ F. Supp. 2d __, 2012 WL 3746197, at *14-*15 (E.D.N.Y. Aug. 28, 2012); *Marshall v. Grant*, 521 F. Supp. 2d 240, 244-45 (E.D.N.Y. 2007) ("[Plaintiff's] assertions that the state court judgment was procured by perjury and misrepresentations does not take the claims asserted in

this case out of the purview of res judicata."). Furthermore, there is no recognized fraud exception to the *Rooker-Feldman* doctrine. *See Johnson v. Smithsonian Inst.*, 189 F.3d 180, 186-87 (2d Cir. 1999) ("This Court has never recognized a blanket fraud exception to *Rooker-Feldman*.").

*Second*, Plaintiffs are required to assert any fraud defense in the state courts that rendered the initial judgments. Under New York law, "[t]he remedy for fraud allegedly committed during the course of a legal proceeding must be exercised in that lawsuit by moving to vacate the civil judgment (CPLR 5015(a)(3)), and not by another plenary action collaterally attacking that judgment." *Gray*, 2009 WL 1787710, at *6 (internal quotation marks omitted).[10] If Plaintiffs contend that Defendants' alleged fraud affects the validity of the state court judgments, they must assert those arguments in the courts that rendered the judgments and not before this Court. *See Hill v. Gottwald*, 358 N.Y.S.2d 883, 885 (Sup. Ct. N.Y. Cnty. 1974) ("The foreign judgment cannot be … collaterally attacked and the asserted defense of fraud is available only in the court of original jurisdiction."); *cf. Harris Trust and Savings Bank v. Ellis*, 810 F.2d 700, 705 (7th Cir. 1987) ("[O]nly the rendering court may set aside a judgment based on fraud ….").[11]

---

[10]     The authorities cited in the Complaint as support for challenging state court judgments in federal court are inapposite. One case cited by Plaintiffs involved a challenge to an attempt to enforce a foreign judgment. (*See* Compl. ¶ 357 (quoting *Chevron Corp. v. Donziger*, __ F. Supp. 2d __, 2012 WL 3538749, at *1 (S.D.N.Y. July 31, 2012)).) A second case involved the power of a court to vacate *its own* judgment based on alleged fraud. (*See* Compl. ¶ 358 (citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 239 (1944)).) Neither case involved a request by a non-prevailing litigant asking a federal court to overturn a judgment issued by a state court.

[11]     Four of the named Plaintiffs—Louis Yeostros, Plamen Pankoff, Nicole Gagnon, and Rose Cruz—allegedly are involved with debt collection lawsuits that remain pending in New York State court (Compl. ¶¶ 226, 240, 249, 310), which, if taken as true, means they are not members of the proposed class. The Complaint seeks relief only on behalf of individuals who "had their money … taken from them" through the entry of default judgments. (*Id.* ¶ 81.)

**B.      Plaintiffs Do Not Plead a Viable RICO Claim (Count One).**

Even if Plaintiffs' claims survived under *Rooker-Feldman* and *res judicata*—and they do

not—dismissal of Plaintiffs' RICO claims would still be warranted because Plaintiffs have not

pleaded a viable claim under Section 1962(a) of the RICO statute.   Civil RICO plaintiffs suing

under that provision must demonstrate, among other things: (a) the existence of a RICO

"enterprise," (b) the commission of RICO predicate acts as part of a "pattern of racketeering

activity," and (c) the use by Defendants of income received from the pattern of racketeering

activity to acquire an interest in or establish an enterprise.   *Rosner v. Bank of China*, 528 F.

Supp. 2d 419, 428-29, 430-31 (S.D.N.Y. 2007).   The Complaint acknowledges that these are

required elements (Compl. ¶¶ 139-140), but fails to plead any of them.

**1.      Plaintiffs Fail to Allege the Existence of a RICO Enterprise.**

The Complaint fails to allege facts sufficient to support the existence of a RICO

enterprise.   A RICO enterprise consists of "a group of persons associated together for a common

purpose of engaging in a course of conduct."   *United States v. Turkette*, 452 U.S. 576, 583

(1981).   To plead the existence of a RICO enterprise, Plaintiffs must allege sufficient facts to

demonstrate the "hierarchy, organization, and activities" of the alleged association and whether

"its members functioned as a unit."   *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159,

174 (2d Cir. 2004) (internal quotation marks omitted).   A plaintiff's "conclusory naming of a

string of entities does not adequately allege an enterprise."   *Id.* at 175 (internal quotation marks

omitted).

Here, Plaintiffs make only boilerplate, conclusory statements that (a) "[e]ach and every

Defendant is employed by or associated with the enterprise," and (b) the relationships between

the Defendants "are longstanding and ongoing."   (Compl. ¶¶ 156, 162.)   These allegations in no

way suggest that the 20 different Defendants functioned as a cohesive, coordinated organization

13

formed for the purpose of pursuing shared criminal objectives.  *See Continental Petroleum Corp. v. Corp. Funding Partners, LLC*, No. 11 Civ. 7801, 2012 WL 1231775, at *5 (S.D.N.Y. Apr. 12, 2012) (similarly "sparse" allegations "fall far short of alleging that defendants collectively functioned an association-in-fact sufficient to constitute a RICO enterprise").   Plaintiffs must allege an integrated interconnected criminal enterprise, not just a "series of discontinuous independent frauds."  *First Nationwide Bank v. Gelt Funding, Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993); *see also Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 135 (E.D.N.Y. 2010) (allegations of "a series of independent frauds" are insufficient "to support a conclusion that the various defendants were associated with one another for a common purpose"); *Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 451 (S.D.N.Y. 2007) ("[A] series of independent fraudulent transactions … is insufficient to justify a conclusion that the perpetrator and the accomplices together constituted an ongoing organization or functioned as a continuing unit."); *N.Y. Auto. Ins. Plan v. All Purpose Agency & Brokerage, Inc.*, No. 97 Civ. 3164, 1998 WL 695869, at *6 (S.D.N.Y. Oct. 6, 1998) ("[A] series of discontinuous independent frauds is not an 'enterprise.'").

