UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

AMAL SHETIWY et al.,

                Plaintiffs,

    v.                                               No. 12 Civ. 7068 (SAS) (HBP)

MIDLAND CREDIT MANAGEMENT et al.,

                Defendants.

-----------------------------------------------------------X

### DECLARATION OF CRAIG VIELSTICH IN SUPPORT OF DEFENDANTS AMERICAN EXPRESS COMPANY, GE CAPITAL CONSUMER LENDING, INC., CITIGROUP, INC. AND CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION AND TO STAY THE ACTION

Pursuant to 28 U.S.C. § 1746, I, Craig Vielstich, declare as follows:

1. I submit this declaration in support of defendants American Express Company ("American Express"), GE Capital Consumer Lending, Inc., Citigroup, Inc. and Citibank, N.A.'s Motion to Compel Arbitration and to Stay the Action.

2. I hold the position of Assistant Custodian of Records/Senior Manager Audit and Compliance with American Express. I have been employed with American Express since May 1998 and have held the Senior Manager position since 2003. In that role, I am responsible for maintaining and reviewing documents and files related to American Express accounts and accountholders. I am also familiar with the process by which American Express makes and keeps accountholder records, as well as the methods by which American Express communicates with its accountholders.

3. I am personally knowledgeable about the matters set forth below and my statements regarding American Express's positions are to the best of my understanding and belief based on my review of American Express's records.

Facts in the Amended Complaint Do Not Mention American Express

4. I have reviewed the Amended Complaint in the above-captioned proceeding. In paragraphs 228 through 235 of the Amended Complaint, plaintiffs make certain assertions related to American Express and an alleged American Express accountholder named John Murphy. The information contained in the paragraphs relating to John Murphy does not correspond to any account with American Express, including that a lawsuit was filed against him on behalf of American Express on or about February and March 2006 or that judgments exist from August 19, 2011 and September 29, 2011.

5. Among the exhibits attached to the Amended Complaint are two documents that mention the name "John Murphy," neither of which mention American Express. The first is a letter from Associated Recovery Systems to someone named "John Murphy Jr." discussing a settlement proposal related to an account held with Bank of America, NA., not American Express. The second is a document purportedly prepared for "United Northern MO – 10027421" related to an "applicant" named "John T. Murphy" that lists a social security number and date of birth for that person. Neither document is discussed in the Amended Complaint or authenticated, nor are their source(s) identified.

2

### "John Murphy" Identified as Accountholder of a Business Capital Line Account

6. I have identified American Express Business Capital Line Account numbered XXXX-XXXXXX-X1003[1] as one opened by someone named "John Murphy" as accountholder on March 25, 2004. The account was opened using the social security number listed in the second exhibit discussed in paragraph 5 above.

7. The accountholder of Business Capital Line Account numbered XXXX-XXXXXX-X1003 was a party to a cardmember agreement with American Express dated May 2008 (the "Agreement"). Attached as Exhibit A to this declaration is a true and correct copy of the relevant portions of the Agreement.

8. American Express records indicate that the accountholder of Business Capital Line Account numbered XXXX-XXXXXX-X1003 was mailed a copy of the Agreement with their credit card when the account was opened. The accountholder subsequently used the credit card associated with the account.

9. The Agreement provides: "When you keep, sign or use the Business Capital Line Account Card and personalized checks issued to you (your 'Account'), you agree to the terms of this Agreement." Ex. A at 1.

10. The Agreement includes an applicable law provision, which provides: "This Agreement and your Account, and all questions about their legality, enforceability and interpretation, are governed by the laws of the State of Utah (without regard to internal principles of conflicts of law), and by applicable federal law. We are located in Utah, hold your Account in Utah, and entered into this Agreement with you in Utah." *Id.* at 4.

---

[1] Only the last four digits of the account number are provided to protect the accountholder's privacy.

3

Arbitration Provision of the Agreement

11. The Agreement contains an arbitration provision (the "Arbitration Provision"), which provides: "This Arbitration Provision sets forth the circumstances and procedures under which Claims…may be arbitrated instead of litigated in court." *Id.* at 3.

