UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X
                                                              :
AMAL SHETIWY et al.,                                          :
                                                              :
                          Plaintiffs,                         :
                                                              :        No. 12 Civ. 7068 (SAS) (HBP)
            v.                                                :
                                                              :
MIDLAND CREDIT MANAGEMENT et al.,                             :
                                                              :
                          Defendants.                         :
                                                              :
--------------------------------------------------------------X

## DECLARATION OF MARTHA A. KOEHLER IN SUPPORT OF DEFENDANTS AMERICAN EXPRESS COMPANY, GE CAPITAL CONSUMER LENDING, INC., CITIGROUP, INC. AND CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION AND TO STAY THE ACTION

Pursuant to 28 U.S.C. § 1746, I, Martha A. Koehler, declare as follows:

1.      I submit this declaration in support of defendants American Express Company, GE Capital Consumer Lending, Inc., Citigroup, Inc. and Citibank, N.A.'s Motion to Compel Arbitration and to Stay the Action.

2.      I hold the position of Manager, Litigation Support for GE Capital Retail Bank, which was formerly known as GE Money Bank. I have held this position with GE Capital Retail Bank and certain of its predecessors (collectively, "GECRB") since 2002. One of my responsibilities is to maintain documents and files related to certain GECRB accounts and accountholders. I am also familiar with the process by which GECRB makes and keeps accountholder records, the methods by which GECRB communicates with its accountholders, and the files for litigation related to GECRB accounts.

3.     I am personally knowledgeable about the matters set forth below and my statements regarding GECRB's positions are to the best of my understanding and belief based on my review of GECRB's records.

**A.     References to Nicole Gagnon and Ekaterine Skotedis in the Amended Complaint**

4.     I have reviewed the Amended Complaint in the above-captioned proceeding.  In paragraphs 244 through 249, and 250 through 255 of the Amended Complaint, two of the named plaintiffs make certain assertions related to GE Money Bank (even though GE Money Bank is not listed as a defendant in the caption).  Specifically, Plaintiffs Nicole Gagnon and Ekaterine Skotedis allege that they are or were GE Money Bank accountholders.  No other named plaintiff claims to share any contractual or other relationship with GECRB.

5.     Among the unnumbered exhibits attached to the Amended Complaint are two documents that mention the above-referenced plaintiffs and GE Money Bank.  First, the Amended Complaint attaches as an unnumbered exhibit a complaint filed against Ms. Gagnon by Portfolio Recovery Associates, LLC on or about March 26, 2012.  The only reference to GE Money Bank is found in paragraph two of that complaint where it is alleged that Portfolio Recovery Associates, LLC purchased from GE Money Bank/Lord & Taylor the right to collect the debt owed by Ms. Gagnon.

6.     Second, the Amended Complaint attaches as an unnumbered exhibit a complaint filed against Plaintiff Ekaterine Skotedis A/K/A Sharon Williams Buchanan by CACH, LLC on or about July 20, 2012.  CACH, LLC's complaint alleges that it is the "assignee and/or purchaser of all rights and privileges of the credit issuer (to wit, GE Money Bank/Citicorp Trust Bank/Jennifer Convertibles/HQ) which issued a credit card to the Defendant(s)."

7.     No allegations of wrongdoing appear to be alleged against GECRB by either plaintiff in either the Amended Complaint or the unnumbered exhibits referenced above.

**B.     Nicole Gagnon's Credit Card Agreement**

8.     Based on the information contained in the Amended Complaint, I have identified a GE Money Bank/Lord & Taylor credit card account ending in 9185[1] opened on or about March 1, 2005 in the name of Nicole Gagnon.

9.     GECRB's records indicate that GE Money Bank acquired the Lord & Taylor credit account portfolio on or about September 2007 and sent a notice of the acquisition (the "Notice") to Lord & Taylor cardholders dated September 2007.  That Notice informed card holders of certain changes to the terms governing their accounts in a section entitled "Key Differences."  One of those differences was the following:  "Your account will be governed by and construed in accordance with federal law, and to the extent that state law applies, the laws of the State of Utah."  The Notice stated that the identified changes would be effective on the date the notice is received.  A true and correct copy of the Notice is attached as Exhibit A.

10.     Attached as Exhibit B is a true and correct copy of the New Agreement dated April 2009 governing Ms. Gagnon's Lord & Taylor account with GECRB.  The New Agreement states that its effective date is 28 days after the statement date shown on the accompanying billing statement.  Ex. B at 2.

11.     GECRB's records indicate that Ms. Gagnon was provided with copies of Exhibits A and B.  Specifically, Exhibit A was enclosed with Ms. Gagnon's monthly billing statement dated September 26, 2007.  Exhibit B was enclosed with Ms. Gagnon's monthly billing statement dated April 26, 2009.

---

[1]     Only the last four digits of the account number are provided to protect the accountholder's privacy.

**C.    Ekaterine Skotedis' Credit Card Agreement**

12.    Based on the information contained in the Amended Complaint, I have identified a GECRB/Home Design credit card account ending in 3352 that was opened on or about June 16, 2006 in the name of Ekaterine Skotedis. This account was not originally opened by GECRB; rather, it was purchased by GECRB on or about October 6, 2010. It was then sold by GECRB on or about January 13, 2011.

13.    To date, GECRB has been unable to locate the agreement that governed Ms. Skotedis' account while it was with GECRB. Upon information and belief, the agreement contains an enforceable arbitration clause. For present purposes, GECRB thus reserves its right to compel arbitration with respect to Ms. Skotedis' claim and rely upon the Motion to Dismiss joined by all Defendants (including GE Capital Consumer Lending, Inc.), which I understand is being filed simultaneously with this Motion to Compel.

**D.    Ms. Gagnon's Credit Card Agreement is Governed by Utah Law**

14.    Ms. Gagnon's Agreement includes a choice-of-law provision, which provides: "[T]his Agreement and your Account and any claim, dispute or controversy arising from or relating to this Agreement or your Account . . . are governed by and construed in accordance with federal law, and to the extent that state law applies, the laws of the State of Utah (without regard to internal principles of conflicts of law)." The Agreement further provides: "This Agreement is entered into between you and us in Utah. We make decisions about granting credit to you from, extend credit to you under this Agreement from, and accept your payments in Utah." Ex. B at 14.

4

**E.     Ms. Gagnon's Credit Card Agreement Contains an Arbitration Clause**

15.     Ms. Gagnon's agreement contains an arbitration provision (the "Arbitration Provision"), which provides that upon the election of either party, any legal dispute between the parties will be resolved by binding arbitration. Ex. B at 4, 12.

16.     This agreements permits the accountholder to reject the arbitration if she sends GECRB notice of rejection within 60 days after the statement date shown on the accompanying billing statement. Ex. B at 12. GECRB's records indicate that Ms. Gagnon did not reject the arbitration provision at any time.

