UNITED STATES DISTRICT COURT
SOUTHERN  DISTRICT OF NEW YORK
-------------------------------------------------------- X

AMAL SHETIWY, LOUIS C. YEOSTROS,
JOHN MURPHY, PLAMEN PANKOFT,
PATRICIA R. DIFFLEY, SPIROS
ARGYROS, JOHANNA ARBELAEZ,
NICHOLAS DOUDALIS, NICOLE
GAGNON, SAFET KOLJENOVIC, MAGDI
ABDALLA, AHMED HASSAN,
EKATEREINE SKOTEDIS, VIELKA
VARGAS, ROSE VILLANEUVA, and others
similarly situated,

        Plaintiffs,

      - against -

MIDLAND CREDIT MANAGEMENT, a/k/a
MIDLAND FUNDING LLC, CALVARY
PORTFOLIO SERVICE, DEBTONE, LLC,
CACH, LLC, NCO FINANCIAL SYSTEMS,
LVNV FUNDING, LLC, ASSET
ACCEPTANCE, LLC, FIA CARD
SERVICES, N.A., PORTFOLIO
RECOVERY, CHASE BANK, N.A.,
AMERICAN EXPRESS COMPANY, BANK
OF AMERICA, N.A., CAPITAL ONE
FINANCIAL ADVISORS, LLC,
ASSOCIATED RECOVERY SYSTEMS,
CITIGROUP INC., CITIBANK, N.A.,
CAPITAL MANAGEMENT SERVICES, GE
CAPITAL CONSUMER LENDING, INC.,
and EQUABLE ASSENT FINANCIAL, LLC,

        Defendants.

-------------------------------------------------------- X

**OPINION AND ORDER**

12 Civ. 7068 (SAS)



**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I.   INTRODUCTION**

Plaintiffs in this putative class action begin their Amended Complaint

with the following statement:

> *The purpose of this lawsuit is to correct the Fifth and Fourteenth Amendment Due Process abuses that have occurred over many years in the State Courts throughout the United States Court systems by principals, the debt collection companies that the principals have sold the debt to and the attorneys who represent those entities.  In the debt collection process the Defendants have made the court systems of this country appear as if the courts were the O.K. Corral complete with Wild West shows, robo-signing, and an anything goes approach and other adjectival descriptions that are morally reprehensible, indefensible and vomitous.*

> *More repugnant than the above, other than some outspoken judges, the impropriety has been well known and tolerated within the legal community for a lengthy period of time and has up to this point in time has not been addressed or confronted.  Whether this Class Action Lawsuit is successful or not is secondary to the overall purpose of this action which is to expose the criminal and civil violations and those violations which have caused great suffering to the victims by the principals, the debt collectors and their attorneys against citizens of the United States.*[1]

Many of the legal arguments and factual allegations in plaintiffs'

---

[1]      Amended Complaint ("Am. Compl.") at 5.  I note that plaintiffs list Capital One Financial Corporation as a defendant, although it is not listed in the caption of plaintiffs' Amended Complaint.  *See id.* ¶ 21.  Capital One Financial Corporation has appeared through the attorneys for Capital One Financial Advisors, LLC.  *See* 10/23/12 Notices of Appearance [Dkt. Nos. 44–46].

eighty-eight page Amended Complaint are difficult to discern.  A significant portion of the Amended Complaint consists of text copied and pasted, sometimes without citation, from newspaper articles.[2]

Defendants now move collectively to dismiss plaintiffs' claims pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).[3]  For the reasons stated below, defendants' motion is granted, in part with leave to amend.

## II.   LEGAL STANDARDS

### A.   Rule 8

---

[2]   *Compare* Am. Compl. ¶¶ 31–50, *and id.* ¶¶ 51–80, *with* Andrew Martin, *Automated Debt-Collection Lawsuits Engulf Courts*, N.Y. TIMES, July 13, 2010, at B1, *and* Marjie Lundstrom & Sam Stanton, *Debtors Seethe, Sue Over Collector Tactics*, SACRAMENTO BEE, Apr. 22, 2012, at 1A.

[3]   *See* Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Mem."); Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss ("Def. Reply").  I previously granted a motion by four Creditor Defendants to compel arbitration and stay all remaining proceedings against them pending the completion of that arbitration.  *See Shetiwy v. Midland Credit Mgmt.*, No. 12 Civ. 7068, 2013 WL 3530524, at *1 (S.D.N.Y. July 12, 2013).  The Debt Buyer Defendants join in defendants' collective motion to dismiss, *see* Def. Mem. at 1, and have also filed a separate brief arguing that plaintiffs' claims against them under the Fair Debt Collection Practices Act ("FDCPA") should be dismissed.  *See* Supplemental Memorandum of Law in Support of the Debt-Buyer Defendants' Motion to Dismiss Plaintiffs' FDCPA Claims ("DB Def. Mem."); Reply Memorandum of Law in Further Support of the Debt-Buyer Defendants' Motion to Dismiss Plaintiffs' FDCPA Claims.  Finally, Debt Buyer Defendant DebtOne, LLC filed a separate motion to dismiss, arguing that "there is no allegation of a factual relationship between DebtOne and any of the Plaintiffs."  Motion to Dismiss filed by DebtOne, LLC at 2.

