UNITED STATES DISTRICT COURT
SOUTHERN  DISTRICT OF NEW YORK

------------------------------------------------------------- X

AMAL SHETIWY, LOUIS C. YEOSTROS,
JOHN MURPHY, PLAMEN PANKOFF,
SPIROS ARGYROS, NICOLE GAGNON,
VIELKA VARGAS, ROSE VILLANEUVA,
and others similarly situated,

                    Plaintiffs,

               - against -

MIDLAND CREDIT MANAGEMENT, a/k/a
MIDLAND FUNDING LLC, CALVARY SPV
LLC, CACH, LLC, LVNV FUNDING, LLC,
FIA CARD SERVICES, N.A., PORTFOLIO
RECOVERY ASSOCIATES LLC,
ASSOCIATED RECOVERY SYSTEMS,
EQUABLE ASSENT FINANCIAL, LLC,
CHASE BANK, N.A., and BANK OF
AMERICA, N.A.,

                    Defendants.

------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/26/14

## OPINION AND ORDER

12 Civ. 7068 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

Plaintiffs are eight individuals who claim that defendants obtained

tens of thousands of state court debt collection judgments against them using false

affidavits, misleading evidence, and other improper litigation tactics.  Defendants

consist of two groups: creditors or their affiliates ("Creditor Defendants");[1] and businesses that collect or buy debts ("Debt Buyer Defendants").[2]

In their Second Amended Complaint ("SAC"), plaintiffs request injunctive relief and damages based on a wide variety of legal theories, including: (1) the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) the Fair Debt Collection Practice Act ("FDCPA"); (3) unjust enrichment; (4) intentional infliction of emotional distress; (5) Section 349 of the New York General Business Law; and (6) Section 487 of the New York Judiciary Law.[3]   Plaintiffs also seek class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.[4]

Defendants now move to dismiss plaintiffs' claims with prejudice

---

[1]      Creditor Defendants are (1) Bank of America, N.A., (2) FIA Card Services, N.A., and (3) Chase Bank, N.A.  *See* Memorandum of Law in Support of Defendants' Motion to Dismiss the Second Amended Complaint and Strike Class Allegations ("Def. Mem.") at 1 n.1.

[2]      Debt Buyer Defendants are (1) Associated Recovery Systems, (2) CACH LLC, (3) Calvary Portfolio Service LLC, (4) Equable Ascent Financial LLC, (5) LVNV Funding LLC, (6) Midland Credit Management, and (7) Portfolio Recovery Associates LLC.  *See id.*

[3]      *See* SAC ¶¶ 154-256.  Plaintiffs erroneously plead several requests for relief as additional "causes of action."  These include "Punitive Damages," "Costs and Prejudgment Interest," "Treble Damages," "Equitable Relief," and "attorneys' fees and costs."  *See id.* ¶¶ 224-235, 239-244.

[4]      *See id.* ¶¶ 108-136.

under Rule 12(b)(6) and to strike the class allegations under Rule 12(f).[5]  For the

reasons stated below, defendants' motion is granted.

## II.    BACKGROUND

### A.    Procedural History

Plaintiffs filed their initial Complaint on September 19, 2012 and their

First Amended Complaint ("FAC") on December 6, 2012.  The FAC was filed by

fifteen individuals purporting to sue on behalf of all "unknowledgeable citizens" in

the United States who "were brought to Court and had their money taken (stolen)

from them using illegal tactics — under the cover of so-called legality of process."[6]

The FAC alleged that twenty defendants — nine Creditor Defendants

and eleven Debt Buyer Defendants — conspired to collect debts through

"fraudulently obtained judgments of default" in state courts throughout the

country.[7]  Specifically, Creditor Defendants allegedly sold debt that they had

---

[5]    *See* Def. Mem. at 1.  Debt Buyer Defendants join in defendants'
collective motion and have filed a separate brief arguing that plaintiffs' claims
against them under the FDCPA and New York Judiciary Law Section 487 should
be dismissed.  *See* Memorandum of Law in Support of the Debt Buyer Defendants'
Motion to Dismiss Plaintiffs' SAC ("DB Def. Mem.").

