UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMAL SHETIWY, LOUIS C. YEOSTROS, JOHN MURPHY, PLAMEN PANKOFF, SPIROS ARGYROS, NICOLE GAGNON, VIELKA VARGAS, ROSE VILLANUEVA, and others similarly situated,<br><br>                    Plaintiffs,<br><br>        - against -<br><br>MIDLAND CREDIT MANAGEMENT, A/K/A MIDLAND FUNDING LLC, CAVALRY SPV, LLC, CACH, LLC, LVNV FUNDING, LCC, FIA CARD SERVICES, N.A., PORTFOLIO RECOVERY ASSOCIATES, LLC, ASSOCIATED RECOVERY SYSTEMS, EQUABLE ASCENT FINANCIAL, LLC, CHASE BANK, N.A., BANK OF AMERICA, N.A.<br><br>                    Defendants. | 12 Civ. 7068 (SAS) (HBP)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT CACH, LLC FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11** |

Defendant CACH, LLC ("CACH"), submits this memorandum of law in support of its motion for Rule 11 sanctions against Plaintiff's attorneys Phillip Jaffe and George Bassias ("Respondents"), and in support of such motion would respectfully show the following:

# TABLE OF CONTENTS

**Section**                                                                 **Page**

I. INTRODUCTION                                                              5

II. BRIEF                                                                    5

A, Rule 11 Standards                                                         5

B. Correction of the Record                                                 7

C. The Correspondence Between Counsel                                       8

D. The Violations of Rule 11                                                9

1.      The False Allegations of Robo-signing                               9

2.      The False Allegations of Agency                                     11

3.      The False Allegations of a Criminal Enterprise and Conspiracy      12

4.      The Fifth and Fourteenth Amendment Claims                          13

5.      Claims Related to Purchasing and Suing on Charged-Off Debts        14

6.      The False Claims Regarding Signature Cards                          16

7.      The False Accusation of Theft                                       17

8.      The Pursuit of Claims Barred by the Rooker-Feldman Doctrine        17

9.      The Allegation of Adequacy                                          18

# TABLE OF AUTHORITIES

**Case**                                                                                    **Page**

*Bank One, Columbus, N.A. v. Palmer*, 63 Ohio App. 3d                                            16
    491, 579 N.E.2d 284 (Ohio Ct. App. 1989

*Blum v. Yaretsky*, 457 U.S. 991, 102 S. Ct. 2777,  73 L. Ed. 2d 534 (1982)                     14

*Caisse Nationale De Credit Agricole-CNCA v. Valcorp, Inc.*,                                      7
    28 F.3d 259 (2d Cir. 1994)

*Capital Bridge Co. v. IVL Techs.*, No. 04 Civ. 4002,                                             6
    2007 WL 3168327, at * 1 0 (S.D.N.Y. Oct. 26, 2007)

*Central Home Trust Co. of Elizabeth v. Lippincott*, 392 So.2d 931, 933                          14
    (Fla.Dist.Ct.App. 1980)

*Discover Bank v. Worsham*, 176 P.3d 366, 368 (Okla.Civ.App.. 2007)                              14

*E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008)                               6

*Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254                                    6
    (2d Cir. 1985).

*Empire Nat'l Bank v. Monahan*, 82 Misc. 2d 808,                                                 16
    370 N.Y.S.2d 840 (N.Y. County Ct. 1975)

*Feder v. Fortunoff*, 474 N.Y.S. 2d 937 (N.Y. 1984)                                              16

*Grasso v. First USA Bank*, 713 A.2d 304 (Del. 1998)                                             16

*Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991).                                 7

*In re Zilka*, 407 B.R. 684, 687 (Bankr. W.D. Pa. 2009)                                          14

*Ingram v. Green & Cooper, Attys. LLP*, 2012 U.S. Dist. LEXIS 71163                              14
    (N.D. Ga. Apr. 20, 2012)

*Kelly v. Wolpoff & Abramson, LLP*, 634 F. Supp. 2d 1202 (D. Colo. 2008)                         14

*Maresh v. Borenstein*, 2008 U.S. Dist. LEXIS 56665 (D. Colo. July 18, 2008)                     14

*Mitchell Bank v. Schanke*, 268 Wis. 2d 571, 676 N.W.2d 849, 854 n.7                             14
    (Wis. 2004)

**Case**                                                                                 **Page**

*Olvera v. Blitt & Gaines, P.C.,* 431 F.3d 285 (7th Cir. Ill. 2005)                        15

*Petroleum Co. v. McMillan*, 168 S.W. 2d 881 (Tex. Civ. App. 1943)                        16

*Phillips v. Sage Colleges*, 83 F. App'x 340, 341 (2d Cir. 2003)                          13

*Plaza Bank v. Green Family Trust*, 2011 U.S. Dist. LEXIS 141044                          14
    (D. Nev. Dec. 7, 2011)

*Pub. Utils. Comm'n of D.C. v. Pollak*, 343 U.S. 451, 461,                                13
    72 S. Ct. 813, 96 L. Ed. 1068 (1952)

