UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMAL SHETIWY, LOUIS C. YEOSTROS, JOHN MURPHY, PLAMEN PANKOFF, SPIROS ARGYROS, NICOLE GAGNON, VIELKA VARGAS, ROSE VILLANUEVA, and others similarly situated,<br><br>        Plaintiffs,<br><br>   - against -<br><br>MIDLAND CREDIT MANAGEMENT, A/K/A MIDLAND FUNDING LLC, CAVALRY SPV, LLC, CACH, LLC, LVNV FUNDING, LCC, FIA CARD SERVICES, N.A., PORTFOLIO RECOVERY ASSOCIATES, LLC, ASSOCIATED RECOVERY SYSTEMS, EQUABLE ASCENT FINANCIAL, LLC, CHASE BANK, N.A., BANK OF AMERICA, N.A.<br><br>        Defendants. | 12 Civ. 7068 (SAS) (HBP)<br><br>**REPLY IN SUPPORT OF THE MOTION OF DEFENDANT CACH, LLC FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11** |

  Defendant CACH, LLC ("CACH"), submits this Reply in support of its motion for Rule 11 sanctions against Plaintiff's attorneys Phillip Jaffe and George Bassias ("Respondents"), and would respectfully show the following:

### I. THE ISSUE BEFORE THE COURT

  The issue before the Court is whether the allegations against CACH violate Fed. R. Civ. P. 11.  The response, just as the three Complaints in this case, contains a great deal of information about debt buyers in general, but nothing that supports the false allegations made against CACH.  CACH contends that there is no basis in fact or law for:

  a. the allegation in Paragraph 56 of the Amended Complaint that Defendants "**literally steal money**";

-1-

b.  the allegations in any of the Complaints that CACH was guilty of "robo-signing";

c.  the allegations in Paragraph 209 of the Complaint that CACH's affidavits were "not sworn under penalty of perjury";

d.  the allegations in the Introduction to the Amended Complaint and in Paragraphs 137, 197, 209, 255, and 260 that CACH was guilty of "robo-signing";

e.  the allegations that in Paragraphs 104, and 163 of the Amended Complaint that CACH had defective affidavit processes, that it defrauded courts, and that it engaged in criminal activity by doing so;

f.  the allegations in the Complaints that CACH attempted to collect money for various banking entities including Bank of America, GE, and Citibank;

g.  the statement in Respondent Jaffe's sworn statement in Docket Entry 82 that:

- Amal Shetiwy was sued in three separate actions by CACH LLC on behalf of Bank of America.

\* \* \*

- Ekaterine Skotedis was sued by CACH LLC on behalf of GE/Citibank;

h.  the allegations in Paragraph 182 of the Amended Complaint that (with regard to Amal Shetiwy): "She was sued by CACH, LLC, a debt collection company performing debt collecting tasks for Bank of America . . .";

i.  the allegations in Paragraph 185 of the Amended Complaint that CACH was Bank of America's "agent and debt collector";

j.  the allegations in Paragraph 199 of the Amended Complaint that Bank of America was CACH's "principal";

k.  the allegations in the Amended Complaint that CACH entered into a criminal conspiracy;

l. the allegations in the Complaints that CACH engaged in racketeering in violation of RICO;

m. the allegations in the Complaints that CACH was part of a RICO "enterprise;

n. the allegations in Paragraph 322 of the Amended Complaint that CACH was "guilty of due process violations";

o. the Claims against CACH under the Fifth and Fourteenth Amendments to the Constitution;

p. the allegation in Paragraph 187 of the Amended Complaint that "it is also absolutely illegal that the debt collectors purchased many of these so-called debts for pennies on the dollar . . .";

q. the references in Paragraph 205 and 209 of the Amended Complaint to a signature card on Amal Shetiwy's credit card account;

r. the Ninth Cause of Action in the Amended Complaint asking this Court to "Restore and Reverse the improper Judgments collected by the Debt Collectors back to the Debtors because of the illegal means by which debts were collected";

s. the request in Paragraph 361 of the Complaint that the Court to Court "overturn every judgment that was rendered due to the unconcionable (sic) acts of the Principals and Debt Collectors"; and

t. the assertion in Paragraphs 86 and 107 of the Amended Complaint that Plaintiffs' attorneys are "competent and experienced" in federal class action litigation.

## II. RESPONDENTS' RESPONSE TO THE MOTION

In opposition to CACH's motion for sanctions Respondents Jaffe and Bassias submitted four exhibits together with the Affirmations of George Bassias and Phillip Jaffe. Those

documents actually prove CACH's entitlement to Sanctions.  In fact, the only issue that really appears to concern Respondents is that their allegation of adequacy and competence to represent a class violated Rule 11.  As to the remainder of the issues they stand on their response to the questions posed to them (which was submitted as <u>Exhibit B</u> to the Rule 11 motion).  As is shown in <u>Exhibit C</u> to CACH's motion (the side-by-side comparison chart) the responses by which they stand demonstrate a complete lack of basis in fact or law for the allegations in the Complaints that are at issue.