Paragraph 150 of the Complaint suggests that Plaintiffs may be asserting in the alternative that all of the Creditor Defendants (as a group) constitute one enterprise, and all of the Debt Buyer Defendants (as a group) constitute another enterprise.[12]  But the Complaint does not

---

[12]     Paragraph 150 of the Complaint alleges:  "Within each group of defendants, Principals (Chase Bank, N.A., American Express Company, Bank of America, N.A., Capital One Financial Advisors, LLC. Citigroup Inc., Citibank, N.A. Capital Management Services, GE Capital Consumer Lending, Inc.) and Debt Collectors (Associated Recovery Systems, Midland Credit Management, a/k/a Midland Funding LLC, Calvary Portfolio Service, DebtOne, LLC CACH, LLC, NCO Financial Systems, LVNV Funding, LLC, Asset Acceptance, LLC, FIA Card Services, N.A, Portfolio Recovery) defendants also qualify as separate and distinct enterprises within the meaning of 18 U.S.C. § 1961(4)."  Paragraph 161 includes a similar allegation.

include any well-pleaded factual allegations suggesting coordination and cohesion between the members of these two supposed alternative enterprise groups.

### 2. Plaintiffs Fail to Allege Any RICO Predicate Acts.

RICO Section 1962(a) requires Plaintiffs to demonstrate that each Defendant engaged in a "pattern of racketeering activity" by committing two or more predicate criminal acts. *Rosner*, 528 F. Supp. 2d at 429. Plaintiffs recite predicate acts of obstruction of justice, mail fraud, wire fraud, bank fraud, and obstruction of state law with the intent to facilitate an illegal gambling business (Compl. ¶ 144), but fail to plead facts supporting any of those claims. Plaintiffs also assert violations of the FDCPA as predicate acts (*id.*), but such violations are not predicate offenses under RICO. *See* 18 U.S.C. § 1961(1) (enumerating RICO predicate offenses).

(a) <u>Obstruction of Justice</u>. Plaintiffs cannot rely on purported obstruction of justice predicate acts, *see* 18 U.S.C. § 1503, because this statute applies only to alleged obstruction of justice in *federal* proceedings. *See O'Malley v. New York City Transit Authority*, 896 F.2d 704, 707-08 (2d Cir. 1990) (reliance on obstruction of justice as a RICO predicate act was "preposterous" because the plaintiff's allegations related to proceedings in state court). The allegations in the Complaint pertain solely to alleged misconduct in state court debt collection proceedings. (*See, e.g.,* Compl. pp. 4-8 & ¶¶ 48-50, 125.) As a result, these claims fail as a matter of law. *See also Kashelkar v. Rubin & Rothman*, 97 F. Supp. 2d 383, 392 (S.D.N.Y. 2000) (RICO claim based on obstruction of justice failed "as a matter of law" because it was based on debt collection proceedings in state court).

(b) <u>Mail and Wire Fraud</u>. Plaintiffs' mail and wire fraud claims are predicated on Defendants' allegedly fraudulent litigation tactics in debt collection cases. (Compl. ¶¶ 167-176.) Specifically, Plaintiffs allege that Defendants wrongfully obtained default judgments by using

false or misleading affidavits.  (*Id.* ¶ 167.)  These allegations are insufficient to support a predicate act of mail or wire fraud for several reasons.

*First*, numerous courts have held that allegations about false documents and affidavits in essence are claims for abuse of process or malicious prosecution and are insufficient to plead a viable RICO predicate act of mail or wire fraud.  *See Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 171-74 (E.D.N.Y. 2010) ("join[ing] a long line of cases in finding" that "litigation activities" such as  filing "false affidavits" and "perjury" are insufficient to "form the basis for RICO predicate acts"); *Daddona v. Gaudio*, 156 F. Supp. 2d 153, 162 (D. Conn. 2000) (allegations of "false documents and affidavits" are insufficient as predicate acts for RICO because they "at best amount to a vague abuse of process or malicious prosecution claim").

The court's holding in *Curtis* is applicable here.  There, the court held that the filing of a frivolous lawsuit and the submission of false affidavits cannot form the basis of a RICO claim. *Id.* at 171-73.  If such claims were permitted, the court reasoned, federal courts would face an "endless cycle" of litigation in which plaintiffs and defendants sue and countersue each other "based upon the many allegations and statements" that each party "contend[s] are frivolous or false." *Id.* at 173.  The court also identified the significant federalism concerns implicated by plaintiffs' attempts to collaterally attack state court proceedings:

> Should plaintiffs' vague allegations of "phony" and "frivolous" litigation, "suborned perjury" and "deceit of court" have merit, plaintiffs should direct such claims to the state courts where these acts are allegedly occurring …. [T]his court has full confidence that New York State courts … are fully competent to address any such wrongs and this court is unconvinced that such issues should be re-litigated in federal court under the guise of a RICO action.

*Id.* at 173-74.  Likewise here, Plaintiffs' contention that Defendants obtained default judgments through allegedly fraudulent litigation tactics is insufficient to state a predicate act of mail or wire fraud.