12. The Arbitration Provision defines "Claim" as

> any claim, dispute or controversy between you and us arising from or relating to your Account, this Agreement, the Electronic Funds Transfer Services Agreement, and any other related or prior agreement that you may have had with us, or the relationships resulting from any of the above agreements ("Agreements"), except for the validity, enforceability or scope of this Arbitration Provision or the Agreements…. "Claim" includes claims of every kind and nature, including but not limited to … claims based upon contract, tort, fraud and other intentional torts, statutes, regulations, common law and equity.

*Id.*

13. The Arbitration Provision further provides that any party to the Agreement has the right to elect to arbitrate a Claim against the other: "IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM." *Id.*

14. The Arbitration Provision explicitly states that if any party invokes the right to arbitrate, the arbitration will proceed on an individual basis:

> YOU AND WE WILL NOT HAVE THE RIGHT TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. . . . IF EITHER PARTY ELECTS TO RESOLVE A CLAIM BY ARBITRATION, THAT CLAIM SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS. THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED ON A CLASS ACTION BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF

>THE GENERAL PUBLIC, OTHER CARDMEMBERS OR OTHER PERSONS SIMILARLY SITUATED.

*Id.*

15. The Arbitration Provision further provides: "This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16, as it may be amended (the "FAA")." *Id.*

16. The Agreement is substantially similar to all versions of the cardmember agreement between accountholder John Murphy and American Express during the time period Business Capital Line Account numbered XXXX-XXXXXX-X1003 was open. The Arbitration Provisions in each version of the cardmember agreement are virtually identical.

17. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

DATED:   January 25, 2013
         Salt Lake City, Utah

_____
              Craig Vielstich

5

# Exhibit A

FDR 948065　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　CD 26292 (05/08)

# Business Capital Line Agreement

**AMERICAN EXPRESS**

**Welcome to American Express Cardmembership**

This document and the accompanying supplement(s) constitute your Agreement. Please read and keep this Agreement. Abide by its terms. When you keep, sign or use the Business Capital Line Account Card and personalized checks issued to you (your "Account"), you agree to the terms of this Agreement. The words "you," "your," "yours" and "Cardmember" mean the individual authorizing officer of the Company who has requested the opening of the Account and/or, where applicable, the Company. The term "Account" refers to the American Express® Business Capital Line issued to you. "We," "our," and "us" refer to American Express Bank, FSB, the issuer of your Account.

**How to Gain Access to the Business Capital Line**

You may gain access to the Business Capital Line in one or more of the following ways:
- By using one of the personalized checks that have been issued to you. Use these checks as you would any other checks, subject to the terms and conditions of this Agreement.
- By using the Business Capital Line Card issued to you to purchase goods and services from establishments accepting the American Express® Card.
- By enrolling your Account in the Express Cash Program offered by American Express Travel Related Services Company, Inc. ("TRS") and by using your Business Capital Line Card at any of the automated teller machines or other devices available from Express Cash Program.
- By enrolling your Account in the Direct Draw® feature and transferring funds to the account you specify when you enroll.

These methods of requesting an advance from the Account, and any other methods subsequently made available to you, will be called "Credit Requests" in this Agreement.

Credit Requests are subject to the restrictions and limitations imposed by us. Please refer to your agreement with TRS if you have any questions regarding the Express Cash program.

Only you have the right to use the Business Capital Line. You may not authorize any other person to do so. If you do, we may consider the Account in default and we will have the rights described in the section of this Agreement entitled "Default." Notwithstanding the above, in the event any other person does use the Account with the express or implied permission of you or the Company, you and the Company shall be jointly and severally liable for repayment pursuant to the section of this Agreement entitled "Payment."

Furthermore, we have the right to refuse payment (1) of any Credit Request for any amount which, when added to the outstanding balance on the Account, would cause your credit limit to be exceeded, (2) of any Credit Request presented for payment when the Account or any other American Express Card Account you or your Company may have (whether or not a Business Card Account) is in default, is not in good standing or has otherwise been canceled or suspended, (3) of any Credit Request if we receive any information, including credit bureau or other third party information, which indicates that the financial condition of you or your Company has, in our judgment, been impaired. You agree not to make any such Credit Requests.