17.     The Arbitration Provision in Ms. Gagnon's Credit Card Agreement defines "Claim" as "any past, present or future legal dispute or claim of any kind, including statutory and common law claims and claims for equitable relief, that relates in any way to your account, card or your relationship with us." Ex. B at 12.

18.     The Arbitration Provision provides that any party to the Agreement has the right to elect to arbitrate a Claim against the other. If a claim goes to arbitration "neither you nor we will have the right to have a court or a jury decide the Claim." Ex. B at 13.

19.     Both agreements contain an Arbitration Provision stating that if either party invokes the right to arbitrate, the arbitration will proceed on an individual basis. Specifically, it provides that "neither you nor We will have the right . . . to participate in a class action in court or in arbitration, either as a class representative or a class member;" or to "join or consolidate your claim(s) with claims of any other person." Ex. B at 13.

20.     The Arbitration Provision further provides that the terms of this agreement involve interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§1 *et seq.* ("FAA"). Ex. B at 13.

5

21.    Ms. Gagnon's agreement is substantially similar to all versions of the card member agreements between the accountholder and GECRB during the time period the account was open.

22.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.


DATED:          January 24, 2013
                Merriam, Kansas


                                    _____
                                        Martha A. Koehler

# EXHIBIT A

**LORD & TAYLOR**
**[75187]**
CG8D (9/07) 7145-CIO

## IMPORTANT NOTICE TO FDS BANK
## CARDHOLDERS REGARDING YOUR
## LORD & TAYLOR CREDIT CARD ACCOUNT
## SEPTEMBER 2007

**Please read this notice carefully and retain it for your records.**

Dear Lord & Taylor Cardholder:

GE Money Bank, a Federal Savings Bank ("GEMB" or "we", "us" or "our"), recently acquired the Lord & Taylor credit card program and is now the creditor for the Lord & Taylor credit card accounts ("Accounts"). You should carefully read and keep for your records this Notice.

All references to FDS Bank in any communications about the Lord & Taylor credit card program, now refer to GEMB. In addition, all references to the Office of The Comptroller of the Currency relating to the Lord & Taylor credit card program now refer to the Office of Thrift Supervision which is the federal agency that administers compliance with the Equal Credit Opportunity Act for GEMB, and which is located at: Chicago Regional Office, One South Wacker Drive, Suite 2000, Chicago, Illinois 60606. The transfer of your existing Account will not affect your ability to use your Lord & Taylor credit card to make purchases, including mail, Internet and telephone orders, or your ability to make payments at Lord & Taylor stores.

**New Payment Address.** Payments on your Account may be sent to the address on your remittance coupon in your monthly billing statement, which is P.O. Box 960035, Orlando, FL 32896-0035. If you are currently enrolled through lordandtaylor.com to pay your bill online, you will need to re-enroll for online payments to ensure that your payment is credited correctly. If you pay your bill through any other online service (including through a personal bank account), please verify the payment information is correct. If you have questions about your Account, please call 1-866-465-8292. **Please remember that a payment received after the date indicated in your billing statement may result in a late payment fee.**

In addition to the changes above, we are changing a number of terms in your existing Lord & Taylor credit card agreement ("Existing Agreement"). These changes are explained below in this Notice and, other than the change in creditor, will be effective on the date you receive this Notice. The change in creditor will be effective on the date your Account was transferred to GEMB.

**Key Differences**

**A. *New Creditor.*** GE Money Bank, a Federal Savings Bank, is the creditor on your Account.

[1]

**B.** *New Privacy Policy.* A copy of the new Privacy Policy applicable to your Account is enclosed for your records. This Privacy Policy is effective immediately. Please note that if, at the time your Account was transferred to us, the records of the previous creditor on your Account reflected that you had exercised your choice to restrict the sharing of information under the previous creditor's Privacy Policy, we will continue to honor that choice going forward. Additionally, if the billing address on your Account at the time your Account was transferred to us was in Vermont, we will treat your Account as if you had exercised your choice to opt out of sharing of information with nonaffiliated third parties, except as required or permitted by law. You may exercise your choice to opt out of certain information sharing practices, as described in the Privacy Policy. You acknowledge that identifying information about you (which may include, among other things, name, address, telephone number, e-mail address and date of birth) has been and will continue to be provided directly to Lord & Taylor LLC.

**C.** *Payments.*

(1) The minimum payment terms on your Account are being amended as follows: If during any four month period immediately following a billing period in which a late fee is assessed, you pay at least the Minimum Payment each month but the total of your payments does not at least equal the sum of the finance charges billed on your Statement each month, plus 1% of your New Balance each month, plus the particular late fee that was assessed in the billing period before the four month period, your Minimum Payment will be changed for future months to the greater of (i) the Minimum Payment provided in your existing Account agreement (before this Notice) or (ii) 1% of your New Balance plus finance charges and late fees. Other than as provided above, the Minimum Payment terms of your existing Account agreement remain in effect.

(2) We will reserve the right to select the method by which payments and credits are allocated to your Account. The payment allocation method that we use may result in higher Finance Charges on your Account, depending on the types of transactions you make (such as Regular, Club Plan, promotional or non-promotional purchases), and the timing and amount of your payments. If you have any questions about the allocation of your payment or would prefer to choose a different payment allocation option we offer on Special Promotions opened after September 16, 2007, please call customer service at 1-866-465-8292. If your Account is expressly subject to a specific method by which payments and credits are allocated to your Account, this method no longer will apply.

**D.** *Governing Law.* Your Account will be governed by and construed in accordance with federal law, and to the extent that state law applies, the laws of the State of Utah. Your Account currently is governed by the laws of the State of Ohio and applicable federal law.

**LORD & TAYLOR**
**[75187]**
CG8D (9/07) 7145-CIO

[2]

# EXHIBIT B

**LORD AND TAYLOR**
[10598]
Super L&T PLCC CIO/CIT

---

**IMPORTANT SUPPLEMENT TO YOUR ACCOUNT AGREEMENT**

The following is being added to your account agreement:

You agree that GE Money Bank and any other owner or servicer of your account may contact you about your account using any contact information or cell phone numbers you provide (whether provided previously or provided in the future). You expressly agree to the use of any automatic telephone dialing system and/or artificial prerecorded voice when contacting you, even if you are charged for the call under your phone plan.

The above provision will become part of your account agreement if you consent to the provision by (i) using your account more than 15 days after this notice is delivered to you or (ii) keeping your account open more than two months after this notice is delivered to you. If you do either of these things, we will conclude that you have consented to being contacted on your cell phone in this way. If you do not want to be contacted on your cell phone in this way, you may call us at 1-866-630-2781 any time.

---

**IMPORTANT NOTICE REGARDING**
**LORD & TAYLOR CREDIT CARD ACCOUNT TERMS**
**GE MONEY BANK**
**APRIL 2009**

Please read this notice carefully and retain for your records.