Under Federal Rule of Civil Procedure 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[4] "Such a statement must . . . 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"[5] "Each allegation must be simple, concise, and direct."[6]

Although the Second Circuit has "noted in *pro se* cases that dismissal is disfavored unless the complaint is 'so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised,' the underlying rationale for that pronouncement has significantly less force when a party is represented by counsel."[7] "[P]rolix, unintelligible, speculative complaints that are argumentative, disjointed and needlessly ramble have routinely been dismissed in this Circuit."[8] "When the court chooses to dismiss, it normally grants leave to file

---

[4]    Fed. R. Civ. P. 8(a)(2).

[5]    *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561–63 (2007)).

[6]    Fed. R. Civ. P. 8(d)(1).

[7]    *Kalderon v. Finkelstein*, 495 Fed. App'x 103, 106 (2d Cir. 2012) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (quotation marks omitted)).

[8]    *Ceparano v. Suffolk Cnty.*, No. 10 Civ. 2030, 2010 WL 5437212, at *3 (S.D.N.Y. Dec. 15, 2010) (citing *Jones v. National Commc'ns & Surveillance Networks*, 266 Fed. App'x 31, 32 (2d Cir. 2008) (affirming dismissal of fifty-eight

an amended pleading that conforms to the requirements of Rule 8."[9]

### B.    Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."[10]  The court may evaluate the sufficiency of a complaint under a "two-pronged approach" described by the Supreme Court in *Ashcroft v. Iqbal*.[11]  *First*, "[a] court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not

---

page, single-spaced pro se complaint with eighty-seven additional pages of attachments, alleging over twenty separate causes of action against more than forty defendants for failure to meet the "short and plain statement" requirement of Rule 8); *Bell v. Lasaceli*, No. 08 Civ. 0278A, 2009 WL 1032857, at *2 (W.D.N.Y. Apr. 15, 2009) (dismissing a two hundred page pro se complaint naming forty-two defendants for noncompliance with Rule 8); *Infanti v. Scharpf*, No. 06 CV 6552, 2008 WL 2397607, at *3 (E.D.N.Y. June 10, 2008) (dismissing sua sponte a ninety page complaint comprised of over five hundred paragraphs for running afoul of Rule 8's requirements); *In re Merrill Lynch & Co., Inc.*, 218 F.R.D. 76, 77–78 (S.D.N.Y. 2003) (dismissing ninety-eight page complaint comprised of three hundred and sixty-seven paragraphs and explaining that "[w]hen a complaint is not short and plain, or its averments are not concise and direct, 'the district court has the power, on motion or sua sponte, to dismiss the complaint'") (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995))).

[9]      *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted).

[10]      *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (quotation marks omitted).

[11]      556 U.S. 662, 679 (2009).

entitled to the assumption of truth.'"[12]  "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice" to

withstand a motion to dismiss.[13]  *Second*, "[w]hen there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief."[14]

   With regard to the second prong, "only a complaint that states a

*plausible* claim for relief survives a motion to dismiss."[15]  "Determining whether a

complaint states a plausible claim for relief [is] . . . a context-specific task that

requires the . . . court to draw on its judicial experience and common sense."[16]  A

claim is facially plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."[17]  Plausibility "is not akin to a probability requirement," but

---

[12] *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 664).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

[13] *Iqbal*, 556 U.S. at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[14] *Id.* at 670.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[15] *Iqbal*, 556 U.S. at 679 (emphasis added).

[16] *Id.*

[17] *Id.* at 678 (quotation marks omitted).

requires "more than a sheer possibility that a defendant has acted unlawfully."[18]

For the purposes of a 12(b)(6) motion, "a district court may consider the facts

alleged in the complaint, documents attached to the complaint as exhibits, and

documents incorporated by reference in the complaint."[19]

Plaintiffs in this case do not appear pro se, and thus their pleadings are

not considered under the more lenient standard applied to pro se pleadings.[20]

### C.    The *Rooker-Feldman* Doctrine and Ordinary Claim and Issue Preclusion

Under the *Rooker-Feldman* doctrine, federal district courts "lack

subject-matter jurisdiction over claims that effectively challenge state-court

judgments."[21]  "Underlying the *Rooker-Feldman* doctrine is the principle,

expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system,

---

[18]     *Id.* (quotation marks omitted).

[19]     *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[20]     "Where the plaintiff is proceeding pro se, his pleadings must be considered under a more lenient standard than that accorded to 'formal pleadings drafted by lawyers,' and must be 'interpret[ed] . . . to raise the strongest arguments they suggest.'"  *Peoples v. Fischer*, No. 11 Civ. 2694, 2012 WL 1575302, at *4 (S.D.N.Y. May 3, 2012), *on reconsideration in part*, 898 F. Supp. 2d 618 (S.D.N.Y. 2012) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

[21]     *In re Wilson*, 410 Fed. App'x 409, 410 (2d Cir. 2011).

7

only the Supreme Court may review state-court decisions."[22]  The Second Circuit has held that four requirements must be met before the *Rooker-Feldman* doctrine applies:

> (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced.[23]

*Rooker-Feldman* does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court," nor does it apply to a federal plaintiff who "'present[s] some independent claim . . . that denies a legal conclusion that a state court has reached in a case to which he was a party.'"[24]  "[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it."[25]

––––––––––––––––––

[22]   *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).

[23]   *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010).

[24]   *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

[25]   *Hoblock*, 422 F.3d at 88.