[6]    FAC ¶ 81.

[7]    *Id.* ¶ 104.  *See also id.* ¶¶ 110–128.

previously written off for tax purposes.[8]  Debt Buyer Defendants then allegedly obtained default judgments through various fraudulent acts, including: (1) submitting affidavits containing false statements or facts beyond the affiant's personal knowledge; (2) failing to disclose how defendants calculated the amount of debt owed; (3) neglecting to notify plaintiffs that their debt had been assigned; (4) suing on the full amount of debt despite having "already charged off a good portion of the debt for [defendants'] tax advantage;" and (5) amending "the terms of [their] contract[s] with . . . consumer[s] after the litigation [had] begun."[9]  Finally, plaintiffs allege that defendants' conduct is part of a larger pattern whereby debt collectors and creditors harass debtors and overwhelm courts by filing thousands of debt collection suits based on false and inadequate documentation.[10]

On July 12, 2013, I granted a motion by four Creditor Defendants to compel arbitration and stay all remaining proceedings against them pending the completion of that arbitration.[11]  On September 20, 2013, I granted the remaining

---

[8]      *See id.* ¶¶ 58–60.

[9]      *Id.* ¶¶ 82–83, 137.

[10]     *See id.* ¶¶ 31–50.

[11]     *See Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469 (S.D.N.Y. 2013).  The four Creditor Defendants — American Express Company, GE Capital Consumer Lending, Inc., Citigroup, Inc., and Citibank, N.A. — are not named in the SAC.

defendants' motion to dismiss the FAC because plaintiffs failed to state a plausible federal claim.[12]   I granted leave to amend except with regard to plaintiffs' legally invalid (1) federal due process claims, (2) FDCPA claims against Creditor Defendants, and (3) attempts to challenge and vacate state court judgments.[13]   I also warned plaintiffs that:

> [The SAC] must comply in full with Rule 8 and Rule 9(b), as well as Rule 11, which prohibits frivolous legal arguments and sets minimum standards for factual contentions.  If plaintiffs' [SAC] displays the confused, unintelligible, argumentative, speculative, or rambling qualities of plaintiffs' [FAC], the [SAC] will be dismissed without leave to amend.[14]

### B.    The Second Amended Complaint[15]

On October 18, 2013, eight of the original plaintiffs filed the SAC, asserting putative class action claims against three Creditor Defendants and seven Debt Buyer Defendants.  Although plaintiffs have abandoned several of their

---

[12]    *See Shetiwy v. Midland Credit Mgmt.*, No. 12 Civ. 7068, 2013 WL 5328075 (S.D.N.Y. Sept. 20, 2013).  I then declined to exercise supplemental jurisdiction over plaintiffs' state law claims.  *See id.* at *7.

[13]    *See id.*

[14]    *Id.* at *8.

[15]    The facts are drawn from the SAC.  As discussed below, many of the allegations in the SAC are not presumed true because they are conclusory statements or threadbare recitals of causes of action.  *See Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012).

legally invalid claims, the bulk of the SAC remains identical to the FAC.

As with the FAC, the factual allegations and legal arguments in the SAC are difficult to discern.  In plaintiffs' words, "[e]very allegation is based upon the perjury by the conspiracy group's attorneys when they falsely swore to documents (Complaints) as being true when . . . they had no knowledge as to the truth to which they were swearing."[16]  The factual allegations in the SAC are still drawn mainly from newspaper articles — often without citation — and from decisions in unrelated cases.[17]  Plaintiffs continue to allege that defendants engaged in fraudulent acts during state court debt collection proceedings.[18]  The facts supporting plaintiffs' RICO and state law claims remain largely unchanged.  Moreover, despite my prior ruling, plaintiffs continue to ask the Court to vacate prior state court judgments against them.[19]

---

[16]     SAC ¶ 107.

[17]     *See, e.g.*, *id.* ¶¶ 15-16 (citing unrelated New York City Civil Court cases), 18 n.5 ("Part of the [SAC] is taken from New York Times articles describing how Debt Collection Firms hire Debt Collection attorneys to sue consumers . . . ."), 63-65, 79-83, 96-104.