*Read v. Gulf Oil Corporation*, 114 Ga. App. 21,                                          16
    150 S.E.2d 319, 320 (1966)

*Rosner v. Bank of China*, 528 F. Supp. 2d 419, 428-29, 430-31                            13
    (S.D.N.Y. 2007)

*San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*,                             14
    483 U.S. 522, 542, 107 S. Ct. 2971, 97 L. Ed. 2d 427 (1987)

*Unifund CCR Partners v. Urban*, 2005 Conn. Super. LEXIS 3481,                            14
    2005 WL 3624541 at 1 (Conn.Super.Ct. 2005)

*United States v. Int'l Bhd. of Teamsters, Chauffeurs,*                                    6
    *Warehousemen and Helpers of Am., AFL-CIO*,
    948 F.2d 1338, 1344 (2d Cir. 1991)


**Stature/Rule/Other**

Fed. R. Civ. P. 11                                                                        5, 6

18 U.S.C. § 1962(a)                                                                       13fa

FTC Commentary of the Fair Credit Reporting Act, former 16 CFR Pt. 600 App.               15

# I. INTRODUCTION

Plaintiffs filed an original Complaint and two amended complaints each of which, in addition to asserting rambling and frequently incomprehensible   or nonsensical theories of liability made sweeping allegations of criminal conduct by the defendants. Substantial sections of Plaintiffs' pleadings consist of references to persons who are not parties and conduct that is wholly unrelated to this case.   Despite two amendments Plaintiffs were unable to state a claim upon which relief could be granted.   The Amended Complaint was dismissed without prejudice, and the Second Amended Complaint was dismissed with prejudice.   It is the Amended Complaint that resulted in the largest expenditure of fees by CACH, and that pleading is the primary focus of the Rule 11 motion together with the Declaration of Phillip Jaffe (Docket Entry 82).

CACH asserts that it should be awarded Rule 11 sanctions for three primary reasons: (1) Respondents filed the three complaints in this case in violation of Fed. R. Civ. P. 11; (2) Respondents have a pattern of filing meritless complaints in the Eastern and Southern Districts of New York; and (3) Respondents falsely claimed to be competent and experienced counsel when the PACER record shows the opposite to be true.   Like Don Quixote Attorneys Jaffe and Bassias may well believe that they are taking on fights with giants.   Unfortunately, an stated in the motion conference, CACH is the owner of the damaged windmill.

## II. BRIEF

### A, Rule 11 Standards

Fed. R. Civ. P. 11 provides, in pertinent part:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the

best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
* * *

"Rule 11 imposes a duty on every attorney to conduct a reasonable pre-filing inquiry . . . and to certify that the legal arguments are supported by existing law, and therefore that they are not frivolous." *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008), *citing Capital Bridge Co. v. IVL Techs.*, No. 04 Civ. 4002, 2007 WL 3168327, at * 1 0 (S.D.N.Y. Oct. 26, 2007). An attorney violates this duty by filing a paper that is objectively unreasonable. *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1344 (2d Cir. 1991). A filing is objectively unreasonable if, "after reasonable inquiry, a competent attorney could not f()ml a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Id., citing Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985).

Importantly, an attorney's obligations under Rule 11 "are not measured solely as of the time [the particular paper is] filed with or submitted to the court." Fed. R. Civ. P. 11(b) 1993 Adv. Comm. notes. Rather, under the language of the Rule itself an attorney "presents" a pleading, motion or other paper to the Court "by signing, filing, submitting, or later advocating it." Fed. R. Civ. P. 11(b). The Rule is violated, therefore, any time an attorney asserts a factual or legal position he knows to be without merit. See 1993 Adv. Comm. notes (noting that an attorney

violates the Rule by "reaffirming to the court and advocating positions contained in . . . pleadings and motions after learning that they cease to have any merit"). In this way the Rule "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable." (1993 Adv. Comm. notes).

CACH acknowledges that Rule 11 sanctions should only be imposed "'where it is patently clear that a claim has absolutely no chance of success." *Caisse Nationale De Credit Agricole-CNCA v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1994) (*quoting Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991)). Normally, "the principal objective of the imposition of Rule 11 sanctions is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses." *Id.* at 266. Respectfully, this litigation cries out for such deterrence.

**B. Correction of the Record**

At the motion conference on April 16, 2014, CACH's counsel represented to the Court that CACH has never pursued sanctions under Fed. R. Civ.P. 11. In <u>Exhibit B</u> Respondents have identified three cases where CACH did, in fact, pursue such sanctions, and the undersigned attorney is ethically obligated to correct his representation to the Court. The three cases were all related suits in which CACH was being indemnified and defended by a co-defendant. The attorney retained by the co-defendant pursued sanctions, a fact of which both CACH's attorneys and its General Counsel were unaware.[1] Counsel and CACH apologize to the Court for the error, but they stand by the spirit of the representation. CACH does not ordinarily pursue Rule 11

---

[1] Respondents purported to identify two other matters, but one of those cases did not involve CACH, and the other involved a sanctions motion under state law, not federal Rule 11, that was not pursued once Mr. Newburger became involved in managing the case. (In fact, Mr. Newburger still enjoys a cordial relationship with the plaintiff's attorney in that case.

sanctions.  It is doing so here because of the nature of the false accusations leveled at it and the sheer number of Rule 11 violations contained in the Amended Complaint.