Faced with evidence that his sworn statements in Docket Entry 82 were false Respondent Jaffe makes no effort at all to explain his false testimony or to recant it.  Instead, Respondents seem to focus on irrelevant issues, wholly failing to provide a Rule 11 basis for the false claims that CACH filed suit on behalf of, and collected for the banks.  Instead, Mr. Jaffe makes much of his efforts as a "*pro bono*" attorney.  However, "*pro bono*" is not Latin for "Rule 11 does not apply."

**A.    The Affirmation of Phillip Jaffe**

Mr. Jaffe asserts in his affirmation that defamatory statements in a pleading are privileged in the context of claims for defamation.  He is correct.  That is why CACH's sole recourse is sanctions under Rule 11.  CACH cannot obtain redress through a suit for defamation. Interestingly, however, Mr. Jaffe does not deny that the pleadings at issue were defamatory, nor does he aver that they were true.  This, of course, is because he cannot make such an averment as the pleadings were false, at least with regard to CACH.  Mr. Jaffe offers no basis in fact or law for the allegations at issue.  In particular, he fails to explain the false, yet unequivocal statements that CACH collected money for banks.  The evidence that CACH has not ever collected for any

of the bank defendants is unrebutted. The allegations in the Complaints to the contrary were false.

Compounding his violations of Rule 11, in his affidavit supporting the response Mr. Jaffe states that the *Duval v. Abizu* case "has nothing to do with *Rooker-Feldman* . . ." The order from this court shows that statement to be false. *See* Exhibit A to this Reply. This Court's order dismissing the *Duval* case stated:

> This action is barred by the Rooker-Feldman doctrine, which acknowledges that "Congress's grant to federal district courts of jurisdiction to entertain suits raising federal questions ... 'is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to th[e United States Supreme] Court.", Thus, "federal district courts do not have jurisdiction over claims that have already been decided, or that are 'inextricably intertwined' with issues that have already been decided, by a state court.

*See* Exhibit A to this Reply. It appears that the lack of Rule 11 due diligence as to *Rooker-Feldman* issues included a complete lack of awareness of Respondent's own case.

**B.   The Affirmation of George Bassias**

Mr. Bassias' affirmation similarly fails to show any basis in fact or law for the allegations at issue in the Rule 11 Motion. Attempting a bit of misdirection, he points to *Martinez v. CACH, LLC*, 2011 U.S. Dist. LEXIS 68586 (S.D. Ca. June 27, 2011) an order merely denying a motion to dismiss (in a case that was ultimately dismissed without any class certification or finding of liability). *Martinez* involved a dispute over whether CACH was entitled to charge interest at the

rates provided for in the cardholder agreements. The Martinez case does not remotely support the wild accusations against CACH on this case.

Mr. Bassias cites to *Moses v. CACH, LLC*, 2009 U.S. Dist. LEXIS 67637 (M.D. Pa.Aug. 4, 2009), a suit involving a letter from CACH's outside counsel that allegedly violated the FDCPA. That case, (from 2009) also did not allege that CACH had robo-signed affidavits or that it conspired with banks in a criminal enterprise or that it acted as a collection agent for banks. The order cited was merely a denial of a Rule 12(b)(6) motion; however, even if CACH had lost the Moses case on the merits (which it did not) that would not have provided a Rule 11 basis for this action.

Mr. Bassias then points to a handful of state court cases in which CACH was unsuccessful as a litigant. A creditor such as CACH that files thousands of suits a year can expect to lose at least some of those cases. The fact that it was not always successful shows that (contrary to Plaintiffs' assertions) state courts are quite capable of evaluating evidence and making rulings. Furthermore, the fact that CACH has not prevailed 100% of the time does nothing to justify or support the allegations at issue.

None of the state court cases to which Mr. Bassias alludes resulted in a finding that CACH had robo-signed affidavits or that it conspired with banks in a criminal enterprise or that it acted as a collection agent for banks. Certainly, CACH sometimes gets sued. CACH sues people as their creditor, and it expects to lose from time to time and anticipates that it will be sued periodically. What it does not expect it to be accused falsely of theft, of participating in a criminal enterprise, and of acting as the collection agent of banks for which it does not collect.