*Second*, Plaintiffs' allegations of mail and wire fraud are defective because they have not been pleaded with the specificity required by Rule 9(b).  Plaintiffs' allegations about these purported fraudulent acts are bare-bones and conclusory.  Plaintiffs assert:

> The Principals and Debt Collectors pattern of racketeering activity had more than the requirement of at least two acts of racketeering activity—and Plaintiffs' allege that they were more than 10,000 acts of illegality by the Principals and Debt Collectors—and more than probably more than 100,000 acts of illegality by the Principals and Debt Collectors.
>
> The Defendant Principals and Debt Collectors engaged in this "pattern of racketeering activity" by their numerous mailings and sending their attorneys to Court with knowledge and also willful blindness that their actions and their court documentation was illegal.  It would not be credible to believe that Defendants did not similarly engage in that same "pattern of racketeering activity" against the Class thousands, if not millions of times.

(Compl. ¶¶ 135, 142.)  The invocation of the labels "racketeering activities," "acts of illegality," "mail fraud," and "wire fraud," are devoid of any specific information and do not satisfy the heightened pleading standards of Rule 9(b). This is particularly true with respect to Creditor Defendants who are not alleged to have had any role in the underlying state court debt collection proceedings.  For these entities, the Complaint does not include any non-conclusory allegations of fraudulent intent.   *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) (complaint did not meet Rule 9(b) pleading requirements where plaintiff did not specify the individuals involved and did not allege any specific fraudulent communications in relation to predicate mail and wire fraud acts); *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 301 (S.D.N.Y. 2011) ("Plaintiffs' conclusory allegation that Defendants had a pattern of

using the mail and wires to commit fraudulent acts ... without any specifics, fails to meet the particularity requirements of Rule 9(b) ....").

Furthermore, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). It is not enough to "vaguely attribute[] the alleged fraudulent statements to 'defendants,'" as Plaintiffs do in their Complaint. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). "In cases with multiple defendants, Rule 9(b) requires that the complaint allege facts that specify each defendant's connection to the fraud. General allegations against a group of defendants are insufficient." *Schmidt v. Fleet Bank*, No. 96 Civ. 9030, 1998 WL 47827, at *5 (S.D.N.Y. Feb. 4, 1998); *see also Gross v. Waywell*, 628 F. Supp. 2d 475, 495 (S.D.N.Y. 2009) ("[L]umping the defendants into collective allegations results in a failure to demonstrate the elements of § 1962(c) with respect to each defendant individually, as required.").

(c)  Bank Fraud.  Plaintiffs do not explain how Defendants have committed bank fraud. Under the bank fraud statute, a plaintiff must show that the defendant "intended to victimize *the bank* by exposing it to loss." *United States v. Rigas*, 490 F.3d 208, 231 (2d Cir. 2007) (emphasis added); *see also* 18 U.S.C. § 1344 (defendants must either "defraud a financial institution" or "obtain any of the moneys ... owned by ... a financial institution, by means of false or fraudulent pretenses"). The Complaint does not contain a single allegation that Defendants—many of whom are banks themselves—engaged in a scheme to defraud financial institutions. Accordingly, Plaintiffs may not rely on alleged bank fraud as a RICO predicate act.

Plaintiffs also lack standing to assert a RICO claim based on bank fraud. Courts have universally held that "a RICO plaintiff who is not a financial institution under the statute lacks

18

standing or injury to bring a RICO claim based on bank fraud as the predicate act." *Edmonds v. Seavey*, No. 08 Civ. 5646, 2009 WL 2949757, at *6 n. 8 (S.D.N.Y. Sept. 15, 2009); *see also Starfish Inv. Corp. v. Hansen*, 370 F. Supp. 2d 759, 773 (N.D. Ill. 2005).

(d)    Obstruction with Intent to Facilitate Illegal Gambling.   Plaintiffs fail to explain how Defendants have violated 18 U.S.C. § 1511, which prohibits the obstruction of state law enforcement "with the intent to facilitate an illegal gambling business."   The statute defines "gambling" to include "pool-selling, bookmaking, maintaining slot machines, roulette wheels, or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein."  *Id.* § 1511(b)(2).  The Complaint in this case has nothing whatsoever to do with any of these activities.  *See Nelson v. Publishers Circulation Fulfillment, Inc.*, No. 11 Civ. 1182, 2012 WL 760335, at *5 (S.D.N.Y. Mar. 7, 2012) ("The complaint cannot possibly be construed to accuse [defendant] of engaging in illegal gambling ….   This statute is irrelevant ….").

**3.    Plaintiffs Fail to Allege the Use of Racketeering Income to Acquire an Interest in or Establish an Enterprise.**

RICO Section 1962(a) prohibits "us[ing] income received from a pattern of racketeering activity to acquire an interest in or establish an enterprise engaged in or affecting interstate commerce."  *Kashelkar*, 97 F. Supp. 2d at 394.  Plaintiffs acknowledge that under this provision, "'a plaintiff must allege an injury resulting from the defendant's investment of racketeering income in an enterprise (*i.e.*, an 'investment injury'), separate and apart from any injury caused by the predicate acts themselves.'"  (Compl. ¶ 147 (quoting *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 354 F. Supp. 2d 357, 371 (S.D.N.Y. 2005)).)