Each check may be used only by you. You may not use convenience checks to pay any amount you owe under this Agreement or to pay any other account you have with us or our affiliates. Transactions you make in response to promotional offers from us will be subject to the terms of the promotion and this Agreement.

All Credit Requests posted to your Account, annual fees, other fees, and any Finance Charges, are "Charges."

You agree not to let any other person use an Account access device. You agree to notify us if any Account access devices are lost or stolen, or you suspect that they are being used without your permission. You agree to use the Account for business or commercial purposes that are lawful and are permitted under this Agreement. We may issue you a renewal or replacement Card before a previously issued device expires.

If you authorize a third party to bill Charges on a recurring basis to your Account ("Recurring Charge(s)"), we may (but are not required to) provide such third party with your current Account status, Card number and/or expiration date to permit that third party to continue billing your Account. We may take such steps even if your Account number changes or if we issue a renewal or replacement Card to you. To withdraw authorization for a Recurring Charge, you must notify the third party.

**Credit Line**

We may, at any time and in our sole discretion, increase and/or decrease your credit line. Your billing statements will show your credit line and the unused portions of such line as of the statement date. We may limit Credit Requests at an automated teller machine ("ATM") to lesser of (i) a total of $1,000 in any seven-day period, or (ii) the remaining amount of your credit line, and we may impose additional limits at our sole discretion (in addition to any limits imposed by the ATM's owner). You agree to manage your Account so that your balance will not exceed your credit line. You agree to pay us, immediately upon request, the amount of any balance on your Account in excess of any applicable credit line. We reserve the right to decline any attempted Credit Request, even if the Credit Request would not cause you to exceed your credit line.

We are not responsible for any losses or other consequences if a transaction on your Account is not approved for any reason, even if you have sufficient credit available. Except as otherwise required by applicable law, we will not be responsible if any merchant refuses to honor the Card or accept a check or for any other problem you may have with a merchant.

**Promise to Pay**

You and the Company promise to pay all Charges on your Account. This promise includes any Charge for which you indicated an intent to incur the Charge, including cases where you have not signed a charge form or presented the Card or a check. You also promise to pay any Charge incurred by anyone that you let use the Account, even though you have agreed not to let anyone else use the Account. You and the Company are liable for any losses as well as any other consequences related to or resulting from actions taken by any third parties authorized to act on your or the Company's behalf.

**Billing Statements**

You must notify us immediately of any change in the mailing or e-mail address to which we send billing statements or notices that a billing statement has been posted ("Billing Address"). If you wish a Billing Address change to apply to more than one account you maintain with us, you must tell us. You agree that we may also update your Billing Address if we receive information that your Billing Address has changed or is incorrect. You must also notify us immediately of any change in your or the Company's mailing address, telephone or fax number, the Company's name or the Company's state of incorporation or organization, changes to your social security number or employer ID number, and any other information we may request.

The "New Balance" appears on your billing statement. To determine the New Balance, we begin with the outstanding balance on your Account at the beginning of each billing period, called the "Previous Balance" on the billing statement. We add any Charges, subtract any credits or payments credited as of that billing period, and make other applicable adjustments.

**Minimum Amount Due**

Each billing statement will reflect a Minimum Amount Due. Payment is due by the time and date shown and in the manner prescribed on the statement. The Minimum Amount Due will not exceed the New Balance. You may pay more than the Minimum Amount Due, up to the entire outstanding balance, at any time. To calculate the Minimum Amount Due, we add together the following amounts, round the result to the nearest whole dollar, and then add any amount past due:

(1) the greatest of:
   (a) 1/36th of the New Balance (excluding from the New Balance any late fees or over-limit fees);
   (b) the lesser of:
      (i) current billed Finance Charges plus 1% of the New Balance (excluding from the New Balance any over-limit amount, any late fees or over-limit fees and finance charges), or
      (ii) 4% of the New Balance; or
   (c) $50;
(2) any over-limit fees added during the billing period; and
(3) any late fees added during the billing period.
(4) 1/24th of any over-limit amount (the part of your New Balance in excess of your credit line).