Dear Cardholder:

GE Money Bank is changing the terms that may be imposed on Lord & Taylor credit card accounts ("Accounts"). You should carefully read and keep for your records this Notice and the new Lord & Taylor Credit Card Agreement ("New Agreement") that will govern your Account, a copy of which is attached to this Notice. Unless otherwise defined in this Notice, capitalized terms have the meaning set forth in the New Agreement.

As highlighted in the "Key Differences" section below, the New Agreement contains a number of terms that differ from the terms of your existing Lord and Taylor credit card agreement ("Existing Agreement"). The New Agreement will apply to existing and new balances on your Account as provided in this Notice.

[1]

**WHEN THE NEW AGREEMENT BECOMES EFFECTIVE.**

Other than the changes described in Section C of the "Key Differences" section, the Effective Date of the New Agreement will be 28 days after the Statement Date shown on the accompanying billing statement. ("Effective Date").

**YOUR RIGHT TO REJECT THE TERMS OF THE NEW AGREEMENT**

You do not have to accept the terms of the New Agreement other than the changes set forth in Sections A and C of the "Key Differences" section. To reject the terms of the New Agreement (that you are permitted to reject), you must notify us in writing before the Effective Date that you reject the terms of the New Agreement and that you have surrendered or destroyed your credit card. The address you should send this notice to is:

GE Money Bank
P.O. Box 981433
El Paso, TX 79998-1433

Your failure to provide timely notice and surrender or destroy your credit card prior to the Effective Date will constitute your consent to the terms of the New Agreement. Even if you have notified us that you reject the terms of the New Agreement, any purchase you make on or after the Effective Date will constitute acceptance of the terms of the New Agreement.

If you reject the terms of the New Agreement, your Account will be closed and you may continue to pay off any balance on your Account under the terms of your Existing Agreement, except that the following changes will still apply to your Account:

    (1) the changes described in Sections A and C of the "Key Differences" section; and

    (2) any changes to your Existing Agreement which you previously were notified of and you did not reject.

In addition, if you reject the new Arbitration Provision by following the process set forth in Section 20 of the New Agreement and not the other terms of the New Agreement, you may continue to use your credit card.

If you have any questions about this Notice, please call the telephone number on your billing statement.

**KEY DIFFERENCES**

A description of the key differences between the Existing Agreement and the New Agreement is set forth below. Please review the New Agreement carefully.

## KEY DIFFERENCES

**A. CHANGES WHICH MAY NOT BE REJECTED**

1. **Types of Charges.** Under your New Agreement, there are two types of charges: Regular charges and Club charges. The Major Purchase charges option is no longer available.
   *See Section 2 of the New Agreement for the Types of Charges provision.*

2. **Payments.** If not already in effect on your Account, we are making the following changes to the Payments section: (i) increasing the Minimum Payment required in certain circumstances when your Account is assessed a Late Payment Fee; (ii) reserving the right to select the payment allocation method applicable to your Account; (iii) reserving the right to obtain payments electronically under certain circumstances; (iv) clarifying that we may offer services in which you may pay your bill by telephone or through the Internet; and (v) clarifying that any payment received after 5:00 p.m. (ET) on any day will be credited as of the next day.
   *See Section 8 of the New Agreement for the Payments provision.*

3. **Statement Reprint Fee.** We are clarifying that we may charge a Statement Reprint Fee for each additional copy of your billing statement you ask us to reprint for you. This will replace any Document Production Fee provision that may be in your Existing Agreement.
   *See Section 9 of the New Agreement for the Fees provision.*

4. If your check is not honored upon first presentment, any fee or other charge, including a Returned Check Fee, Late Payment Fee, and adjusted Finance Charges, which would have been imposed if the payment had not been made, will still be imposed when we determine that your payment has not been honored.

5. Returns will satisfy the Minimum Payment due on your Account only if the sum of your return(s), payments and credits made by the Payment Due Date is at least equal to the New Balance at the beginning of that billing period.

**B. CHANGES WHICH MAY BE REJECTED**

6. **Finance Charges.**

(a) If not already in effect on your Account, we are increasing the Minimum **Finance Charge** on your Account to **$1.00**.

(b) If your Account is subject to a monthly periodic rate of Finance Charge, we are changing it to a daily periodic rate, and Finance Charges will be calculated on your Account on a daily basis. This change will result in daily compounding of the Finance Charges.

(c) For all Accounts, we are increasing the "Standard Rate", which is the periodic rate that is applied when the Delinquency Rate is not applied. The Standard Rate will be a daily periodic rate equal to **.06274% (ANNUAL PERCENTAGE RATE 22.90%)**.

[2]

[3]

(d) For Accounts that currently have a delinquency rate ("Delinquency Rate"), we are increasing the Delinquency Rate on your Account. For Accounts that do not currently have a Delinquency Rate, we are adding a Delinquency Rate to your Account which may be imposed if you fail to make at least the Minimum Payment due by the Payment Due Date shown on your Statement for two consecutive billing periods, or if you miss a payment during any six month period. Once the Delinquency Rate applies, if you make at least all required Minimum Payments by the Payment Due Date in six consecutive billing periods, the Standard Rate will apply. We may also change rates or other terms as provided in the Termination/Change in Terms section of the New Agreement. The new Delinquency Rate for all Accounts will be .07096% **(ANNUAL PERCENTAGE RATE 25.90%)**.
*See Section 5 of the New Agreement for the Finance Charges provision.*

7. **Balance Subject to Finance Charge.** The balance subject to Finance Charge is calculated separately for Regular charges, Club Plan charges and any Special Promotions.
*See Section 6 of the New Agreement for the Balance Subject to Finance Charge provision.*

8. **Late Payment Fee.** If not already in effect on your Account, we are adding a Late Payment Fee and changing when it will be assessed. For Accounts that currently have a Late Payment Fee, we are changing how we determine the balance on which your Late Payment Fee will be based and increasing the Late Payment Fee on your Account for certain balance ranges. The new Late Payment Fee for all Accounts will be $0 for a balance under $15; $15 for a balance of $15.00 - $49.99; $29 for a balance of $50.00 - $499.99; $35 for a balance of $500.00 - $999.99 and $39 for a balance of $1,000 and more.
*See Section 9 of the New Agreement for the Fees provision.*

9. **Arbitration.** We are adding an Arbitration Provision (the "Arbitration Provision") to the New Agreement. The Arbitration Provision may substantially limit your rights in the event of a dispute, including the right to litigate in court or have a jury trial, discovery and appeal rights, and the right to participate as a representative or member of a class action. You have the right to reject the Arbitration Provision, in which event neither you nor we will have the right to require arbitration of any Claim.
*See Section 20 of the New Agreement for the Arbitration provision including your right to reject this provision.*

10. **Governing Law.** If not already in effect for your Account, your Account and New Agreement will be governed by and construed in accordance with federal law, and to the extent that state law applies, the laws of the State of Utah.
*See Section 21 of the New Agreement for the Governing Law provision.*

[4]

**C. ADDITIONAL CHANGES AND NOTICES**

As you may have previously been advised, on or about September 2007, GE Money Bank, a Federal Savings Bank, acquired the Lord & Taylor credit card program and is now the creditor for the Lord & Taylor credit card accounts. In connection with the acquisition, many cardholders received notice of the following changes and other important information. In the event you did not receive such notice, the following changes also apply to your Account. Other than the change in creditor, which was effective as of the date your Account was transferred to GE Money Bank, the effective date of the changes set forth below will be the date you receive this Notice.