Even where *Rooker-Feldman* does not apply, plaintiffs' claims may still be "barred by ordinary preclusion principles."[26]  That is, "the narrow *Rooker-Feldman* inquiry is distinct from the question whether claim preclusion (res judicata) or issue preclusion (collateral estoppel) will defeat a federal plaintiff's suit."[27]  "Because the Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to accord state judgments the same preclusive effect those judgments would have in the courts of the rendering state, New York preclusion law applies."[28]

### D.   Leave to Amend

Whether to permit a plaintiff to amend its complaint is a matter committed to a court's "sound discretion."[29]  Rule 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires."  "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."[30]  Leave to amend should be denied when the proposed amendment

---

[26]   *Id.* at 88 n.6.

[27]   *Id.* at 92.

[28]   *Id.* at 93.

[29]   *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

[30]   *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

would be futile.[31]

## III.   BACKGROUND

The fifteen named plaintiffs claim that they were sued by one or more

of defendants, or that their credit reports were negatively affected by defendants'

claims, or that they received letters from defendants regarding claims.[32]  Plaintiffs

divide defendants into two groups:  "Principals," that is, creditors and affiliates of

those creditors, such as Bank of America, N.A. and its affiliate FIA Card Services,

N.A.; and "Debt Collection Companies," or businesses that buy or collect on debts,

such as Asset Acceptance LLC.[33]  I will follow defendants' convention and refer to

the former group as "Creditor Defendants" and the latter group as "Debt Buyer

Defendants."[34]

---

[31]     *See, e.g.*, *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87 (2d Cir. 2002).

[32]     *See* Am. Compl. ¶¶ 182–319.  The one exception is Vielka Vargas, who appears in plaintiffs' caption but is not mentioned elsewhere in the Amended Complaint.  I also note that Plamen Pankoff's last name is misspelled in the caption, as is Ekaterine Skotedis's first name.

[33]     *See* Def. Mem. at 1 & nn.2–3; Am. Compl. ¶¶ 27–28.  The correct name of the defendant identified in plaintiffs' caption as "Equable Assent Financial, LLC" is Equable Ascent Financial, LLC.  *Compare* Exhibit to Amended Complaint ("Ex. to Am. Compl.") at 9, *and* Am. Compl. ¶ 212, *with* Am. Compl. at 1.

[34]     *See* Def. Mem. at 1 n.2.

Plaintiffs allege that defendants conspired to collect debts though "fraudulently obtained judgments of default" in state courts around the country.[35] Specifically, plaintiffs allege that the Creditor Defendants sold debt for pennies on the dollar that they had previously written off for tax purposes.[36]  Then the Debt Buyer Defendants allegedly obtained judgments for default through fraudulent acts, including: (i) submitting affidavits containing statements of facts that were untrue or that were not based on the affiant's personal knowledge; (ii) failing to disclose how defendants calculated the amount of debt owed; (iii) proceeding without notifying plaintiffs that their debt had been assigned; (iv) suing on the full amount of debt even though the creditors had "already charged off a good portion of the debt for their tax advantage," and (v) amending "the terms of [their] contract[s] with . . . consumer[s] after the litigation [had] begun."[37]  Finally, plaintiffs allege that defendants' conduct is part of a larger pattern whereby debt collectors and creditors harass debtors and overwhelm the courts by filing thousands of debt collection suits based on false affidavits and inadequate

---

[35]    Am. Compl. ¶ 104.  *See also id*. ¶¶ 110–128.

[36]    *See id*. ¶¶ 58–60.

[37]    *Id*. ¶¶ 82–83, 137.

documentation.[38]

Plaintiffs request injunctive relief and damages based on a wide variety of legal theories, including: (i) the Racketeer Influenced and Corrupt Organizations Act ("RICO");[39] (ii) the Fifth and Fourteenth Amendments of the United States Constitution;[40] (iii) the FDCPA;[41] (iv) unjust enrichment;[42] (v) intentional infliction of emotional distress;[43] (vi) fraud;[44] (vii) Section 349 of the New York General Business Law;[45] and (viii) Section 487 of the New York Judiciary Law.[46]  Plaintiffs seek to represent the following class:

> All persons in the United States who[] had Principals and their agent Debt Collection Companies use fraudulent papers to bring them into Court and then furthered their illegal action by presenting further fraudulent papers to Court and had the

---

[38]   *See id.* ¶¶ 31–50.

[39]   *See id.* ¶¶ 129–319.

[40]   *See id.* ¶¶ 320–325.

[41]   *See id.* ¶¶ 326–337.

[42]   *See id.* ¶¶ 338–340.

[43]   *See id.* ¶¶ 353–355.

[44]   *See id.* ¶¶ 356–361.

[45]   *See id.* ¶¶ 364–371.

[46]   *See id.* ¶¶ 372–377.  Plaintiffs erroneously plead "Punitive Damages," "Costs and Prejudgment Interest," "Treble Damages," and attorneys' fees and costs as additional causes of action.  *See id.* ¶¶ 341–352, 362–363.