[18]     *See id.* ¶¶ 131, 180, 186, 190.  *See supra* text accompanying notes 10-11.

[19]     *See* SAC at p. 59 (pleading "Equitable Relief" as a cause of action and asking the Court to "restore the money that was taken illegally from Plaintiffs" by state court judgments).

Finally, plaintiffs still seek to certify a class consisting of "[a]ll persons in the United States who . . . were brought to Court and had their money taken (stolen) from them using illegal tactics — under the cover of so-called legality of process."[20]  The so-called "illegal tactics" are acts allegedly intended "to overburden the Courts so that judges . . . found themselves impossible to stop the onslaught of hundreds of improper complaints and default[s] that [arrived] into every court in the country."[21]

## III.   LEGAL STANDARD

### A.   Motion to Dismiss

In deciding a motion to dismiss under Rule 12(b)(6), the court must "'accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor.'"[22]  The court evaluates the sufficiency of the complaint under the "two-pronged approach" suggested by the Supreme Court in *Ashcroft v. Iqbal.*[23]  Under the first prong, a court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the

---

[20]     *Id.* ¶ 108.

[21]     *Id.* ¶ 109.

[22]     *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)).

[23]     *See* 556 U.S. 662, 678–79 (2009).

assumption of truth."[24]  Thus, "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice."[25]

Under the second prong, "[w]hen there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief."[26]  A claim is plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."[27]  "The

plausibility standard is not akin to a probability requirement, but it asks for more

than a sheer possibility that a defendant has acted unlawfully."[28]

### B.   Pleading Requirements[29]

#### 1.   Rule 8

---

[24]   *Id.* at 679.

[25]   *Id.* at 678.

[26]   *Id.* at 679.

[27]   *Id.* at 678.

[28]   *Id.* (quotation marks omitted).

[29]   Because plaintiffs are represented by counsel, I do not evaluate the SAC under the more lenient standard applied to *pro se* pleadings.  *See Kalderon v. Finkelstein*, 495 Fed. App'x 103, 106 (2d Cir. 2012) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir.1995)) (While "dismissal is disfavored [in *pro se* cases] unless the complaint is 'so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised,' th[is] rationale . . . has significantly less force when a party is represented by counsel.").

Under Rule 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Such a statement must . . . 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"[30]

## 2.   Rule 9(b)

"All claims sounding in fraud — including those under RICO — must comply with Rule 9(b)'s heightened pleading standard."[31]  Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud . . . ." This requires the plaintiff to: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."[32]  "Allegations that are conclusory or unsupported by factual assertions are insufficient."[33]

---

[30]     *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561–63 (2007)).

[31]     *Boritzer v. Calloway*, No. 10 Civ. 6264, 2013 WL 311013, at *4 (S.D.N.Y. Jan. 24, 2013).  *Accord Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184–85 (2d Cir. 2008).

[32]     *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

[33]     *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

## IV.    APPLICABLE LAW

### A.    RICO

RICO provides a private right of action for treble damages for a "person injured in his business or property by reason of a violation of section 1962."[34]  To state a RICO claim under either section 1962(a) or 1962(c), a plaintiff must at least allege: (1) the existence of an "an enterprise," (2) that engages in "a pattern of racketeering activity."[35]

An enterprise "is an entity separate and apart from the pattern of activity in which it engages" and must be proven separately.[36]  It may consist of  "a group of persons associated together for a common purpose of engaging in a course of conduct."[37]  However, a plaintiff's "conclusory naming of a string of entities does not adequately allege an enterprise."[38]  Furthermore, "under the so-called 'distinctness' requirement, . . . a plaintiff must 'allege . . . the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same

---

[34]      18 U.S.C. § 1964(c).

[35]      *Hinterberger v. Catholic Health Sys., Inc.*, 536 Fed. App'x 14, 16 (2d Cir. 2013) (internal quotation marks omitted).

[36]      *United States v. Turkette*, 452 U.S. 576, 583 (1981).