## C. The Correspondence Between Counsel

On April 16, 2014, the Court conducted a motion conference with regard to the Rule 11 Motion.  A transcript of that conference has been filed in this case as Docket Entry 141.  As reflected in that transcript CACH's attorney offered to give Respondents an opportunity to provide a factual basis for the assertions in the Complaint.  After hearing nothing from Respondents CACH's attorney sent to Respondents a letter dated April 22, 2014, setting forth questions that provided Respondents with an opportunity to demonstrate compliance with Rule 11.  A true copy of that letter accompanies this brief as Exhibit A.  The accompanying Exhibit B is Respondents' response to that letter.[2]  In order to avoid burdening the Court with having to go back and forth between the two letters the accompanying Exhibit C is a table listing side-by-side each question from Exhibit A and the response set forth in Exhibit B.

CACH's counsel sent Exhibit A in a final effort to determine if there were any mitigating factors or explanations that would suggest that a Rule 11 motion was not appropriate.  Instead, the responses to the questions posed in that exhibit show even more clearly than the answers given the Court at the motion conference that this is one of the rare cases in which sanctions under Rule 11 are very much appropriate. In the sections of this memorandum that follow the "Questions" refers to the numbered questions in Exhibit A.

In addition to Exhibits A − C CACH has also furnished Exhibit D (the Declaration of Joel Winters) and Exhibit E (the Declaration of Alan Singer).  All of those exhibits are incorporated herein by reference.

---

[2] Respondents filed Exhibit B as Docket Entry 138.

**D. The Violations of Rule 11**

Exhibit C reveals a substantial number of Rule 11 violations. However, in light of the briefing limitations, CACH will focus on the following Rule 11 violations. Complete review of Exhibits A and B reveals that there are others.

**1.     The False Allegations of Robo-signing**

The Complaints assert that CACH was guilty of "robo-signing." Question 3 asked Respondents to define that term. Their response in Exhibit B was: "Robo Signing" involves the practice of debt buyers and attorneys using identical affidavits which allege identical sets of and often misstated facts. We believe that all the named defendants make a practice of using identical complaints, and affidavits in the cases." This answer actually provides no factual basis for the assertion. In response to Question 57 regarding the basis for the allegations of robo-documents in Paragraph 197 of the Amended Complaint Respondents stated: "Fill in the blanks and identical affidavits as answered above."

As a matter of law the use of form affidavits (including those with blanks to be filled) is neither improper nor unlawful. The United States District Court for the Southern District actually promulgates a form default judgment affidavit and promotes its use by publishing same on the Court's web site, as does the United States District Court for the Eastern District of New York. See http://www.nysd.uscourts.gov/file/forms/affidavit-for-judgment-by-default and https://www.nyed.uscourts.gov/sites/default/files/forms/defaultjgm.pdf. CACH submits that, as a matter of law, the use of form affidavits is not prohibited by state or federal law.

CACH has attached, as Exhibit D, the Declaration of Joel Winters. As evidenced by that affidavit CACH utilizes affidavit processes that are the antithesis of "robo-signing." CACH's records custodians and authorized representatives follow a process in which the witnesses and

-10-

notaries are subject to rules designed to prevent the improprieties that actually do merit the term "robo-signing."

Paragraph 209 of the Complaint alleges: that CACH's affidavits were "not sworn under penalty of perjury." Exhibit D shows this allegation to be false and to have been made in violation of Rule 11.

The Amended Complaint alleged that CACH was guilty of robo-signing in the Introduction to the Complaint and in Paragraphs 137, 197, 209, 255, and 260. Exhibits B and D show that these allegations have no basis in fact or law and are not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law Moreover, the response to Question 4 shows that in making such meritless allegations Respondents knew nothing of CACH's affidavit processes.

Respondents have made the point that CACH sued Ms. Shetiwy on three separater accounts'; thus, they certainly could have made inquiry in at least one of the state court cases regarding CACH's processes, but they did not do so. Instead, they made factually and legally groundless claims that CACH had defective affidavit processes, that it defrauded courts, and that it engaged in criminal activity by doing so. *See, e.g.*, Par. 104 of the Amended Complaint: "Defendants' conduct towards Plaintiffs and all absent members of the proposed classes has resulted in fraudulently obtained judgments of default being entered, which has, in turn, caused serious harm." *See, also*, Par. 163 of the Amended Complaint: "The purpose of the enterprise and/or enterprises (collectively "Enterprise") is to secure default judgments through fraudulent means and to use those judgments to extract money from Plaintiffs and putative class members." The robo-signing claims are negated by the procedures described in Exhibit D, and in making the robo-signing allegations against CACH Respondents violated Rule 11.

## 2.    The False Allegations of Agency

In the Complaints Respondents alleged that CACH attempted to collect money for various banking entities including Bank of America, GE, and Citibank.  In Docket Entry 82 Respondent Jaffe stated under penalty of perjury that:

- Amal Shetiwy was sued in three separate actions by CACH LLC on behalf of Bank of America.