C.      **Exhibits to the Bassias Affidavit**

Exhibit A to the Bassias Affidavit is nothing more than a denial of CACH's motion for summary judgment in one of the three cases involving Ms. Shetiwy. That order finds that "The affidavit of Andrew Brunk, a Bank Officer of FIA Card Services, fails to properly authentic (sic) the purported bill of sale, The affidavit of Peter Huber, an agent of CACH, cannot remedy the Brunk affidavit's infirmities as Mr. Huber does not have the requisite personal knowledge necessary to authentic the original creditors records." That ruling does not even support an allegation that FIA Card Services robo-signed, and it does not remotely support the allegation that CACH robo-signed affidavits or that it engaged in a criminal conspiracy and enterprise with any of the other defendants or that it collected for the banks that sold accounts to it or that it perpetrated a fraud on any court.

It is fundamental to the judicial process that litigants will not succeed in securing admission of every piece of evidence that they offer. The proposition that having evidence ruled inadmissible is a fraud on the court or a criminal act would require every court to refer for disciplinary action almost every attorney who every tries a case or presents evidence in a contested hearing. Such an assertion cannot meet the requirements of Rule 11.

Exhibit B to the Bassias affirmation is a purported study of debt-buyer litigation. The authors of the report are consumer organizations that can hardly be described as unbiased. Nevertheless, CACH is mentioned only twice in that exhibit. Appendix B of the report reveals that the study looked at only 10 out of all of CACH's cases. In addition, the report states:

> There are as many as 500 privately owned debt buyers in the United States. Little is known about how they finance their operations, though like publicly traded debt buyers, they most likely rely on private investors, commercial loans, and lines of credit. Some privately owned debt buyers have been purchased in whole or in part by private equity firms, hedge funds or other financial services companies that provide financial backing for the debt buyers' activities. For

>example, private equity firms and other financial services companies have purchased stakes in debt buyers like Collect America (the parent of debt buyers CACH and CACV), Sherman Financial Group (the parent of debt buyer LVNV Funding), and Arrow Financial Services (a Sallie Mae company), as well as public debt buying firms such as Encore Capital Management.

Nothing in Exhibit B supports the allegations at issue. If those two mentions of CACH are sufficient to justify the allegations at issue then Rule 11 truly has no meaning.

Exhibit C to the Bassias affirmation is the same document offered as Exhibit B to the Rule 11 motion. CACH's Exhibit C (the side-by-side comparison of the questions and answers) shows why this document actually proves the violations of Rule 11 that CACH has alleged.

Exhibit D to the Bassias affirmation is yet another document that evidences the problem presented to the Court. That exhibit is a report of fines levied against Portfolio Recovery Associates and Sherman Financial. Neither of those companies is an affiliate of CACH. Respondents simply fail to grasp the concept that bad conduct by CACH's business competitors is not a basis for suing CACH. Rule 11 requires more than the assertion that "CACH's business competitors violated state law; therefore, CACH is a criminal conspirator."

### III. THE RESPONSE SHOWS CACH'S ENTITLEMENT TO SANCTIONS

Respondents' Memorandum in opposition makes only two arguments. The first is that they cannot be liable for defamation damages. That is correct, which is why Rule 11 sanctions are CACH's only remedy.

Respondents' second argument is that isolated factual misstatements are not the appropriate subject matter of Rule 11 sanctions. However, the allegations at issue are not isolated, minor, or trivial. They are the essential allegations of the Complaint as to CACH. "Rule 11 imposes a duty on every attorney to conduct a reasonable pre-filing inquiry . . . and to certify that the legal arguments are supported by existing law, and therefore that they are not

frivolous." *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008), *citing Capital Bridge Co. v. IVL Techs.*, No. 04 Civ. 4002, 2007 WL 3168327, at * 1 0 (S.D.N.Y. Oct. 26, 2007). Today, over one- and-a-half years after this suit was filed Respondents are incapable of providing a legal and factual basis for their pleadings against CACH.  They could not possibly have satisfied their pre-filing duty.  Even as to the one issue on which they purport to provide evidence – their alleged adequacy to represent a class, they still do not identify a *single* instance in which either of them has secured a penny of relief for a class.

Respondents profess outrage at the suggestion that they should be sanctioned, accusing CACH of mud-slinging.  The irony is clear given their failure to provide any factual basis for calling CACH a thief, a criminal, and a conspirator. As reflected in CACH's Exhibit C Respondents' answers to the questions of CACH's counsel provided ample reason to file the Rule 11 motion.  Their response shows why the motion is meritorious and should be granted.

In fact, it has become clear that nothing short of Rule 11 sanctions has any hope of impacting Respondents' behavior.  While this Rule 11 dispute has been pending they filed a letter with the Second Circuit Court of Appeals in which they stated: "In the action before the Second Circuit Court of Appeals Plaintiffs have alleged a conspiracy between several of the Defendants for their unlawful taking of Plaintiffs' money." *See* the accompanying Exhibit B. Amal Shetiwy (the only plaintiff who is alleged to be a CACH debtor) has not paid a penny to CACH, either voluntarily or involuntarily.