Plaintiffs' Complaint does not articulate the basic required elements for a Section 1962(a) claim.   There are no allegations relating to any investments of racketeering income, no allegations defining a plausible "enterprise" in which such income might have been invested, and

no allegations identifying any injury from "investments" that is distinct from injuries caused by the underlying alleged predicate acts.  As a result, Section 1962(a) has no application here.[13]

### C. Plaintiffs' Constitutional Claims Fail Because Defendants Are Not State or Federal Actors (Count Two).

Count Two of the Complaint asserts that conduct by Defendants in the course of debt collection actions violated the due process clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution.  (Compl. ¶¶ 320-25.)  But Plaintiffs cannot pursue such claims against private parties such as Defendants.   "With the exception of the Thirteenth Amendment prohibition against slavery, the United States Constitution regulates only government action, not that of private parties."  *Phillips v. Sage Colleges*, 83 F. App'x 340, 341 (2d Cir. 2003).  The Fifth Amendment has long been interpreted to "apply to and restrict only the Federal Government and not private persons."  *Pub. Utils. Comm'n of D.C. v. Pollak*, 343 U.S. 451, 461 (1952); *accord San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542 (1987).  Similarly, the parallel Due Process Clause of the Fourteenth Amendment applies only to state actors.  *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982).   To support their claim that Defendants are "guilty of due process violations" (Compl. ¶ 322), Plaintiffs would need to plead that Defendants are "state actor[s]" or were "acting under color of state law."  *Phillips*, 83 F. App'x at 341.  A private party does not become a state actor, and does not act under color of

---

[13]     Paragraph 148 of the Complaint cites *Reves v. Ernst & Young*, 507 U.S. 170 (1993), and asserts that Defendants played "'some part in directing'" the alleged enterprise's affairs within the meaning of that case.  The *Reves* decision articulates the "operation or management" test for potential liability under Section 1962(c) of the RICO statute.  Section 1962(c) makes it unlawful for a RICO "person" to "conduct or participate, directly or indirectly, in the conduct of" the affairs of a RICO "enterprise."  Defendants do not believe that the *Reves* decision has any direct bearing on the claim under Section 1962(a) that Plaintiffs assert in their Complaint (*see* Compl. Count One, page 38).  As explained above, Section 1962(a) pertains to investments of income derived from alleged racketeering activity.  *Reves* does not address RICO Section 1962(a).

state law, merely by seeking redress in a court system operated by the government. *See, e.g.*, *Kashelkar*, 97 F. Supp. 2d at 390 (creditor's prosecution of a debt collection proceeding in a state court system did not make the creditor a state actor).

**D.    Plaintiffs Cannot Pursue Claims Under the FDCPA (Count Three).**

Plaintiffs fail to state a claim for a violation of the FDCPA because (1) the Creditor Defendants are not subject to the FDCPA and (2) there are no well-pleaded factual allegations identifying conduct by the Debt Buyer Defendants that could support a claim under the statute.

**1.    The Creditor Defendants Are Not "Debt Collectors" for Purposes of the FDCPA.**

Plaintiffs allege violations of the FDCPA, 15 U.S.C. § 1692 *et seq.*, as to all Defendants. (Compl. ¶ 330.)  But the FDCPA applies only to "debt collectors," which the statute defines as persons or entities that are "in any business the principal purpose of which is the collection of any debts."  15 U.S.C. § 1692a(6).  The statute expressly excludes from the definition of "debt collector" "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." *Id.* § 1692a(6)(A).[14]

Several of the Defendants in this action are the creditors of credit card customers who allegedly did not pay their bills, or affiliates of those creditors.  These Creditor Defendants[15] are creditors with respect to the alleged underlying debts, and it is well settled that "creditors are not subject to the FDCPA." *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998).  Even a creditor that maintains its own debt collection department is not subject to the FDCPA. *Id.*

---

[14]    "The term 'creditor' means any person who offers or extends credit creating a debt or to whom a debt is owed …." 15 U.S.C. § 1692a(4).

[15]    The Creditor Defendants are identified in footnote 2 above.

Plaintiffs also allege that the Creditor Defendants failed to provide to debtors a notice of assignment, copies of the card holder agreements, and copies of a signature card.   (Compl. ¶¶ 229, 233, 276, 282, 290, 300.)  But creditors are not required to provide such notice to debtors under the FDCPA.  *See e.g.*, *Thomas v. Law Firm of Simpson & Cybak*, 392 F.3d 914, 917 (7th Cir. 2004) ("[T]he FDCPA makes debt collectors, but not creditors, responsible for notifying debtors of their validation rights ….").

The FDCPA claim accordingly should be dismissed to the extent it is asserted against the Creditor Defendants.

### 2. Plaintiffs Fail to Allege a Violation of the FDCPA By Any Debt Buyer Defendant.

Plaintiffs also fail to plead a plausible FDCPA claim against any of the Debt Buyer Defendants, for the reasons explained in their separately filed supplemental brief.

### E. Plaintiffs Cannot Bring Unjust Enrichment Claims Concerning Underlying Contractual Relationships (Count Four).

Plaintiffs' unjust enrichment claim is also foreclosed as a matter of law.   Plaintiffs' allegations relate to debts that arose pursuant to credit card account agreements.   The Creditor Defendants allegedly were parties to credit card agreements with Plaintiffs, and the Debt Buyer Defendants allegedly commenced actions pursuant to assignments of the creditors' contractual rights to collect debts.   (*See, e.g.*, Compl. ¶ 35 (explaining that the debt collection proceedings described in the Complaint arise from "credit contract[s]").)[16]  Where—as here—the subject matter of a claim is covered by a contract, recovery on an unjust enrichment theory is precluded.

---

[16]     *See also* Compl. p. 6 (quoting state court opinion asserting that action by debt collector was not permissible because "the credit card holder had his agreement with the credit card issuer"); *id.* ¶ 137(d) (accusing each defendant of trying to "alter[] the terms of its contract with its consumer").

*See, e.g.*, *Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 656 (1987); *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 60 (2d Cir. 1997) ("[C]laims for unjust enrichment … are non-contractual, equitable remedies that are inapplicable if there is an enforceable contract governing the subject matter." (internal citations omitted)).   Count Four accordingly should be dismissed.