**Adjusted Minimum Amount Due**

**Summary:** If you consistently pay more than the Minimum Amount Due outlined above, we may calculate your minimum payment without any late fees, over-limit amount or the additional 1% of the balance referenced in (1)(b)(i). If we do this, and finance charges are more than 1/36th of the balance, we may add $15 to your minimum payment. For information about how this works, read the detailed description below.

**Detailed Description:** We may adjust the outlined calculation above by removing the late fees in (3), the over-limit amount in (4) and "plus 1% of the New Balance" in (1)(b)(i). In the adjusted calculation, we will exclude only the over-limit fees from the New Balance in (1)(a). After the adjustment, if (1) is equal to the current billed Finance Charges, we will increase your Minimum Amount Due by $15.

We will apply the adjusted calculation to your Account if:
- the sum of your payments (credited to your Account in the six consecutive billing periods ending with the Closing Date of the current billing period) is greater than the sum of the Minimum Amounts Due (for the six consecutive billing periods ending with the Closing Date of the previous billing period, not using the adjusted calculation and including the amount past due in only the first of those six periods);
- the sum of the Minimum Amounts Due is equal to the sum of your payments and it is less than or equal to $300;
- the sum of the Minimum Amounts Due is zero and we used the adjusted calculation in the last billing period when your Minimum Amount Due was not zero; or
- it is the first billing period ending on or after November 16, 2007, and your Account was opened before that date.

If we adjust your Minimum Amount Due, we will do so for at least six billing periods, and if we stop adjusting your Minimum Amount Due, we will not adjust it again for at least six billing periods, regardless of your payment history.

**Payments**

All payments must be sent to the payment address shown on your billing statement and must include the remittance coupon from your billing statement. You must pay us in U.S. currency, with a single draft or check drawn on a U.S. bank and payable in U.S. dollars, or with a negotiable instrument payable in U.S. dollars and clearable through the U.S. banking system, or through an electronic payment method clearable through the U.S. banking system. Your Account number must be included on or with all payments. If we decide to accept a payment made in a foreign currency, you authorize us to choose a conversion rate that is acceptable to us to convert your remittance into U.S. currency, unless a particular rate is required by law.

Payments conforming to the above requirements that we receive no later than the hour specified on your billing statement will be credited to your Account as of the day received; payments conforming to the above requirements that we receive after the hour specified on your billing statement will be credited to your Account as of the following day.

If payment does not conform to the requirements stated above, crediting may be delayed. If this happens, additional Charges may be imposed. We may accept late payments, partial payments or any payments marked as being payment in

1

new Agreement, this Agreement as it may be amended) will govern your reinstated Account.

### Default

We may consider your Account to be in default at any time if you fail to pay us any amount when it is due, or if you breach any other promise or obligation under this Agreement.

Subject to applicable law, we may also consider your Account to be in default at any time if any statement made by you to us in connection with this Account or any other credit program was false or misleading; if you breach any promise or obligation under any other agreement that you may have with us or with any of our affiliates; if we receive information indicating that you are bankrupt, intend to file bankruptcy, or are unable to pay your debts as they become due; or we receive information leading us to conclude that you are otherwise not creditworthy. In evaluating your creditworthiness, you agree that we may rely on information contained in consumer reports, and in our discretion we may consider the amount of debt you are carrying compared to your resources or any other of your credit characteristics, regardless of your performance on this Account. We may also consider your Account in default in the event of your death.

In the event of your default, and subject to any limitations or requirements of applicable law, we may require payment of a portion of your outstanding balance greater than the Minimum Amount Due, declare the entire amount of your obligations to us immediately due and payable, and/or suspend or cancel your Account and/or any feature that may be offered in connection with the Account. You agree to pay all reasonable costs, including reasonable attorneys' fees, incurred by us (1) in connection with the collection of any amount due on your Account, whether or not any arbitration, litigation, or similar proceedings are initiated; and (2) in reasonably protecting ourselves from any loss, harm, or risk relating to any default on your Account.