* GE Money Bank, a Federal Savings Bank, is the creditor on your Account.

* A copy of the new Privacy Policy applicable to your Account is attached for your record. Please note that if, at the time your Account was transferred to us, the records of the previous creditor on your Account reflected that you had exercised your choice to restrict sharing of information under the previous creditor's Privacy Policy, we will continue to honor that choice going forward. Additionally, if the billing address on your Account at the time your Account was transferred to us was in Vermont, we will treat your Account as if you had exercised your choice to opt out of sharing information with nonaffiliated third parties, except as required or permitted by law. You may exercise your choice to opt out of certain information sharing practices, as described in the Privacy Policy. You acknowledge that identifying information about you (which may include, among other things, name, address, telephone number, e-mail address and date of birth) has been and will continue to be provided directly to Lord & Taylor LLC.

* All references to FDS Bank in any communications about the Lord & Taylor credit card program, now refer to GE Money Bank. In addition, all references to the Office of The Comptroller of the Currency relating to the Lord & Taylor credit card program now refer to the Office of Thrift Supervision which is the federal agency that administers compliance with the Equal Credit Opportunity Act for GE Money Bank, and which is located at: Office of Thrift Supervision, Consumer Response Unit 1, 1700 G Street NW, Washington, D.C. 20552.

* The transfer of your Account will not affect your ability to use your Lord & Taylor credit card to make purchases, including internet and telephone orders, or your ability to make payments at Lord & Taylor stores.

* There is a new payment address. Payments on your Account may be sent to the address on your remittance coupon in your monthly billing statement, which is P.O. Box 960035, Orlando, FL 32896-0035. In addition, if you enrolled on lordandtaylor.com before September 17, 2007 to pay your bill online, you will need to re-enroll for online payments to ensure that your payment is credited correctly. If you pay your bill through any other online service (including through a personal bank account), please verify the payment information is correct.

[5]

# LORD & TAYLOR
## GE MONEY BANK
### CREDIT CARD AGREEMENT
### RETAIL INSTALMENT CREDIT AGREEMENT
### Nonnegotiable Consumer Note

**1. GENERAL.** This Agreement ("Agreement") governs your Lord & Taylor credit card account ("Account"). In this Agreement and your billing statement ("Statement"), "we", "us", and "our" means GE Money Bank, 4246 South Riverboat Road, Suite 200, Salt Lake City, UT 84123-2551; "you" and "your" means all persons who we approve to use the Account; and "Card" means your Lord & Taylor credit card. The effective date of this Agreement ("Effective Date") will be the Effective Date of the attached Notice.

**2. TYPES OF CHARGES.** There are two types of charges ("Plans") under your Account: regular charges ("Regular charges") and club charges ("Club charges" or "Club Plan"). If a purchase you make is identified as eligible to be charged on the Club Plan, you may elect at the time of purchase to put that charge on such Plan. Otherwise, all charges you make will be Regular charges. Your desire to charge purchases as a Club charge must be indicated at the time of purchase. All other charges are Regular charges. The way we calculate the Minimum Payment and Finance Charge is different for each of these Plans. The other terms and conditions in this Agreement will apply to all Plans.

**3. USE OF ACCOUNT.** You may use your Account to purchase goods or services ("Purchases"), up to any credit limit we may establish ("Credit Limit"). We may decline to authorize any Purchase or change your Credit Limit at any time. You may use your Account only for personal, family or household purposes.

**4. PROMISE TO PAY.** You promise to pay us for all credit that we extend on your Account for Purchases and all other amounts owed to us under the terms of this Agreement.

**5. FINANCE CHARGES.**

**A.** The Finance Charge for a billing period is calculated by applying the Periodic Rate to the Account balance subject to Finance Charge for each day in the billing period and adding together all of those daily Finance Charge amounts. Finance Charges are calculated separately for each Plan and for Special Promotions. There is a minimum **FINANCE CHARGE of $1.00** for a billing period in which a Finance Charge is assessed.

**B.** The Periodic Rate for your Account is the standard rate ("Standard Rate"), unless the Delinquency Rate applies as described in Section 5.C. The Standard Rate for a billing period is equal to .06274% **(ANNUAL PERCENTAGE RATE 22.90%).**

**C.** The Periodic Rate and corresponding Annual Percentage Rate for all Account balances (including promotional rates) may be increased if you fail to make at least the Minimum Payment due by the Payment Due Date shown on your Statement for two consecutive billing periods, or if you miss a payment twice in any six month period. The delinquency rate ("Delinquency Rate")

[6]

for a billing period is .07096% **(ANNUAL PERCENTAGE RATE 25.90%).** If we increase your Periodic Rate, the new Periodic Rate will be equal to the Delinquency Rate, or at our discretion a lower rate. Our decision may be based on factors such as the timing or seriousness of any default, your payment and purchase history on this Account and other indications of Account performance. The increased Periodic Rate will apply to your existing balances and future transactions and will take effect as of the first day of the next billing period. Once the Delinquency Rate applies, if you make at least all required Minimum Payments by the Payment Due Date in six consecutive billing periods, the Standard Rate (rather than the Delinquency Rate) will apply to all existing balances on your Account and all new transactions beginning with the first day of the billing period that begins after the Payment Due Date for the sixth consecutive billing period for which you made the required Minimum Payment. We may also change rates or other terms as provided in the Termination/Change in Terms section of this Agreement.

**6. BALANCE SUBJECT TO FINANCE CHARGE.**

**A.** The balance subject to Finance Charge is calculated separately for Regular charges, Club Plan charges and any Special Promotions. The balance subject to Finance Charge is the Daily Balance of each Plan. However, there is no balance subject to Finance Charge for a Plan for a billing period if there is no Previous Balance on the Plan for that billing period or the sum of your payments and credits allocated to the Plan and posted to your Account by the Payment Due Date is at least equal to the Previous Balance for such Plan. In addition, there is no balance subject to Finance Charge on the Club Plan for a billing period if during such billing period you pay at least the total of the following: (i) the Club Plan minimum payment and (ii) any past due amounts on your Club Plan.