> Principals and the Debt Collection Companies knowingly use their expertise in those papers to seize illegal gains from unknowledgeable citizens who were brought to Court and had their money taken (stolen) from them using illegal tactics — under the cover of so-called legality of process.[47]

In plaintiffs' words, "the center of this action . . . is that . . . attorneys on an everyday basis proceeded to court and provided perjured testimony and offered the court perjured documentary evidence."[48]

## IV.  DISCUSSION

### A.  Due Process Claims

Plaintiffs' due process claims under the Fifth and Fourteenth Amendments are dismissed with prejudice because defendants are not state actors.[49]

### B.  FDCPA Claims

#### 1.  Creditor Defendants

"The FDCPA prohibits 'debt collector[s]' from using 'any false,

---

[47]   *Id.* ¶ 81.

[48]   Plaintiffs' Sur-Reply to Defendants' Motion to Dismiss and Defendants' Reply Papers at 1–2.

[49]   "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" *United States v. International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 941 F.2d 1292, 1295 (2d Cir. 1991).

deceptive, or misleading representation or means in connection with the collection of any debt.'"[50]  The Creditor Defendants are not "Debt Collectors" for purposes of the FDCPA.  "As a general matter, creditors are not subject to the FDCPA."[51] Plaintiffs do not allege that the Creditor Defendants attempted to collect on their debts under names indicating "that a third person is collecting or attempting to collect such debts,"[52] and no other exception to the general exclusion of creditors from the FDCPA applies.  Thus, plaintiffs' FDCPA claims against the Creditor Defendants are dismissed with prejudice.

### 2.    Debt Buyer Defendants

#### a.    *Rooker-Feldman*

To the extent that plaintiffs allege injuries caused by faulty state court judgments and seek to vacate those judgments,[53] plaintiffs' claims are barred by the

---

[50]     *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998) (quoting 15 U.S.C. § 1692e).

[51]     *Id.*  The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

[52]     15 U.S.C. § 1692a(6).

[53]     *See* Am. Compl. ¶ 361 ("For these reasons the Class asks that the Court overturn every judgment that was rendered due to the uncon[s]cionable acts of the Principals and Debt Collectors.").

*Rooker-Feldman* doctrine, which states that federal district courts "lack subject-matter jurisdiction over claims that effectively challenge state-court judgments."[54]   A federal court class action is not the appropriate avenue for redress from a state court judgment obtained through fraud.  "Under New York law, '[t]he remedy for fraud allegedly committed during the course of a legal proceeding must be exercised in that lawsuit by moving to vacate the civil judgment (CPLR 5015(a) (3)), and not by another plenary action collaterally attacking that judgment.'"[55]

However, plaintiffs' claims are not based *only* on injuries caused by state court judgments, and plaintiffs do not seek only to vacate such judgments. The litigation misconduct alleged by plaintiffs, such as the repeated submission of false affidavits, "was not the product of the state court's [judgment], or any other decision rendered, but rather, was 'simply ratified, acquiesced in, or left unpunished by [the state court judgment].'"[56]  Thus, *Rooker-Feldman* does not bar plaintiffs' suit in its entirety.

### b.    "Debt Collectors"

---

[54]    *In re Wilson*, 410 Fed. App'x at 410.

[55]    *Gray v. Americredit Fin. Servs., Inc.*, No. 07 Civ. 4039, 2009 WL 1787710, at *6 (S.D.N.Y. June 23, 2009) (quoting *Marshall v. Grant*, 521 F. Supp. 2d 240, 246 (E.D.N.Y. 2007)).

[56]    *Gabriele v. American Home Mortg. Servicing, Inc.*, 503 Fed. App'x 89, 92 (2d Cir. 2012) (quoting *Hoblock*, 422 F.3d at 88).

Plaintiffs have adequately alleged that the Debt Buyer Defendants are "debt collectors" under the FDCPA.  Although the Amended Complaint does not specifically allege with regard to each of plaintiff's debts that the debt had defaulted when the Debt Buyer Defendant obtained the debt, plaintiffs make this allegation generally,[57] and it can be reasonably inferred from plaintiffs' allegations that each of the Debt Buyer Defendants "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[58]

### c.   Harassment or Abuse

"The FDCPA generally forbids collectors from engaging in unfair, deceptive, or harassing behavior," including but not limited to examples of such behavior listed in the FDCPA.[59]  Harassment or abuse is prohibited under 15

---

[57]     *See, e.g.*, Am. Compl. ¶ 169.

[58]     15 U.S.C. § 1692a(6).  *See Gabriele*, 503 Fed. App'x at 96 (dismissing claim because complaint failed to allege that defendant acquired debt before it was in default, and thus failed plausibly to allege that defendant was a "debt collector" under FDCPA).  The Debt Buyer Defendants also argue that plaintiffs failed to allege that any of the plaintiffs incurred his or her debt for personal, family, or household purposes, as required by the FDCPA.  *See* DB Def. Mem. at 3.  Drawing every reasonable inference in favor of plaintiffs, however, plaintiffs' pleading is sufficient.  Nearly all of plaintiffs are described in the Amended Complaint in their familial capacities, and no plaintiff is described as using a loan for business purposes.  *See* Am. Compl. ¶¶ 182–319.