[37]      *Id.*

[38]      *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) (internal citations omitted).

'person' referred to by a different name.'"[39]

A "pattern of racketeering activity" must include at least two predicate acts of racketeering within ten years of each other.[40]  When bringing a RICO claim against multiple defendants, the plaintiff must allege that each defendant committed two or more predicate acts.[41]  Plaintiff must also show that "the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity."[42] Where the conduct or predicate acts sound in fraud, they must be pled with particularity under Rule 9(b).[43]

In addition to an "enterprise" and a "pattern of racketeering activity," section 1962(c) requires the plaintiff to allege that each defendant participated in the "operation or management" of the enterprise.[44]  Section 1962(a), in turn, requires the plaintiff to allege an "injury caused not by the pattern of racketeering

---

[39]     *Cruz v. FXDirectDealer LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (quoting *City of New York v. Smokes–Spirits.com, Inc.*, 541 F.3d 425, 438 n.15 (2d Cir. 2008)).

[40]     18 U.S.C. § 1961(5).

[41]     *See DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001).

[42]     *Moore v. Guesno*, 301 Fed. App'x 17, 18 (2d Cir. 2008).

[43]     *See Curtis v. Law Offices of David M. Bushman, Esq.*, 443 Fed. App'x 582, 584 (2d Cir. 2011).

[44]     *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993).

activity itself, but rather by the use or investment of the proceeds of that activity."[45]

## B.    FDCPA

In enacting the FDCPA, Congress sought to "eliminat[e] abusive practices in the debt collection industry, and . . . ensure that 'those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'"[46]  Not all "debts" are subject to the FDCPA.[47]  For FDCPA purposes, a "debt" is "any obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes."[48]  Because only transactions for "personal, family, or household purposes" are covered, actions arising out of "commercial debts" are excluded.[49]

Further, section 1692e of the FDCPA prohibits debt collectors from

---

[45]     *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 321 (2d Cir. 2011).

[46]     *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008) (quoting 15 U.S.C. § 1692e).

[47]     *See Beggs v. Rossi*, 145 F.3d 511, 512 (2d Cir. 1998) (holding that activity surrounding the collection of personal property tax obligations is not a "debt" within the meaning of section 1692a(5)); *Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367, 1371 (11th Cir. 1998) (holding that tort obligations are not "debts"); *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1167 (3d Cir. 1987) (finding that theft of cable service does not constitute "debt").

[48]     15 U.S.C. § 1692a(5).

[49]     *Goldman v. Cohen*, 445 F.3d 152, 154 n. 1 (2d Cir. 2006).

using any "false, deceptive, or misleading representation or means in connection with the collection of any debt."  The provision provides a non-exhaustive list of examples of conduct that violates the FDCPA, including "[t]he false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."[50]

Finally, section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt."  Prohibited acts include but are not limited to: (1) "the solicitation . . . of any . . . postdated payment instrument for the purpose of threatening or instituting criminal prosecution;" and (2) "[c]ausing charges to be made to any person for communications by concealment of the true purpose of the communication."[51]

## IV.   DISCUSSION

### A.   The RICO Claim

Plaintiffs claim that defendants violated sections 1962(a) and 1962(c) of the RICO statute.[52]  Both subsections require plaintiffs to allege the existence of

---

[50]     15 U.S.C. § 1692e(2).

[51]     *Id.*

[52]     *See* SAC ¶¶ 154-206.

an enterprise and a pattern of racketeering activity.[53]   Once again, plaintiffs fail to allege either.

When I dismissed the FAC, I noted that "[a]bove all, plaintiffs' conclusory allegations fail to make any concrete factual assertions as to the mechanics of the interactions among defendants."[54]   The SAC is no different. Plaintiffs assert boilerplate statements, such as "[e]ach and every defendant is employed by or associated with the enterprise," and the relationships between defendants are "longstanding and ongoing."[55]   Simply stating that all of the defendants form an "enterprise within the meaning" of the RICO statute is insufficient, in the absence of any factual support.[56]

In the alternative, plaintiffs allege that each defendant is also an enterprise unto itself.[57]   But as the Supreme Court has held, a defendant — *i.e.*, the person — and the enterprise must be "distinct."[58]   Thus, plaintiffs have failed to allege the existence of an enterprise.