* * *

- Ekaterine Skotedis was sued by CACH LLC on behalf of GE/Citibank;[3]

Paragraph 182 of the complaint states (with regard to Amal Shetiwy): "She was sued by CACH, LLC, a debt collection company performing debt  collecting tasks for Bank of America . . ."  Paragraph 185 states: "Ms. Shetiwy adamantly states that she did not run up the charges as which was alleged by Bank of America through its agent and debt collector, CACH . . ."  Paragraph 199 of the Complaint states: "The motions had affidavits from **the principal bank of America** regarding some type of a bulk transfer/assignment of accounts, lumping hers into that transfer in order to falsely testify as to a false assignment based upon personal knowledge." (Emplasis added.)  As is evidenced by Exhibit E the relationship between Bank of America and CACH is not one pf principal and agent; rather, it is one of seller and buyer.  Moreover, to give the Court an idea of the type of affidavit at issue CACH has attached as Exhibit F the redacted affidavits of sale for the three Shetiwy accounts.  As the Court can see these are proper

---

[3] Respondents' investigation of facts is so clearly nonexistent that on Page 69 of Docket Entry 81 (Plaintiffs' Opposition to Defendants' Motion to Dismiss) they state: Ekaterine Skotides has the identical problem with CACH LLC except the original Creditor is **GE Money Bank who is also Citicorp** (emphasis added).  The Court could take judicial notice that this is false.  The fact that GE Money Bank and Citicorp are not the same is a matter of public record.  GE's purchase of a portfolio of cards from Citigroup is also a matter of public knowledge.  See http://ficoforums.myfico.com/t5/Credit-Cards/GE-Capital-GE-Money-Bank-obtains-Citigroup-Inc-portfolio-of/td-p/752912.  It takes no more effort than a thirty-second Google search to reveal the false nature of the assertion.

affidavits, executed by the bank. If the seller of accounts cannot testify that the accounts have been sold then who can? Respondents' contentions are simply frivolous.

The responses to Questions 23 – 31 show the groundlessness of the agency allegations, as does Exhibit E. The response to Question 39 shows the assertions not only to be groundless but to be outrageously irresponsible:

> Evidentiary question. It is believed that debt buyers and Cach may regularly buy accounts from original creditors such as Bank of America and the creditors may finance the purchase of those accounts as with other debt collectors.

Neither a sale nor a financing arrangement would give rise to the agency asserted. If it did Respondents would be the agents of every car dealership that ever sold them cars and of the lenders who financed their purchases.

As is evidenced by Exhibit E, CACH has not ever collected for or sued on behalf of any entity other than itself. CACH asserts that the allegations that it sued and collected for the referenced banks violated Rule 11 as they had no basis in fact or law.

The false accusation of agency is material in this case. as Respondents alleged the existence of a criminal enterprise involving CACH and the banks.

**3.      The False Allegations of a Criminal Enterprise and Conspiracy**

Starting at Paragraph 110 of the Complaint Plaintiffs alleged that "Defendants, Principals and Debt Collectors, Entered into a Criminal Conspiracy." When asked for the factual basis for that allegation Respondents answered Question 12 by stating: "The Complaint was describing background of Debt Collectors and that federal courts are cracking down on the practices of Debt Collectors." The response shows the lack of a basis in fact or law for the criminal  conspiracy allegations.  Furthermore, when asked in Question 13 to state the facts on which they based the assertion that CACH was a part of an enterprise with any of the other defendants Respondents

stated: "CACH is a Debt Collector and Plaintiffs have alleged that CACH's practices are similar."

An accusation of racketeering in violation of RICO is a very serious matter. By its very nature the allegation is intended to place a defendant in fear not only of substantial civil liability but also serious criminal prosecution. Here, the RICO allegations simply had no basis. There was no conspiracy, nor was there a criminal enterprise. CACH does not even have a partnership or joint venture with any of the other defendants, many of which are its business competitors. See Exhibit E and Respondents' answers to Questions 14, 15, and 16. Civil RICO plaintiffs suing under 18 U.S.C. § 1962(a) must demonstrate, *inter alia*, the existence of a RICO "enterprise." *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 428-29, 430-31 (S.D.N.Y. 2007). It is clear that Respondents made the false allegation of an enterprise in the hope of defeating a Rule 12(b)(6) motion and not because it was well-grounded in fact or law. CACH asserts that as a matter of law both the RICO claim and the allegations of a conspiracy and a RICO enterprise violated Rule 11.[4]

### 4.    The Fifth and Fourteenth Amendment Claims

"With the exception of the Thirteenth Amendment prohibition against slavery, the United States Constitution regulates only government action, not that of private parties." *Phillips v. Sage Colleges*, 83 F. App'x 340, 341 (2d Cir. 2003). The Amended Complaint asserted that Defendants are "guilty of due process violations" (Complaint Par. 322). However, the Fifth Amendment has long been interpreted to "apply to and restrict only the Federal Government and not private persons." *Pub. Utils. Comm'n of D.C. v. Pollak*, 343 U.S. 451, 461, , 72 S. Ct. 813,

---

[4] CACH also asserts that the groundlessness of the RICO claim is evident from the fact that in the entire time this case has been pending Respondents have failed to file the RICO statement required by the Court's Individual Rule V(C).