### IV. THERE IS NO CONTEST AS TO THE FEES

Finally, CACH would note that Respondents have not challenged the reasonableness or necessity of the fees sought.  Therefore, should the Court decide to award sanctions there appears to be no dispute as to the amount to be awarded.

WHEREFORE, PREMISES CONSIDERED, Defendant CACH prays that the Court make specific findings that Respondents have violated Rule 11, and that they did so intentionally and maliciously. CACH further prays that the Court make an appropriate award of fees and costs together with all such other sanctions and relief as to which it may be justly entitled.

Dated June 16, 2014                                    Respectfully submitted,


/s/ Jonathan J. Greystone                              /s/ Manuel H. Newburger
Jonathan J. Greystone, Esquire                         Manuel H. Newburger
SPECTOR GADON & ROSEN, P.C.                            Barron & Newburger, P.C.
1635 Market Street, 7th Floor                          1212 Guadalupe, Suite 104
Philadelphia, PA 19103                                 Austin, TX 78701
(215) 214-8927                                         (512) 476-9103, Ext. 216
(215) 241-8844 (fax)                                   Fax: (512) 279-0310
jgreystone@lawsgr.com                                  mnewburger@bn-lawyers.com

ATTORNEY FOR DEFENDANT                                 ATTORNEY FOR DEFENDANT
CACH, LLC                                              CACH, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2014, I electronically transmitted the foregoing motion to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants on the Service list below.

                                                  /s/     <u>Manuel H. Newburger</u>
Manuel H. Newburger
Barron & Newburger, P.C.
1212 Guadalupe, Suite 104
Austin, TX 78701
(512) 476-9103, Ext. 216
Fax: (512) 279-0310
mnewburger@bn-lawyers.com

Attorney for Defendant CACH, LLC

**SERVICE LIST:**

Phillip Jaffe    pjaffe47@gmail.com
George Efthios Bassias    gbassias@yahoo.com
Aaron R. Easley    aeasley@sessions-law.biz, kjackson@sessions-law.biz
Andrew Arthur Ruffino    aruffino@cov.com, maony@cov.com
Carmine D. Boccuzzi , Jr    maofiling@cgsh.com, cboccuzzi@cgsh.com
Casey Devin Laffey    claffey@reedsmith.com
Christopher William Madel    cwmadel@rkmc.com, dmvanalstine@rkmc.com
Concepcion A. Montoya    cmontoya@hinshawlaw.com, tharry@hinshawlaw.com
David John Fioccola    dfioccola@mofo.com, docketny@mofo.com
Donald S Maurice , Jr    dsm@mnlawpc.com, klp@mnlawpc.com
Gillian Ivy Biron    gillian.biron@bingham.com
Jennifer M. Robbins    jmrobbins@rkmc.com, bsbrtek@rkmc.com
Jessica Kaufman    jkaufman@mofo.com, cruss@mofo.com, docketny@mofo.com, jrosenberg@mofo.com
Jill M. Wheaton    jwheaton@dykema.com, chammond@dykema.com, docket@dykema.com
John E. Brigandi    jbrigandi@salvolawfirm.com
Jonathan Justin Greystone    jgreystone@lawsgr.com
Jonathan M. Albano    jonathan.albano@bingham.com
Kevin Barry McHugh    Kevin.McHugh@aig.com
Khardeen Ideona Shillingford    kshillingford@hinshawlaw.com, tharry@hinshawlaw.com
Lauren Kathryn Handelsman    lhandelsman@cgsh.com, lhandelsman@binderschwartz.com
Mark Paul Ladner    mladner@mofo.com, docketny@mofo.com
Michael D. Hynes    michael.hynes@dlapiper.com, DocketingNewYork@dlapiper.com
Mitchell A. Lowenthal    maofiling@cgsh.com, mlowenthal@cgsh.com

Oren Dov Langer    odlanger@rkmc.com, kdchapman@rkmc.com
Richard David Lane    rdlane@mdwcg.com, mbbrownell@mdwcg.com
Robert D. Wick    rwick@cov.com, maony@cov.com
Ruth Mary Thomas    rmthomas@reedsmith.com
S. Elaine McChesney    elaine.mcchesney@bingham.com
Sarah B. Zimmer    sarah.zimmer@dlapiper.com, DocketingNewYork@dlapiper.com
Stephen Craig Robinson    stephen.robinson@skadden.com
Thomas Robert Dominczyk    trd@mnlawpc.com, klp@mnlawpc.com
William Raley Alford    wra@srrta.com, mmw@srrta.com