### F.   Plaintiffs Fail to Allege Intentional Infliction of Emotional Distress (Count Eight).

Plaintiffs' Count Eight suffers from the same vague, skeletal pleading that characterizes every other claim Plaintiffs have sought to assert.  Plaintiffs' intentional infliction of emotional distress claim merely incorporates the allegations of previous paragraphs and asserts only two new paragraphs, including the conclusory statement that Defendants' "conduct was sufficiently outrageous and extreme for an award of damages by emotional distress which was intentionally inflicted."  (Compl. ¶¶ 353-55.)[17]  The only reference to emotional distress in the "preceding paragraphs" is part of Plaintiffs' request that this Court "take judicial notice" that "on any given day one can visit 111 Centre Street, New York City" and see the "terror and emotional distress" suffered by individuals whose money is allegedly taken "by all illegal means" by Defendants. (*Id.* ¶ 146 n.15.)

These allegations, even if true, do not come close to meeting the high standard for pleading a claim for intentional infliction of emotional distress.  Such a claim requires conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

---

[17]    Plaintiffs' other new paragraph provides: "It must be understood that the taking away of money from the unsophisticated and unrepresented for the most part litigants who could least afford that the money be taken away from them illegally caused countless emotional distress which by the Principals and Debt Collectors' knowingly did illegally."  (Compl. ¶ 355.)

*Murphy v. Am. Home Products Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236 (1983) (citation omitted).  Claims for intentional infliction of emotional distress are "highly disfavored … under New York law and it is rare for such claims to survive dispositive motions." *Williams v. Raimo*, No. 9:10-cv-245, 2011 WL 6026111, at *6 (N.D.N.Y. Dec. 2, 2011) (citation and internal quotation marks omitted).  "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (affirming dismissal because the plaintiff failed to allege sufficiently egregious acts).

Plaintiffs' allegations do not describe any "outrageous" and "extreme" conduct by a named Defendant against a named Plaintiff.  Furthermore, the Complaint lacks specific allegations of emotional distress suffered by any particular Plaintiff.  For example, Plaintiffs Patricia Diffley, Johanna Arbelaez, Nocholais Doudalis, Safet Koljenovic and Magdi Abdalla are "not aware if [they were] sued by any debt buyers or creditors."  (Compl. ¶¶ 271, 277, 286, 295, 305.)  Similarly, John Murphy admits that he did not appear in any action against him and is "unsure, but believes default judgments were entered against him."  (*Id.* ¶¶ 228.)  These facts readily demonstrate that particular Plaintiffs plead no distress whatsoever.  Accordingly, the intentional infliction of emotional distress claim should be dismissed as well.

### G.   Plaintiffs Cannot Plead a Claim Under New York General Business Law Section 349 (Count Eleven).

The Complaint also lacks well-pleaded factual allegations supporting the required elements for a claim under Section 349 of the New York General Business Law.  To assert a Section 349 claim, a plaintiff must allege that "a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result." *City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621, 883 N.Y.S.2d 772, 776 (2009).

Plaintiffs have not adequately pleaded any of these elements. Plaintiffs are attempting to transform a statute targeted at misrepresentations made in consumer transactions into a vehicle for bringing untimely challenges to the sufficiency of complaints and affidavits submitted in state court proceedings. The proper forums for these challenges were the proceedings themselves. Section 349 was not designed to provide an alternate form of appellate review for every consumer litigant who is displeased with the outcome of a state court case.

*First*, the Plaintiffs' claims concerning alleged misconduct in litigation proceedings do not target "consumer-oriented conduct." A "typical violation" of Section 349 "involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising." *Vitolo v. Mentor H/S, Inc.*, 426 F. Supp. 2d 28, 33 (E.D.N.Y. 2006) (citation and internal quotation marks omitted). The allegations underlying Plaintiffs' Section 349 claim—for example, that defendants used "fraudulent, deceptive, and misleading affidavits … to obtain default judgments"—concern purported misrepresentations directed at *courts*. (*See* Compl. ¶ 371.) These allegations do not concern misrepresentations made in connection with consumer sales transactions, and thus, they are outside the scope of the consumer-oriented practices the statute was intended to regulate. *See also Blue Cross & Blue Shield of New Jersey, Inc. v. Phillip Morris USA Inc.*, 3 N.Y.3d 200, 205-06, 785 N.Y.S.2d 399, 402 (2004) ("In order to make out a valid section 349 claim, a plaintiff must allege … a deceptive act or practice directed toward consumers …."); *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 343-44, 704 N.Y.S.2d 177, 182 (1999) ("[Section 349] was enacted initially to give the Attorney General enforcement power to curtail deceptive acts and practices … directed at the consuming public.").

*Second*, Plaintiffs have not alleged that Defendants' purported debt collection practices were materially misleading.  A material misrepresentation "'is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'"  *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004) (quoting *Novartis Corp. v. F.T.C.*, 223 F.3d 783, 787 (D.C. Cir. 2000)).  To satisfy this requirement, Plaintiffs point to Defendants' alleged use of "misleading affirmations to obtain default judgments" during state court debt collection proceedings.  (Compl. ¶ 371.)  But Plaintiffs have not alleged—nor can they—that they were deceived by any of those alleged misrepresentations, or that Defendants' acts affected their "choice of, or conduct regarding, a product."  *Bildstein*, 329 F. Supp. 2d at 414.

To the contrary, Plaintiffs allege that they have vigorously disputed the accuracy and validity of Defendants' representations in court filings.  For example, Plaintiff Amal Shetiwy alleges that she disputed the amount of debt owed, and the court "eventually set the judgment aside."  (Compl. ¶¶ 183, 195.)  Likewise, when Defendant Equable allegedly called Plaintiff Louis Yeostros to demand payment on a debt, Yeostros apparently asked for "documentation establishing that [Equable] owned the debt."  (*Id.* ¶ 224; *see also id.* ¶ 232.)  In each case, Defendants' alleged misrepresentations had no apparent effect on Plaintiffs' conduct.