### Transactions Made in Foreign Currencies

If you incur a Charge in a foreign currency, it will be converted into U.S. dollars on the date it is processed by us or our agents. Unless a particular rate is required by applicable law, you authorize us to choose a conversion rate that is acceptable to us for that date. Currently, the conversion rate we use for a Charge in a foreign currency is no greater than (a) the highest official conversion rate published by a government agency, or (b) the highest interbank conversion rate identified by us from customary banking sources, on the conversion date or the prior business day, **in each instance increased by 2%**. This conversion rate may differ from rates in effect on the date of your Charge. Charges converted by establishments (such as airlines) will be billed at the rates such establishments use.

### Benefits and Services

Subject to applicable law, we have the right to add, modify or delete any benefit, service, or Feature that may accompany your Account at any time and without notice to you.

### Arbitration

**Purpose:** This Arbitration Provision sets forth the circumstances and procedures under which Claims (as defined below) may be arbitrated instead of litigated in court.

**Definitions:** As used in this Arbitration Provision, the term "Claim" means any claim, dispute or controversy between you and us arising from or relating to your Account, this Agreement, the Electronic Funds Transfer Services Agreement, and any other related or prior agreement that you may have had with us, or the relationships resulting from any of the above agreements ("Agreements"), except for the validity, enforceability or scope of this Arbitration Provision or the Agreements. For purposes of this Arbitration Provision, "you" and "us" also includes any corporate parent, or wholly or majority owned subsidiaries, affiliates, any licensees, predecessors, successors, assigns, any purchaser of your accounts, all agents, employees, directors and representatives of any of the foregoing, and other persons referred to below in the definition of "Claims." "Claim" includes claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third-party claims and claims based upon contract, tort, fraud and other intentional torts, statutes, regulations, common law and equity. "Claim" also includes claims by or against any third party using or providing any product, service or benefit in connection with any account (including, but not limited to, credit bureaus, third parties who accept the Card, third parties who use, provide or participate in fee-based or free benefit programs, enrollment services and rewards programs, credit insurance companies, debt collectors and all of their agents, employees, directors and representatives) if and only if, such third party is named as a co-party with you or us (or files a Claim with or against you or us) in connection with a Claim asserted by you or us against the other. The term "Claim" is to be given the broadest possible meaning that will be enforced and includes, by way of example and without limitation, any claim, dispute or controversy that arises from or relates to (a) any of the accounts created under any of the Agreements, or any balances on any such accounts, (b) advertisements, promotions or oral or written statements related to any such accounts, goods or services financed under any of the accounts or the terms of financing, (c) the benefits and services related to Cardmembership (including fee-based or free benefit programs, enrollment services and rewards programs), and (d) your application for any account. We shall not elect to use arbitration under the Arbitration Provision for any Claim that you properly file and pursue in a small claims court of your state or municipality so long as the Claim is individual and pending only in that court.

**Initiation of Arbitration Proceeding/Selection of Administrator.** Any Claim shall be resolved, upon the election by you or us, by arbitration pursuant to this Arbitration Provision and the code of procedures of the national arbitration organization to which the Claim is referred in effect at the time the Claim is filed (the "Code"), except to the extent the Code conflicts with this Agreement. Claims shall be referred to either the National Arbitration Forum ("NAF") or the American Arbitration Association ("AAA"), as selected by the party electing to use arbitration. If a selection by us of either of these organizations is unacceptable to you, you shall have the right within 30 days after you receive notice of our election to select the other organization listed to serve as arbitration administrator. For a copy of the procedures, to file a Claim or for other information about these organizations, contact them as follows:

- NAF at P.O. Box 50191, Minneapolis, MN 55405; website: www.arbitration-forum.com.
- AAA at 335 Madison Avenue, New York, NY 10017; website: www.adr.org.

**Significance of Arbitration:** IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM. FURTHER, YOU AND WE WILL NOT HAVE THE RIGHT TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. NOTE THAT OTHER RIGHTS THAT YOU OR WE WOULD HAVE IF YOU WENT TO COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION.