**B.** To determine the Account balance subject to Finance Charge, we take the beginning balance of each Plan on your Account each day, which includes any unpaid Finance Charges on the Plan, and add any new Plan Purchases and other debits for that day and subtract any payments and other credits applied that day to such Plan. Each day, we also add any Finance Charges assessed that day on your Plan and a pro-rata portion of any fees and debt cancellation fees, if any, assessed that day on your Account. This gives us the "Daily Balance" of each Plan. Any Daily Balance of less than zero will be treated as zero.

**7. WHEN FINANCE CHARGES BEGIN TO ACCRUE.** If there is no Previous Balance for a Plan for the billing period or the sum of your payments and credits allocated to a Plan and posted to your Account by the Payment Due Date is at least equal to the Previous Balance for such Plan, new Plan Purchases and other charges in that billing period will begin to accrue a Finance Charge as of the first day of the next billing period if a Finance Charge is imposed on the Plan balances in the next billing period. If there is a Previous Balance for the billing period for a Plan and the sum of your payments and credits allocated to a Plan and posted to your Account by the Payment Due Date is not at least equal to that Previous Balance, new Plan Purchases and other charges in that billing period will begin to accrue a Finance Charge from the later of the date of the transaction or the first day of

[7]

the billing period in which the transaction is posted to your Account. In addition, there is no balance subject to Finance Charge on the Club Plan for a billing period if during such billing period you pay at least the total of the following: (i) the Club Plan minimum payment and (ii) any past due amounts on your Club Plan.

**8. PAYMENTS.**

**A.** You must pay at least the total minimum payment on your Account (the "Minimum Payment") by 5:00 p.m. (ET) on the Payment Due Date shown on the Statement. To determine the total Minimum Payment due for each billing period, we (i) calculate the minimum payment due on your Regular charges and Club Plan charges as set forth below, (ii) add these amounts together, and (iii) add your debt cancellation fees, if any. You may pay more than the Minimum Payment at any time. If you have a balance subject to finance charge, earlier payment may reduce the amount of finance charges you will pay. Your Payment Due Date may vary from month to month and the length of time you have to pay may be longer or shorter from month to month. Please check the Payment Due Date on your Statement carefully each month to ensure timely payment. The Minimum Payment is calculated as follows:

1. The minimum payment on your Regular charges will initially be the sum of the greater of $5.00 or 3.25% of the new balance of Regular charges, rounded up to the next whole dollar amount or the entire new balance of Regular charges if it is under $5.00.

2. The minimum payment on your Club Plan charges is based on the highest new balance of your Club Plan and will initially be the greater of $20.00 or 1/12th of the highest new balance of your Club Plan (rounded up to the next whole dollar) since it last had a $0 balance. However, the Club Plan minimum payment is the Club Plan balance if such balance is less than $20.00. Under this method, the Club Plan minimum payment will not decrease as the Club Plan balance decreases, but it will increase if a new Club Plan charge is added to your Account and such charge increases the Club Plan balance subject to minimum payment above a previous high.

However, if during any four month period following a billing period in which a late fee is assessed, you pay at least the Minimum Payment each month but the total of your payments does not at least equal the sum of the finance charges billed on your Statement each month, plus 1% of the New Balance of your Account each month, plus the particular late fee that was assessed in the billing period before the four month period, your Minimum Payment will be changed for future months to the greater of (i) the total Minimum Payment calculation set forth above, or (ii) the sum of 1% of the New Balance of your Account plus finance charges and late fees billed on your Statement, rounded to the next highest dollar. In each case, your Minimum Payment will include any past due amounts and any payment due in connection with a specified promotional purchase.

**B.** All written communications concerning disputed amounts, including any check or other payment instrument that (i) indicates that the payment constitutes "payment in full" or is tendered as full satisfaction of a disputed amount, or (ii) is tendered with other conditions or limitations ("Disputed Payments"), must be mailed or delivered to us at the address for billing inquiries shown on the Statement, not the Payment Address.

[8]

**C.** All payments, except Disputed Payments, must be mailed or delivered to us at the address shown on your Statement (the "Payment Address"). Any payments received after 5:00 p.m. (ET) on any day will be credited as of the next day. We may also offer services in which you may pay your bill by telephone ("Pay by Phone") or through the Internet. We may charge fees for these services. Our customer service representatives are instructed to tell you about any fees for Pay by Phone services and any fee for making an online payment will be disclosed to you online. Credit to your Account may be delayed up to five days if payment (a) is not received at the Payment Address, (b) is not made in U.S. dollars drawn on a U.S. financial institution located in the U.S., (c) is not accompanied by the remittance coupon attached to your statement, (d) contains more than one payment or remittance coupon, (e) is not received in the remittance envelope provided or (f) includes staples, paper clips, tape, a folded check, or correspondence of any type. You agree that any payments on your Account delivered to a Lord & Taylor store are handled by Lord & Taylor as a convenience for you and are not deemed received or accepted by us until actually received by us. You understand, however, that payments may not be made, and may not be deemed received by us, at any location other than the Payment Address, a Lord & Taylor store (as a convenience to you) or via our Pay by Phone or online payment services, if provided. Although we post your payments in the manner described above, we may delay restoring your available Credit Limit in the amount of your payment. All credits for payments to your Account are subject to final payment by the institution on which the item of payment was drawn.

**D.** We reserve the right to select the method by which payments and credits are allocated to your Account in our sole discretion. The payment allocation method that we use may result in higher Finance Charges on your Account, depending on the types of transactions you make (such as Club Plan, promotional or non-promotional purchases), and the timing and amount of your payments. If you have questions about our allocation of your payments, or if your payments are not allocated to your promotional purchase in a manner you desire, please call customer service to see whether we can reallocate your payments based on another payment allocation option we offer.

**E.** We reserve the right to obtain payment electronically for any check or other instrument that you send to us by initiating an ACH (electronic) debit in the amount of your check or instrument to your account. Your check or item will not be returned to you by us or your bank. Your bank account may be debited as early as the same day we receive your payment.

**9. FEES.** You agree to pay the following fees.

**A.** A Late Payment Fee, if we have not received your total Minimum Payment by 5:00 p.m. (ET) on the Payment Due Date shown on your Statement. The amount of the Late Payment Fee will be based on your Account balance at the time the Late Payment Fee is posted to your Account. The amount of the Late Payment Fee will be:

| Account Balance | Late Payment Fee |
|---|---|
| Under $15 | $0 |
| $15 – $49.99 | $15 |
| $50 – $499.99 | $29 |
| $500 – $999.99 | $35 |
| $1,000 and more | $39 |

[9]

B. A Returned Check Fee of $25.00 if any check or other instrument sent to us, or any electronic payment authorization you provide us in payment on your Account, is not honored upon first presentment, even if the check, instrument or electronic authorization is later honored.