[59]     *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (citing 15 U.S.C. §§ 1692 *et seq.*).  For example, 15 U.S.C. § 1692e lists sixteen examples of conduct that violates the FDCPA, including "[t]he use of any false representation

16

U.S.C. § 1692d.  The Amended Complaint makes conclusory and formulaic allegations that two plaintiffs received harassing calls and mailings, but these allegations fail to plead a plausible violation sufficient to withstand dismissal under Rule 12(b)(6).  Indeed, one allegation fails to state who made the harassing communications, or what they were about.[60]

### d.    Notice

"The New York Court of Appeals has held that '[a] debtor, in order to be charged with a duty to pay a debt to an assignee, must first have actual notice of the assignment.'"[61]  At least one court has held that a debt collector who sued a debtor without first giving actual notice of assignment could be liable under the FDCPA.[62]  Several plaintiffs make unclear allegations that they were sued without first receiving requisite notice, but these allegations are insufficient to state a

---

or deceptive means to collect or attempt to collect any debt," and 15 U.S.C. § 1692f lists eight examples of "unfair or unconscionable means" of collecting or attempting to collect a debt.

[60]    *See* Am. Compl. ¶ 259 ("Prior to being sued Ms. Skotedis received harassing calls at home and work by Cach LLC representatives, and various mailings."); *id.* ¶ 266 ("Prior to his being sued [Hassan] received harassing calls at home and work and various mailings . . . .").

[61]    *Musah v. Houslanger & Assocs., PLLC*, — F. Supp. 2d —, No. 12 Civ. 3207, 2013 WL 4516786, at *3 (S.D.N.Y. Aug. 26, 2013) (quoting *Tri City Roofers, Inc. v. Northeastern Indus. Park*, 61 N .Y. 2d 779, 780 (1984)).

[62]    *See id.*

plausible claim under the FDCPA.  For example, the Amended Complaint alleges that Amal Shetiwy's *attorney stated in court that* she was never given notice of the assignment of her alleged debts from Bank of America to CACH.  But the Amended Complaint also states that Shetiwy received several calls and a letter from CACH prior to the lawsuit.[63]  The Amended Complaint does not explain how these communications failed to put Shetiwy on notice that her alleged debts had been assigned to CACH.

Similarly, the Amended Complaint alleges that Louis Yeostros received "at least one letter from Chase and Equable before the lawsuit," but that "there was no documentation attached to the letters or the lawsuits in support of a valid assignment having been made."[64]  Because the Amended Complaint does not allege that the letter or letters Yeostros received before the lawsuit or lawsuits failed to provide actual notice of the assignment of Yeostros's debt to Equable, Yeostros does not have a claim under the FDCPA.[65]

In general, the Amended Complaint appears to be premised on the

---

[63]   *See* Am. Compl. ¶¶ 183, 191.

[64]   Am Compl. ¶¶ 217–218.

[65]   Likewise, John Murphy concedes that he received calls and letters prior to any lawsuit.  *See id.* ¶¶ 231–233.  The remaining plaintiffs also fail to plausibly allege that they did not receive actual notice of the assignment of their debts prior to the filing of a collection action, if there was an action.

notion that collection actions are invalid unless *the original creditor* for a debt provides prior notice to the debtor of the assignment of the debt, with *a variety of documentation* including a copy of the "signature card," a copy of the cardholder agreement, and perhaps an affidavit.[66]  Plaintiffs have provided no legal support for this theory of notice.[67]

### e.    Statute of Limitations

In addition, claims under the FDCPA must be brought "within one year from the date on which the violation occurs."[68]  Plaintiffs filed this action on September 19, 2012.  The Debt Buyer Defendants argue that allegations relating to the following incidents are time-barred: the October 2010 suit against Shetiwy, the February or March 2006 suit against Murphy, and the 2007 and 2008 judgments

---

[66]    *See, e.g.*, *id.* ¶¶ 238, 243, 248, 254, 259, 262, 266, 268, 269, 274, 276, 280–283, 285.  *See also id.* at 54 n.26.

[67]    Similarly, to the extent that plaintiffs allege a violation of the FDCPA based on Debt Buyer Defendants' *complaints* and *summonses* not having contained a copy of the notice of assignment, a cardholder agreement, or a "signature card," plaintiffs have failed to explain how any of these omissions violate the FDCPA.  I also note that plaintiffs appear to believe that a debt collector may not lawfully collect the full amount of a debt once the original creditor has written off a portion of the debt.  *See, e.g.*, Am. Compl. ¶ 200 ("The complaint against Ms. Shetiwy asked for the entire amount that was owed, principal and more, in spite of the fact that Bank of America wrote off all or part of the debt and gained a financial write off for taxes.").  Plaintiffs offer no legal support for this theory.

[68]    15 U.S.C. § 1692k(d).

against Ahmed Hassan.[69]  Plaintiffs argue that the equitable tolling doctrine

preserves these claims.

"A statute of limitations may be tolled in extraordinary circumstances,

if a plaintiff establishes that: (1) the defendant concealed from him the existence of

his cause of action; (2) he remained in ignorance of that cause of action until some

length of time within the statutory period before commencement of his action; and

(3) his continuing ignorance was not attributable to lack of diligence on his part."[70]

Shetiwy has not alleged that CACH concealed the existence of the October 2010

suit.  Indeed, she appeared with counsel during the suit.[71]  As a result, her FDCPA

claim relating to the October 2010 suit is time-barred.  Murphy alleges that he

never received service in the 2006 suit and only became aware of the suits after he

discovered evidence of the 2011 judgments in his credit report.  He does not allege,

however, that LVNV concealed the existence of any suits from him, he

acknowledges that he received "various mailings" and phone calls, and he does not

---

[69]   *See* DB Def. Mem. at 7–8 (citing Am. Compl. ¶¶ 182, 228, 262).