---

[53]     *See Hinterberger*, 536 Fed. App'x at 16.

[54]     *Shetiwy*, 2013 WL 5328075, at *7.

[55]     SAC ¶¶ 176, 183.

[56]     *Id.* ¶ 176.

[57]     *See id.* ¶ 177.

[58]     *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 162 (2001).

Nor have plaintiffs alleged a pattern of racketeering activity.  Plaintiffs recite a number of predicate acts: (1) obstruction of justice, (2) obstruction of state law with the intent to facilitate an illegal gambling business, (3) bank fraud, (4) mail fraud, and (5) wire fraud.[59]  But none are adequately pled.

First, plaintiffs rely on statutes that do not constitute predicate acts under the RICO statute.  Obstruction of justice as a predicate act applies only to obstruction of justice in federal proceedings, but the SAC alleges misconduct in state court debt collection proceedings.[60]  Similarly, the statute prohibiting the obstruction of state law enforcement relates to illegal gambling businesses and is completely irrelevant to plaintiffs' claims.[61]  Finally, the federal bank fraud statute requires the plaintiff to show that the defendant "intended to victimize the bank by exposing it to loss."[62]  The SAC contains no allegation describing how defendants

---

[59]  *See* SAC ¶ 171.

[60]  *See Abra Const. Corp. v. Merchants Bank of N.Y.*, 258 Fed. App'x 379, 381 (2d Cir. 2007) ("[O]bstruction of justice under 18 U.S.C. § 1512 must relate to federal proceedings.").

[61]  *See* 18 U.S.C. § 1511 (prohibiting obstruction of state law enforcement "with the intent to facilitate an illegal gambling business.").

[62]  *United States v. Rigas*, 490 F.3d 208, 231 (2d Cir. 2007).  *See* 18 U.S.C. § 1344 (defendants must either "defraud a financial institution" or "obtain any of the moneys . . . owned by . . . a financial institution, by means of false or fraudulent pretenses.").

— three of whom are banks themselves — intended to defraud a bank.

Plaintiffs' mail and wire fraud claims are also unavailing.  Both are based on defendants' allegedly fraudulent litigation tactics in state debt collection proceedings.[63]  However, plaintiffs fail to plead the elements of wire or mail fraud with "particularity" under Rule 9(b).[64]  Specifically, Second Circuit law requires plaintiffs who plead acts of mail and wire fraud to "state the contents of the communications, who was involved, where and when they took place, and [] why they were fraudulent."[65]  Plaintiffs simply assert that defendants filed state court complaints based on "false and inadequate affidavits."[66]  They fail to identify a single specific mailing or phone conversation to support their claims.  Such speculative and conclusory pleading is clearly inadequate to satisfy Rule 9(b).[67]  Because plaintiffs have failed to assert an "enterprise" or a "pattern of racketeering

---

[63]     *See* SAC ¶¶ 188-206.

[64]     *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 150 (2d Cir. 2012) (holding that plaintiffs must "plead RICO fraud claims with particularity under Rule 9(b).").

[65]     *Knoll v. Schectman*, 275 Fed. App'x 50, 51 (2d Cir. 2008) (internal citations omitted).

[66]     SAC ¶¶ 25, 30, 34, 43, 50.