96 L. Ed. 1068 (1952); *accord San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542, 107 S. Ct. 2971,97 L. Ed. 2d 427 (1987). Similarly, the parallel Due Process Clause of the Fourteenth Amendment applies only to state actors. *Blum v. Yaretsky*, 457 U.S. 991, 1002, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982). In Questions 1 and 2 CACH attempted to obtain any good-faith basis for the assertion that Defendants violated Plaintiffs' due process rights. The responses to those questions show that there was no basis in fact or law for the due process claims and that such allegations violated Rule 11..

5.     **Claims Related to Purchasing and Suing on Charged-Off Debts**

A 'charge-off' is merely an internal accounting event that reflects the transfer of an account with a balance due from the asset ledger to the worthless debt ledger. *Kelly v. Wolpoff & Abramson, LLP*, 634 F. Supp. 2d 1202 (D. Colo. 2008). Courts have repeatedly rejected the notion that charging off an account extinguishes the debt or makes the total balance less enforceable. *See, e.g., Kelly* at 1209; *Maresh v. Borenstein*, 2008 U.S. Dist. LEXIS 56665 (D. Colo. July 18, 2008); *Plaza Bank v. Green Family Trust*, 2011 U.S. Dist. LEXIS 141044 (D. Nev. Dec. 7, 2011); *Ingram v. Green & Cooper, Attys. LLP*, 2012 U.S. Dist. LEXIS 71163 (N.D. Ga. Apr. 20, 2012).

Even when a lender issues an account statement to its borrower indicating that an outstanding loan balance equals $0.00 because the debt has been charged off, that action does not have the legal effect of forgiving or discharging the debtor's liability for the debt. *See In re Zilka*, 407 B.R. 684, 687 (Bankr. W.D. Pa. 2009); *Discover Bank v. Worsham*, 176 P.3d 366, 368 (Okla.Civ.App. 2007); *Unifund CCR Partners v. Urban*, 2005 Conn. Super. LEXIS 3481, 2005 WL 3624541 at 1 (Conn.Super.Ct. 2005); *Central Home Trust Co. of Elizabeth v. Lippincott*, 392 So.2d 931, 933 (Fla.Dist.Ct.App. 1980); *Mitchell Bank v. Schanke*, 268 Wis. 2d 571, 676

N.W.2d 849, 854 n.7 (Wis. 2004) ("A 'write off' does not mean that the institution has forgiven the debt or that the debt is not still owing").  Similarly, a charge-off does not deprive a creditor of the right to report the charged-off balance for credit reporting purposes.  FTC Commentary of the Fair Credit Reporting Act, former 16 CFR Pt. 600 App.

When a debt-purchaser such as CACH it acquires all of the seller's rights.  In the words of the Seventh Circuit's Judge Posner "t he common law puts the assignee in the assignor's shoes, whatever the shoe size."  *Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285, 289 (7th Cir. Ill. 2005).  The charged-off balances were legally collectible by the banks; therefore, they were collectiblr by CACH.

Notwithstanding this well-established body of law the Amended Complaint makes numerous assertions regarding the purchase of charged off receivables.  Paragraph 187 of the Amended Complaint states that "it is also absolutely illegal that the debt collectors purchased many of these so-called debts for pennies on the dollar . . ." When asked to explain the factual and legal basis of this assertion Respondents stated: "This involves legal questions. What was meant is that if the principal wrote off the debt, the amount sued on should be discounted."[5] There is no factual or legal basis for this proposition, and in asserting that it is "absolutely illegal" to purchase the receivables Respondents violated Rule 11.

As noted above, an accusation of Racketeering in violation of RICO is a very serious matter.  Respondents not only manufactured out of nothing their theory of absolute illegality to purchase charged-off debts at a discount but then compounded their wrongful behavior by

---

[5] Respondents further state: Also, we believe that buying debt for the sole purpose of suing it is also improper."  However, they state no factual basis for the assertion that CACH purchased debt for the sole purpose of suing on it.  (In fact, the majority of CACH's accounts do not end up in litigation.  Furthermore, in responding to Questions 46 – 50 they disclose a total lack of awareness concerning the body of law applicable to the contracts through which CACH purchased its accounts.

alleging that such purchases constitute actionable fraud under RICO. *See* responses to Questions 43 – 45.

**6.      The False Claims Regarding Signature Cards**

The issuance of a credit card constitutes the offer of a contract. *See, e.g.*, *Bank One, Columbus, N.A. v. Palmer*, 63 Ohio App. 3d 491, 492, 579 N.E.2d 284, 285 (Ohio Ct. App. 1989). Use of a credit card constitutes acceptance of the terms of the cardmember agreement. *See, e.g.*, *Grasso v. First USA Bank*, 713 A.2d 304 (Del. 1998); *Read v. Gulf Oil Corporation*, 114 Ga. App. 21, 150 S.E.2d 319, 320 (1966); *Petroleum Co. v. McMillan*, 168 S.W. 2d 881 (Tex. Civ. App. 1943). Even in the absence of such an agreement the issuance of the credit card constitutes an offer of credit, and the use of the credit card constitutes the acceptance of the offer of credit. *Feder v. Fortunoff*, 474 N.Y.S. 2d 937 (N.Y. 1984), *citing Empire Nat'l Bank v. Monahan*, 82 Misc. 2d 808, 370 N.Y.S.2d 840 (N.Y. County Ct. 1975).