*Finally*, Plaintiffs have not identified any injury caused by the allegedly deceptive acts.  A Section 349 plaintiff must demonstrate that he or she was "'actually harmed' or suffered pecuniary injury" as a result of a deceptive act.  *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56, 698 N.Y.S.2d 615, 621 (1999).  "[T]he risk of some undefined future harm is too speculative to constitute a compensable injury" under Section 349.  *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009).  Plaintiffs cannot claim that the state court judgments themselves

were compensable injuries, because any attempt to collaterally attack a state court judgment is barred by *Rooker-Feldman* and *res judicata*, as explained above.  Accordingly, Plaintiffs have not identified harm sufficient to support violations of Section 349.

Because they have failed to allege any of the required elements, Plaintiffs' Section 349 claim should be dismissed.

### H.    Plaintiffs Cannot Plead a Claim Under New York Judiciary Law (Count Twelve).

Plaintiffs cannot state a claim under New York Judiciary Law Section 487(1) because none of the Defendants are attorneys.  This statute permits a civil action against "an attorney or counsel who … [i]s guilty of any collusion, or consents to any deceit or collusion, with intent to deceive the court or any party."  As plainly provided in the statute, only attorneys are subject to Section 487.  *See id.*; *see also Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison LLP*, 629 F. Supp. 2d 259, 264 (S.D.N.Y. 2007) ("[Section 487] permits an aggrieved party to recover treble damages in a civil action against *an attorney* …." (emphasis added)); *Trepel v. Dippold*, No. 04 Civ. 8310, 2005 WL 1107010, at *4 (S.D.N.Y. May 9, 2005) ("[Section 487] supports a civil action by a party to a litigation against *the attorneys* representing parties in the litigation …." (emphasis added)); *Lazer Elec. Corp. v. Cecchi*, No. 97 Civ. 130, 1997 WL 311925, at *1 (S.D.N.Y. June 10, 1997) ("[Section 487(1)] permits parties before a court to sue their opponent's *attorney* …." (emphasis added)).

### I.    Article III Standing and Subject Matter Jurisdiction Are Lacking With Respect to Certain Claims.

In addition to all of the defects catalogued above, Article III standing and subject matter jurisdiction are lacking with respect to claims by certain Plaintiffs and claims against certain Defendants.  Two Plaintiffs have no standing to bring any claim, and all Plaintiffs lack standing to sue Defendants CMS, DebtOne, and ARS.

27

Article III standing requires a plaintiff to show that he or she suffered an injury in fact, that there was a causal connection between the injury and the conduct complained of, and that the injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish Article III standing in a class action, "for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant." *Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 241 (2d Cir. 2007).

The Complaint contains no allegations by Plaintiff Vargas; she is mentioned only in the case caption. Because Vargas has not alleged an injury, she has no Article III standing to sue. *See Lujan*, 504 U.S. at 560.

The Complaint also does not contain any specific allegations about interactions between the named Plaintiffs and Defendants CMS, DebtOne, and ARS. There are no allegations that these Defendants attempted to collect any debts from, or to bring any lawsuits against, any of the named Plaintiffs. Accordingly, no Plaintiff can assert a claim against these Defendants, Plaintiffs lack Article III standing to sue these parties, and this Court lacks subject matter jurisdiction to hear these claims. *See Central States*, 504 F.3d at 241.

In addition, Plaintiff Hassan has no standing to participate in this lawsuit. Any right he may have had to pursue these claims was extinguished in his Chapter 7 personal bankruptcy proceeding, which was closed in April 2012. When a person files for bankruptcy protection, that individual's property becomes property of the bankruptcy estate. 11 U.S.C. §541(a)(1). Bankruptcy laws impose a strict obligation on the debtor to file complete and accurate schedules of assets. *See id.* § 521(1)(B). When a bankruptcy case is closed, "any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is

28

abandoned to the debtor ….”  *Id.* § 554(c).  Conversely, property that is *not* scheduled is *not* abandoned back to the debtor and remains the property of the estate.  *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008).

Hassan did not identify the claims he seeks to prosecute here as assets in the Schedule of Assets he filed with the bankruptcy court.  *See In re Hassan*, Bankr. E.D.N.Y. Case No. 1-12-40461-nhl, Docket Entry Nos. 1 (Voluntary Petition including Schedules A, B, and C listing all of debtor's assets) and 12 (Order Discharging Debtor and Final Decree).[18]  Debtors who fail to disclose potential causes of action before a bankruptcy case closes lose standing to pursue those claims.  *See Kassner v. 2nd Avenue Delicatessen Inc.*, No. 04 CV 7274, 2005 WL 1018187, at *3-*4 (S.D.N.Y. Apr. 29, 2005) (“Since the bankruptcy estate retains any unscheduled assets, only the trustee has authority to control such assets, and hence the debtor loses all rights to pursue an undisclosed cause of action in his own name ….  A debtor, who conceals a cause of action during his bankruptcy case, is not entitled to then litigate those claims for his own benefit once the bankruptcy case is closed.”).  Because Hassan did not disclose the claims at issue here to the bankruptcy court,[19] he does not have standing to sue.