**Restrictions on Arbitration:** IF EITHER PARTY ELECTS TO RESOLVE A CLAIM BY ARBITRATION, THAT CLAIM SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS. THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED ON A CLASS ACTION BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC, OTHER CARDMEMBERS OR OTHER PERSONS SIMILARLY SITUATED. The arbitrator's authority to resolve Claims is limited to Claims between you and us alone, and the arbitrator's authority to make awards is limited to awards to you and us alone. Furthermore, claims brought by you against us, or by us against you, may not be joined or consolidated in arbitration with Claims brought by or against someone other than you, unless agreed to in writing by all parties. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration. Notwithstanding any other provision in this Agreement (including but not limited to the Continuation provision below) and without waiving either party's right to appeal such decision, should any portion of this Restrictions on Arbitration provision be deemed invalid or unenforceable, then the entire Arbitration Provision (other than this sentence) shall not apply.

**Arbitration Procedures:** This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16, as it may be amended (the "FAA"). The arbitration shall be governed by the applicable Code, except that (to the extent enforceable under the FAA) this Arbitration Provision shall control if it is inconsistent with the applicable Code. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statutes of limitations and shall honor claims of privilege recognized at law and, at the timely request of either party, shall provide a brief written explanation of the basis for the decision. The arbitration proceeding shall not be governed by any Federal or state rules of civil procedure or rules of evidence. Either party may submit a request to the arbitrator to expand the scope of discovery under the applicable Code. The party submitting such a request must provide a copy to the other party, who may submit objections to the arbitrator with a copy of the objections provided to the requesting party, within fifteen (15) days of receiving the requesting party's notice. The granting or denial of such a request will be in the sole discretion of the arbitrator, who shall notify the parties of his/her decision within twenty (20) days of the objecting party's submission. The arbitrator shall take reasonable steps to preserve the privacy of individuals, and of business matters. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. The arbitrator's decision will be final and binding, except for any right of appeal provided by the FAA. However, any party can appeal that award to a three-arbitrator panel administered by the same arbitration organization, which shall consider anew any aspect of the initial award objected to by the appealing party. The appealing party shall have thirty (30) days from the date of entry of the written arbitration award to notify the arbitration organization that it is exercising the right of appeal. The appeal shall be filed with the arbitration organization in the form of a dated writing. The arbitration organization will then notify the other party that the award has been appealed. The arbitration organization will appoint a three-arbitrator panel that will conduct an arbitration pursuant to its Code and issue its decision within one hundred and twenty (120) days of the date of the appellant's written notice. The decision of the panel shall be by majority vote and shall be final and binding.

**Location of Arbitration/Payment of Fees:** Any arbitration hearing that you attend shall take place in the federal judicial district of your residence. You will be responsible for paying your share, if any, of the arbitration fees (including filing, administrative, hearing and/or other fees) provided by the Code, to the extent that such fees do not exceed the amount of the filing fees you would have incurred if the Claim had been brought in the state or federal court closest to your billing address that would have jurisdiction over the Claim. We will be responsible for paying the remainder of any arbitration fees. At your written request, we will consider in good faith making a temporary advance of all or part of your share of the arbitration fees for any Claim you initiate as to which you or we seek arbitration. You will not be assessed any arbitration fees in excess of your share if you do not prevail in any arbitration with us.

**Continuation:** This Arbitration Provision shall survive termination of your accounts as well as voluntary payment of the Account balance in full by you, any legal proceeding by you or us to collect a debt owed by the other, any bankruptcy by you or us, and any sale by us of your Account (and in the case of sale, its terms shall apply to the buyer of any of your Account). Except as otherwise provided in the Restrictions on Arbitration provision above, if any portion of this Arbitration Provision (other than the Restrictions on Arbitration provision) is deemed invalid or unenforceable, it shall not invalidate the remaining portions of this Arbitration Provision, the Agreement or any predecessor agreement you may have had with us, each of which shall be enforceable regardless of such invalidity.

### Waiver

Our failure to exercise any of our rights under this Agreement, our delay in enforcing any of our rights, or our waiver of our rights on any occasion, shall not constitute a waiver of such rights on any other occasion.