C. A Statement Reprint Fee for each Statement you ask us to reprint for you. Our customer service representatives are instructed to tell you about any fees for Statement reprint services at the time you call to order a reprint.

**10. SPECIAL PROMOTIONS.** From time to time, you may be offered special introductory or promotional terms which modify the terms of this Agreement with respect to specific transactions on your Account ("Special Promotions"). The provisions of this Agreement apply to any Special Promotion, unless otherwise provided in this Agreement or under the terms of the Special Promotions. We may, without prior notice, terminate your participation in any Special Promotion if you do not make any minimum payment when due, you exceed your Credit Limit or you make a payment to us that is not honored by your bank. In the event of termination of your participation in any Special Promotion (i) each remaining balance in any Special Promotion will not be treated as a Special Promotion and will be subject to the standard terms and conditions of the Account and, (ii) if your Special Promotion provided for accrued finance charges, finance charges accrued under the Special Promotion from the date of purchase may be added to your balance.

**11. TERMINATION/CHANGE IN TERMS.** You may terminate your Account at any time by providing us written notice. We may, at any time and for any reason, change, add or delete provisions of this Agreement including increasing rates or fees, or terminate your Account. We will send to you notice of any Terms Change as required by applicable law. Upon any termination of your Account, you remain obligated to repay the balance of your Account and this Agreement will continue to apply until you do so.

**12. DEFAULT.** Subject to the limitations of applicable law, we may declare you in default if your (i) fail to make at least the Minimum Payment when due; (ii) violate any other term of this Agreement; or (iii) become the subject of a bankruptcy or insolvency proceeding. After your default or your death, and subject to the limitations of applicable law, we may: (i) reduce your Credit Limit; (ii) terminate your Account; (iii) require immediate payment of your entire Account balance; (iv) terminate any Special Promotions and convert any balance on such Plan to the standard terms and conditions of the Account; (v) bring an action to collect all amounts owed; and/or (vi) take any action allowed by law. If, after your default, we refer your Account for collection to an attorney who is not our salaried employee, you will pay, to the extent permitted by applicable law, our collection costs, including court costs and reasonable attorneys' fees.

**13. LIABILITY FOR UNAUTHORIZED USE.** The Card is issued to you by us at your request and you agree to destroy it upon demand. You will have zero liability in the event of unauthorized use of your Account as long as you keep your Account in good standing, you have exercised reasonable care in safeguarding your Card(s), checks, Account number and other Account access devices and you have not reported two or more unauthorized events

[10]

in the past twelve (12) months. You may be liable for up to $50.00 for the unauthorized use of the Card if the appropriate conditions noted above have not been met. You agree to promptly notify us if your Card is lost or stolen or of possible unauthorized use of your Card by calling us at 1-866-465-8292. You will not be liable for unauthorized use that occurs after you notify us of the loss, theft, or possible unauthorized use. If you orally give us notice concerning loss or theft, you agree to confirm it in writing. You agree that unauthorized use does not include use by a person to whom you have given authority to use the Account or Card and that you will be liable for all use by such a person. To terminate that authority, you must notify us at 1-866-465-8292.

**14. CREDIT REPORTS AND ACCOUNT INFORMATION.** You give us permission to request information and to make whatever inquiries we consider necessary and appropriate (including obtaining information from third parties and requesting consumer reports from consumer reporting agencies) for the purpose of considering your application for this Account and subsequently, in connection with any updates, renewals or extensions of credit or reviewing or collecting your Account. You also authorize us to report information concerning you or your Account, including information about your performance under this Agreement, to consumer reporting agencies and others who may properly receive such information. If you believe that we have reported inaccurate information about you to a consumer reporting agency, please contact us at P.O. Box 981432, El Paso, TX 79998-1432. In doing so, please identify the inaccurate information and tell us why you believe it is incorrect. If you have a copy of the credit report that includes the inaccurate information, please include a copy of that report. You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a consumer reporting agency if you fail to fulfill the terms of this Agreement.

**15. USE OF INFORMATION ABOUT YOU AND YOUR ACCOUNT/CONSENT TO COMMUNICATIONS.** You authorize and direct us to furnish information about you and your Account to Lord & Taylor LLC, and its affiliates, for use in connection with the Lord & Taylor credit card program, including to create and update their customer records, to assist them in better serving you, and to provide you with special promotions. In addition, you agree to the use of information about you and your Account described in the Privacy Policy. The Privacy Policy is a part of this Agreement and is enclosed or attached hereto. You consent for us to contact you using all media, and for all purposes (including collection purposes), using all contact information you provide to us. You agree that we may use automated equipment to dial your telephone number or to deliver messages to you. You may limit this consent based on the options we may provide to you by calling customer service. Any charges for contacting you which may be billed to you by your communications carrier are your responsibility.

**16. TELEPHONE MONITORING.** To ensure that you receive accurate and courteous customer service, on occasion, your call may be monitored by our employees or agents and you agree to let us monitor such monitoring.

**17. JOINT ACCOUNTS.** If this is a joint account, each of you will be jointly and individually responsible for your obligations under this Agreement; notice

[11]

to one of you will be considered to be notice to both of you; and we can rely on instructions from one of you, even if we receive inconsistent instructions from the other person.

**18. WAIVER.** We may, in our sole discretion, choose to not exercise any right under this Agreement, including the right to impose the full amount of any charge, without waiving that right. Any waiver of a right by us must be in writing and signed by us. Except as we may agree in a signed writing, we will not waive any rights if we (a) accept a late or partial payment, (b) accept a check or other payment marked "payment in full" or tendered with other conditions or limitations, (c) extend the due date of any payment due under this Agreement, and/or (d) release any collateral or person responsible for your obligations under this Agreement.

**19. CHANGE OF ADDRESS.** You will notify us promptly if you change your address. We may send Statements and other notices to your address in our records until we have a reasonable opportunity to update our records with any new address for you. You agree that when we are notified that you have a new address, the terms of this Agreement specifically applicable to the residents of your new state of residence will apply to the entire balance of your Account.

**20. ARBITRATION PROVISION.** Please read this arbitration provision carefully. IT PROVIDED THAT ANY PAST, PRESENT OR FUTURE LEGAL DISPUTE OR CLAIM OF ANY KIND, INCLUDING STATUTORY AND COMMON LAW CLAIMS AND CLAIMS FOR EQUITABLE RELIEF, THAT RELATES IN ANY WAY TO YOUR ACCOUNT, CARD OR YOUR RELATIONSHIP WITH US ("CLAIM") WILL BE RESOLVED BY BINDING ARBITRATION IF EITHER YOU, WE OR LORD & TAYLOR ELECTS TO ARBITRATE.