[70]   *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 422
(S.D.N.Y. 2010) (citing *State of New York v. Hendrickson Bros., Inc.*, 840 F.2d
1065, 1083 (2d Cir. 1988)).  "FDCPA claims are subject to equitable tolling."  *Id.*
(citing *Somin v. Total Cmty. Mgmt. Corp.*, 494 F. Supp. 2d 153, 158 (E.D.N.Y.
2007)).

[71]   *See* Am. Compl. ¶ 183.

allege that he only became aware of the 2006 suits after September 19, 2011.[72]  As a result, his FDCPA claims are time-barred.  Hassan's claims are time-barred because he does not allege that he was unaware of the suits until after September 19, 2011.[73]

### f.     Mass Filings Containing Misrepresentations

The mass filing of form affidavits and other submissions containing false or deceptive representations about the status and character of a debt may, under certain circumstances, give rise to an actionable FDCPA claim.[74]  But the Second Circuit has cautioned in *Gabriele v. American Home Mortgage Servicing, Inc.* that "the protective purposes of the FDCPA typically are not implicated 'when a debtor is instead protected by the court system and its officers.'"[75]  The plaintiff

---

[72]     *See id.* ¶¶ 228–235.

[73]     *See id.* ¶¶ 261–267.  If plaintiffs choose to file a Second Amended Complaint, they may attempt to plead facts that would support equitable tolling.

[74]     *See Sykes*, 757 F. Supp. 2d at 423–24.  *Accord Gabriele*, 503 Fed. App'x at 95 (noting that "statements made and actions taken in furtherance of a legal action are not, in and of themselves, exempt from liability under the FDCPA," and citing with approval the denial of dismissal in *Sykes*, 757 F. Supp. 2d at 424).

[75]     *Gabriele*, 503 Fed. App'x at 96 n.1 (quoting *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010) (holding that inflated proof of claim in bankruptcy court cannot form basis of FDCPA action)).  In addition, the Second Circuit reads a materiality requirement into the FDCPA's prohibition of false, deceptive, or misleading practices in the collection of a debt.  *See id.* at 94.

in that case, Gabriele — who, unlike some of the plaintiffs in this case, appeared in

court for his collection action and was represented by an attorney — alleged that a

law firm had violated various procedural rules and deadlines set by the court, and

that the law firm

> falsely stated that it had forwarded both exhibits to the complaint;
> submitted an affidavit incorrectly representing that there were no
> set-offs or counterclaims; filed an unsigned affidavit; and
> misrepresented that Gabriele was ineligible for a federal loss
> mitigation program when in fact he was under consideration for
> such a program in mediation.[76]

Some of the litigation misconduct alleged in the Amended Complaint comes closer

to a plausible claim under the FDCPA than the allegations in *Gabriele*.

Nevertheless, while there is little doubt that at least some of the debt collection

litigation practices described in the newspaper accounts pasted into the Amended

Complaint would constitute violations of the FDCPA, plaintiffs have failed to

plead such violations in their own cases with sufficient clarity to satisfy the

minimal pleading standards of Rule 8, and lack standing to bring suits based on

alleged injuries suffered by others.

### g.     *Noerr-Pennington*

Finally, I reject the Debt Buyer Defendants' argument that plaintiffs'

FDCPA claims are barred by the *Noerr-Pennington* doctrine, which "generally

---

[76]     *Id.* at 95.

immunizes from liability a party's commencement of a prior court proceeding."[77]
Traditionally invoked in the context of antitrust litigation, the doctrine "protects
under the First Amendment efforts to influence governmental action through
litigation, lobbying, and the like.  Such activities are immunized from antitrust
liability, provided the activities are more than a mere 'sham.'"[78]

　　　　In the antitrust context, the "sham exception" applies "where the
litigation is (1) 'objectively baseless' and (2) intended to cause harm to the
defendant 'through the use [of] governmental *process* — as opposed to the
*outcome* of that process.'"[79]  More generally, the sham exception "excludes any
abuse of process that bars access to the courts, such as "unethical conduct in the
setting of the adjudicatory process or the pursuit of a pattern of baseless, repetitive

---

[77]　　*T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90, 93 (2d Cir.
2002).  *Accord Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006)
(describing development and expansion of the *Noerr-Pennington* doctrine).

[78]　　*Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, 229 F.3d
1135 (2d Cir. 2000) (citing *Professional Real Estate Investors, Inc. v. Columbia
Picture Indus.*, 508 U.S. 49, 56–57 (1993)).

[79]　　*T.F.T.F.*, 312 F.3d at 93 (quoting *Professional Real Estate*, 508 U.S.
at 60–61).  While it is "generally true that a winning lawsuit is '. . . not a sham,'" a
default judgment does not necessarily demonstrate the "'objective reasonableness'
of the lawsuit, especially in a case where the plaintiff claims that the judgment in
the prior action was obtained through deceit."  *Id.* at 94 (quoting *Professional Real
Estate*, 508 at 60 n.5).

claims."[80]

To the extent that the *Noerr-Penington* doctrine applies at all to FDCPA claims based on litigation misconduct by debt collectors,[81] Debt Buyer Defendants' alleged practice of "[u]sing fraudulent, deceptive, and misleading affidavits and affirmations to obtain default judgments against Plaintiffs," including by "filing false attorney affirmations stating that service of the summons and complaint has been made, when in fact it was not," would place Debt Buyer Defendants' suits under the sham exception.[82]

## C.    RICO Claims

The Amended Complaint asserts a claim against all defendants under

---

[80]    *Sykes*, 757 F. Supp. 2d at 429 (citing *Landmarks Holding Corp. v. Bermant*, 664 F.2d 891, 896 (2d Cir. 1981)) (some quotation marks omitted). *Cf. Sosa*, 437 F.3d at 938 (describing three circumstances in which the sham litigation exception might apply).