[67]     *Knoll*, 275 Fed. App'x at 51 ("Describing a predicate fraud only as . . . 'complaint . . . containing numerous false statements and instances of perjury' or 'fraudulent statement of purchase of mortgage', as the plaintiff does, is . . . the kind of conclusory [pleading] that Rule 9(b) is meant to dissuade.").

activity," I need not determine whether they have satisfied the remaining elements of section 1962(a) or (c).[68]

### B.     The FDCPA Claim

Plaintiffs next allege that the "civil conspiracy group" violated sections 1692e and 1692f of the FDCPA by "making false and misleading representations and engaging in unfair and abusive practices."[69]  Debt Buyer Defendants argue that no plaintiff has alleged the existence of a "debt" incurred for personal, family or household purposes, as required by the FDCPA.[70]  Instead, plaintiffs vaguely state that they were sued and refer to their "debt" without describing its nature.[71]  Although Shetiwy alleges that she incurred debt on "three different credit cards," she does not disclose whether her expenses were business or personal.[72]  Thus, Debt

---

[68]     To the extent plaintiffs attempt to allege a RICO conspiracy under section 1962(d), their claim is dismissed.  *See First Capital*, 385 F.3d at 18 (holding that where a plaintiff fails to "adequately allege a substantive violation of RICO," his claim under section 1962(d) must fail as well).

[69]     SAC ¶ 218.

[70]     *See* DB Def. Mem. at 2-4.

[71]     *See, e.g.*, SAC ¶ 26 (Yeostros alleges only that he was sued "for the same apparent debt"); 32-33 (Murphy alleges only that he was sued and that default judgment was entered against him on "an account").

[72]     *Id.* ¶ 22.  *See also Boosahda v. Providence Dane LLC*, 462 Fed. App'x 331, 334-35 (4th Cir. 2012) (holding that plaintiff in FDCPA case has "burden of showing the credit card debt was consumer debt"); *Dina v. Cuda & Assocs.*, 950 F. Supp. 2d 396, 301 (D. Conn. 2013) (finding that credit card debt

Buyer Defendants contend that plaintiffs have failed to allege the existence of "debt" for purposes of the FDCPA.[73]

In response, plaintiffs point to the attorney affidavit of George Bassias, which states that each plaintiff's "debt" came from his or her personal expenses.[74] But because the affidavit was filed with plaintiffs' opposition papers and is not a part of the SAC, I cannot consider it for the truth of its contents.[75]

Moreover, even if plaintiffs had asserted the existence of a "debt," the SAC includes no facts to support their claims under section 1692e or 1692f. Section 1692e prohibits the use of "false, deceptive, or misleading representations" to collect a debt.  Section 1862f prohibits use of "unfair or unconscionable means" to collect or attempt to collect a debt.  The SAC includes recitations of the legal elements of an FDCPA claim and blanket conclusions that Debt Buyer Defendants violated these sections.  Plaintiffs contend that:

---

was primarily for personal purposes where consumer never had a business credit card and purchases on card were for a moving company, manicure, jewelry, and clothing).

[73]     *See* 15 U.S.C. § 1692a(5).

[74]     *See* Pl. Mem. at 39.

[75]     *See Chechele v. Scheetz*, 466 Fed. App'x 39, 40-41 (2d Cir. 2012) (finding that district court properly declined to consider documents for "the truth of their assertions," where the document was not incorporated by the complaint).

18

> the entire [SAC] is based upon — only one premise and one premise only — and that being that the Debt Buyers sent their attorneys into court with perjured documents and who then falsely testified that they knew the contents of what they were presenting to the court when they had no knowledge of the papers that they were presenting to the court.[76]

This general refrain is repeated throughout the SAC but never with sufficient factual support to state a plausible claim.[77]

In addition, plaintiffs allege that Debt Buyer Defendants filed complaints and affidavits without "personal knowledge" of the underlying debt.[78] But under Second Circuit law, court filings that do not "mislead a putative-debtor as to the nature and legal status of the underlying debt, or . . . impede a consumer's ability to respond to or dispute collection" do not violate the FDCPA.[79]  Nothing in the SAC suggests that plaintiffs were misled or prevented from responding.

The mass filing of form affidavits and other submissions containing false or deceptive representations may — under certain circumstance — give rise to

---

[76]     Pl. Mem. at 43.

[77]     *See* SAC ¶¶ 186, 189.

[78]     *See id.* ¶¶ 34, 37, 161, 190, 195.