CACH asks the Court to take judicial notice of the manner in which credit cards are issued. There is no signature card. As the Court probably knows from personal experience a credit card agreement is accepted through activation and use (although a customer may well sign the back of the card.) The references in Paragraph 205 and 209 to a signature card are an attempt to mislead the Court by suggesting falsely, in violation of Rule 11, that there is or ever was such a card for Ms. Shetiwy's credit card account. The answers to Questions 54, 61, 62, and 63 show that Respondents were engaging in such conduct.

The "wet ink credit card contract" is a fiction used by some "debt defense" attorneys to confuse or mislead state court judges. In the 21st Century credit card applications are often taken online or by phone. A "signature card" (as is traditional for depository accounts) is not s part of that process. A cardholder typically receives the card by mail, in a legal-sized envelope

containing a tri-fold cardboard page with the card attached to it and instructions on how to activate the card. The contract (the cardholder agreement/account terms and conditions) is never signed. Instead, it is accepted by performance of the parties when the cardholder actuivates and uses the card and when the issuer honors the card and extends credit by paying the merchant for the charges incurred with the card.

The references to signature cards come perilously close to attempting to perpetrate a fraud on the Court. Those allegations certainly violate Rule 11.

**7.      The False Accusation of Theft**

Paragraph 56 of the Complaint states that Defendants "literally steal money." Question 6 in <u>Exhibit A</u> asked: "What are the facts on which you based your accusation that CACH literally steals money?" Respondents answered:

> It is a statement/ expression which basically expresses that defendants in many cases take money that they are not entitled to, because they obtain judgments without establishing standing based upon the proper documents.

The answer shows the allegation of theft to have had no basis in fact, as do the answers to Questions 72 and 73. The enforcement of a final judgment is not "theft." In fact, in response to Question 7 Respondents answered: "I do not believe the complaint states occasions where Cach has been found to have committed theft." CACH submits that the allegation that Defendants "literally steal money" violated Rule 11.

**8.      The Pursuit of Claims Barred by the *Rooker-Feldman* Doctrine**

The Ninth Cause of Action stated in the Complaint was labeled "Restore and Reverse the improper Judgments collected by the Debt Collectors back to the Debtors because of the illegal means by which debts were collected." Paragraph 361 of the Complaint asked the Court to

Court "overturn every judgment that was rendered due to the unconcionable (sic) acts of the Principals and Debt Collectors."

*Duval v. Abizu*, Case No. 1:08-cv-06309-SAS; in the United States District Court for the Southern District of New York, was a suit brought by Respondent Jaffe asserting claims under the First, Fifth, Eighth, and Fourteenth Amendments to the Constitution. That case was dismissed by this very Court for, *inter alia*, lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* Doctrine. Thus, at the time the Complaint was filed Respondents were aware of that doctrine and of the impropriety of the relief sought in Count 9. CACH respectfully asserts that an additional reason for Respondents' false allegations of fraud, theft, and robo-signing was an attempt to thwart that doctrine. Such conduct violates Rule 11.

**9.** **The Allegation of Adequacy**

Finally, CACH asks the Court to find that the following allegations in the Complaint violated Rule 11:

> 86.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class and have retained counsel competent and experienced in Class action and consumer litigation.

> 107.     The individual plaintiffs have no conflict of interest with any putative absent class members, and will fairly and adequately protect the interests of the class. Counsel competent and experienced in federal class action and unfair debt collection practice litigation have been retained to represent the class.

CACH asserts that the allegations of competence and experience in class actions violate Rule 11. Immediately following the motion conference on April 16, 2014, CACH's counsel

invited Respondent Bassias to identify any case in which he had been certified as class counsel. His only response was that Mr. Jaffe had drafted the pleadings. In Questions 68 – 71 CACH offered Respondents the opportunity to provide even the slightest basis for the assertion that they are competent and experienced in class litigation. As the Court can see, they provided no such basis.

CACH has searched the PACER docket for the Southern and Eastern Districts of New York to see if perhaps it could find any evidence of competence and experience in class representation. It could not. Perhaps its counsel missed a case, but CACH could find no case in which either of the respondents had been certified as class counsel or had ever recovered a penny of relief for a class member. Attorney Jaffe has certainly filed multiple putative class actions, but it appears that he has succeeded in none of them. Examples include:

- *Marekh, on behalf of herself and others similarly situated v. Equifax, et al.;* Case No. 1:97-cv-04517-RJD-JAM; in the United States District Court for the Eastern District of New York: In this case, Plaintiff, represented by Phillip Jaffe, filed a putative class action challenging the constitutionality of the FCRA. The District Court dismissed the suit, and at 2 Fed. Appx. 155, 2001 U.S. App. LEXIS 1093 the Court of Appeals affirmed, stating: "We find no merit in any of Marekh's challenges to the constitutionality of the FCRA. None of her arguments raise a serious question as to the constitutionality of the FCRA, let alone the "plain showing" that is required for us to declare an Act of Congress unconstitutional."