Furthermore, the allegations regarding certain Plaintiffs, including John Murphy, Ahmed Hassan, Plamen Pankoff, and Patricia Diffley, are devoid of any specific facts to support an inference that the Defendants' purported misconduct caused their supposed injuries.  (Compl. ¶¶ 228, 229, 236, 262, 268.)  While the Complaint alleges that John Murphy was sued by a Debt

---

[18]     Copies of these documents are attached as Exhibits D and E to the Declaration of Andrew A. Ruffino.  This Court may take judicial notice, on a motion to dismiss, of filings and orders in related court proceedings.  *See Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 166 n.3 (2d Cir. 2012).

[19]     Mr. Hassan's counsel of record in his bankruptcy case was George Bassias, Esq., who is also Plaintiffs' counsel in this action.  *See* Ruffino Declaration Ex. D.

Buyer Defendant on behalf of American Express, it does not allege that Murphy held an American Express account.  In addition, the Complaint asserts that Murphy is "unsure [if] default judgments were entered against him" and he "does not know the basis of the lawsuits."  (*Id.* ¶¶ 228, 230.)  The Complaint alleges that "Mr. Hassan also received a letter from ARS on behalf of Citibank," yet does not allege that Mr. Hassan ever held an account with or suffered any injury due to the conduct of Defendant Citibank.  (*Id.* ¶ 262.)  Similarly, the Complaint alleges that "Mr. Pankoff is not certain but believes the lawsuits are based upon two Bank of America credit cards" and notes that the lawsuits "do not mention Bank of America."  (*Id.* ¶ 236.)  The entirety of the allegations brought on behalf of Plaintiff Patricia Diffley is based on a credit report that purportedly lists two Debt Buyer Defendants as having claims against her.  (*Id.* ¶ 268.)  No injury is alleged to have occurred as a result of these claims.

Accordingly, Plaintiffs Vielka Vargas and Ahmed Hassan, and Defendants CMS, DebtOne, and ARS should be dismissed from this action based on lack of subject matter jurisdiction.  Additionally, the claims brought against the Creditor Defendants by Plaintiffs John Murphy, Ahmed Hassan, Plamen Pankoff, and Patricia Diffley should be dismissed.[20]

### J.   Plaintiffs Improperly Plead Requests for Relief as Independent Causes of Action (Counts Five, Six, Seven, and Ten).

Plaintiffs' Count Five asks for punitive damages, Count Six asks for costs and prejudgment interest, Count Seven asks for treble damages, and Count Ten asks for attorneys' fees.  These forms of relief are not "causes of action" and should be dismissed because they are

---

[20]   In addition, although Plaintiffs have sued Capital One Financial Advisors LLC as a named defendant, Capital One Financial Advisors does not issue credit cards.  Rather, Capital One Financial Advisors is a registered broker dealer that provides retirement and brokerage services.  Capital One Financial Advisors, therefore, is not an appropriate defendant in this action.

not cognizable as independent claims.  They merely duplicate the substantive claims Plaintiffs assert under other "cause of action" headings.  *See, e.g.*, *Martin v. Dickson*, 100 F. App'x 14, 16 (2d Cir. 2004) (affirming dismissal of punitive damages claim because "there is no separate cause of action in New York for punitive damages"); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010) (dismissing claim for injunctive relief because a request for a remedy "is not a separate cause of action").

### K.    In the Alternative, if the Court Compels Arbitration as to Some Parties and Does Not Dismiss All Nonarbitrable Claims, It Should Stay the Action as to All Parties.

For the reasons explained above, Defendants believe that all claims in this action should be dismissed for numerous independently sufficient reasons.  If for some reason the Court is not inclined to grant the motion to dismiss at this time but the Court grants the arbitration motion that is being filed by four Creditor Defendants, the Court should consider staying this action in its entirety pending the completion of arbitration proceedings.

Four Creditor Defendants are filing a separate motion to compel arbitration pursuant to arbitration clauses in their cardholder account agreements.  District courts have discretion to stay the litigation of nonarbitrable claims until the conclusion of arbitration.  *See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n. 3 (1983) ("In some cases, of course, it may be advisable to stay litigation among the nonarbitrating parties pending the outcome of the arbitration."); *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997) (issues not subject to arbitration may be stayed "pursuant to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants" (internal quotation marks omitted)).  "[C]ourts in this district have consistently granted stays pending arbitration where the nonarbitrable issues overlap the arbitrable issues, thus minimizing inconsistent results and conserving judicial resources."  *Syncora Guarantee Inc.*

*v. HSBC Mexico, S.A.*, 861 F. Supp. 2d 252, 261 (S.D.N.Y. 2012) (internal quotation marks omitted); *see also Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 665 (S.D.N.Y. 2011) (staying nonarbitrable claims because "the claims against [the defendants] are largely identical, and the judicial economy achieved in awaiting the resolution of issues in arbitration may prove considerable").

The claims against the Creditor Defendants who seek to compel arbitration overlap with the claims against the remaining Defendants.  Indeed, Plaintiffs allege that all of the Defendants conspired with each other and worked in concert as part of a single massive RICO enterprise. (*See, e.g.*, Compl. ¶¶ 126-27 & 159-65.)  Defendants of course vigorously dispute these allegations and contend that they are not well pleaded.  But if these allegations are accepted as true for purposes of threshold motion practice, they would provide additional support for staying any non-arbitrable claims that the Court may decline to dismiss.

Plaintiffs also allege, among other things, that the prosecution of separate actions in this matter "would create the risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for defendants."  (Compl. ¶ 97.)  The same observation would weigh against allowing this action to proceed with some parties in this Court while other parties litigate the same claims in parallel arbitration proceedings.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be granted and the Complaint should be dismissed in its entirety.   In the alternative, this Court should stay proceedings as to all Defendants subject to the completion of arbitration proceedings.