### Consumer/Business Reports

You authorize us to request consumer and/or business reports about you, to make whatever credit investigations we deem appropriate, to obtain and exchange any information we may receive from consumer and/or business reports and other sources, and to use such information for any purposes, subject to applicable law.

You authorize us to furnish information concerning your Account to consumer and/or business reporting agencies, or others, subject to applicable law. If you believe information we have furnished about your Account to a consumer reporting agency is inaccurate, you should write to us at: American Express Credit Bureau Unit, P.O. Box 7871, Ft. Lauderdale, FL 33329-7871 and identify the specific information you believe is inaccurate.

You are hereby notified that information about your Account that may have a negative impact on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

### Telephone Monitoring Recording
You agree that from time to time we may monitor and/or record telephone calls between you or Additional Cardmembers and us to assure the quality of our customer service or as required by applicable law.

### Use of Card at Federal Government Agencies
American Express has entered into contracts that enable the Card to be accepted at certain federal government agencies and departments ("Agencies"). As with Card transactions at commercial establishments, when you choose to use your Card at an Agency, certain Charge information is necessarily collected by us. Charge information from Card transactions at Agencies may be used for processing Charges and payments, billing and collections activities and may be aggregated for reporting, analysis and marketing activities. Additional "routine uses" of Charge information by Agencies are published periodically in the Federal Register.

### Insurance Products Notice
We identify insurance providers and products that may be of interest to you. In this role we may act on behalf of the insurance provider, as permitted by law. We receive compensation from insurance providers that may vary by provider and product. Also, we may receive additional compensation or financial benefit when AMEX Assurance Company or another American Express entity acts as the insurer or reinsurer for these products. The arrangements we have with providers, including the potential to insure or reinsure products, may also influence what products and providers we identify.

### Notices
Any notice given by us shall be deemed given when deposited in the U.S. mail, postage prepaid, addressed to you at the latest Billing Address shown on our records.

### Changing this Agreement Assignment of this Agreement
We may change the terms of or add new terms to this Agreement at any time, in accordance with applicable law. We may apply any changed or new terms to any then-existing balances on your Account as well as to future balances. This written Agreement is a final expression of the agreement between the creditor and the debtor and the written Agreement may not be contradicted by evidence of any alleged oral agreement. We may also sell, transfer or assign this Agreement and the Account at any time without notice to you. You may not sell, assign or transfer your Account or any of your obligations under this Agreement.

### Assignment of Claims
In the event you dispute a Charge and we credit your Account for all or part of such disputed Charge, we automatically succeed to, and you are automatically deemed to assign and transfer to us, any rights and claims (excluding tort claims) that you have, had or may have against any third party for an amount equal to the amount we credited to your Account. After we make such credit, you agree that without our consent you will not pursue any claim against or reimbursement from such third party for the amount that we credited to your Account, and that you will cooperate with us if we decide to pursue the third party for the amount credited.

### Applicable Law
This Agreement and your Account, and all questions about their legality, enforceability and interpretation, are governed by the laws of the State of Utah (without regard to internal principles of conflicts of law), and by applicable federal law. We are located in Utah, hold your Account in Utah, and entered into this Agreement with you in Utah.

### Loss of Personalized Checks
In the event that you lose your personalized Business Capital Line checks, you must immediately notify us by calling toll free 1-877-571-4333 or by writing to us at American Express Centurion Bank.

### Reorder of Checks
In order to obtain new or additional checks you must order them from American Express Centurion Bank by calling 1-877-571-4333.

## AMERICAN EXPRESS BANK, FSB

To American Express Cardmembers in The United States and Its Territories

**Billing Disputes Procedure - Keep This Notice For Future Use**
This notice contains important information about our billing dispute procedures.

**Notify Us in Case of Errors or Questions About Your Card Statement**
If you think your statement is wrong or if you need more information about a transaction on your statement, write us on a separate sheet of paper at the address for billing inquiries listed on your statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared. You can also telephone us, but doing so will not preserve your rights under this procedure.
In your letter, give us the following information:
- Your name and Account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your Account statement automatically from your savings, checking or other account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

**Procedure After We Receive Your Written Notice**
We will acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we will either correct the error or explain why we believe the statement was correct.