**Right to Reject Arbitration: You may reject this arbitration provision, in which event neither you nor We will have the right to require arbitration.** Rejection will not affect any other aspect of these terms. To reject the arbitration provision, you must send us a notice within 60 days after the Statement Date shown on the accompanying billing statement. The notice must include your name, address, and account number and be mailed to P.O. Box 981429, El Paso, TX 79998-1429. This is the only method you can use to reject the arbitration provision. As used in this provision: "We", "Us," and "Our" mean (1) GE Money Bank and all of its respective parents, subsidiaries, affiliates, predecessors, successors, assigns, employees, officers and directors (collectively, the "Bank"), and (2) Lord & Taylor LLC and all of its respective parents, subsidiaries, affiliates, predecessors, successors, assigns, employees, officers and directors (collectively, "Lord & Taylor"), if Lord & Taylor is named as a co-party with the Bank in a Claim asserted by you. This arbitration provision covers all Claims, except that We will not elect to arbitrate an individual Claim brought by you in small claims court or its equivalent, unless that Claim is transferred, removed, or appealed to a different court. This provision replaces any existing arbitration provision between you and Us.

The following describes the arbitration procedure, and its implications:

• **Notice:** If you or We elect to arbitrate, the other party must be notified. Your notice must be sent to GE Money – Americas, Legal Operation, 777 Long Ridge Road, Stamford, CT 06927. Notice can be given after a lawsuit has been filed, in which case it can be made in papers in the lawsuit.

[12]

• **Administrator.** The person who starts the arbitration proceeding must choose an administrator, which can be either the National Arbitration Forum, P.O. Box 50191, Minneapolis, MN 55405, www.arb-forum.com (800) 474-2371; or the American Arbitration Association, 335 Madison Avenue, New York, NY 10017, www.adr.org, (800) 778-7879. The actual arbitrator will be selected under the administrator's rules, and must be a lawyer with at least ten years of experience.

• **Applicable Law.** These terms involve interstate commerce and this arbitration provision is governed by the Federal Arbitration Act, 9 U.S.C. Section 1 et seq (the "FAA"). Utah law shall apply to the extent state law is relevant under Section 2 of the FAA in determining the validity of this provision. The arbitrator has to follow: (1) the substantive law, consistent with the FAA, that would apply if the matter had been brought in court, (2) this arbitration provision, and (3) the administrator's rules. The arbitrator is authorized to award remedies that would apply if the individual action were in a court (including, without limitation, punitive damages, which shall be governed by the constitutional standards employed by the U.S. Supreme Court).

• **Location/Fees:** The arbitration will take place in a location reasonably convenient to you. If you ask us, we will pay all filing, administrative, hearing and/or other fees the administrator or arbitrator charges up to $2,500. If the cost is higher, you can ask us to pay more and we will consider your request in good faith. Under all circumstances we will pay all amounts we are required to pay under applicable law.

• **Judgment/Appeals:** A court may enter judgment upon the arbitrator's award. The arbitrator's decision will be final and binding except for: (1) any appeal right under the FAA, and (2) any party may appeal decisions relating to Claims of more than $100,000 to a three-arbitrator panel appointed by the administrator, which will reconsider all over again any aspect of the appealed award. If you appeal, We will consider in good faith a request that We pay any additional fees of the administrator or arbitrator.

**IMPORTANT LIMITATIONS AND RESTRICTIONS: IF A CLAIM GOES TO ARBITRATION, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO: (1) HAVE A COURT OR A JURY DECIDE THE CLAIM; (2) ENGAGE IN DISCOVERY (I.E., THE RIGHT TO OBTAIN INFORMATION TO THE SAME EXTENT THAT YOU OR WE COULD IN COURT; (3) PARTICIPATE IN A CLASS ACTION IN COURT OR IN ARBITRATION, EITHER AS A CLASS REPRESENTATIVE OR A CLASS MEMBER; (4) ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; OR (5) JOIN OR CONSOLIDATE YOUR CLAIM(S) WITH CLAIMS OF ANY OTHER PERSON. THE RIGHT TO APPEAL IS MORE LIMITED IN ARBITRATION THAN IN COURT. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION. ONLY A COURT MAY DETERMINE THE VALIDITY AND EFFECT OF PARTS 3, 4 AND 5 OF THIS PARAGRAPH. IF A COURT SHOULD HOLD SUCH PART(S) TO BE INVALID, THEN THE ENTIRE PROVISION SHALL BE NULL AND VOID. HOWEVER, THIS WILL NOT LIMIT THE RIGHT TO APPEAL SUCH HOLDING. IF A COURT SHOULD HOLD ANY OTHER PART(S) OF THIS ARBITRATION PROVISION TO BE INVALID, THE REMAINING PARTS SHALL BE ENFORCEABLE.**

[13]

This arbitration provision will survive the termination of your account and the card and will remain in force no matter what happens to you or your account. If the administrator's rules conflict with the rules described in this provision, this provision will apply.

**21. GOVERNING LAW.** Except as provided in the arbitration provision, this Agreement and your Account and any claim, dispute or controversy arising from or relating to this Agreement or your Account, whether based on contract, tort, fraud and other intentional torts, statute, common law and/or equity, are governed by and construed in accordance with federal law, and to the extent that state law applies, the laws of the State of Utah (without regard to internal principles of conflicts of law). The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and received under this Agreement will be governed by such laws. This Agreement is entered into between you and us in Utah. We make decisions about granting credit to you from, extend credit to you under this agreement from, and accept your payments in Utah.

**22. ASSIGNMENT.** We may sell, assign or transfer any of our rights or obligations under this Agreement or your Account, including our rights to payments, without prior notice to you. You may not sell, assign or transfer any of your rights or obligations under this Agreement or your Account.

**23. SEVERABILITY.** If any provision of this Agreement is determined to be void or unenforceable under applicable law, all other provisions of this Agreement shall still be valid and enforceable.

**24. ENTIRE AGREEMENT.** This Agreement, together with any application you signed or otherwise submitted in connection with the Account (which is hereby incorporated by reference in this Agreement), constitutes the entire agreement between you and us relating to your Account and supersedes any other prior or contemporaneous agreement between you and us relating to your Account. This Agreement may not be amended except in accordance with the provisions of this Agreement.

**STATE NOTICES**

**NEW JERSEY RESIDENTS:** Because certain provisions of this Agreement are subject to applicable laws, they may be void, unenforceable or inapplicable in some jurisdictions. None of these provisions, however, is void, unenforceable or inapplicable in New Jersey.

**WISCONSIN RESIDENTS:** No provision of a marital property agreement, a unilateral statement under sec. 766.59, Wis. Stats., or a court decree under sec. 766.70, Wis. Stats., adversely affects the interest of the creditor unless the creditor, prior to the time credit is granted, is furnished a copy of the agreement, statement or decree or has actual knowledge of the adverse provision when the obligation to the creditor is incurred. Residents of Wisconsin applying for an individual account must give us the name and address of their spouse, regardless of whether the spouse may use the card. Please provide this information to us at P.O. Box 981436, El Paso, TX 79998-1436.