[81]    Several courts have concluded that the *Noerr-Pennington* doctrine does not bar suits under the FDCPA based on litigation misconduct by debt collectors. *See, e.g., Basile v. Blatt, Hasenmiller, Leibsker & Moore LLC*, 632 F. Supp. 2d 842, 845 (N.D. Ill. 2009); *Gerber v. Citigroup, Inc.*, Civ. S07-0785, 2009 WL 248094, at *4 (E.D. Cal. Jan. 29, 2009); *Sial v. Unifund*, No. 08 Civ. 0905, 2008 WL 4079281, at *2–5 (S.D. Cal. Aug. 28, 2008).

[82]    Am Compl. ¶¶ 166–167 (footnote omitted). *See Sykes*, 757 F. Supp. 2d at 429 (finding that allegations of litigation-related misconduct in debt collection fell under sham exception to *Noerr-Pennington* doctrine).

Section 1962(a) of the RICO statute.[83]  Plaintiffs apparently concede that the

Amended Complaint fails to state a claim under Section 1962(a), because their

opposition to defendants' motion to dismiss instead appears to assert a claim under

Section 1962(c).[84]  Under either section, the Amended Complaint fails on

numerous grounds to state a plausible claim under Rule 9(b), which requires

allegations of fraud to be "stated with particularity."[85]  Above all, plaintiffs'

conclusory allegations "fail to make any concrete factual assertions as to the

mechanics of the interactions among defendants."[86]

### D.   State Law Claims

---

[83]     *See* Am. Compl. ¶ 144.

[84]     *See* Pl. Opp. at 14.

[85]     Fed. R. Civ. P. 9(b).  *See also Koch v. Christie's Int'l PLC*, 699 F.3d
141, 150 (2d Cir. 2012) (noting that RICO fraud claims must be pleaded with
particularity pursuant to Rule 9(b)).

[86]     *Continental Petroleum Corp. v. Corporation Funding Partners, LLC*,
No. 11 Civ. 7801, 2012 WL 1231775, at *6 (S.D.N.Y. Apr. 12, 2012) (holding in
RICO case that "[t]he Amended Complaint's failure to plead with any specificity
as to the nature of the defendants' common interests and the mechanics of the
alleged ongoing working relationship among defendants is fatal").  By contrast, the
Second Circuit in *Gabriele* cited with approval the outcome in *Sykes*, where the
court allowed FDCPA, RICO, and pendant state claims against debt collectors to
proceed based in part on the plaintiffs' particularized allegations that a debt-buying
company, a law firm, a process service company, and their respective affiliates and
associates entered into a joint venture to fraudulently secure default judgments
against the plaintiffs.  *See Sykes*, 757 F. Supp. 2d at 418–20; *Gabriele*, 503 Fed.
App'x at 95.

"Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise jurisdiction over any non-federal claims if it has dismissed all of the claims over which it has original jurisdiction."[87]  Because I have dismissed all of plaintiffs' claims under federal law, I decline to exercise supplemental jurisdiction over plaintiffs' state law claims.

## V.    CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted. Plaintiffs are granted leave to amend except with regard to (1) their due process claims, (2) their FDCPA claims against the Creditor Defendants, and (3) their attempts to challenge and vacate state court judgments.  These pleadings are legally invalid for the reasons stated above, and amendment would be futile.

If plaintiffs choose to file a Second Amended Complaint, they must do so by October 20, 2013.  In order to avoid being dismissed with prejudice, I emphasize that plaintiffs' Second Amended Complaint must comply in full with Rule 8 and Rule 9(b), as well as Rule 11, which prohibits frivolous legal arguments

---

[87]    *Conklin v. Jeffrey A. Maidenbaum, Esq.*, No. 12 Civ. 3606, 2013 WL 4083279, at *9 (S.D.N.Y. Aug. 13, 2013).  *Accord Castiglione*, 423 Fed. App'x at 13 ("Having dismissed Castiglione's only federal law claims, the District Court should have declined to exercise supplemental jurisdiction over her remaining state law claims.").

and sets minimum standards for factual contentions.[88]  If plaintiffs' Second

Amended Complaint displays the confused, unintelligible, argumentative,

speculative, or rambling qualities of plaintiffs' Amended Complaint, the Second

Amended Complaint will be dismissed without leave to amend.

      The Clerk of the Court is directed to close defendants' motion and the

motion of DebtOne, LLC [Dkt. Nos. 70–71].

---

    [88]     I also note the following faults in the Amended Complaint, which would need to be corrected in order to avoid the dismissal of various parties.

    (1) The Amended Complaint fails to allege that defendants Capital Management Services or DebtOne, LLC injured any of the named plaintiffs.  These defendants will be dismissed from the case unless plaintiffs properly plead claims against them.  *See Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007) (noting that in a class action complaint, Article III standing requires at the pleading stage that "'for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant'" (quoting 1 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 2:6 n.3 (4th ed. 2002)).