[79]     *Gabriele v. American Home Mortg. Servicing, Inc.*, 503 Fed. App'x 89, 94-95 (2d Cir. 2012).

an actionable FDCPA claim.[80]  For example, the newspaper articles cited or pasted

without citation in the SAC describe debt collection practices that could constitute

violations of the FDCPA.[81]  But plaintiffs have failed to plead that such tactics were

used *against them*, and lack standing to sue based on the injuries to others.  As such,

plaintiffs have failed to state a claim under the FDCPA.

### C.    State Law Claims

"[A] district court 'may decline to exercise supplemental jurisdiction

over a claim' if it 'has dismissed all claims over which it has original

jurisdiction.'"[82]  Because I have dismissed all of plaintiffs' federal law claims, I

decline to exercise supplemental jurisdiction over plaintiffs' state law claims.

## V.    CONCLUSION

For the foregoing reasons, defendants' motion is granted.  The Clerk of

the Court is directed to close defendants' motion [Dkt. No. 119] and this case.

---

[80]     *See id.* at 95 (noting that "statements made and actions taken in furtherance of a legal action are not, in and of themselves, exempt from liability under the FDCPA").

[81]     *See* SAC ¶¶ 19, 63, 75, 77-79 (reciting text of news articles about non-party, Cohen & Slamowitz, which is alleged to specialize in debt collection and filed "roughly 80,000 lawsuits a year").

[82]     *Basile v. Connolly*, 538 Fed. App'x 5, 8 (2d Cir. 2013) (quoting 28 U.S.C. § 1367(c)).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           March 26, 2014

**- Appearances -**

**For Plaintiffs:**

Phillip Jaffe, Esq.
370 East 76th Street,
Suite C-1002
New York, NY 10021
(212) 734-3535


George Bassias, Esq.
21-83 Steinway Street
Astoria, NY 11105
(718) 721-4441

**For Defendant Midland Credit Management, Inc.:**

Casey D. Laffey, Esq.
Brian S. Goldberg, Esq.
Reed Smith LLP
599 Lexington Avenue, 28th Floor
New York, NY 10022
(212) 521-5400


**For Defendants Calvary Portfolio Services, LLC
and Equable Ascent Financial, LLC:**

Donald S. Maurice, Jr., Esq.
Rachel Marin, Esq.
Thomas R. Dominczyk, Esq.
Maurice & Needleman, PC
5 Walter Foran Boulevard, Suite 2007
Flemington, NJ 08822
(908) 237-4550


**For Defendant CACH, LLC:**

Jonathan J. Greystone, Esq.
Spector Gadon & Rosen, PC
1635 Market Street, 7th Floor
Philadelphia, PA 19103
(215) 214-8927

**For Defendants Bank of America, N.A. and FIA
Card Services, N.A.:**

Gillian I. Biron, Esq.
S. Elaine McChesney, Esq.
Jonathan M. Albano, Esq.
Bingham McCutchen LLP

399 Park Avenue
New York, NY 10022
(212) 705-7000

**For Defendant LVNV Funding, LLC:**

Concepcion A. Montoya, Esq.
Hinshaw & Culbertson LLP
780 Third Avenue, 4th Floor
New York, NY 10017
(212) 471-6228

**For Defendant Portfolio Recovery Associates, LLC:**

Christopher W. Madel, Esq.
Jennifer M. Robbins, Esq.
Robins, Kaplan, Miller & Ciresi LLP
800 LaSalle Avenue,
2800 LaSalle Plaza
Minneapolis, MN 55402
(612) 349-8500

Oren D. Langer, Esq.
Robins, Kaplan, Miller & Ciresi LLP
601 Lexington Avenue, Suite 3400
New York, NY 10022
(212) 980-7400

**For Defendant Chase Bank, N.A.:**

Andrew A. Ruffino, Esq.
Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1097

Robert D. Wick, Esq.
Laura Brookover, Esq.

Henry Liu, Esq.
Covington & Burling LLP
1201 Pennsylvania Avenue NW
Washington, DC 20004
(202) 662-6000

**For Defendant Associated Recovery Systems:**

John E. Brigandi, Esq.
Salvo Law Firm
165 Passaic Avenue
Fairfield, NJ
(201) 906-6876