- *Surakhun v. Lincoln Cinema Associates*; Case No. 1:98-cv-04764-RNB-THK; in the United States District Court for the Southern District of New York: In this case Plaintiff, represented by Phillip Jaffe, filed suit listing a demand of $10,000,000. The docket sheet shows that the case was dismissed in part pursuant to Rule 12(b)(6). The suit was subsequently settled and dismissed. This was not shown as a class action

- *Rodriguez, on behalf of herself and others similarly situated v. Apfel*; Case No. 1:99-cv-04617-CPS-RLM; in the United States District Court for the Eastern District of New York: This was a putative class action against the Commissioner of Social Security. The docket sheet shows that the case was dismissed upon Defendants' motions under Rule 12(b) and the dismissal was affirmed by the Second Circuit. The Plaintiff was represented by George E. Bassias of Bassias & Jaffe.

- *Fuller and all others similarly situated v. Instinet, Inc.*; Case No. 1:99-cv-11453-BSJ-JCF; in the United States District Court for the Southern District of New York: This was a putative class action filed by Phillip Jaffe. The docket sheet shows that the case was dismissed in part pursuant to Rule 12(b)(6). After that the plaintiffs' motion for class certification was denied. The remainder of case dismissed on defendant's motion for summary judgment. The District Court rulings were affirmed at 120 Fed. Appx. 845, *; 2004 U.S. App. LEXIS 27087, and the petition for a writ of certiorari was denied at 545 U.S. 1104; 125 S. Ct. 2547; 162 L. Ed. 2d 275.

- The Court of Appeals affirmed denial of certification because the plaintiff failed to include any relevant non-discriminatory factors in her statistical study, leaving it it without probative value; therefore, she failed to carry her burden under Rule 23(a). The court also held that Fuller has failed to identify any adverse employment action and that summary judgment was appropriate.

- *Duval v. Abizu*; Case No. 1:08-cv-06309-SAS; in the United States District Court for the Southern District of New York: This case was dismissed by this Court for, inter alia, lack of subject matter jurisdiction pursuant to the Rooker-Feldman Doctrine and as an attempt to circumvent the state court appellate process.

- *Jaffe, and others similarly situated v. Capital One Bank*; Case No. 1:09-cv-04106-PGG; in the United States District Court for the Southern District of New York: In this case Phillip Jaffe filed suit both as a putative class representative and as counsel for the putative class. In the order at 2010 U.S. Dist. LEXIS 18117 the Court dismissed multiple counts, some due to the same pleading defects that are present in this case. Dr. Jaffe was one of the original plaintiffs in this punitive class action. The case was dismissed upon motion of the defendants

- *Vargas and the class of those persons similarly situated v. Choicehealth Leasing*; Case No. 1:09-cv-08264-DLC; in the United States District Court for the Southern District of New York: This was a putative RICO class action filed by Phillip Jaffe. The summary judgment for Citibank and partial dismissal for Choicehealth is at at 2010 U.S. Dist. LEXIS 88308. The same order dismissed claims against Choicehealth under the NBA and the Depository Institutions Deregulation and Monetary Control Act because it was not a bank and dismissed the RICO claim as "patently insufficient." In the opinion at 2011 U.S. Dist. LEXIS 49310 the Court dismissed the amended RICO claim pursuant to Rule 12(b)(6).

- *Karadimas and others similarly situated v. JP Morgan Chase Bank, N.A., et al.*; Case No. 1:09-cv-00589-DLI-RLM; in the United States District Court for the Eastern District of New York: This putative class action filed by Phillip Jaffe asserted claims under the FDCPA and the FCRA. The incomprehensible complaint asserts, inter alia, class claims that make no sense, an FDCPA claim

against a creditor, a claim under TILA that cites to the FDCPA, and a claim under the FCBA that cites to TILA. An amendment added antitrust claims under the Sherman Act. The case was dismissed upon motion under Fed. R. Civ. P 12(b)(6).

- *Vargas v. Capital One Fin. Advisors,* Case No. 1:12-cv-05728-LTS-DCF; in the United States District Court for the Eastern District of New York: This was a putative class action under the Fair Housing Act. The suit was dismissed with prejudice pursuant to Rule 12(b)(6) because it was filed in violation of a prior class settlement. See 2013 U.S. Dist. LEXIS 116234. On appeal the dismissal was affirmed at 2014 U.S. App. LEXIS 4689.

As best CACH can determine Respondents' primary class action experience has been that of outright failure. The allegation of competence and experience as class counsel therefore false. One cannot be "experienced" at what one has not done. Although Respondents have attempted to serve as class counsel their failed attempts do not make them "competent and experienced in class litigation." Thus, this claim, too violates Rule 11.