Dated:    January 25, 2013

Respectfully Submitted,

s/ Andrew A. Ruffino
Andrew A. Ruffino
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: (212) 841-1097
aruffino@cov.com

Robert D. Wick
Laura Brookover
Henry Liu
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 662-6000

*Attorneys for Defendant Chase Bank USA, N.A.*

s/ Casey D. Laffey*
Casey D. Laffey
Brian S. Goldberg
REED SMITH LLP
599 Lexington Avenue, 28th Floor
New York, New York 10022
Tel: (212) 521-5400
claffey@reedsmith.com

*Attorneys for Defendant
Midland Credit Management, Inc.*

s/ Donald S. Maurice, Jr.*
Donald S. Maurice, Jr.
Rachel Marin
Thomas R. Dominczyk
MAURICE & NEEDLEMAN, P.C.
5 Walter E. Foran Blvd., Suite 2007
Flemington, New Jersey 08822
Tel: (908) 237-4550
dsm@mnlawpc.com

*Attorneys for Defendants Cavalry Portfolio
Services, LLC and Equable Assent Financial,
LLC*

s/ W. Raley Alford, III*
W. Raley Alford, III
STANLEY, REUTER, ROSS, THORNTON &
ALFORD LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Tel: (504) 523-1580
wra@srrta.com

*Attorneys for Defendant Debt One, L.L.C.*

* Consent for Signature Obtained

s/ Jonathan J. Greystone*
Jonathan J. Greystone
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA 19103
Tel: (215) 214-8927
jgreystone@lawsgr.com

*Attorneys for Defendant CACH, LLC*

s/ Aaron R. Easley*
Aaron R. Easley
SESSIONS, FISHMAN, NATHAN &
ISRAEL, L.L.C.
200 Route 31 North, Suite 203
Flemington, New Jersey 08822
Tel: (908) 751-5940
aeasley@sessions-law.biz

Kevin Barry McHugh
Law Offices of Edward Barfinkel
12 MetroTech Center, 28th Floor
Brooklyn, New York 11201
Tel: (718) 250-1100
Kevin.McHugh@chartisinsurance.com

*Attorneys for Defendants NCO Financial
Systems, Inc., and Capital Management
Services*

s/ Concepcion A. Montoya*
Concepcion A. Montoya
HINSHAW & CULBERTSON LLP
780 Third Avenue, 4th Floor
New York, New York 10017
Tel: (212) 471-6228
cmontoya@hinshawlaw.com

*Attorneys for Defendant LVNV Funding, LLC*

s/ Jill M. Wheaton*
Jill M. Wheaton
Dykema Gossett PLLC
2723 S. State Street, Suite 400
Ann Arbor, Michigan 48104
Tel: (734) 214-7629
jwheaton@dykema.com

s/ Richard David Lane, Jr.*
Richard David Lane, Jr.
MARSHALL, DENNEHEY, WARNER
COLEMAN & GOGGIN
Wall Street Plaza
88 Pine Street, 1st Floor
New York, New York 10005
Tel: (212) 376-6400
rdlane@mdwcg.com

*Attorneys for Defendant Asset Acceptance LLC*

* Consent for Signature Obtained

s/ Gillian I. Biron* \
Gillian I. Biron \
S. Elaine McChesney (*pro hac vice*) \
Jonathan M. Albano (*pro hac vice*) \
BINGHAM MCCUTCHEN LLP \
399 Park Avenue \
New York, New York 10022 \
Tel:  (212) 705-7000

*Attorneys for Defendants Bank of America,* \
*N.A. and FIA Card Services, N.A.*

s/ Christopher W. Madel* \
Christopher W. Madel (*pro hac vice*) \
Jennifer M. Robbins (*pro hac vice*) \
ROBINS, KAPLAN, MILLER & CIRESI \
L.L.P. \
800 LaSalle Avenue \
2800 LaSalle Plaza \
Minneapolis, Minnesota 55402-2015 \
Tel: (612) 349-8500 \
cwmadel@rkmc.com \
jmrobbins@rkmc.com

Oren D. Langer \
ROBINS, KAPLAN, MILLER & CIRESI \
L.L.P. \
601 Lexington Avenue, Suite 3400 \
New York, New York 10022-4611 \
Tel: (212) 980-7400 \
odlanger@rkmc.com

*Attorneys for Defendant Portfolio Recovery* \
*Associates, LLC*

\* Consent for Signature Obtained

s/ Carmine D. Boccuzzi, Jr.*
Carmine D. Boccuzzi, Jr.
Lauren K. Handelsman
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Tel: (212) 225-2000

*Attorneys for Defendant American Express
Company*

s/ Mark P. Ladner*
Mark P. Ladner
David J. Fioccola
Jessica L. Kaufman
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104-0050
Tel: (212) 468-8000
mladner@mofo.com
dfioccola@mofo.com
jkaufman@mofo.com

*Attorneys for Defendants Capital One
Financial Corp. and Capital One Financial
Advisors, LLC*

s/ John E. Brigandi*
John E. Brigandi
THE SALVO LAW FIRM, P.C.
165 Passaic Avenue, Suite 310
Fairfield, New Jersey 07004
Tel: (973) 233-4080
jbrigandi@salvolawfirm.com

*Attorneys for Defendant ARS National Services,
Inc.*

s/ Stephen C. Robinson*
Stephen C. Robinson
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Four Times Square
New York, New York 10036
Tel: (212) 735-3000
Stephen.Robinson@skadden.com

*Attorneys for Defendants Citigroup, Inc. and
Citibank, N.A.*

s/ Michael D. Hynes*
Michael D. Hynes
DLA PIPER LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
Tel: (212) 335-4500
michael.hynes@dlapiper.com

*Attorneys for Defendant GE Capital Consumer
Lending, Inc.*

* Consent for Signature Obtained