After we receive your letter, we will not try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including Finance Charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your statement that are not in question.

If we find that we made a mistake on your statement, you will not have to pay any Finance Charges related to any questioned amount. If we did not make a mistake, you may have to pay Finance Charges, and you will have to make up any missed payments on the questioned amounts. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your statement, and we will tell you the name of anyone we reported you to. We will tell anyone we report you to that the matter has been settled between us when it finally is.

If we do not follow these rules, we will not collect the first $50 of the questioned amount, even if your statement was correct.

**Special Rule for Card Purchases**
If you have a problem with the quality of property or services that you purchased with the Card, and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the property or services. There are two limitations to this. (a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and (b) The purchase price must have been more than $50.
These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**Note for Ohio Residents:** *The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.*

## Agreement Between Business Capital Line Cardmember and American Express Travel Related Services Company, Inc., Concerning Electronic Fund Transfer Services

Once you enroll in Pay By Computer, Pay By Phone or any other American Express Electronic Funds Transfer service (hereafter the "Program"), you will be subject to this Electronic Funds Transfer Agreement (the "EFT Agreement").

### Scope of Agreement
This EFT Agreement covers your participation in the Program. In this EFT Agreement, the words "you" and "your" refer to the Basic Cardmember and also include all Additional Cardmembers who have enrolled in the Program. The words "we," "our" and "us" refer to American Express Travel Related Services Company, Inc. The words "your American Express Accounts" refer to your card account governed by your Cardmember Agreement ("Card Account") or any other American Express Accounts that we permit you to enroll in the Program. The words "your Bank Account" refer to the account held by a bank, securities firm or other financial institution from which payment will be made when you make transactions under the Program. The words "your bank" mean the bank, securities firm or other financial institution that holds your Bank Account. The words "other options" refer to electronic payment transfer options and/or other cash access that American Express may make available from time to time, including the option to pay your Account bill electronically using a computer, phone or other device.

Your Account is governed by the Cardmember Agreement that is attached to this EFT Agreement. That agreement and the capitalized terms in it also apply here.

### Payment for Cash Transactions
Each time you initiate a transaction under the Program, you instruct and authorize us or our agent to draw a check or initiate an automated clearing house ("ACH") debit in your name on your Bank Account, payable to us or to our agent, in the amount of the transaction. The amount of the transaction is the amount of the Account bill you paid or other funds transfer you authorized, plus any applicable fees or charges.

We may charge a fee of $38 for each check or ACH debit drawn by us or our agent in connection with the Program that is not honored upon first presentment, subject to applicable law. Your bank may also assess its customary charge for such items, if any.

### Dishonored Requests for Payments
If any check or ACH debit drawn by us or our agent in connection with the Program is not honored by your bank, we have the right to charge the amount of any such transaction, and the dishonored payment fee referred to above, to the Card Account or to collect the amount from you. If this happens, we may cancel your right to participate in the Program.

For certain Bank Accounts, you may have a separate agreement with us or with a participating bank, securities firm, or other financial institution that allows a line of credit to be accessed in the event that your Bank Account contains insufficient funds to make payment to us. You should refer to the appropriate agreement relating to that line of credit for the terms and conditions that govern its use.

### Liability for Unauthorized Transactions and Advisability of Prompt Reporting
You must tell us AT ONCE if you believe a transaction under the Program has been made without your authorization. Telephoning is the best way of minimizing possible losses. If a transaction was unauthorized, and within two days after you learn about it you notify us that the transaction was unauthorized, we will not hold you liable for that transaction. In any event, even if you fail to notify us, your liability for any unauthorized transaction or series of related unauthorized transactions shall not exceed $50. If you believe that someone has transferred or may transfer money from your Bank Account without permission, call:1-800-528-4800 (within U.S.) or 1-336-393-1111 (outside U.S.) anytime, or write: American Express Credit Department, P.O. Box 53830, Phoenix, Arizona 85072-3830.