[14]

Your signature on the application or sales slip for the initial purchase approved on this Account represents your signature on this Agreement and is incorporated by reference.

*Margaret M. Keen*

Margaret Keane
Executive Vice President
GE Money Bank

Notice: The following is important information regarding your right to dispute billing errors.

## YOUR BILLING RIGHTS
### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill**
If you think your bill is wrong, or if you need more information about a transaction on your bill, write to us on a separate sheet at the address shown on your Statement under billing inquiries. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
  • Your name and Account number.
  • The dollar amount of the suspected error.
  • Describe the error and explain, if you can, why you believe there is an error.
If you need more information, describe the item you are not sure about.

**Your Rights and Our Responsibilities After We Receive Your Written Notice**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct. After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone

[15]

we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:
  (a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and
  (b) The purchase price must have been more than $50.
These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

### Important Notice
### Lord & Taylor Consumer Credit Card Program
### GE Money Bank
### Privacy Policy

This Privacy Policy describes our information collection and sharing practices. Please read it carefully. The Policy applies only to current and former customers and applicants in their relationships with us relating to consumer Lord & Taylor Credit Card Accounts of GE Money Bank ("GEMB," "we" or "us").

**Information We Collect** — We collect personally identifiable information about you (such as your address, phone number, social security number, mother's maiden name and transaction information about items purchased, payments and payment method), for identification, account management, servicing and marketing purposes. We obtain information about you directly from you (such as on application forms), through your use of our products and services, and in some cases, from third parties (such as credit bureaus and demographic firms). Occasionally, we may also collect information about you online using "cookies" (small pieces of data stored by your Internet browser on your computer) or other technology that may be used to remember passwords for you, to track your website usage with us, and to provide you with customized content, among other things.

**Information We Share with Others** — We may use and share all of the information we collect, subject to applicable law, with the following (these examples are not intended to be all-inclusive):

• **Lord & Taylor LLC and its affiliates,** for use in connection with the consumer Lord & Taylor Credit Card program and as otherwise permitted by law. They may use this information to update their records, to provide you with notices of special promotions and other tailored offerings, to answer questions about your Account and perform other Lord & Taylor Credit Card program functions or for other purposes permitted by law. They may use their affiliates, licensees, or third-party service providers (such as modeling and database companies) to assist them in any of these activities.

[16]

- **Service Providers**, (including our affiliates) to assist us in servicing Accounts, like preparing billing statements and promotional materials, and responding to customer inquiries. We also may use marketing firms, such as modeling companies, to assist us in our own marketing efforts.

- **Financial institutions with whom we jointly offer financial products**, such as loan products or credit insurance. If your billing address is in Vermont, this information will be limited to your name and contact information, and transaction and experience information on your Account.

- **Our Affiliates, who are other companies in the General Electric Company corporate family ("GE Family")**, for servicing or marketing purposes, subject to your right to opt out of sharing of credit eligibility information, such as certain information from credit bureaus and your application, as provided in the *It's Your Choice* section below. And, subject to your right to opt out, our affiliates also may use information from us concerning your credit eligibility, and your transactions and experience with us, to send you marketing solicitations about products and services.

- **Third Parties, who are interested in offering special products or services to you**, subject to your right to opt out as provided in the *It's Your Choice* section below. For example, we disclose information, either directly or through Lord & Taylor LLC to financial services providers offering products such as insurance, mortgages or loans, and nonfinancial companies offering consumer products and services. We may disclose name, address and telephone numbers, as well as Account purchase and performance history.

- **Others**: We report Account information, such as credit limit, balances and payment information, to credit bureaus. In addition, we may buy and sell assets, lines of business and/or Accounts. When this occurs, customer information generally is disclosed to bidders and is one of the transferred business assets. We also disclose information about you to third parties in certain other circumstances, as permitted by law.

**Our Security Procedures** — We maintain physical, electronic, and procedural safeguards that comply with federal standards to guard nonpublic personal information about you. We limit access to personal and Account information to those employees and agents who assist us in providing products and services to you. We also require third parties to whom we disclose nonpublic personal information to adhere to this Privacy Policy and to establish information security procedures.

**Your Access to Information** — We provide you access to information about your Account by sending you monthly billing statements outlining your transactions, finance charges, and other Account information, and by providing customer service representatives to answer your questions.

**How This Policy Applies to You** — The examples contained in this Privacy Policy are illustrations only, and are not intended to be all-inclusive. If you decide to close your Account or become an inactive customer, or if we close or suspend your Account, we will continue to treat your information in accordance with the privacy policies and practices described in this notice to the extent we retain information about you. We may amend this Privacy Policy at any time, and we will inform you of changes as

[17]

required by law. You may have other privacy protections under state laws and we will comply with applicable state laws when we disclose information about you. This Privacy Policy applies only to consumer Lord & Taylor Credit Card Accounts of GE Money Bank and does not apply to any other accounts you may have with us, and replaces our previous disclosures to you about our information practices.

---

**It's Your Choice** — You have the right to opt out of our sharing of information with certain third parties, as described below. To opt out please call us toll-free at 1-866-634-8265, or write to us at P.O. Box 681432, El Paso, TX 79998-1432. If you have previously informed us of your preference, you do not need to do so again.

Please do not share information about me with companies outside the GE Family, other than with Lord & Taylor LLC and its affiliates for use in connection with the Lord & Taylor Credit Card program and as otherwise permitted by law. Please do not share with companies within the GE Family information you use to determine my eligibility for credit. And please do not allow companies within the GE Family to solicit me for products and services based on transaction, experience or credit eligibility information they receive from you.

*Important Notes About Your Choice*

- Please understand that, even if you opt out as described above, we will continue to share information with the retailer associated with your Account, joint marketing partners and service providers as described in this policy, and as otherwise permitted by law. And we will continue to share information that identifies you, and about your transactions and experiences with us, with companies within the GE Family.

- If you have a joint account, a request by one party will apply to all parties on the account.

- We will process your request promptly. However, it may take us several weeks to ensure that all records are updated with your preference. In the interim, you may continue to be included in programs as described above. Also, after your request is processed, you may still be contacted by our affiliates and/or other companies based on their own information.

- Even if you opt out, we will continue to provide you with billing inserts and mail notices of special offers and new benefits.

- Vermont Residents: If (and while) your billing address is in Vermont, we will treat your Account as if you had exercised the opt-out choice described above and you do not need to contact us in order to opt out. If you move from Vermont and you wish to restrict us from sharing information about you as provided in this Policy, you must then contact us to exercise the opt-out choice described above.

**LORD AND TAYLOR**
(1059B)
Super L&T PLCC CIO/CIT

[18]