    (2) The Amended Complaint states that ARS sent a letter to Hassan on behalf of Citibank, but says nothing about the letter.  *See* Am. Compl. ¶ 262.  This allegation is insufficient to establish any claim by Hassan against defendant ARS. If this fault is not corrected, ARS will be dismissed from the case.

    (3) The Amended Complaint fails to state a claim for Vielka Vargas, who appears only in the caption.  Plaintiffs' opposition to the motion to dismiss contains further factual allegations regarding Vargas.  *See* Plaintiffs' Opposition to Defendants' Motion to Dismiss app'x iii.  However, "a party is not entitled to amend its complaint through statements made in motion papers."  *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).  Vargas will be dismissed from the case unless plaintiffs properly plead claims on her behalf.

SO ORDERED:

_____

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            September 19, 2013

**- Appearances -**

**For Plaintiffs:**

Phillip Jaffe, Esq.
370 East 76th Street, Suite C-1002
New York, NY 10021
(212) 734-3535

George Bassias, Esq.
21-83 Steinway Street
Astoria, NY 11105
(718) 721-4441

**For Defendant Chase Bank USA, N.A.:**

Andrew A. Ruffino, Esq.
Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1097

Robert D. Wick, Esq.
Laura Brookover, Esq.
Henry Liu, Esq.
Covington & Burling LLP
1201 Pennsylvania Avenue NW
Washington, DC 20004
(202) 662-6000

**For Defendant Midland Credit Management, Inc.:**

Casey D. Laffey, Esq.
Brian S. Goldberg, Esq.
Reed Smith LLP
599 Lexington Avenue, 28th Floor
New York, NY 10022
(212) 521-5400

**For Defendants Cavalry Portfolio Services, LLC and Equable Ascent Financial, LLC:**

Donald S. Maurice, Jr., Esq.
Rachel Marin, Esq.
Thomas R. Dominczyk, Esq.
Maurice & Needleman, PC
5 Walter E. Foran Boulevard, Suite 2007
Flemington, NJ 08822
(908) 237-4550

**For Defendant CACH, LLC:**

Jonathan J. Greystone, Esq.
Spector Gadon & Rosen, PC
1635 Market Street, 7th Floor
Philadelphia, PA 19103
(215) 214-8927

**For Defendant Debt One, LLC:**

W. Raley Alford, III, Esq.
Stanley, Reuter, Ross, Thornton &
Alford LLC
909 Poydras Street, Suite 2500
New Orleans, LA 70112
(504) 523-1580

**For Defendant LVNV Funding,
LLC:**

Concepcion A. Montoya, Esq.
Hinshaw & Culbertson LLP
780 Third Avenue, 4th Floor
New York, NY 10017
(212) 471-6228

**For Defendants NCO Financial
Systems, Inc., and Capital
Management Services:**

Aaron R. Easley, Esq.
Sessions, Fishman, Nathan & Israel,
LLC
200 Route 31 North, Suite 203
Flemington, NJ 08822
(908) 751-5940

Kevin Barry McHugh, Esq.
Law Offices of Edward Barfinkel
12 MetroTech Center, 28th Floor
Brooklyn, NY 11201
(718) 250-1100

**For Defendant Asset Acceptance
LLC:**

Jill M. Wheaton, Esq.
Dykema Gossett PLLC
2723 S. State Street, Suite 400
Ann Arbor, MI 48104
(734) 214-7629

Richard David Lane, Jr., Esq.
Marshall, Dennehey, Warner, Coleman
& Goggin
Wall Street Plaza
88 Pine Street, 1st Floor
New York, NY 10005
(212) 376-6400

**For Defendants Bank of America,
N.A. and FIA Card Services, N.A.:**

Gillian I. Biron, Esq.
S. Elaine McChesney, Esq. (*pro hac
vice*)
Jonathan M. Albano, Esq. (*pro hac
vice*)
Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022
(212) 705-7000

**For Defendant Portfolio Recovery Associates, LLC:**

Christopher W. Madel, Esq. (*pro hac vice*)
Jennifer M. Robbins, Esq. (*pro hac vice*)
Robins, Kaplan, Miller & Ciresi LLP
800 LaSalle Avenue,
2800 LaSalle Plaza
Minneapolis, MN 55402
(612) 349-8500

Oren D. Langer, Esq.
Robins, Kaplan, Miller & Ciresi LLP
601 Lexington Avenue, Suite 3400
New York, NY 10022
(212) 980-7400

**For Defendant American Express Company:**

Carmine D. Boccuzzi, Jr., Esq.
Lauren K. Handelsman, Esq.
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2000

**Defendant ARS National Services, Inc.:**

John E. Brigandi, Esq.
The Salvo Law Firm, PC
165 Passaic Avenue, Suite 310
Fairfield, NJ 07004
(973) 233-4080

**For Defendant GE Capital Consumer Lending, Inc.:**

Michael D. Hynes, Esq.
DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
(212) 335-4500

**For Defendants Capital One Financial Corp. and Capital One Financial Advisors, LLC:**

Mark P. Ladner, Esq.
David J. Fioccola, Esq.
Jessica L. Kaufman, Esq.
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104
(212) 468-8000

**For Defendants Citigroup, Inc. and Citibank, N.A.:**

Stephen C. Robinson, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036
(212) 735-3000