Beginning on Page 5 of the Complaint Respondents state, in the section labeled "Background": "***Whether this Class Action Lawsuit is successful or not is secondary to the overall purpose of this action which is to expose the criminal and civil violations . . .***" CACH submits that Respondents (particularly Mr. Jaffe) have a history of trying to use the federal courts to further their personal or political causes by filing putative class actions that ultimately go nowhere, but cause tremendous expense to the defendants in those cases. Here, CACH has incurred over $90,000 in defense costs consisting of over $23,000 with Mr. Greystone's firm and over $68,000 with Mr. Newburger's firm. Those numbers do not take into account the business losses associated with having to assist in the defense of a case, nor do they take into account the possible business injury associated with having been accused falsely of theft, racketeering, and criminal conspiracy. CACH requests that at least two-thirds of its fees be awarded as sanctions.

WHEREFORE, PREMISES CONSIDERED, Defendant CACH prays that the Court make specific findings that Respondents have violated Rule 11, and that they did so intentionally and maliciously. CACH further prays that the Court make an appropriate award of fees and costs together with all such other sanctions and relief as to which it may be justly entitled.

Dated May 16, 2014                                    Respectfully submitted,


/s/ Jonathan J. Greystone                             /s/ Manuel H. Newburger
Jonathan J. Greystone, Esquire                        Manuel H. Newburger
SPECTOR GADON & ROSEN, P.C.                           Barron & Newburger, P.C.
1635 Market Street, 7th Floor                         1212 Guadalupe, Suite 104
Philadelphia, PA 19103                                Austin, TX 78701
(215) 214-8927                                        (512) 476-9103, Ext. 216
(215) 241-8844 (fax)                                  Fax: (512) 279-0310
jgreystone@lawsgr.com                                 mnewburger@bn-lawyers.com

ATTORNEY FOR DEFENDANT                                ATTORNEY FOR DEFENDANT
CACH, LLC                                             CACH, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 16, 2014, I electronically transmitted the foregoing motion to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants on the Service list below.

/s/      <u>Manuel H. Newburger</u>
Manuel H. Newburger
Barron & Newburger, P.C.
1212 Guadalupe, Suite 104
Austin, TX 78701
(512) 476-9103, Ext. 216
Fax: (512) 279-0310
mnewburger@bn-lawyers.com

Attorney for Defendant CACH, LLC

**SERVICE LIST:**

Phillip Jaffe    pjaffe47@gmail.com
George Efthios Bassias    gbassias@yahoo.com
Aaron R. Easley    aeasley@sessions-law.biz, kjackson@sessions-law.biz
Andrew Arthur Ruffino    aruffino@cov.com, maony@cov.com
Carmine D. Boccuzzi , Jr    maofiling@cgsh.com, cboccuzzi@cgsh.com
Casey Devin Laffey    claffey@reedsmith.com
Christopher William Madel    cwmadel@rkmc.com, dmvanalstine@rkmc.com
Concepcion A. Montoya    cmontoya@hinshawlaw.com, tharry@hinshawlaw.com
David John Fioccola    dfioccola@mofo.com, docketny@mofo.com
Donald S Maurice , Jr    dsm@mnlawpc.com, klp@mnlawpc.com
Gillian Ivy Biron    gillian.biron@bingham.com
Jennifer M. Robbins    jmrobbins@rkmc.com, bsbrtek@rkmc.com
Jessica Kaufman    jkaufman@mofo.com, cruss@mofo.com, docketny@mofo.com, jrosenberg@mofo.com
Jill M. Wheaton    jwheaton@dykema.com, chammond@dykema.com, docket@dykema.com
John E. Brigandi    jbrigandi@salvolawfirm.com
Jonathan Justin Greystone    jgreystone@lawsgr.com
Jonathan M. Albano    jonathan.albano@bingham.com
Kevin Barry McHugh    Kevin.McHugh@aig.com
Khardeen Ideona Shillingford    kshillingford@hinshawlaw.com, tharry@hinshawlaw.com
Lauren Kathryn Handelsman    lhandelsman@cgsh.com, lhandelsman@binderschwartz.com
Mark Paul Ladner    mladner@mofo.com, docketny@mofo.com
Michael D. Hynes    michael.hynes@dlapiper.com, DocketingNewYork@dlapiper.com
Mitchell A. Lowenthal    maofiling@cgsh.com, mlowenthal@cgsh.com

Oren Dov Langer     odlanger@rkmc.com, kdchapman@rkmc.com
Richard David Lane     rdlane@mdwcg.com, mbbrownell@mdwcg.com
Robert D. Wick     rwick@cov.com, maony@cov.com
Ruth Mary Thomas     rmthomas@reedsmith.com
S. Elaine McChesney     elaine.mcchesney@bingham.com
Sarah B. Zimmer     sarah.zimmer@dlapiper.com, DocketingNewYork@dlapiper.com
Stephen Craig Robinson     stephen.robinson@skadden.com
Thomas Robert Dominczyk     trd@mnlawpc.com, klp@mnlawpc.com
William Raley Alford     wra@srrta.com, mmw@srrta.com